**FREEMAN MATHIS & GARY, LLP**
ALBERT K. ALIKIN (SBN 265119)
Albert.Alikin@fmglaw.com
Nicholas Directo (SBN 314108)
Nick.Directo@fmglaw.com
Sydney Preston (SBN 352054)
Sydney.preston@fmglaw.com
550 South Hope Street, Suite 2200
Los Angeles, California 90071
Tel.: (213) 615-7000; Fax: (833) 264-2083

*Attorneys for Plaintiff*
ALLIED WORLD SPECIALTY INSURANCE COMPANY

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLIED WORLD SPECIALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF CALIFORNIA; and DOES 1 to 50, inclusive, <br><br> Defendants. | Case No.  2:24-cv-02637 <br> Hon. <br><br> **COMPLAINT FOR DECLARATORY RELIEF, EQUITABLE SUBROGATION, EQUITABLE INDEMNITY, AND EQUITABLE CONTRIBUTION** |

COMES NOW, Plaintiff ALLIED WORLD SPECIALTY INSURANCE COMPANY ("Allied World" or "Plaintiff") alleges as follows against Defendant STATE OF CALIFORNIA, acting by and through the Department of Transportation ("Caltrans" or "Defendant") and DOES 1 to 50:

### INTRODUCTION

1.      This is an action in diversity pursuant to 28 U.S.C. § 1332, asserting claims for equitable subrogation, equitable indemnity, equitable contribution, and declaratory relief in connection with Caltrans' failure to properly design, warn,

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

maintain, operate, and oversee a construction zone on State Route 138 ("SR-138") in San Bernardino, California, which resulted in three (3) separate lawsuits arising from three (3) different motor vehicle accidents on this highway ("Underlying Lawsuits").[1]

2.     Allied World's insured, Flatiron Construction, Inc. ("Flatiron"), entered into a contract with Caltrans to perform work on the highway in accordance with Caltrans' designs and under the direct supervision and control of Caltrans. Caltrans continues to mistakenly rely on the indemnity provision in this contract to improperly evade contribution towards the settlements of the Underlying Lawsuits. Allied World seeks a judicial declaration that Caltrans is liable, at least in part, for the damages claimed in the Underlying Lawsuits and cannot avoid contribution towards the settlements by simply hiding behind the indemnity provision.

3.     Allied World brings this action to (1) obtain a declaration pursuant to 28 U.S.C. § 2201(a) that the contract between Flatiron and Caltrans does not require Flatiron to indemnify Caltrans for Caltrans' own sole negligence or active negligence in connection with all three Underlying Lawsuits, and (2) to obtain recovery from Caltrans for those amounts it paid in excess of Flatiron's fair share to resolve the three Underlying Lawsuits pursuant to the doctrines of equitable subrogation, equitable indemnity, and/or equitable contribution.

## THE PARTIES

4.     Allied World is a corporation organized and existing under the laws of the State of New York. Allied World's principal place of business is also in the State of New York. Allied World is and was at all times mentioned herein qualified to do business in the State of California.

---

[1] Many more additional accidents have occurred on this highway due to Caltrans' conduct but this action pertains to the three Underlying Lawsuits. *See* "Driving along the scenic but accident prone California State Route 138 to Cajon Pass" (https://www.youtube.com/watch?v=L8Nz61ljBh8).

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

5. Defendant Caltrans is a public entity duly organized and existing under and by virtue of the laws of the State of California and was at all times mentioned herein qualified to do business in the State of California.

6. Plaintiff does not presently know the true names and capacities of the defendants sued herein as Does 1 through 50, inclusive. Plaintiff will seek leave of court to amend this complaint to allege said defendants' true names and capacities as soon as Plaintiff ascertains them.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy exceeds $75,000.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as all or a substantial part of the events from which the Underlying Lawsuits and this action occurred in this judicial district.

## FACTUAL ALLEGATIONS

### A. The Allied World Policy

9. Plaintiff issued Umbrella Liability Insurance Policy No. 0308-4113 to Flatiron Construction Corporation, effective June 1, 2016 to June 1, 2017 (the "Allied World Policy"). A true and correct copy of the Policy is attached hereto and incorporated herein as **Exhibit A**.

10. The Allied World Policy states, in pertinent part:

[Allied World] will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages for reason of liability imposed by law because of **Bodily Injury**. . . to which this insurance applies or because of **Bodily Injury**. . . to which this insurance applies assumed by the **Insured** under an **Insured Contract**."

11. The Allied World Policy defines **Retained Limit** to mean, in pertinent part, as "the total applicable limits of **Scheduled Underlying Insurance** and any

other applicable **Other Insurance** providing coverage to the **Insured**."

12.     The Allied World Policy identifies a Commercial General Liability Policy issued by Zurich American Insurance Company ("Zurich"), policy number. GLO 5939707-08, effective June 1, 2016 to June 1, 2017, as the **Scheduled Underlying Policy** for general liability (the "Underlying Policy").   A true and correct copy of the Underlying Policy is attached hereto and incorporated herein as **Exhibit B**.

13.     The Underlying Policy contains an Additional Insured – Automatic – Owners, Lessees or Contractors Endorsement, which provides, in relevant part:

A.     Section II – Who Is An Insured is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.     Your acts or omissions; or

2.     The acts or omissions of those acting on your behalf, in the performance of "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

However, this insurance afforded to such additional insured:

1.     Only applies to the extent permitted by law; and

2.     Will not be broader than that which you are required by written contract or written agreement to provide for such additional insured.

B.     With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services, including:

    a.    The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b.    Supervisory, inspection, architectural or engineering activities.

14.    The Allied World Policy also includes a similar limitation for additional insurances pursuant to the Contractors' Limitation Endorsement, which states:

B.    It is agreed that Section VI., "Definitions" F. **Insured**, Paragraph 7. is deleted in its entirety and replaced by the following:

    7.    any person or organization, other than the **Named Insured**, included as an additional insured in the policies listed in **Scheduled Underlying Insurance** however:

        a.    coverage will not be broader than is available to such person or organization under such **Scheduled Underlying Insurance;** and

        b.    the coverage granted by this provision does not apply to any liability which results solely from the acts or omissions of such person or organization.

15.    Notably, Insurance Code § 11580.04 provides:

Any additional insured endorsement issued by an admitted or nonadmitted insurer for the benefit of a public agency in connection with, collateral to, or affecting any construction contract to which the provisions of subdivision (b) of Section 2782 of the Civil Code apply, shall not provide any duty of indemnity coverage for the **active negligence** of the additional insured in any case where an agreement to indemnify the additional insured would be invalid under subdivision (b) of Section 2782 of the Civil Code. In any case where a claim or loss encompasses the negligence of the original insured and the **active negligence** of the additional insured that is not covered

**FREEMAN MATHIS & GARY, LLP**
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

because of this section, the insurer's obligation shall be limited to obligations permitted by this section. (emphasis added).

16.     Civil Code § 2782 states, in relevant part:

(a) …provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction contract and that purport to indemnify the promisee against liability for damages for death or bodily injury to persons, injury to property, or any other loss, damage or expense arising from the **sole negligence** or **willful misconduct** of the promisee or the promisee's agents, servants, or independent contractors who are directly responsible to the promisee, or for defects in design furnished by those persons, are against public policy and are void and unenforceable…(emphasis added).

(b)(2) ….provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction contract with a public agency entered into on or after January 1, 2013, that purport to impose on any contractor, subcontractor, or supplier of goods or services, or relieve the public agency from, liability for the **active negligence of the public agency are void and unenforceable**. (emphasis added).

## B. <u>The Project - Flatiron's Scope of Work</u>

17.     On July 18, 2014, Flatiron and Hardy & Harper, Inc. entered into a joint venture agreement (the "Joint Venture") to bid and perform work on the State Route 138 expansion project being designed by Caltrans (the "Project").  The Joint Venture won the bid and entered into an agreement with Caltrans on or about September 22, 2014 (the "Contract").  Pursuant to the Contract, and at the active direction of Caltrans, Flatiron's scope of work included removing the existing roadway, widening the highway to four lanes, installation of guardrails and placement of concrete barriers, including k-rails.  Flatiron also erected various traffic control signage, painted road markings, electric signals, and lighting according to Caltrans' active direction. Flatiron's work was performed pursuant to design plans and specifications exclusively and solely developed by Caltrans. Additionally, Caltrans had overall control of the Project, including the sole creation and active enforcement of the traffic control plans and specifications that Flatiron

6

was required to follow.  A true and correct copy of relevant portions of the Contract are attached hereto and incorporated herein as **Exhibit C**.

18.     The Contract's indemnification provision states, in relevant part:

7-1.05 INDEMNIFICATION 7-1.05A General You must defend, indemnify, and save harmless the State, including its officers, employees, and agents (excluding agents who are design professionals), from any and all claims, demands, causes of action, damages, costs, expenses, actual attorneys' fees, losses or liabilities, in law or in equity (Section 7-1.05 Claims) arising out of or in connection with your performance of this Contract for: 1. Bodily injury including, but not limited to, bodily injury, sickness or disease, emotional injury or death to persons, including, but not limited to, the public, any employees or agents of you, the State, or any other contractor… Except as otherwise provided by law, these requirements apply regardless of the existence or degree of fault of the State.

**You are not obligated to indemnify the State for Claims arising from conduct delineated in Civ Code § 2782** and for Claims arising from any defective or substandard condition of the highway that existed at or before the start of work, unless this condition has been changed by the work or the scope of the work requires you to maintain existing highway facilities and the Claim arises from your failure to maintain… (emphasis added).

19.     Accordingly, pursuant to the aforementioned terms of the Contract and California Civil Code § 2782, Flatiron is not obligated to indemnify Caltrans for any active negligence, sole negligence—including sole design negligence, and/or willful misconduct of Caltrans.  Further, defects in Caltrans' design, plans, or specifications are also excluded.  Additionally, any defective or substandard condition of State Route 138 that existed before the start of Flatiron's work is also excluded unless this condition has been changed by the work or the scope of work requires the Joint Venture to maintain existing highway facilities and the claim arises from the Joint Venture's failure to maintain same.

20.     Based on the terms of the Allied World Policy and Underlying Policy, Caltrans qualifies as an additional insured under those policies with regard to Flatiron's work performed under the Contract subject to certain limitations,

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

7

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

including those contained in California Civil Code § 2782 and Insurance Code § 11580.04. These limitations eliminate Allied World's obligation to indemnify Caltrans for Caltrans' active negligence, sole negligence, and/or

21. Notwithstanding Caltrans' status as an additional insured under the Allied World Policy and Underlying Policy, pursuant to the Additional Insured – Automatic – Owners, Lessees or Contractors Endorsement in the Underlying Policy and the Contractors' Limitation Endorsement in the Allied World Policy, as well as California Insurance Code § 11580.04 and Civil Code § 2782, Allied World has no obligation to indemnify Caltrans for Caltrans' active negligence, sole negligence— including sole design negligence, and/or willful misconduct.

## C. The Underlying Lawsuits

### 1. The Brewer Lawsuit

22. On May 3, 2018, plaintiff Jordyn Brewer, a disabled person by and through her guardian ad litem, filed a complaint against Caltrans, the County of San Bernardino, the Joint Venture, Marco Antonio Esquivel, and Hilda Torres alleging personal injuries arising from a motor vehicle accident that occurred at the Project site on May 15, 2017. On May 24, 2018, plaintiffs Shamari Glover ("Shamari") and Royce Glover ("Royce") filed their own complaint against the same defendants alleging personal injuries arising from the same May 15, 2017 motor vehicle accident. The two lawsuits were consolidated and Brewer subsequently filed a First Amended Complaint on September 20, 2018, which became the operative complaint (the "Brewer Lawsuit"). A true and correct copy of the operative complaint for the Brewer Lawsuit (the "Brewer Complaint") is attached herein as **Exhibit D**.

23. According to the Brewer Complaint, Shamari was driving eastbound on State Route 138 through the Project site with Brewer and Royce as passengers. Esquivel, while in the course and scope of his employment with Torres, was driving westbound on State Route 138 when he crossed a double yellow line and into

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

Shamari's lane in an attempt to pass a truck.  As Esquivel headed towards Shamari's vehicle, she had no alternative but to immediately apply her brakes because a concrete jersey wall installed by Flatiron pursuant to design specifications solely developed by Caltrans had reduced the emergency shoulder of the highway from fifteen (15) feet wide to one (1) foot wide. Shamari's braking caused her to lose control of her vehicle, which rotated counter-clockwise, and Esquivel collided with the right side of Shamari's vehicle.

24.     Notably, the Brewer plaintiffs alleged in part that certain aspects of the Project, which were under Caltrans' responsibility and active control, and including the design and placement specifications of the concrete jersey wall, caused or contributed to the collision because it prevented Shamari from taking evasive action to avoid the collision with Esquivel.  *See* Brewer Complaint, ¶¶14-16.

25.     Allied World defended the Joint Venture under the Allied World Policy against the Brewer Lawsuit.

26.     In response to Caltrans' request for indemnity under the Allied World Policy, Allied World issued two reservation of rights letters to Caltrans reserving all rights with respect to the coverage available to Caltrans under the Allied World Policy regarding the Brewer Lawsuit. Specifically, Allied World noted that the additional insured coverage available to Caltrans was limited by the aforementioned Additional Insured – Automatic – Owners, Lessees or Contractors Endorsement in the Underlying Policy and the Contractors' Limitation Endorsement in the Allied World Policy, as well as Insurance Code § 11580.04 and Civil Code § 2782.  A true and correct copy of the reservation of rights letters issued to Caltrans dated January 20, 2022 and April 25, 2022 are attached herein as **Exhibit E** and **Exhibit F**, respectively.

27.     On August 2, 2023, the parties entered into a confidential settlement agreement to resolve the Brewer Lawsuit.  Allied World paid a confidential amount, significantly above $75,000, to plaintiffs under the Allied World Policy pursuant to

the agreement.  Caltrans rejected any responsibility and ultimately refused to pay any money.

28.     During the course of litigating the Brewer Lawsuit, evidence was uncovered demonstrating Caltrans' active negligence, sole negligence, and willful misconduct.  This evidence included Caltrans' sole role in design, plans, and specifications for the Project, which included the traffic control plans and placement of the concrete jersey wall that was the proximate cause of the motor vehicle accident and plaintiffs' resultant personal injuries. The plaintiffs' evidence and Caltrans' own employees confirmed that Caltrans had complete and active control over the Project, including final say in the implementation, setup, and construction of the Project plans and ensuring that Flatiron followed the Project plans that Caltrans created solely by itself.  The evidence also confirmed that Caltrans was abundantly aware of the traffic safety issues and prior catastrophic accidents created by its Project plans -- including its own employees witnessing, in live-action, hazardous passing maneuvers within the Project construction zone -- but failed to implement any preventative measures. Bystanders, witnesses, and the investigating police officers also provided testimony indicating that the design of the Project traffic management devices posed risks and/or contributed to the cause of the accident.  Thus, the evidence showed that it was foreseeable that Caltrans' Project plans could cause danger to the public since Caltrans had prior knowledge of accidents and drivers performing the same type of illegal passing maneuvers that led to the motor vehicle accident in the Brewer Lawsuit, yet failed to address the defects in its Project plans thereby creating a dangerous condition of public property.

29.     Throughout the litigation of the Brewer Lawsuit, Caltrans refused to contribute any amount towards a settlement payment to resolve the Brewer Lawsuit based on its incorrect and unsupported position that Flatiron had the sole "duty of public safety" with respect to the Project pursuant to Caltrans' 2010 Standard

Specifications, which were incorporated into the Contract. Caltrans has also asserted that it has no duty to contribute towards any settlement to resolve the claims made against it because it believed, wrongly, that there was no evidence that its active negligence, sole negligence, and/or willful misconduct caused or contributed to the motor vehicle accident and plaintiffs' resultant personal injuries. A true and correct copy of a letter from Caltrans dated October 13, 2020 explaining its flawed position that it had no duty to contribute toward any settlement is attached herein as **Exhibit G**.

30. Allied World repeatedly advised Caltrans that its position was wrong in light of the mountain of evidence against Caltrans and the coverage limitations set forth in the Allied World Policy and Underlying Policy, as well as the limitations to Flatiron's obligation to indemnify Caltrans as set forth above in the Contract, Insurance Code § 11580.04, and Civil Code § 2782, but to no avail. For example, a true and correct copy of a letter dated December 13, 2021 sent to Caltrans on behalf of Allied World noting the impropriety of Caltrans' position is attached herein as **Exhibit H**.

31. To date, despite repeated attempts, Caltrans has refused to reimburse Allied World for any amounts Allied World paid to resolve the claims against Caltrans in the Brewer Lawsuit.

### 2. **The Howbert Lawsuit**

32. On June 21, 2018, plaintiffs Gaylin Eisenhauer Howbert ("Gaylin"), Joshua Howbert ("Joshua"), and Jace Howbert ("Jace"), a minor by and through his guardian ad litem, filed a complaint against defendants Caltrans, the Joint Venture, Kim Lynnette Braxton, and the Estate of Justin Melvin Munson Chivas, alleging that they had sustained personal injuries arising from a motor vehicle accident that occurred at the Project site on September 5, 2016 (the "Howbert Lawsuit"). A true and correct copy of the Howbert Lawsuit complaint (the "Howbert Complaint") is attached herein as **Exhibit I**.

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

33.    Plaintiffs of the Howbert Lawsuit allege that decedent Bruce Eisenhauer was traveling eastbound on State Route 138 through the Project site with plaintiffs Gaylin, Joshua, and Jace as passengers. Decedent Chivas was traveling in the westbound lane when he drifted to the right, struck the temporary concrete "k-rail wall" placed on the shoulder of the westbound lane, and then veered into the eastbound lane and collided head on into the plaintiffs' vehicle.

34.    Notably, the Howbert Complaint alleges in part that Caltrans "negligently and carelessly designed, warned, failed to warn, constructed, created, maintained, repaired, owned, operated, controlled, signed, and regulated" the Project site, which created a dangerous condition and caused the motor vehicle accident and plaintiffs' resultant injuries.

35.    Allied World defended the Joint Venture under the Allied World Policy against the Howbert Lawsuit.

36.    In response to Caltrans' request for indemnity under the Allied World Policy, Allied World issued a reservation of rights letter to Caltrans reserving all rights with respect to the coverage available to Caltrans under the Allied World Policy regarding the Howbert Lawsuit.  Specifically, Allied World noted that the additional insured coverage available to Caltrans was limited by the aforementioned Additional Insured – Automatic – Owners, Lessees or Contractors Endorsement in the Underlying Policy and the Contractors' Limitation Endorsement in the Allied World Policy, as well as Insurance Code § 11580.04 and Civil Code § 2782.  A true and correct copy of the reservation of rights letter issued by Allied World dated January 20, 2022 is attached herein as **Exhibit J**.

37.    On or about January 11, 2023 the parties entered into a confidential settlement agreement to resolve the Howbert Lawsuit. Allied World paid a confidential amount, significantly above $75,000, to plaintiffs under the Allied World Policy pursuant to the agreement.  Again, Caltrans rejected any responsibility and ultimately refused to pay any money.

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

38.     During the course of litigating the Howbert Lawsuit, similar evidence was uncovered demonstrating that Caltrans' active negligence, sole negligence related to design, and/or willful misconduct based on its design, plans, or specifications of the Project, including the traffic control plan, caused and/or contributed to the motor vehicle accident and plaintiffs' resultant personal injuries. The plaintiffs' evidence and Caltrans' own employees confirmed that Caltrans had complete control over the Project, including final say in the implementation, setup, and construction of the Project plans and ensuring that Flatiron followed the Project plans Caltrans created.  The evidence also confirmed that Caltrans was aware of the traffic safety issues created by the narrowing of State Route 138 caused by Caltrans' Project plans due to the placement of the k-rails, which contributed to the accident and knew of alternative traffic safety devices it could have implemented to address the problem but failed to revise its plans accordingly.  Bystanders, witnesses, and the investigating police officers also provided testimony indicating that the design of the Project traffic management devices posed risks and/or contributed to the cause of the accident.  Thus, the evidence showed that it was foreseeable that Caltrans' Project plans could cause danger to the public since Caltrans had prior knowledge of accidents caused by the placement of the k-rails, yet failed to address the defects in its Project plans.

39.     Based upon the same incorrect and unsupported reasons it cited in its refusal to contribute any amount to settle the Brewer Lawsuit, Caltrans similarly refused to contribute any amount towards a settlement payment to resolve the Howbert Lawsuit.  In a letter from Caltrans dated April 14, 2022, reiterated the same incorrect and unsupported reasons cited in its refusal to contribute any amounts to settle the Brewer Lawsuit to support is refusal to also contribute towards any settlement payment to resolve the Howbert Lawsuit.  A true and correct copy of a letter from Caltrans dated April 14, 2022 explaining its flawed position that it had no duty to contribute toward any settlement is attached herein as **Exhibit K**.

40.     As in the Brewer Lawsuit, Allied World repeatedly advised Caltrans that its position was incorrect in light of the coverage limitations set forth in the Allied World Policy and Underlying Policy, as well as the limitations to Flatiron's obligation to indemnify Caltrans as set forth above in the Contract, Insurance Code § 11580.04, and Civil Code § 2782, but to no avail.  For example, a true and correct copy of a letter dated April 11, 2022 sent on behalf of Allied World to Caltrans noting the impropriety of Caltrans' position is attached herein as **Exhibit L**.

41.     To date, Caltrans has refused to reimburse Allied World for any amounts Allied World paid to resolve the claims against Caltrans in the Howbert Lawsuit.

### 3.  The Sim Lawsuit

42.     On February 2, 2018, plaintiffs Suzy Sim; Wendy Jun, individually and as successor in interest to Jung C. Jun; Mina Jun, individually and as successor in interest to Jung C. Jun; Alice Han; individually and as successor in interest to Jung C. Jun; Candice Van Devender, individually and as successor in interest to Jung C. Jun; and Stewart Jun, individually and as successor in interest to Jung C. Jun, filed their initial complaint against Caltrans, Efrain Perez Marcelo, and Adolfo Cuevas alleging that they had sustained personal injuries arising from a motor vehicle accident that occurred at the Project site on January 15, 2017.  On August 1, 2018, the plaintiffs added Flatiron West and Hardy & Harper as defendants.  On January 15, 2019, the plaintiffs filed their first amended complaint against defendants Caltrans, the Joint Venture, Marcelo, Cuevas, and also named Grace Byun as a nominal defendant.  On April 15, 2020, plaintiffs added the Joint Venture as DOE 3 to the first amended complaint, which is the operative complaint (the "Sim Lawsuit").  A true and correct copy of the operative complaint for the Sim Lawsuit (the "Sim Complaint") is attached herein as **Exhibit M**.

43.     According to the Sim Complaint, defendant Cuevas was traveling eastbound on State Route 138 through the Project site when he rear-ended the

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

vehicle being driven by Marcelo. As a result, Marcelo's vehicle veered into the oncoming westbound lane and crashed head on into the vehicle being driven by plaintiff Wendy Jun.

44.     The Sim Complaint alleges in part that all defendants, including Caltrans, allowed the Project site to have a "dangerous condition by failing to properly design, construct, engineer, manage, maintain, repair, inspect, failed to provide adequate warnings and signs," "improperly configured the traffic lanes," failed to place a center median wall barrier and or [sic] said highway so that curvature grade[,] land widths[,] shoulder widths[,] and lines of sight and or [sic] sight distances" at the Project site were insufficient.

45.     Allied World defended the Joint Venture under the Allied World Policy against the Sim Lawsuit.

46.     On July 6, 2023 the parties entered into a confidential settlement agreement to resolve the Sim Lawsuit.  Allied World paid a confidential amount, significantly above $75,000, to plaintiffs under the Allied World Policy pursuant to the agreement.  Yet again, Caltrans rejected any notion of responsibility and refused to pay anything.

47.     During the course of litigating the Sim Lawsuit, evidence was uncovered indicating that Caltrans' active negligence, sole negligence, and/or willful misconduct based on its design, plans, or specifications of the Project, including the traffic control plan, caused and/or contributed to the motor vehicle accident and plaintiffs' resultant personal injuries.  The plaintiffs' evidence and Caltrans' own employees confirmed that Caltrans had complete control over the Project, including final say in the implementation, setup, and construction of the Project plans and ensuring that Flatiron followed the Project plans Caltrans created.  The evidence also confirmed that Caltrans was aware of the traffic safety issues created by the narrowing of State Route 138 caused by Caltrans' Project plans due to the placement of the k-rails, which contributed to the accident and knew of

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

alternative traffic safety devices it could have implemented to address the problem but failed to revise its plans accordingly. Bystanders, witnesses, and the investigating police officers also provided testimony indicating that the design of the Project traffic management devices posed risks and/or contributed to the cause of the accident. Thus, the evidence showed that it was foreseeable that Caltrans' Project plans could cause danger to the public since Caltrans had prior knowledge of accidents caused by the placement of the k-rails, yet failed to address the defects in its Project plans.

48. In response to Caltrans' request for indemnity under the Allied World Policy, Allied World issued two reservation of rights letters to Caltrans reserving all rights with respect to the coverage available to Caltrans under the Allied World Policy regarding the Sim Lawsuit. Specifically, Allied World noted that the additional insured coverage available to Caltrans was limited by the aforementioned Additional Insured – Automatic – Owners, Lessees or Contractors Endorsement in the Underlying Policy and the Contractors' Limitation Endorsement in the Allied World Policy, as well as Insurance Code § 11580.04 and Civil Code § 2782. A true and correct copy of the reservation of rights letters issued to Caltrans dated January 20, 2022 and April 25, 2022 are attached herein as **Exhibit N** and **Exhibit O**, respectively.

49. Based upon the same incorrect and unsupported reasons it cited in its refusals to contribute any amount to settle the Brewer Lawsuit and Howbert Lawsuit, Caltrans similarly has refused to contribute any amount towards any settlement payment to resolve the Sim Lawsuit. A true and correct copy of a letter from Caltrans dated May 26, 2022 explaining its flawed position that it had no duty to contribute toward any settlement is attached herein as **Exhibit P**.

50. To date, Caltrans has refused to reimburse Allied World for any amounts Allied World paid to resolve the claims against Caltrans in the Sim Lawsuit.

COMPLAINT FOR DECLARATORY RELIEF, EQUITABLE SUBROGATION, EQUITABLE INDEMNITY, AND EQUITABLE CONTRIBUTION

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

51.     Prior to filing the instant complaint, Allied World complied with all applicable government claims statutes by filing a timely claim with Defendant STATE OF CALIFORNIA on February 2, 2024, which Defendant never responded to.

## FIRST CAUSE OF ACTION FOR DECLARATORY JUDGMENT

52.     Plaintiff incorporates and re-alleges paragraphs 1 through 51 of this Complaint as if fully restated herein.

53.     An actual controversy has arisen and now exists between Plaintiff and Defendant herein as to whether Allied World is obligated to indemnify Caltrans under the Allied World Policy as an additional insured and pursuant to the Contract between Flatiron and Caltrans for Caltrans' any active negligence, sole negligence, or willful misconduct of Caltrans with respect to the Project and in relation to the Underlying Lawsuits.  No adequate remedy at law exists by which the rights of all parties hereto may be determined.  The Court may determine this controversy pursuant to 28 U.S.C. § 2201(a).

54.     A declaration of Allied World's obligations owed to Caltrans under the Policy in conjunction with the Contract with respect to the Underlying Lawsuits is necessary and proper, as this Plaintiff has no adequate remedy at law.

## SECOND CAUSE OF ACTION FOR EQUITABLE SUBROGATION

55.     Plaintiff incorporates and re-alleges paragraphs 1 through 54 of this Complaint as if fully restated herein.

56.     Allied World alleges that the plaintiffs' losses, damages, and claims in the Underlying Lawsuits in whole or in part arise out of and/or result from Caltrans' active negligence, sole negligence, and/or willful misconduct in the design and supervision of the Project, including the design of the traffic control plans and specifications that Flatiron was required to follow.

57.     Allied World alleges that it is in no way legally obligated to indemnify Caltrans under the Allied World Policy and/or pursuant to the Contract for Caltrans'

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

17

because of Caltrans' active negligence, sole negligence, and/or willful misconduct in the design and supervision of the Project, including the design of the traffic control plans and specifications that Flatiron was required to follow.

58.    As a result of Caltrans' active negligence, sole negligence, and/or willful misconduct in the design and supervision of the Project, including the design of the traffic control plans and specifications that Flatiron was required to follow, Allied World was exposed to liability by virtue of the plaintiffs' allegations in the Underlying Lawsuits.

59.    As a result of Caltrans' active negligence, sole negligence, and/or willful misconduct in the design and supervision of the Project, including the design of the traffic control plans and specifications that Flatiron was required to follow which caused and/or contributed to the plaintiffs' losses, damages, and claims in the Underlying Lawsuits, Allied World has been forced to pay certain amounts to resolve the Underlying Lawsuits in order to protect its insured, Flatiron, which also consequently resolved the plaintiffs' claims against Caltrans in the Underlying Lawsuits.

60.    Pursuant to equitable subrogation, the fairness of the proposition that an insurer who has been compelled by his contract to pay to or on behalf of the insured claims for damages ought to be reimbursed by the party whose fault has caused such damages. Accordingly, pursuant to the doctrine of equitable subrogation, Allied World is entitled to be equitably subrogated to the rights of Flatiron for those amounts that were paid which resolved and extinguished plaintiffs' claims and recover those amounts against Caltrans, which bears the ultimate responsibility for causing the damage and injuries in the Underlying Lawsuits.

61.    Allied World "steps into the shoes" of Flatiron with respect to that portion of the amounts Allied World paid to resolve the Underlying Lawsuits in order to protect its insured, Flatiron, and seeks to recover that entire amount against

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22ⁿᵈ Floor
Los Angeles, California 90071

Caltrans based on Caltrans' active negligence, sole negligence, and/or willful misconduct in the design and supervision of the Project, including the design of the traffic control plans and specifications that Flatiron was required to follow which caused plaintiffs' losses, damages, and claims in the Underlying Lawsuits.

## THIRD CAUSE OF ACTION FOR EQUITABLE INDEMNITY

62.   Plaintiff incorporates and re-alleges paragraphs 1 through 61 of this Complaint as if fully restated herein.

63.   Allied World alleges that the plaintiffs' losses, damages, and claims in the Underlying Lawsuits in whole or in part arise out of and/or result from Caltrans' active negligence, sole negligence, and/or willful misconduct in the design and supervision of the Project, including the design of the traffic control plans and specifications that Flatiron was required to follow.

64.   Allied World alleges that it is in no way legally obligated to indemnify Caltrans under the Allied World Policy and/or pursuant to the Contract for Caltrans' because of Caltrans' active negligence, sole negligence, and/or willful misconduct in the design and supervision of the Project, including the design of the traffic control plans and specifications that Flatiron was required to follow.

65.   Allied World has been forced to pay settlement amounts to resolve the Underlying Lawsuits in order to protect its insured, Flatiron, which also consequently resolved the plaintiffs' claims against Caltrans in the Underlying Lawsuits.  Therefore, Caltrans is obligated to indemnify Allied World for the full amount Allied World paid in settlement of the Underlying Lawsuits because of Caltrans' active negligence, sole negligence, and/or willful misconduct which caused the plaintiffs' alleged losses, damages, or injuries in the Underlying Lawsuits.

## FOURTH CAUSE OF ACTION FOR EQUITABLE CONTRIBUTION

66.   Plaintiff incorporates and re-alleges paragraphs 1 through 65 of this Complaint as if fully restated herein.

/ / /

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

67.     Allied World alleges that the plaintiffs' losses, damages, and claims in the Underlying Lawsuits in whole or in part arise out of and/or result from Caltrans' active negligence, sole negligence, and/or willful misconduct in the design and supervision of the Project, including the design of the traffic control plans and specifications that Flatiron was required to follow.

68.     Allied World alleges that it is in no way legally obligated to indemnify Caltrans under the Allied World Policy and/or pursuant to the Contract for Caltrans' because of Caltrans' active negligence, sole negligence, and/or willful misconduct in the design and supervision of the Project, including the design of the traffic control plans and specifications that Flatiron was required to follow.

69.     Allied World has been forced to pay more than its fair share to settle the Underlying Lawsuits in order to protect its insured, Flatiron, which also consequently resolved the plaintiffs' claims against Caltrans in the Underlying Lawsuits.  Therefore, Caltrans is obligated to reimburse Allied World for Caltrans' fair share of the settlement amounts in the Underlying Lawsuits that are attributable to Caltrans' active negligence, sole negligence, and/or willful misconduct which caused and/or contributed to the plaintiffs' alleged losses, damages, or injuries in the Underlying Lawsuits.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1.     For declaratory relief of the Court against Caltrans, declaring that Allied World does not owe any duty to indemnify Caltrans with respect to the Underlying Lawsuits for Caltrans' active negligence, sole negligence, and/or willful misconduct which contributed to the plaintiffs' alleged losses, damages, or injuries in the Underlying Lawsuits.

2.     For equitable subrogation, equitable indemnity, and/or equitable contribution against Caltrans for the amounts that Allied World paid to settle the Underlying Lawsuits based on Caltrans' active negligence, sole negligence, and/or

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

20

COMPLAINT FOR DECLARATORY RELIEF, EQUITABLE SUBROGATION, EQUITABLE INDEMNITY, AND EQUITABLE CONTRIBUTION

1  willful misconduct which contributed to the plaintiffs' alleged losses, damages, or

2  injuries in the Underlying Lawsuits.

3      3.    For prejudgment interest at the legal rate.

4      4.    For the costs of suit incurred herein; and

5      5.    For such other relief as this Court deems just and proper.

6

7      Respectfully submitted,

8  Dated: April 1, 2024    **FREEMAN MATHIS & GARY, LLP**

9

10 By: _____

11     Albert K. Alikin
    Nicholas Directo

12     Sydney Preston
    *Attorneys for Plaintiff*

13     ALLIED WORLD SPECIALTY
    INSURANCE COMPANY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FREEMAN MATHIS & GARY, LLP**
550 South Hope Street, 22nd Floor
Los Angeles, California 90071

COMPLAINT FOR DECLARATORY RELIEF, EQUITABLE SUBROGATION, EQUITABLE INDEMNITY,
AND EQUITABLE CONTRIBUTION

# EXHIBIT A



## ALLIED WORLD SPECIALTY INSURANCE COMPANY
## UMBRELLA LIABILITY INSURANCE POLICY

**Policy No:  0308-4113**                    **New/Renewal of: 0308-4113**

## DECLARATIONS

ITEM 1.   A.          **NAMED INSURED:** Flatiron Construction Corp.
          B.                **ADDRESS:** 385 Interlocken Crescent Boulevard, Suite 900
                                          Broomfield, CO 80021

ITEM 2.                **POLICY PERIOD:** INCEPTION DATE*: June 1, 2016
                                          EXPIRATION DATE*: June 1, 2017
                                          *12:01 A.M. STANDARD TIME AT THE ADDRESS STATED IN ITEM 1. B. ABOVE

ITEM 3.   LIMITS OF INSURANCE:
          A.          US  $25,000,000  EACH OCCURRENCE LIMIT
          B.          US  $25,000,000  GENERAL AGGREGATE LIMIT
          C.          US  $25,000,000  PRODUCTS-COMPLETED OPERATIONS AGGREGATE
                                       LIMIT

ITEM 4.   NOTICES TO THE COMPANY:

          A.   ALL NOTICES OF **OCCURRENCE**,   ALLIED WORLD SPECIALTY INSURANCE COMPANY
                   CLAIM, OR **SUIT**:   ATTN: CLAIMS DEPARTMENT
                                         1690 New Britain Ave., Suite 101
                                         Farmington, CT 06032

          B.            ALL OTHER NOTICES:   ALLIED WORLD SPECIALTY INSURANCE COMPANY
                                             (c/o Allied World Assurance Company)
                                             ATTN: GENERAL CASUALTY
                                             199 Water Street,
                                             New York, NY 10038

          C.          FACSIMILE (CLAIMS):   860-284-1307
          D.            E-MAIL (CLAIMS):   GenCasClaims@awac.com
          E.       FACSIMILE (ALL OTHER):   646-794-0611

ITEM 5.   SELF-INSURED RETENTION          US  $10,000

ITEM 6.   A.          ADVANCE PREMIUM:   ███████████
          B.          MINIMUM PREMIUM:
          C.   MINIMUM EARNED PREMIUM:

ITEM 7.   A.   REPRESENTATIVE OF **INSURED**:   Turner Surety and Insurance Brokerage, Inc.
          B.   ADDRESS:                          Mack-Cali Center II -
                                                 650 From Road, Suite 295
                                                 Paramus , NJ 07652

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.

UM 00115 00 (07/15)                  1

PRESIDENT

SECRETARY

**AUTHORIZED REPRESENTATIVE**

Policy Number: 0308-4113

**Named Insured:  Flatiron Construction Corp**
Effective Date: June 1, 2016
12:01 A.M., Standard Time

## <u>SCHEDULE OF FORMS AND ENDORSEMENTS</u>

The following forms and endorsements are made a part of this policy:

| Endorsement Number | Form # / Edition | Title |
|---|---|---|
| -- | UM 00115  00 (07/15) | AWSIC – Umbrella Liability Insurance Declarations |
| 1 | UM 00109 00 (07/08) | Schedule of Underlying Insurance |
| 2 | UM 00064 05 (07/08) | Colorado Amendatory Endorsement |
| 3 | UM 00006 00 (07/08) | Act of Terrorism Self-Insured Retention Endorsement |
| 4 | UM 00016 00 (07/08) | Cross Suits Exclusion |
| 5 | UM 00017 00 (07/08) | Fungus Exclusion |
| 6 | UM 00021 00 (07/08) | Exterior Insulation and Finish Systems (EIFS) Exclusion |
| 7 | UM 00023 00 (07/08) | Foreign Liability Exclusion |
| 8 | UM 00025 00 (07/08) | Lead Exclusion |
| 9 | UM 00029 00 (07/08) | Silica Exclusion Endorsement |
| 10 | UM 00053 00 (07/08) | Bacteria Exclusion |
| 11 | UM 00059 00 (07/080 | Incidental Medical Malpractice Limitation |
| 12 | UM 00071 00 (07/08) | Employers' Liability Limitation Endorsement |
| 13 | UM 00075 00 (07/08) | Anti-Stacking Excess Casualty Limitation Endorsement |
| 14 | UM 00080 00 (07/08) | Amend Definition of Occurrence (Continuing or Progressively Deteriorating Damages Endorsement) |
| 15 | UM 00084 00 (07/08) | Claims Reporting Amendment Endorsement |
| 16 | UM 00091 00 (10/08) | Auto Liability Limitation Endorsement |
| 17 | UM 00096 00 (10/08) | General Aggregate Limit of Insurance Per Project Endorsement |
| 18 | UM 00113 00 (04/09) | Retained Limit Endorsement |
| 19 | UM 00119 00 (01/09) | Employee Benefits Liability Limitation Occurrence Version Endorsement |
| 20 | UM 00122 00 (08/09) | Uninsured/Underinsured Motorists Coverage Endorsement |
| 21 | UM 00130 00 (01/14) | Strategic Response Coverage Extension |

**Policy Number: 0308-4113**

**Named Insured: Flatiron Construction Corp**
Effective Date: June 1, 2016
12:01 A.M., Standard Time

## <u>SCHEDULE OF FORMS AND ENDORSEMENTS</u>

The following forms and endorsements are made a part of this Policy:

| 22 | UM 00135 00 (05/09) | Architects, Engineers and Surveyors Professional Liability Exclusion with Construction Means and Methods Exception |
|---|---|---|
| 23 | UM 00202 00 (02/15) | Access to or Disclosure of Confidential or Personal Information and Data-Related Liability Exclusion – With Limited Bodily Injury Limitation |
| 24 | FC Manu A | Additional Insured Amendatory Endorsement |
| 25 | FC Manu B | Broad Form Named Insured Amendatory Endorsement |
| 26 | FC Manu C | Contractors' Limitation (With Limited Wrap-Up) |
| 27 | FC Manu D | Contractual Liability Limitation Endorsement |
| 28 | FC Manu E | Marine Liability Exclusion (Amendment of Exclusion A.) (With Limited Exception) |
| 29 | FC Manu F | Named Insured's Interest in Joint Ventures, Partnerships or Limited Liability Companies Limitation Endorsement (Full Limits/Full Attachment with Excess Casualty Anti-Stacking) |
| 30 | FC Manu G | Residential Construction Operations Exclusion (With Exception for Public Streets or Roads or Public Right of Ways) |
| -- | UM 00116 00 (07/15) | AWSIC – Umbrella Liability Insurance Policy |

**Endorsement No:  1**
This Endorsement, effective:  June 1, 2016
                              (at 12:01 A.M. prevailing time at the address stated in Item 1. (b)
                              of the Declarations)
forms a part of Policy No:  0308-4113
Issued to:  Flatiron Construction Corp.
**by:**  Allied World Specialty Insurance Company

## SCHEDULE OF UNDERLYING INSURANCE

| Type of Coverage | Insurer<br>Policy Number<br>Policy Period | Limits of Insurance | |
|---|---|---|---|
| General Liability | Zurich American Insurance Company<br>GLO 5939707-08<br>June 1, 2016 -<br>June 1, 2017 | US$2,000,000<br>US$4,000,000<br><br>US$4,000,000<br><br><br>US$1,000,000<br><br>US$1,000,000 | Each Occurrence<br>General Aggregate (Per Project & Per Location – Uncapped)<br>Products-Completed Operations Aggregate<br><br>Employee Benefits Liability – Each Act, Error or Omission<br>Employee Benefits Liability - Aggregate |
| Defense costs:<br>☐Erode  ☒Do not erode<br>The Limits of Insurance listed in the policy above. | | | |
| Automobile Liability | Zurich American Insurance Company<br>BAP 5939708-08<br>June 1, 2016 –<br>June 1, 2017 | US$1,000,000 | Combined Single Limit |
| Defense costs:<br>☐Erode  ☒Do not erode<br>The Limits of Insurance listed in the policy above. | | | |
| Employer Liability – (Flatiron Construction Corp. - Core) | American Zurich Insurance Company<br>WC 5939706-08<br>June 1, 2016 –<br>June 1, 2017 | US$1,000,000<br>US$1,000,000<br><br>US$1,000,000 | Bodily Injury – Each Accident<br>Bodily Injury By Disease – Each Employee<br>Bodily Injury By Disease – Policy Aggregate |
| Defense costs:<br>☐Erode  ☒Do not erode<br>The Limits of Insurance listed in the policy above. | | | |
| Employer Liability – (Flatiron Construction Corp. - Intermountain – CO & UT) | Zurich American Insurance Company<br>WC 6542462-07<br>June 1, 2016 –<br>June 1, 2017 | US$1,000,000<br>US$1,000,000<br><br>US$1,000,000 | Bodily Injury – Each Accident<br>Bodily Injury By Disease – Each Employee<br>Bodily Injury By Disease – Policy Aggregate |
| Defense costs:<br>☐Erode  ☒Do not erode<br>The Limits of Insurance listed in the policy above. | | | |

| Employer Liability – (Terno, Inc.) | Zurich American Insurance Company WC 9138899-10 June 1, 2016 – June 1, 2017 | US$1,000,000 US$1,000,000 US$1,000,000 | Bodily Injury – Each Accident Bodily Injury By Disease – Each Employee Bodily Injury By Disease – Policy Aggregate |
|---|---|---|---|
| Defense costs: ☐Erode ☒Do not erode The Limits of Insurance listed in the policy above. | | | |
| | | | |

All other terms and conditions of this policy remain unchanged.

**Allied World National Assurance Company**

**By:** _____

**Joseph Cellura**

**Title:** **President, North American Casualty Division**

**Date:** **September 8, 2016**

**Endorsement No: 2**
This Endorsement, effective: June 1, 2016
(at 12:01 A.M. prevailing  time at the address of the **Named Insured** stated in Item 1. B. of the Declarations)
forms a part of Policy No.: 0308-4113
Issued to: Flatiron Construction Corp.
By: Allied World Specialty Insurance Company

## COLORADO AMENDATORY ENDORSEMENT

This endorsement modifies insurance coverage provided under the Umbrella Liability Insurance Policy.

A. It is agreed that Paragraph D. **Cancellation** of Section **V. CONDITIONS** is deleted in its entirety and replaced by the following:

   D. **Cancellation**

   1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

   2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. We may only cancel this policy for the following reasons:

      a. Nonpayment of premium

      b. A false statement knowingly made by you on the application for insurance; or

      c. A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless you have notified us of the change and we accept such change.

      Mailing that notice to you at your last mailing address known to us, will be sufficient to prove notice.

   3. The **Policy Period** will end on the day and hour stated in the cancellation notice.

   4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium shown in Item 6. of the Declarations.

   5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium shown in Item 6. of the Declarations.

   6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

   7. The first **Named Insured** in Item 1. of the Declarations will act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

UM 00064 05 (07/08)              Page 1 of 2

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

B. The following are added to Section **V. CONDITIONS**:

**Nonrenewal**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to you not less than sixty (60) days before the expiration date of the policy. Mailing that notice to you at your last mailing address known to us, will be sufficient to prove notice.

**Unilateral Increase In Premium Or Decrease In Coverage**

We shall not increase the premium unilaterally or decrease the coverage benefits on renewal of this policy unless we mail to the first **Named Insured** (by registered, certified, or other first class mail), to the last mailing address known to us, written notice of our intention, including the actual reason, at least forty-five (45) days before the effective date.

Any decrease in coverage during the policy term must be based on one or more of the following reasons:

1. Nonpayment of premium;

2. A false statement knowingly made by you on the application for insurance; or

3. A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first **Named Insured** has notified us of the change and we accept such change.

Mailing that notice to you at your mailing address shown in Item 1. of the Declarations will be sufficient to prove notice.


All other terms and conditions of this policy remain unchanged.


**By:**

_____
 **Joseph Cellura**

**Title:**   **President, North American Casualty Division**

**Date:**   **September 8, 2016**

**Endorsement No: 3**
This Endorsement, effective: June 1, 2016
                              (at 12:01 A.M. standard time at the address of the **Named Insured** as
                              shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## ACT OF TERRORISM SELF-INSURED RETENTION ENDORSEMENT

Solely as respects **Act of Terrorism**, this policy is amended as follows:

A, ITEM 5. of the Declarations, SELF-INSURED RETENTION is amended to include the following additional **Self Insured Retention**:

ACT OF TERRORISM SELF-INSURED RETENTION - $2,000,000 **Each Occurrence** (As respects all liability covered under this policy arising out of any Act of Terrorism.) The Act of Terrorism **Self-Insured Retention** will not be reduced or exhausted by **Defense Expenses**.

B. ITEM 6. of the Declarations, PREMIUM is amended to include the following:

ACT OF TERRORISM PREMIUM         

C. Section II. DEFENSE PROVISIONS, Paragraphs A.1., A.2. and C. are deleted in their entirety, and Paragraph C. is replaced by the following:

C. We will have no duty to defend any claim or **Suit** against the **Insured**. We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

D. Section III. LIMITS OF INSURANCE, Paragraph G. is deleted in its entirety and replaced by the following:

G. The Act of Terrorism **Self Insured Retention** applies whether or not there is any applicable underlying insurance listed in the **Scheduled Underlying Insurance** or applicable limits of any other insurance providing coverage to the **Insured**. If there is applicable underlying insurance listed in the **Scheduled Underlying Insurance** or other insurance providing coverage to the **Insured**, amounts received through such underlying insurance or other insurance for payment of the **Loss** may be applied to reduce or exhaust the Act of Terrorism **Self Insured Retention**. However, in no event will amounts received through such underlying insurance or other insurance for the payment of **Defense Expenses** reduce the Act of Terrorism **Self Insured Retention**.

E. Section VI. DEFINITIONS is amended to include the following additional definitions:

**Act of Terrorism** means:

1. any act which is verified or recognized by the United States Government as an act of terrorism, including a certified "act of terrorism" defined by Section 102. Definitions., of the Terrorism Risk Insurance Act as amended; or

2. the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

**Defense Expenses** means any payment allocated to a specific **Loss**, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

1. Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4. Costs taxed against the Insured in any claim or **Suit**;

5. Pre-judgment interest awarded against the **Insured**; or

6. Interest that accrues after entry of judgment.

It is understood and agreed that if any other endorsement to this policy excludes terrorism liability arising in one or more specified countries, the provisions of such exclusion shall supersede this endorsement.

All other terms and conditions of this policy remain unchanged.

**By:**

**Joseph Cellura**

**Title:**    **President, North American Casualty Division**

**Date:**    **September 8, 2016**

**Endorsement No: 4**
This Endorsement, effective: June 1, 2016
(at 12:01 A.M. standard time at the address of the **Named Insured** as shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## CROSS SUITS EXCLUSION

It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Cross Suits**

This policy does not provide coverage for **Bodily Injury, Property Damage** or **Personal Injury** and **Advertising Injury** to a **Named Insured** that is caused, in whole or in part, by any other **Named Insured.**

All other terms and conditions of this policy remain unchanged.

**By:**

_____
**Joseph Cellura**

**Title:**    **President, North American Casualty Division**

**Date:**    **September 8, 2016**

UM 00016 00 (07/08)          Page 1 of 1

**Endorsement No: 5**
This Endorsement, effective: June 1, 2016
                            (at 12:01 A.M. standard time at the address of the **Named Insured** as
                            shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## FUNGUS EXCLUSION

A.  It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Fungus**

This policy does not provide coverage for **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** or any other **Loss**, injury, damage, cost or expense, including but not limited to, **Losses**, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

a.  Any **Fungus(i)**, **Mold(s)**, mildew or yeast;

b.  Any **Spore(s)** or toxins created or produced by or emanating from such **Fungus(i)**, **Mold(s)**, mildew or yeast;

c.  Any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any **Fungus(i)**, **Mold(s)**, mildew or yeast; or

d.  Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any **Fungus(i)**, **Mold(s)**, mildew, yeast, or **Spore(s)** or toxins emanating therefrom, regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that **Loss**, injury, damage, cost or expense.

B.  For the purposes of this exclusion, the following definitions are added to the policy:

**"Fungus(i)"** includes, but is not limited to, any of the plants or organisms belonging to the major group **Fungi**, lacking chlorophyll, and including **molds**, rusts, mildew, smuts and mushrooms.

**"Mold(s)"** includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and **Fungi** that produce **molds**.

**"Spore(s)"** means any dormant or reproductive body produced by or arising or emanating out of any **Fungus(i)**, **Mold(s)**, mildew, plants, organisms or microorganisms.

All other terms and conditions of this policy remain unchanged.

By:

Joseph Cellura

Title:     President, North American Casualty Division

Date:     September 8, 2016

**Endorsement No: 6**
This Endorsement, effective: June 1, 2016
                                        (at 12:01 A.M. standard time at the address of the **Named Insured** as
                                        shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## EXTERIOR INSULATION AND FINISH SYSTEMS (EIFS) EXCLUSION

It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Exterior Insulation and Finish Systems (EIFS)**

This policy does not provide coverage for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**, included within the **Products-Completed Operations Hazard**, arising in whole or in part out of the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement of an Exterior Insulation and Finish System (EIFS), synthetic stucco, or any part thereof, including the application or use of paints, conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such product.

All other terms and conditions of this policy remain unchanged.

**By:**

_____
      **Joseph Cellura**

**Title:**   **President, North American Casualty Division**

**Date:**    **September 8, 2016**

**Endorsement No: 7**
This Endorsement, effective: June 1, 2016
                              (at 12:01 A.M. standard time at the address of the **Named Insured** as
                              shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## FOREIGN LIABILITY EXCLUSION

It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Foreign Liability**

This policy does not provide coverage for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place outside the United States of America, its territories or possessions, Puerto Rico or Canada.

All other terms and conditions of this policy remain unchanged.

**By:**

_____
**Joseph Cellura**

**Title:**   **President, North American Casualty Division**

**Date:**   **September 8, 2016**

UM 00023 00 (07/08)                    Page 1 of 1

**Endorsement No: 8**
This Endorsement, effective: June 1, 2016
                               (at 12:01 A.M. standard time at the address of the **Named Insured** as
                               shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

# LEAD EXCLUSION

A.  It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Lead**

This policy does not provide coverage for:

Any liability arising out of **Lead** or any product(s) containing **Lead**.


B.  It is agreed that the following definition is added under Section VI., "Definitions":

**Lead** means:

1.  The substance commonly known as **Lead**; and

2.  Any substance or product which has the same or substantially similar chemical formulation, structure or function as **Lead**, by whatever name manufactured, formulated, structured, sold or distributed.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.




All other terms and conditions of this policy remain unchanged.


**By:**

**Joseph Cellura**

**Title:**     **President, North American Casualty Division**

**Date:**     **September 8, 2016**

**Endorsement No: 9**
This Endorsement, effective: June 1, 2016
                                    (at 12:01 A.M. standard time at the address of the **Named Insured** as
                                    shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## SILICA EXCLUSION ENDORSEMENT

A.  It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Silica**

This policy does not provide coverage for:

Any liability arising out of **Silica**, **Silica** fiber(s) or **Silica Dust** or any products containing **Silica**, **Silica** fiber(s) or **Silica Dust**.

B.  It is agreed that the following definitions are added under Section VI., "Definitions":

**Silica** means:

1.  The substance commonly known as **Silica**; and

2.  Any substance or product which has the same or substantially similar chemical formulation, structure or function as **Silica**, by whatever name manufactured, formulated, structured, sold or distributed.

**Silica Dust** means:

1.  Dust comprising of **Silica** only; and

2.  Dust comprising of **Silica** mixed with other dust or fiber(s) including, but not limited to, asbestos fibers.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supersede.

All other terms and conditions of this policy remain unchanged.

**By:**

_Joseph Cellura_

**Joseph Cellura**

**Title:**   **President, North American Casualty Division**

**Date:**   **September 8, 2016**

**Endorsement No: 10**
This Endorsement, effective: June 1, 2016
(at 12:01 A.M. standard time at the address of the **Named Insured** as shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## BACTERIA EXCLUSION

It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Bacteria**

This policy does not provide coverage for:

**Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** or any other **Loss**, injury, damage, cost or expense, including, but not limited to, **Losses**, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by bacteria.

This exclusion applies regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that **Loss**, injury, damage, cost or expense.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supersede.

All other terms and conditions of this policy remain unchanged.

**By:**

Joseph Cellura

**Title:**   **President, North American Casualty Division**

**Date:**   **September 8, 2016**

**Endorsement No: 11**
This Endorsement, effective: June 1, 2016
                              (at 12:01 A.M. standard time at the address of the **Named Insured** as
                              shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## INCIDENTAL MEDICAL MALPRACTICE LIMITATION

A.  It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Incidental Medical Malpractice**

This policy does not provide coverage for any liability arising out of **Incidental Medical Malpractice**.

However, if insurance for such liability is provided by a policy listed in **Scheduled Underlying Insurance**:

1.  This exclusion shall not apply; and

2.  Coverage under this policy for such liability will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

B.  The following definitions is added under Section VI., "Definitions":

**Incidental Medical Malpractice** means injury arising out of the rendering of or failure to render the following services:

1.  Medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

2.  The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances;

so long as the **Named Insured** is not engaged in the business or occupation of providing any of the services, food or beverages, drugs or supplies described in 1 and 2 above.


All other terms and conditions of this policy remain unchanged.


**By:**

_Joseph Cellura_

**Joseph Cellura**

**Title:**   **President, North American Casualty Division**

**Date:**   **September 8, 2016**

**Endorsement No: 12**
This Endorsement, effective: June 1, 2016
(at 12:01 A.M. standard time at the address of the **Named Insured** as shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## EMPLOYERS' LIABILITY LIMITATION ENDORSEMENT

It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Employers' Liability**

This policy does not provide coverage for any **Bodily Injury** to any employee of the I**nsured** arising out of and in the course of the employee's employment by the **Insured**.

However, if insurance for such **Bodily Injury** is provided by a policy listed in the **Scheduled Underlying Insurance**:

1.  This exclusion shall not apply; and

2.  Coverage under this policy for such **Bodily Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

All other terms and conditions of this policy remain unchanged.

**By:**

_____
**Joseph Cellura**

**Title:** **President, North American Casualty Division**

**Date:** **September 8, 2016**

**Endorsement No: 13**
This Endorsement, effective: June 1, 2016
(at 12:01 A.M. standard time at the address of the **Named Insured** as shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## ANTI-STACKING EXCESS CASUALTY LIMITATION ENDORSEMENT

It is agreed that the following condition is added under Section V., "Conditions":

**Anti-Stacking Excess Casualty Limitation**

If this policy and any **Other Insurance** provided by one or more of our member companies apply to the same claim, **Suit** or **Occurrence**, the maximum limit of insurance under all insurance available will not exceed the highest applicable limit of insurance available under any one policy. However, this condition will not apply if the insurance is specifically written to be excess of this policy.

All other terms and conditions of this policy remain unchanged.

**By:**

_Joseph Cellura_

**Title:    President, North American Casualty Division**

**Date:    September 8, 2016**

UM 00075 00 (07/08)          Page 1 of 1

**Endorsement No: 14**
This Endorsement, effective: June 1, 2016
                              (at 12:01 A.M. standard time at the address of the **Named Insured** as
                              shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

# AMEND DEFINITION OF OCCURRENCE
## (CONTINUING OR PROGRESSIVELY DETERIORATING DAMAGES ENDORSEMENT)

It is agreed that Definition K. **Occurrence** under Section VI., "Definitions" is deleted in its entirety and replaced by the following:

K.   **Occurrence**, means:

1.   as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured**.

     In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be deemed to be one **Occurrence** and shall be deemed to occur only when such damage first commenced.

2.   as respects **Personal Injury and Advertising Injury,** an offense arising out of your business that causes **Personal Injury and Advertising Injury.** All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

All other terms and conditions of this policy remain unchanged.

**By:**

_Joseph Cellura_ (signature)
_____
  **Joseph Cellura**

**Title:**   **President, North American Casualty Division**

**Date:**   **September 8, 2016**

**Endorsement No: 15**
This Endorsement, effective: June 1, 2016
                              (at 12:01 A.M. standard time at the address of the **Named Insured** as
                              shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## CLAIMS REPORTING AMENDMENT ENDORSEMENT

It is agreed that Section V., "Conditions", Paragraph G. **Duties in the Event of an Occurrence, Claim or Suit** is amended to include the following provisions:

You must provide us with immediate written notice of:

a.  any claim, either paid or reserved, for twenty–five percent (25%) or more of the applicable limits of **Scheduled Underlying Insurance**; and

b.  any claim for an **Occurrence** not covered by **Scheduled Underlying Insurance** nor by any **Other Insurance** providing coverage to the **Insured** in which the requested damages exceeds the **Self-Insured Retention**.

You must also give us immediate written notice of any injury of the following types:

a.  a fatality;

b.  severe burns;

c.  traumatic brain injury;

d.  dismemberment or amputation;

e.  paralysis;

f.  loss or impairment of eyesight or hearing;

g.  severe scarring: or

h.  a sexual assault or battery, including, but not limited to, rape, molestation or sexual abuse.

All other terms and conditions of this policy remain unchanged.

**By:**   _____

          **Joseph Cellura**

**Title:**   **President, North American Casualty Division**

**Date:**   **September 8, 2016**

UM 00084 00 (07/08)            Page 1 of 1

**Endorsement No: 16**
This Endorsement, effective: June 1, 2016
(at 12:01 A.M. standard time at the address of the **Named Insured** as shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## AUTO LIABILITY LIMITATION ENDORSEMENT

It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Auto Liability**

This policy does not provide coverage for any liability arising out of the ownership, maintenance, use or entrustment to others of any **Auto** owned or operated by or rented or loaned to any **Insured**. Use includes the operation and the loading and unloading of the **Auto**.

However, this exclusion will not apply if coverage is provided by a policy listed in the **Scheduled Underlying Insurance**.

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of such **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

All other terms and conditions of this policy remain unchanged.

**By:** _[signature]_

_____

**Joseph Cellura**

**Title:**   **President, North American Casualty Division**

**Date:**   **September 8, 2016**

**Endorsement No: 17**
This Endorsement, effective: June 1, 2016
(at 12:01 A.M. standard time at the address of the **Named Insured** as shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

### GENERAL AGGREGATE LIMIT OF INSURANCE PER PROJECT ENDORSEMENT

It is agreed that Section III., "Limits of Insurance" Paragraph B. is amended to include the following additional provision:

The General Aggregate Limit of Insurance shown in Item 3.B. of the Declarations applies separately to each project for which coverage applies under this policy if:

1.    You are obligated by written contract to procure a separate Limit of Insurance for such project(s); and

2.    Scheduled Underlying Insurance also provides a separate Limit of Insurance for such project(s).


However, the insurance provided under this policy will not exceed the lesser of the Limits of Insurance of this policy or the minimum Limits of Insurance you agreed to procure in such written contract.


All other terms and conditions of this policy remain unchanged.

**By:**

_____

**Joseph Cellura**

**Title:**     **President, North American Casualty Division**

**Date:**     **September 8, 2016**

**Endorsement No: 18**
This endorsement, effective: June 1, 2016

(at 12:01 A.M. standard time at the address of the **Named Insured** as shown in Item 1. B. of the Declarations)

forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## RETAINED LIMIT ENDORSEMENT

It is agreed that solely as respects coverages listed in the Schedule of Retained Limits, the following shall apply:

1. The Declarations, ITEM 5. SELF-INSURED RETENTION is deleted in its entirety.

2. Paragraph A. of Section **II. DEFENSE PROVISIONS** is deleted in its entirety and replaced by the following:

    A. We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when the total applicable limits listed in the Schedule of Retained Limits have been exhausted by payment of **Loss** to which this policy applies.

    If we are prevented by law or statute from assuming the obligations specified under this provision we will pay any expenses incurred with our consent.

3. Section **III. LIMITS OF INSURANCE**, Paragraphs B., G., H. and J and are deleted in their entireties and replaced by the following:

    B. The General Aggregate Limit is the most we will pay for all damages covered under this policy, except for:

        1. damages included in the **Products-Completed Operations Hazard**; and

        2. damages because of **Bodily Injury** or **Property Damage** to which this policy applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto**.

    G. If the applicable **Retained Limit(s)** listed in the attached Schedule of Retained Limits are reduced or exhausted by the payment of **Loss** to which this policy applies, we will:

        1. In the event of reduction, pay in excess of the reduced underlying **Retained Limits**; or

        2. In the event of exhaustion of the underlying **Retained Limits** continue in force as underlying insurance.

    H. **Defense Expenses** will be in addition to the applicable Limits of Insurance of this policy. Provided, however, that if the amount of applicable **Retained Limit** over which this policy applies immediately in excess is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then solely with respect to coverage afforded by this policy that is subject to such **Retained Limit**, such **Defense Expenses** will reduce the applicable Limits of Insurance of this policy.

    J. We will not make any payment under this policy unless and until the total applicable **Retained Limit(s)** have been exhausted by the payment of **Loss** to which this policy applies and any applicable **Other Insurance** has been exhausted by the payment of **Loss**.

When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

4.   Section **IV. EXCLUSIONS,** paragraphs I.1., I.2., I.3., and M. are deleted in their entireties.

5.   Section **IV. EXCLUSIONS,** paragraph Q. is deleted in its entirety and is replaced by the following:

Q.   **Pollution**

This policy does not provide coverage for:

1.   any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2.   any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3.   any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of **Pollutants**.

However, this Paragraph 1. of this exclusion will not apply as described in subparagraphs 1) through 6) below, provided, however, that the above amendments to Section **IV. EXCLUSIONS**, Paragraph Q., do not apply if a separate endorsement attached to this policy deletes and replaces Section **IV. EXCLUSIONS**, Paragraph Q.:

1)   **Products-Completed Operations Hazard**

Paragraph 1. of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

a)   discarded, dumped, abandoned, thrown away; or

b)   transported, handled, stored, treated, disposed of or processed as waste;

by anyone.

2)   **Hostile Fire**

Paragraph 1. of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**.

3)   **Equipment to Cool, Dehumidify, or Heat the Building and Contractor/Lessee Operations**

Paragraph 1. of this exclusion does not apply to:

a)   **Bodily Injury** sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the

building, or equipment used to heat water for personal use, by the building's occupants or their guests;

b)  **Bodily Injury** or **Property Damage** for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional **Insured** with respect to your ongoing operations performed for that additional **Insured** at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than the additional **Insured**.

4)  **Fuels, Lubricants and Other Operating Fluids - Mobile Equipment**

Paragraph 1. of this exclusion does not apply to:

a)  **Bodily Injury** or **Property Damage** arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of **Mobile Equipment** or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **Bodily Injury** or **Property Damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor; or

b)  **Bodily Injury** or **Property Damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5)  **Fuels, Lubricants, Fluids, etc. – Auto**

Paragraph 1. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar **Pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an **Auto** or its parts, if:

a)  the **Pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **Auto** part designed by its manufacturer to hold, store, receive or dispose of such **Pollutants**; and

b)  the **Bodily Injury** or **Property Damage** does not arise out of the operation of any equipment described in subparagraphs 6.b. and 6.c. of the definition of **Mobile Equipment**.

6)  **Upset, Overturn or Damage of an Auto**

Paragraph 1. of this exclusion does not apply to **Occurrences** that take place away from premises owned by or rented to an **Insured** with respect to **Pollutants** not in or upon an **Auto** if:

a)  the **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **Auto**; and

b)  the discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

6.  Section **V. CONDITIONS,** paragraphs A. and C. are deleted in their entireties and replaced by the following:

A. **Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable **Retained Limit(s),** we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

C. **Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation within a **Retained Limit**.

7. Section **VI. DEFINITIONS** Paragraph F. is deleted in its entirety and replaced by the following:

F. **Insured** means:

1. the **Named Insured**;

2. if you are designated in the Declarations as:

   a. an individual, you and your spouse are **Insureds**, but only with respect to the conduct of a business of which you are the sole owner;

   b. a partnership or joint venture, you are an **Insured**. Your members, your partners, and their spouses are also **Insureds**, but only with respect to the conduct of your business;

   c. a limited liability company, you are an **Insured**. Your members are also **Insureds**, but only with respect to the conduct of your business. Your managers are **Insureds**, but only with respect to their duties as your managers;

   d. an organization other than a partnership, joint venture or limited liability company, you are an **Insured**. Your executive officers and directors are **Insureds**, but only with respect to their duties as your officers or directors. Your stockholders are also **Insureds**, but only with respect to their liability as stockholders;

   e. a trust, you are an **Insured**. Your trustees are also **Insureds**, but only with respect to their duties as trustees;

3. your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

4. your volunteer workers only while performing duties related to the conduct of your business;

5. any person (other than your employee or volunteer worker) or organization while acting as your real estate manager;

6. your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy;

UM 00113 00 (04/09)                    Page 4 of 7

7. any person or organization to which you become obligated to include as an additional **Insured** under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations, including **Your Work** and **Your Product**, or premises owned by or rented to you. However, the insurance provided will not exceed the lesser of:

   a. The coverage and/or Limits of Insurance of this policy; or

   b. The coverage and/or Limits of Insurance required by said contract or agreement.

   However, no such person or organization is an **Insured** by virtue of this provision 7. of this Paragraph F. of Section VI. if such person or organization is a partnership, joint venture or limited liability company of which the **Named Insured** is a partner or member, or is a partner or member of such partnership, joint venture or limited liability company.

   Notwithstanding any of the above provisions 1. through 7. of this Paragraph F. of Section VI. no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations.

8. Section **VI. DEFINITIONS,** Paragraph H. **Loss** is deleted in its entirety and replaced by the following:

   H. **Loss** means those sums actually paid as judgments or settlements, provided, however, that if the applicable **Retained Limit** is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then **Loss** shall include such **Defense Expenses**.

9. Section **VI. DEFINITIONS**, Paragraph **J.** is deleted in its entirety and replaced by the following:

   J. **Named Insured** means:

   1. any person or organization designated in Item 1 of the Declarations;

   2. as of the inception date of this policy, any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage  provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

   3. after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

      a. coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

      b. you give us prompt notice after you acquire or form such organization.

      Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

10. Section **VI. DEFINITIONS,** Paragraph R. is deleted in its entirety and replaced by the following:

R. **Retained Limit** means the applicable limit(s) listed in the Schedule of Retained Limits.

The **Retained Limit(s)** listed in the Schedule of Retained Limits will apply whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance**. If there is **Scheduled Underlying Insurance** or **Other Insurance** applicable to a **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Retained Limit**. Furthermore:

a. If the applicable **Retained Limit** is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** shall reduce the **Retained Limit**.

b. If the applicable **Retained Limit** is not specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** shall not reduce the **Retained Limit**.

11. Section **VI. DEFINITIONS** is amended by adding the following additional definitions:

**Defense Expenses** means payment(s) allocated to the investigation, settlement or defense of a specific **Loss**, claim or **Suit**, including but not limited to:

1. attorney's fees and all other investigation, loss adjustment and litigation expenses;

2. premiums on bonds to release attachments;

3. premiums on appeal bonds required by law to appeal any claim or **Suit**;

4. costs taxed against the **Insured** in any claim or **Suit**;

5. pre-judgment interest awarded against the **Insured**; and

6. interest that accrues after entry of judgment.

12. If another endorsement attached to this policy states specifically that the provisions therein supersede any other terms, definitions, conditions, and exclusions of any language in this policy or its endorsements, then the provisions of such other endorsement apply irrespective of anything to the contrary in the provisions of this endorsement. In all other cases, the provisions of this endorsement apply notwithstanding anything to the contrary in the other terms, definitions, conditions, and exclusions terms and conditions of this policy.

**Schedule of Retained Limits**

**Coverage(s)**

General Liability
(Flatiron-Blythe Development Company
A Joint Venture)

**Retained Limit(s)**

$2,000,000 Each Occurrence
$4,000,000 General Aggregate
$4,000,000 Products Completed Operations
                     Aggregate

Defense costs do not erode the limits listed above

Employers Liability
(Flatiron-Blythe Development Company
A Joint Venture)

$1,000,000 Bodily Injury – Each Accident
$1,000,000 Bodily Injury By Disease – Each Employee
$1,000,000 Bodily Injury By Disease – Policy Aggregate

Defense costs do not erode the limits listed above

**By:** _____

       **Joseph Cellura**

**Title:** **President, North American Casualty Division**

**Date:** **September 8, 2016**

       Page 7 of 7

**Endorsement No: 19**
This Endorsement, effective: June 1, 2016
                              (at 12:01 A.M. standard time at the address of the **Named Insured** as
                              shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## EMPLOYEE BENEFITS LIABILITY LIMITATION OCCURRENCE VERSION ENDORSEMENT

A.   It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Employee Benefits Liability**

This insurance does not apply to any liability arising out of:

1.   any violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

2.   any act, error or omission committed by or on behalf of the **Insured** solely in the performance of one or more of the following administrative duties or activities:

     a.   giving counsel to employees with respect to a **Plan**;

     b.   interpreting a **Plan**;

     c.   handling of records in connection with a **Plan**;

     d.   effecting enrollment, termination or cancellation of employees under a **Plan**; or

     e.   any **Claim** against an **Insured** solely by reason of his, her or its status as an administrator, the **Plan** or you as sponsor of the **Plan**.

However, this exclusion will not apply only if and to the extent that coverage for such liability is provided by **Scheduled Underlying Insurance**.

Coverage under this policy for such liability will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

B.   It is agreed that the following definitions are added under Section VI., "Definitions":

**ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revisions thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world to which a **Plan** is subject.

**Plan** means any plan, fund or program established anywhere in the world, regardless of whether it is subject to regulation under Title 1 of **ERISA** or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended and which is:

1. a welfare plan, as defined in **ERISA** or any similar law regarding  workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

2. a pension plan as defined in **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

3. a combination of subparagraphs 1. and 2. above.


All other terms and conditions of this policy remain unchanged.

**By:**

_____

**Joseph Cellura**

**Title:**   **President, North American Casualty Division**

**Date:**   **September 8, 2016**

**Endorsement No: 20**
This endorsement, effective: June 1, 2016

(at 12:01 A.M. standard time at the address of the **Named Insured**
as shown in Item 1. B. of the Declarations)

forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## UNINSURED/UNDERINSURED MOTORISTS COVERAGE ENDORSEMENT

THIS ENDORSEMENT APPLIES TO A COVERED AUTO REGISTERED OR PRINCIPALLY GARAGED IN THE FOLLOWING STATE(S) (where indicated by an "X")

The **DECLARATIONS**, ITEM 3. LIMITS OF INSURANCE is amended to include the following additional provisions:

**Applicable Uninsured / Underinsured Each Occurrence Limit(s)**

| X | **VERMONT** | **$100,000** | **Bodily Injury and Property Damage Combined Single Limit** |
|---|---|---|---|

And if Uninsured /Underinsured Motorist Coverage <u>has been selected</u> under this policy:

**Applicable Uninsured / Underinsured Each Occurrence Limit(s)**

| | **FLORIDA** | **$0** | **Bodily Injury** |
|---|---|---|---|
| | **WEST VIRGINIA** | **$0** | **Bodily Injury and Property Damage Combined Single Limit** |

And if Uninsured /Underinsured Motorist Coverage <u>has not been rejected</u> under this policy:

**Applicable Uninsured / Underinsured Each Occurrence Limit(s)**

| | **LOUISIANA** | **$0** | **Bodily Injury Limit** |
|---|---|---|---|
| | **NEW HAMPSHIRE** | **$0** | **Bodily Injury Limit** |

**Uninsured/Underinsured Motorists Retained Limit    $1,000,000**

UM 00122 00 (08/09)

Page 1 of 10

## A.  COVERAGE

Section **I. INSURING AGREEMENT – COMMERCIAL UMBRELLA LIABILITY** is amended to include the following additional provisions:

1.  We will pay all sums in excess of the **Uninsured/Underinsured Motorists Retained Limit** the **Insured** is legally entitled to recover as compensatory damages from the owner or operator of:

    a.  An **Uninsured Motor Vehicle** as defined in Section **F. DEFINITIONS**, Paragraph 3., Subparagraphs d.1., d. 2. and d.3. of this endorsement because of **Bodily Injury** sustained by the **Insured** or **Property Damage**, and caused by an **Occurrence**; and

    b.  An **Uninsured Motor Vehicle** as defined in Section **F. DEFINITIONS**, Paragraph 3., Subparagraph d.4. of this endorsement because of **Bodily Injury** sustained by any **Insured**, or **Property Damage**.

    The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the **Uninsured Motor Vehicle**.

2.  We will pay under this coverage only if a., b. or c. below applies:

    a.  The limits of any applicable liability bonds or policies of the **Uninsured Motor Vehicle** have been exhausted by judgments or payments (Not applicable where the Uninsured/Underinsured Motorist laws of Louisiana apply);

    b.  The submission of claims exceeds the limits of liability under any applicable **Bodily Injury** bonds or policies (Applicable only where the Uninsured/Underinsured Motorists laws of Louisiana apply); or

    c.  A tentative settlement has been made between an **Insured** and the insurer of the vehicle described in paragraph b. of the definition of **Uninsured Motor Vehicle** of this endorsement and we:

        1)  Have been given prompt written notice of such settlement; and

        2)  Advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days (30 days where the Uninsured/Underinsured Motorist laws of Florida apply; 60 days where the Uninsured/Underinsured Motorist laws of West Virginia apply; as soon as practicable where the Uninsured/Underinsured Motorist laws of Louisiana apply) after receipt of notification.

3.  Any judgment for damages arising out of a **Suit** brought without our written consent is not binding upon us (Not applicable where the Uninsured/Underinsured Motorist laws of Louisiana apply).

## B.  DEFENSE

Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Section **II. DEFENSE PROVISIONS** is deleted in its entirety and replaced by the following:

1.  We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury** or **Property Damage** covered by this policy, even if the **Suit** is groundless, false or fraudulent when the **Uninsured/Underinsured Motorists Retained Limit** has been exhausted by payment of **Loss** to which this policy applies.

UM 00122 00 (08/09)

Page 2 of 10

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

2. We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury** or **Property Damage** to which this insurance does not apply.

3. When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

    a.  investigate, negotiate and settle the **Suit** as we deem expedient; and

    b.  pay the following supplementary payments:

        1)  premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply or furnish any such bond;

        2)  premiums on appeal bonds required by law to appeal a judgment in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

        3)  all court costs taxed against the **Insured** in the **Suit**;

        4)  pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay.  If we make a settlement offer, we will not pay any pre-judgment interest accruing after we make such offer;

        5)  post-judgment interest that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

        6)  the **Insured's** expenses incurred at our request or with our consent.

4. Except as provided in Paragraph 1. above, we will have no duty to defend any **Suit** against the **Insured.**  We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply.  If we exercise this right, we will do so at our own expense.

5. We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph 3. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured**.

## C.  LIMITS OF INSURANCE

1. Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section III. LIMITS OF INSURANCE** is amended to include the following additional provisions:

UM 00122 00 (08/09)

a. Regardless of the number of covered **Autos**, **Insureds**, premiums paid, claims made or vehicles involved in the **Occurrence**, the most we will pay for all damages resulting from any one **Occurrence** are the Limits of Insurance shown in Item 3. of the Declarations (as amended in this endorsement).

b. With respect to coverage provided under Section **F. DEFINITIONS**, Paragraph 3., Subparagraph d.2. of the definition of **Uninsured Motor Vehicle** of this endorsement, the Limit of Insurance shall be reduced by all sums paid for **Bodily Injury** or **Property Damage** by or on behalf of anyone who is legally responsible.

c. This policy applies only in excess the **Uninsured/Underinsured Motorists Retained Limit** and then up to an amount not exceeding the Uninsured/Underinsured Motorists Each Occurrence Limit as stated in the Declarations (as amended in this endorsement), subject to the provisions stated in 1.a. and 1.b. above.

The **Uninsured/Underinsured Motorists Retained Limit** shall not be reduced or exhausted by **Defense Expenses**.

Where the Uninsured/Underinsured laws of the state of West Virginia apply, this **Uninsured/Underinsured Motorists Retained Limit** applies excess of the statutory minimum amount of Uninsured Motorists Coverage provided by an underlying insurer.

## D. EXCLUSIONS

1. Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Section **IV. EXCLUSIONS**, Paragraph O. **No-Fault, Uninsured Motorist or Underinsured Motorist Laws** is deleted in its entirety and replaced by the following:

O. **No-Fault**

This policy does not provide coverage for any obligation of the **Insured** under a "No Fault" law.

2. Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **Section IV. EXCLUSIONS** is amended to include the following additional exclusions:

a. This policy does not provide coverage for any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle which is an Uninsured Motor Vehicle.

b. This policy does not provide coverage for the direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

c. This policy does not provide coverage for any **Insured** using a vehicle without the expressed or implied permission of the owner or lessee.

d. This policy does not provide coverage for **Bodily Injury** or **Property Damage** sustained by:

1) an individual **Named Insured** while **Occupying** or when struck by any vehicle owned by that **Named Insured** that is not a covered **Auto** for Uninsured Motorists Coverage under this endorsement;

UM 00122 00 (08/09)

2)   any **Family Member** while **Occupying** or when struck by any vehicle owned by that **Family Member** that is not a covered **Auto** for Uninsured Motorists Coverage under this endorsement; or

3)   any **Family Member** while **Occupying** or when struck by any vehicle owned by the **Named Insured** that is insured for Uninsured Motorists Coverage under any other policy.

e.   This policy does not provide coverage for punitive or exemplary damages.

f.   This policy does not provide coverage for **Property Damage** to an **Auto** or to property contained in an **Auto** owned by the **Named Insured** which is not a covered **Auto**.

g.   This policy does not provide coverage for **Property Damage** for which the **Insured** has been or is entitled to be compensated by other property or physical damage insurance.

## E.   CONDITIONS

1.   Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **V. CONDITIONS**, Paragraph **G. Duties In the Event of an Occurrence, Claim or Suit** is amended to include the following additional provisions:

Specifically as respects to any **Occurrence** which may result in an Uninsured/Underinsured Motorist claim for coverage under this policy:

a.   You must promptly notify the police if a hit-and-run driver is involved; and

b.   You must promptly send us copies of the legal papers if a **Suit** is brought.

c.   A person seeking Uninsured/Underinsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the **Insured** and the insurer of the vehicle described in Section **F. DEFINITIONS**, Paragraph 3., Subparagraph d.2. of the definition of **Uninsured Motor Vehicle** of this endorsement and allow us 90 days (30 days where the Uninsured/Underinsured Motorist laws of Florida apply; 60 days where the Uninsured/Underinsured Motorist laws of West Virginia apply; as soon as practicable where the Uninsured/Underinsured Motorist laws of Louisiana apply) to advance payment to that **Insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in Section **F. DEFINITIONS**, Paragraph 3., Subparagraph d.2. of the definition of **Uninsured Motor Vehicle** of this endorsement.

2.   Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Section **V. CONDITIONS**, Paragraph **L. Other Insurance** is deleted in its entirety and replaced by the following:

L.   **Other Insurance**

Any insurance we provide under this endorsement will be excess to the total limits of any other insurance paid or available for payment to an **Insured**, except other applicable Uninsured/Underinsured Motorist Coverage written to be excess of this policy.

If there is other applicable Uninsured/Underinsured Motorist Coverage under any other policy issued to the **Named Insured** by us, the maximum recovery for damages may equal but not exceed the highest applicable limit of insurance under any one policy.

If there is other applicable excess Uninsured/Underinsured Motorist Coverage available under more than one policy, then the following priorities of coverage apply:

1.  a policy covering as excess, umbrella, or similar insurance, a motor vehicle **Occupied** by the injured person or a policy covering, as excess, umbrella, or similar insurance, a pedestrian as a **Named Insured**.

2.  a policy covering as excess, umbrella, or similar insurance, a motor vehicle **Occupied** by the injured person or a policy covering, as excess, umbrella, or similar insurance, a pedestrian as an **Insured** other than as a **Named Insured**.

3.  a policy not covering a motor vehicle **Occupied** by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as a **Named Insured**.

4.  A policy not covering a motor vehicle **Occupied** by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as an **Insured** other than as a **Named Insured**.

We will pay only our share of the **Loss** that must be paid under insurance providing umbrella or excess coverage. Our share is the proportion that our limit of liability bears to the total of all applicable limits of all the policies applicable on the same level of priority.

3.  Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, **V. CONDITIONS**, Paragraph **P. Transfer of Your Rights and Duties** is amended to include the following additional provisions:

If we make any payment and the **Insured** recovers from another party, the **Insured** shall hold the proceeds in trust for us and pay us back the amount we have paid.

However, where the Uninsured/Underinsured laws of the state of Louisiana apply, if we make any payment under this policy and the person to or for whom payment is made has a right to recover damages from another, we shall be subrogated to that right. However, our right to recover is subordinate to the right of the **Insured** to be fully compensated.

Our rights do not apply under this provision with respect to Uninsured/Underinsured Motorists Coverage if we:

a.  have been given prompt written notice of a tentative settlement between an **Insured** and the insurer of a vehicle described in Section **F. DEFINITIONS**, Paragraph 3., Subparagraph d.2. of the definition of **Uninsured Motor Vehicle** of this endorsement; and

b.  fail to advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days (30 days where the Uninsured/Underinsured Motorist laws of Florida apply; 60 days where the Uninsured/Underinsured Motorist laws of West Virginia apply; as soon as practicable where the Uninsured/Underinsured Motorist laws of Louisiana apply) after receipt of notification.

If we advance payment to the **Insured** in an amount equal to the tentative settlement within 90 days (30 days where the Uninsured/Underinsured Motorist laws of Florida apply; 60 days where the Uninsured/Underinsured Motorist laws of West Virginia apply; as soon as practicable where the Uninsured/Underinsured Motorist laws of Louisiana apply) after receipt of notification:

UM 00122 00 (08/09)

a.  that payment will be separate from any amount the **Insured** is entitled to recover under the provisions of Uninsured/Underinsured Motorists Coverage; and

b.  we also have a right to recover the advanced payment.

4.  For the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Section **V. CONDITIONS** is amended to include the following additional conditions:

**Arbitration** (Not applicable where the Uninsured/Underinsured laws of West Virginia or Louisiana apply)

1.  If we and an **Insured** disagree whether the **Insured** is legally entitled to recover damages from the owner or driver of an **Uninsured Motor Vehicle** or do not agree as to the amount of damages that are recoverable by that **Insured**, then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to the arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

2.  Unless both parties agree otherwise, arbitration will take place in the county in which the **Insured** lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**Conformance to "Uninsured Motorist" and/or "Underinsured Motorist" Law**

To the extent any term of this policy conflicts with any applicable Uninsured/Underinsured law, the term shall be deemed amended so as to conform to minimum requirements of that law. However, under no such circumstance shall any term be amended to be broader than the minimum requirements of that law.

## F.  DEFINITIONS

1.  Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Section **VI. DEFINITIONS**, Paragraph F. **Insured** is deleted in its entirety and replaced by the following:

F.  **Insured** means:

1.  if the **Named Insured** is designated in the Declarations as:

a.  an individual, then only the following are **Insureds**:

1)  the **Named Insured** and any **Family Members**;

2)  anyone else occupying a covered **Auto** or a temporary substitute for a covered **Auto**. The covered **Auto** must be out of service because of its breakdown, repair, servicing, **Loss** or destruction; or

3)  anyone for damages he or she is entitled to recover because of **Bodily Injury** sustained by another **Insured**.

      2.  a partnership, limited liability company, corporation or any other form of organization, then the following are **Insureds**:

          a.  anyone occupying a covered **Auto** or a temporary substitute for a covered **Auto**. The covered **Auto** must be out of service because of its breakdown, repair, servicing, **Loss** or destruction; or

          b.  anyone for damages he or she is entitled to recover because of **Bodily Injury** sustained by another **Insured**.

2.  For the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Section **VI. DEFINITIONS**, Paragraph Q. **Property Damage** under is deleted in its entirety and replaced by the following:

    Q.  **Property Damage** means physical Injury or destruction of:

      1.  covered **Auto**; or

      2.  property contained in the covered **Auto**.

3.  Solely for the purpose of Uninsured/Underinsured Motorist Coverage provided by this endorsement, Section **VI. DEFINITIONS** is amended to include the following additional definitions:

    a.  **Defense Expenses** means a payment allocated to a specific **Loss**, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

      1.  attorneys' fees and all other investigation, **Loss** adjustment and litigation expenses;

      2.  premiums on bonds to release attachments;

      3.  premiums on appeal bonds required by law to appeal any claim or **Suit**;

      4.  costs taxed against the **Insured** in any claim or **Suit**;

      5.  pre-judgment interest awarded against the **Insured**; and

      6.  interest that accrues after entry of judgment.

    b.  **Family Member** means a person related to an individual **Named Insured** by blood, marriage or adoption who is a resident of such **Named Insured's** household, including a ward or foster child.

    c.  **Occupying** and/or **Occupied** means in, upon, getting in, on, out or off.

    d.  **Uninsured Motor Vehicle** means a land motor vehicle or trailer:

      1.  for which no liability bond or policy at the time of an **Occurrence** provides at least the amounts required by the applicable law where a covered **Auto** is principally garaged;

      2.  which is an **Underinsured Motor Vehicle**;

      3.  for which an insuring or bonding company denies coverage or is or becomes insolvent; or

UM 00122 00 (08/09)

4.  that is a hit-and-run vehicle and neither the operator nor owner can be identified. The vehicle must either:

    a.  hit an **Insured**, a covered **Auto** or a vehicle an **Insured** is **Occupying**; or

    b.  cause **Bodily Injury** to an **Insured** without hitting an **Insured**, a covered **Auto** or a vehicle an **Insured** is **Occupying**.

The facts of the **Occurrence** or intentional act must be proved by independent corroborative evidence, other than the testimony of the **Insured** making a claim under this or similar coverage, unless such testimony is supported by additional evidence.

However, **Uninsured Motor Vehicle** does not include any vehicle or trailer:

1)  Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law. However, where the Uninsured/Underinsured laws of the state of Florida apply, **Uninsured Motor Vehicle** includes any vehicle owned or operated by a self-insurer under any applicable motor vehicle law;

2)  Designed for use mainly off public roads while not on public roads;

3)  Owned by or furnished or available for the **Named Insured's** regular use or that of any **Family Member**, if the **Named Insured** is an individual; or

4)  Owned by any governmental unit or agency, unless the owner or operator of the **Uninsured Motor Vehicle** has:

    a)  An immunity under applicable tort liability law; or

    b)  A diplomatic immunity.

e.  **Underinsured Motor Vehicle** means a land motor vehicle or trailer for which the sum of all liability bonds or policies applicable at the time of an **Occurrence** provides at least the amounts required by the applicable law where a covered **Auto** is principally garaged but their limits are less than the Limit of Insurance of this coverage.

However, where the Uninsured/Underinsured Motorist laws of West Virginia apply, **Underinsured Motor Vehicle** means a land motor vehicle or trailer to which a liability bond or policy applies at the time of the **Occurrence** but the amount paid for **Bodily Injury** or **Property Damage** to an **Insured** under that bond or policy is not enough to pay the full amount the **Insured** is legally entitled to recover as damages. **Underinsured Motor Vehicle** does not include any vehicle or trailer:

1)  Owned or operated by a self-insurer under any applicable motor vehicle law;

2)  Owned by a governmental unit or agency; or

3)  Designed for use mainly off public roads while not on public roads.

UM 00122 00 (08/09)

    f.   **Uninsured/Underinsured Motorists Retained Limit**, as specified in the Declarations above, means either:

        a.   the **Auto** liability limit as provided by a policy listed in Scheduled Underlying Insurance; or

        b.   the **Auto** liability Retained Limit as listed in the Schedule of Retained Limits.

All other terms and conditions of this policy remain unchanged.

**Allied World Specialty Insurance Company**

**By:** _____

**Joseph Cellura**

**Title:  President, North American Casualty Division**

**Date of Issuance: September 8, 2016**

**Endorsement No:**        **21**
This endorsement, effective:     June 1, 2016
                      (at 12:01 A.M. standard time at the address of the **Named Insured** as
                      shown in Item 1. B. of the Declarations)
forms a part of Policy No:       0308-4113
Issued to:               Flatiron Construction Corp.
by:                    Allied World Specialty Insurance Company

## STRATEGIC RESPONSE COVERAGE EXTENSION

I.  It is agreed that Section **I. INSURING AGREEMENT – COMMERCIAL UMBRELLA LIABILITY** is amended by adding the following:

### INSURING AGREEMENT – STRATEGIC RESPONSE

A.  We will pay on behalf of the **Insured Strategic Response Costs** arising from a **Strategic Management Event** first commenced during the **Policy Period**, up to the amount of the **Strategic Response Costs** Limit of Liability set forth in this Endorsement.

B.  We will pay **Strategic Management Loss** directly to third parties at the request of and on behalf of an **Insured** arising from a **Strategic Management Event** first commenced during the **Policy Period**, up to the amount of the **Strategic Management Loss** Limit of Liability set forth in this Endorsement.

C.  A **Strategic Management Event** will be deemed to first commence at the time during the **Policy Period** when an **Executive** first becomes aware of an **Occurrence** that gives rise to a **Strategic Management Event** and will end when we determine that any one of the necessary elements listed in the definition of a **Strategic Management Event** no longer exists or when the **Strategic Management Loss** Limit of Liability has been exhausted.

D.  There will be no **Retained Limit** applicable to **Strategic Response Costs** or **Strategic Management Loss**.

E.  Any payment by us of **Strategic Response Costs** or **Strategic Management Loss** pursuant to the terms of this Endorsement will not (1) constitute a determination of any of our rights or obligations under any other part of this policy; (2) create any duty to defend any claim or **Suit** under any other part of this policy; or (3) create a waiver of any right or defense we have with respect to the coverage provided by any part of this policy, including those set forth in Condition G. of this policy.

II.  It is agreed that ITEM 3. LIMITS OF INSURANCE of the Declarations is amended by adding the following:

        D.    $300,000 **Strategic Response Costs** Limit of Liability

        E.    $75,000 **Strategic Management Loss** Limit of Liability

III.  It is agreed that Section **III. LIMITS OF INSURANCE** is amended by adding the following:

**LIMITS OF INSURANCE – STRATEGIC RESPONSE**

A.  The **Strategic Response Costs** Limit of Liability stated in Item 3. D. of the Declarations is the most we will pay for all **Strategic Response Costs** under this policy regardless of the number of **Strategic Management Events** first commenced during the **Policy Period**.

B.  The **Strategic Management Loss** Limit of Liability stated in Item 3. E. of the Declarations is the most we will pay for all **Strategic Management Loss** under this policy regardless of the number of **Strategic Management Events** first commenced during the **Policy Period**.

C.  The **Strategic Response Costs** Limit of Liability and the **Strategic Management Loss** Limit of Liability are in addition to, and are not part of, the Aggregate Limit of Insurance shown in Item 3. of the Declarations.

IV.  It is agreed that Section **V. CONDITIONS**, Paragraph G. is amended by adding the following:

**CONDITIONS – STRATEGIC RESPONSE**

You must report any **Strategic Management Event** to us  as soon as practicable, but no later than thirty (30) days after an **Executive** first becomes aware of an **Occurrence** that gives rise to a **Strategic Management Event** to be eligible for the payment of **Strategic Response Costs** and **Strategic  Management Loss**.

Notice of a **Strategic Management Event** may be given by calling 1-877-300-AWAC. If notice is given by telephone, written notice will be given as soon as practicable thereafter. Written notice should include:

1.   how, when and where the **Strategic Management Event** is taking or took place;

2.   the names and addresses of any injured persons and any witnesses; and

3.  the nature and location of any injury or damage arising out of the **Strategic Management Event**.

Written notice should be mailed or delivered to:

Allied World Assurance Company (U.S.) Inc.
199 Water Street, 24th Floor
New York, NY 10038
Attention:  General Casualty Claims Supervisor

V. It is agreed that Section **VI. DEFINITIONS** is amended by adding the following:

**DEFINITIONS – STRATEGIC RESPONSE**

A. **Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) or sole proprietor (if the **Named Insured** is a proprietorship) of the **Named Insured**.  **Executive** also means any other person holding a title designated by you, approved by us and shown by endorsement to this policy.

B. **Strategic Management Event** means an **Occurrence** that in the absence of **Strategic Management Services** and in the good faith opinion of an **Executive** of the **Named Insured** has or may result in:

1. damages covered by this policy that are in excess of the total applicable limits of **Scheduled Underlying Insurance** or the **Self-Insured Retention**; and

2. significant adverse regional or national media coverage.

**Strategic Management Event** will include man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals, provided that the damages arising out of any of the aforementioned are reasonably likely to be covered under this policy.

C. **Strategic Management Firm** means:

1. any firm that is listed in Schedule A – Strategic Management Firms,  attached to and forming part of this policy; or

2. any firm for which we, in our sole discretion, have provided prior written approval to the **Named Insured**,

which is hired by you to perform **Strategic Management Services** in connection with a **Strategic Management Event**.

D. **Strategic Management Loss** means the following amounts incurred during a **Strategic Management Event**:

1. amounts for the reasonable and necessary fees and expenses incurred by a **Strategic Management Firm** in the performance of **Strategic Management Services** for the **Named Insured,** solely arising from a covered **Strategic Management Event**; and

2. amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Strategic Management Firm** incurred at the direction of a **Strategic Management Firm**, solely arising from a covered **Strategic Management Event**.

E. **Strategic Management Services** means those services performed by a **Strategic Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Strategic Management Event** by maintaining and restoring public confidence in the **Named Insured**.

F. **Strategic Response Costs** means the following reasonable and necessary expenses incurred during a **Strategic Management Event** directly caused by a **Strategic Management Event**, provided that such expenses have been pre-approved by us and may be associated with damages that are reasonably likely to be covered by this policy:

   1. medical expenses;

   2. funeral expenses;

   3. psychological counseling;

   4. travel expenses;

   5. temporary living expenses;

   6. expenses to secure the scene of a **Strategic Management Event**; and

   7. any other expenses pre-approved by us.

   **Strategic Response Costs** does not include defense costs or **Strategic Management Loss**.

All other terms and conditions of this policy remain unchanged.

**By:**

_____

**Joseph Cellura**

**Title:**   **President, North American Casualty Division**

**Date:**   **September 8, 2016**

**Schedule A**

**Strategic Management Firms\***

**Communications / Public Relations Firms**

| FIRM/ADDRESS | CONTACT INFORMATION |
|---|---|

| **The Abernathy MacGregor Group, Inc.** | |
|---|---|

New York Office:
501 Madison Avenue
New York, NY 10022
www.abmac.com

Jim MacGregor
Vice Chairman
Office: (212) 371-5999
Cell: (646) 236-3271
Home: (212) 343-0818
Office Fax: (212) 752-0723
Home Fax: (646) 613-7033
Email: jtm@abmac.com

Rhonda Barnat
Managing Director
Office: (212) 371-5999
Cell: (917) 912-6378
Home: (646) 478-8740
Office Fax: (212) 752-0723
Email: rb@abmac.com

Mike Pascale
Managing Director
Office: (212) 371-5999
Cell: (917) 860-2048
Home: (914) 472-0810
Office Fax: (212) 752-0723
Home Fax: (914) 472-0559
Email: mmp@abmac.com

Los Angeles Office:
707 Wilshire Boulevard
Suite 3950
Los Angeles, CA 90017

Ian Campbell
Managing Director
Office: (213) 630-6550
Cell: (213) 422-7958
Home: (818) 957-5650
Office Fax: (213) 489-3443
Home Fax: (818) 541-0954
Email: idc@abmac.com

| FIRM/ADDRESS | CONTACT INFORMATION |
|---|---|

**Singer Associates, Inc.**

140 Second Street
Sixth Floor
San Francisco, CA 94105
www.singer-associates.com

Sam Singer
President
Office: (415) 227-9700 x 101
Cell: (415) 336-4949
Home: (510) 644-3636
Email:  singer@singersf.com

Adam Alberti
Executive Vice President
Office: (415) 227-9700 x 105
Cell: (415) 225-2443
Home: (650) 620-9120
Email: adam@singersf.com

Courtney Lodato
Vice President
Office: (415) 227-9700 x 109
Cell: (415) 378-4382
Home: (650) 931-4694
Email: courtney@singersf.com

Jason Barnett
Vice President
Office: (415) 227-9700 x 106
Cell: (415) 999-0917
Home: (415) 644-0800
Email: barnett@singersf.com

Charles Goodyear
Senior Account Supervisor
Office: (415) 227-9700 x 111
Cell: (415) 637-8671
Home: (415) 409-6909
Email: charlie@singersf.com

**Zeno Group**

Washington, D.C. Office:
3222 N Street, NW
Suite 500
Washington, DC  20007
http://www.zenogroup.com

Mark Shadle
Managing Director, Corporate Affairs
Office: (312) 396-9744
Mobile: (630) 373-4046
Email: mark.shadle@zenogroup.com

New York City Office:
200 Park Avenue South
Suite 1603
New York, NY  10003
http://www.zenogroup.com

Ame Wadler
Managing Director, Health
Office: (212) 299-3961
Mobile: (201) 486-1926
Email: ame.wadler@zenogroup.com

**Investigative and Security Firm**

| FIRM/ADDRESS | CONTACT INFORMATION |
|---|---|
| **Kroll** | |

1166 Avenue of the Americas
New York, NY 10036
www.kroll.com

Timothy V. Horner
Managing Director
Office:  (212) 833-3366
Cell: (646) 739-9428
Fax: (212) 948-4222
Email:  thorner@kroll.com

\*  We do not endorse the firms listed nor warrant the services they provide.

**Endorsement No: 22**
This Endorsement, effective: June 1, 2016
(at 12:01 A.M. standard time at the address of the **Named Insured** as shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

<div align="center">

**ARCHITECTS, ENGINEERS AND SURVEYORS PROFESSIONAL LIABILITY EXCLUSION
WITH CONSTRUCTION MEANS AND METHODS EXCEPTION**

</div>

It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Architects, Engineers and Surveyors Professional Liability (With Construction Means and Methods Exception)**

This policy does not provide coverage for any liability arising out of the rendering of, or failure to render, any professional services by the **Insured**, or on the **Insured's** behalf, but only with respect to either or both of the following operations:

1. providing engineering, architectural or surveying services to others in any **Insured's** capacity as an engineer, architect or surveyor; or

2. providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work any **Insured** performs.

As used in this exclusion, "professional services" include:

a. preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

b. supervisory or inspection activities performed as part of any related architectural or engineering activities.

"Professional services" do not include services within construction means, methods, techniques, sequences and procedures employed by the **Insured** in connection with its operations in its capacity as a construction contractor.

All other terms and conditions of this policy remain unchanged.

**By:** _(signature)_

_____
**Joseph Cellura**

**Title:**    **President, North American Casualty Division**

**Date:**    **September 8, 2016**

**Endorsement No: 23**
This Endorsement, effective: June 1, 2016
                    (at 12:01 A.M. standard time at the address of the **Named Insured** as
                    shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

# ACCESS TO OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY EXCLUSION – WITH LIMITED BODILY INJURY LIMITATION

It is agreed that Section **IV. EXCLUSIONS** is amended to include the following additional exclusion:

**Access to or Disclosure of Confidential or Personal Information and Data-Related Liability**

This policy does not provide coverage for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** or any other liability, **Loss**, injury, damage, cost or expense arising out of:

1. any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

2. the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by the **Insured** or others arising out of that which is described in subparagraphs 1. or 2. above.

However, paragraph 2. above does not apply to damages because of **Bodily Injury** if coverage for such liability is provided by **Scheduled Underlying Insurance.** Coverage under this policy for such liability will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will not be broader than the coverage provided by **Scheduled Underlying Insurance**.

As used in this endorsement, "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

All other terms and conditions of this policy remain unchanged.

**By:**

**Joseph Cellura**

**Title:**   **President, North American Casualty Division**

**Date:**   **September 8, 2016**

**Endorsement No: 24**
This Endorsement, effective: June 1, 2016
                              (at 12:01 A.M. standard time at the address of the **Named Insured** as
                              shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## ADDITIONAL INSURED AMENDATORY ENDORSEMENT

In consideration of the premium charged and notwithstanding any inconsistent statement in the policy to which this endorsement is attached or any endorsement now or hereafter attached thereto, it is agreed as follows:

1.     **Additional Insured.**  The San Diego Association of Governments ("SANDAG") are included as additional **Insureds** with regard to liability and defense of **Suits** arising from all operations or performance performed by or on behalf of the **Named Insured** with respect to the Bridge 207.6 Replacement Project (San Mateo Creek) (CIP 1143500, Contract 5001298, SANDAG, NCTD, SD&AE, SD&IV Railroad, Amtrak, BNSF, SCRAA, TransitAmerica Services, Inc. and California State Department of Park and Recreation).

2.     **Contribution Not Permitted.**  Any other insurance maintained by SANDAG shall be excess of this insurance and shall not contribute with it.

3.     **Severability of Interest.**  This insurance applies separately to each **Insured** against whom a claim is made or **Suit** is brought except with respect to our limits of insurance. The inclusion of any person or organization as an **Insured** shall not affect any right which such person or organization would have as a claimant if not so included.

4.     **Cancellation Notice.**  With respect to the interests of SANDAG, this insurance shall not be cancelled, materially reduced in coverage or limits, or non-renewed unless thirty (30) prior written notice by certified mail, return receipt requested, has been given to SANDAG, at the address as follows:

       San Diego Association of Governments (SANDAG)
       401 B Street
       Suite 800
       San Diego, CA 92101-4231

5.     **Waiver of Subrogation.**  We shall have no right of recovery or subrogation against SANDAG relating to claims to which this endorsement applies.

6.     **Governmental Immunity.**  We shall not, without obtaining the express advance written permission from the General Counsel of the SANDAG, raise any defense involving in any way the jurisdiction of the tribunal over the person of the SANDAG, the immunity of the SANDAG, its commissioners, officers, agents or employees, the governmental nature of the SANDAG or the provisions of any statutes respecting suits against the SANDAG.

7.     **Applicability.**  This insurance applies to liability arising from the work performed by or on behalf of the **Named Insured** for SANDAG under the contract known as the Bridge 207.6 Replacement Project (San Mateo Creek) (CIP 1143500, Contract 5001298, SANDAG, NCTD,

FC Manu A                               Page 1 of 2

SD&AE, SD&IV Railroad, Amtrak, BNSF, SCRAA, TransitAmerica Services, Inc. and California State Department of Park and Recreation).

Except as stated above, nothing herein shall be held to waive, alter or extend any of the limits, conditions, agreements or exclusions of the policy to which this endorsement is attached.

All other terms and conditions of this **policy** remain unchanged.

**By:**

**Joseph Cellura**

**Title:** **President, North American Casualty Division**

**Date:** **September 8, 2016**

**Endorsement No: 25**
This Endorsement, effective: June 1, 2016
(at 12:01 A.M. standard time at the address of the **Named Insured** as shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## BROAD FORM NAMED INSURED AMENDATORY ENDORSEMENT

It is agreed that Section **VI. DEFINITIONS**, Paragraph J. **Named Insured** is deleted in its entirety and replaced by the following:

J.   **Named Insured** means:

    1.   the person or organization first named as the **Named Insured** in Item 1. of the Declarations (the "First Named Insured");

    2.   any other person or organization named as a **Named Insured** in Item 1. of the Declarations; or

    3.   any subsidiary or acquired company or corporation (including subsidiaries thereof) and any other legal entities (including joint ventures, limited liability companies and partnerships) in which:

        a.   any **Insured** named as the **Named Insured** in Item 1. of the Declarations has a majority ownership interest; or

        b.   any **Named Insured** or its subsidiaries have only partial ownership interest, but have entered into a written contract or written agreement to place insurance for each such entity.

The insurance afforded by this endorsement shall not be subject to the requirement of Section **VI. DEFINITIONS**, Paragraph F. **Insured** that the partnership, joint venture, or limited liability company be shown as a **Named Insured** it Item 1. of the Declarations.

Notwithstanding any of the above, no person or organization is an **Insured** by virtue of the provisions of this endorsement who is not an **Insured** under applicable **Scheduled Underlying Insurance**.

All other terms and conditions of this **policy** remain unchanged.

**By:**   _Julu_

    **Joseph Cellura**

**Title:**   **President, North American Casualty Division**

**Date:**   **September 8, 2016**

**Endorsement No: 26**
This Endorsement, effective: June 1, 2016
                                          (at 12:01 A.M. standard time at the address of the **Named Insured** as
                                          shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

# CONTRACTORS' LIMITATION
# (WITH LIMITED WRAP-UP)

It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Contractors**

A.  This policy does not provide coverage for:

1.  **Property Damage** to any property or equipment leased by the **Insured**;

2.  **Property Damage** to that particular part of the property being installed, erected or worked upon by the **Insured**;

3.  any liability arising out of any project insured under a wrap-up or any similar rating plan. However, this exclusion 3. does not apply to the **Named Insured's** liability arising out of any of the wrap-up project(s) on file with us, provided that:

    a.  all wrap-up project(s) are declared to us by up-to-date quarterly reports, to be received by us within thirty (30) days of the end of the quarterly period.  The first such quarterly report is due within thirty (30) days of September 1, 2016, and subsequent reports are due every three months thereafter, with the last quarterly report due within sixty (60) days after the policy's expiration.  Notwithstanding the foregoing, you shall obtain our prior written approval for any wrap-up project with a construction value of $100,000,000 or greater before such wrap-up project is included in the list on file with us;

    b.  Coverage applies only to the liability of the **Named Insured's** interest in such wrap-up project and does not apply to the liability of any other wrap-up participant;

    c.  **Scheduled Underlying Insurance** also provides coverage for the liability of the **Named Insured's** interest in such wrap-up project; and

    d.  this policy will apply excess of:

        1)  the wrap-up limits of insurance coverage for such particular wrap-up project, which shall constitute **Other Insurance** and this policy shall not contribute with such **Other Insurance**; and

        2)  **Scheduled Underlying Insurance.**

For the purpose of this exception to exclusion 3., Section **V. CONDITIONS** is amended to include the following additional condition:

If this policy, any wrap-up insurance coverage or any **Other Insurance** provided by us or any of our affiliated companies will apply to the same claim, **Suit** or **Occurrence**, the maximum limit of

insurance under all insurance available will not exceed $50,000,000. However, this condition will not apply if the insurance is specifically written to be excess of this policy;

4.   **Property Damage** arising out of:

 a.   blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment;

 b.   the collapse of or structural injury to any building or structure due to:

  1)   the grading of land, paving, excavating, drilling, burrowing, filling, back-filling, tunneling, pile driving, coffer-dam or caisson work; or

  2)   the moving, shoring, underpinning, raising or demolition of any building or structure, or the removal or rebuilding of any structural support thereof; or

 c.   damage to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling or pile driving; or

 However, if coverage for such **Property Damage** is provided by **Scheduled Underlying Insurance**:

  1)   exclusion 4. above will not apply; and

  2)   coverage under this policy for such **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance; and**

5.   Any liability assumed by the **Insured** under any contract or agreement.

 However, if insurance for **Bodily Injury** or **Property Damage** assumed by the **Insured** under any contract or agreement is provided by **Scheduled Underlying Insurance**:

 a.   exclusion 5. above will not apply; and

 b.   coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

B.   It is agreed that Section VI., "Definitions" F. **Insured**, Paragraph 7. is deleted in its entirety and replaced by the following:

7.   any person or organization, other than the **Named Insured**, included as an additional insured in the policies listed in **Scheduled Underlying Insurance** however:

 a.   coverage will not be broader than is available to such person or organization under such **Scheduled Underlying Insurance**; and

 b.   the coverage granted by this provision does not apply to any liability which results solely from the acts or omissions of such person or organization.

C.  It is agreed that Section VI. "Definitions" F. **Insured** is amended to include the following additional provision:

Any person, organization, trustee or estate to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy, but only with respect to:

a.   liability arising out of operations conducted by you or on your behalf;

b.   facilities owned or used by you; or

c.   liability arising solely from your acts or omissions.

However,

1)  the coverage granted in this provision does not apply to any liability which arises solely from the acts or omissions of such person, organization, trustee or estate; and

2)  the most we will pay for damages under this policy on behalf of any person or organization to which you are obligated by written **Insured Contract** to provide coverage such as is afforded by this endorsement is the lesser of the Limits of Insurance shown in Item 3. of the Declarations or the minimum Limits of Insurance you agreed to procure in such written **Insured Contract**.

All other terms and conditions of this **policy** remain unchanged.

By:

_____

**Joseph Cellura**

Title:   **President, North American Casualty Division**

Date:   **September 8, 2016**

**Endorsement No: 27**
This Endorsement, effective: June 1, 2016
                              (at 12:01 A.M. standard time at the address of the **Named Insured** as
                              shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## CONTRACTUAL LIABILITY LIMITATION ENDORSEMENT

It is agreed that this policy is amended as follows:

Section **IV. EXCLUSIONS**, C. **Contractual Liability** is deleted in its entirety and replaced by the following:

C.   **Contractual Liability**

   This policy does not provide coverage for any liability arising out of any liability assumed under any contracts, oral, written or implied, that are entered into by the **Insured** with any other individual, organization or entity.

   However, this exclusion will not apply if coverage is provided for such **Bodily Injury** or **Property Damage** by **Scheduled Underlying Insurance**.

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

All other terms and conditions of this **policy** remain unchanged.

**By:**

_____
   **Joseph Cellura**

**Title:**   **President, North American Casualty Division**

**Date:**   **September 8, 2016**

**Endorsement No: 28**
This Endorsement, effective: June 1, 2016
                                    (at 12:01 A.M. standard time at the address of the **Named Insured** as
                                    shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

<div align="center">

**MARINE LIABILITY EXCLUSION**
**(AMENDMENT OF EXCLUSION A.)**
**(WITH LIMITED EXCEPTION)**

</div>

It is agreed that this policy is amended as follows:

A.   Solely with respect to watercraft, Section **IV. EXCLUSIONS**, A. **Aircraft and Watercraft** is deleted in
     its entirety.

B.   Section **IV.  EXCLUSIONS** is amended to include the following additional exclusion:

**Marine**

This policy does not provide coverage for any marine liability including, but not limited to, the following
types of marine liability and marine liability arising under the following laws or any amendments or
revisions thereto:

1.   Charterers Liability;
2.   Protection and Indemnity Liability (including Collision);
3.   Safe Berth Legal Liability;
4.   Ship Builders Liability;
5.   Ship Repairers Legal Liability;
6.   Stevedores Liability;
7.   Terminal Operation Liability;
8.   Towers Liability;
9.   Jones Act;
10.  United States Longshore and Harbor Workers Compensation Act; and/or
11.  Wharfingers Liability.

However, if insurance for liability under the United States Longshore and Harbor Workers
Compensation Act or the Jones Act, and any amendments thereof, is provided by **Scheduled
Underlying Insurance**:

   1.   This exclusion shall not apply to **Bodily Injury** or **Property Damage** covered under the
        United States Longshore and Harbor Workers Compensation Act and/or the Jones Act, and
        any amendments thereof; and

   2.   Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms,
        definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the
        **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and
        exclusions of this policy. Provided, however, that coverage provided by this policy will not be
        broader than the coverage provided by **Scheduled Underlying Insurance**.

All other terms and conditions of this **policy** remain unchanged.

**By:**

_____
**Joseph Cellura**

**Title:**   **President, North American Casualty Division**

**Date:**   **September 8, 2016**

**Endorsement No: 29**
This Endorsement, effective: June 1, 2016
                              (at 12:01 A.M. standard time at the address of the **Named Insured** as
                              shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company

## NAMED INSURED'S INTEREST IN JOINT VENTURES, PARTNERSHIPS OR LIMITED LIABILITY COMPANIES LIMITATION ENDORSEMENT
## (FULL LIMITS/FULL ATTACHMENT WITH EXCESS CASUALTY ANTI-STACKING)

It is agreed that this policy is amended as follows:

Section **III.  LIMITS OF INSURANCE** is amended to include the following additional provisions:

The coverage provided by this policy shall apply to the **Named Insured's** interest in any joint venture, partnership or limited liability company in which it has an interest, but only to the extent of the **Named Insured's** liability arising from such interest, provided that:

1.  Coverage for such joint venture, partnership or limited liability company is provided by **Scheduled Underlying Insurance**.  Coverage under this policy for such joint venture, partnership or limited liability company will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**;

2.  All such joint ventures, partnerships or limited liability companies are declared to us by up-to-date quarterly reports, to be received by us within thirty (30) days of the end of the quarterly period.  The first such quarterly report is due within thirty (30) days of September 1, 2015, and subsequent reports are due every three months thereafter, with the last quarterly report due within sixty (60) days of the policy's expiration. Notwithstanding the foregoing, you shall obtain our prior written approval for any joint ventures, partnerships or limited liability companies involved in any project with a construction value of $100,000,000 or greater before such joint venture, partnership or limited liability company is included in the list on file with us; and

3.  This policy will apply excess of any other insurance available to such joint venture, partnership or limited liability company.

Section **IV.  EXCLUSIONS** is amended to include the following additional exclusion:

**Joint Ventures, Partnerships, and Limited Liability Companies**

This policy does not provide coverage for any liability arising out of a joint venture, partnership, or limited liability company for any **Occurrence** that took place before the **Named Insured** acquired, joined or formed the joint venture, partnership or limited liability company.

Solely with respect to the coverage provided by this endorsement, Section **VI. DEFINITIONS**, Paragraph R. **Retained Limit** is amended to include the following additional provision:

This policy does not recognize erosion or exhaustion of the limits of any applicable **Scheduled Underlying Insurance** due to scaling of limits provisions relating to any joint venture, partnership or limited liability company.

Solely with respect to the coverage provided by this endorsement, Section **V. CONDITIONS** is amended to include the following additional condition:

If this policy and any **Other Insurance** provided by us or any of our affiliated companies through the Excess Casualty division to any other member of a joint venture, limited liability company, or partnership of which the **Named Insured** is also a member or partner will apply to the same claim, **Suit** or **Occurrence**, the maximum limit of insurance under all insurance available will not exceed the highest applicable limit of insurance available under any one policy.  However, this condition will not apply if the insurance is specifically written to be excess of this policy.

The insurance afforded under this endorsement shall not be subject to any requirement of Paragraph F. **Insured**, of Section **VI. DEFINITIONS** that a joint venture, partnership, or limited liability company be shown as a **Named Insured** in the Declarations.

**To the extent any provision of this endorsement conflicts with any provision of this policy or any of its other endorsements, the provisions of this endorsement will supersede.**

All other terms and conditions of this **policy** remain unchanged.

By:

**Joseph Cellura**

Title:   **President, North American Casualty Division**

Date:   **September 8, 2016**

**Endorsement No: 30**
This Endorsement, effective: June 1, 2016
                          (at 12:01 A.M. standard time at the address of the **Named Insured** as
                          shown in Item 1. B. of the Declarations)
forms a part of Policy No: 0308-4113
Issued to: Flatiron Construction Corp.
by: Allied World Specialty Insurance Company


## RESIDENTIAL CONSTRUCTION OPERATIONS EXCLUSION
## (WITH EXCEPTION FOR PUBLIC STREETS OR ROADS OR PUBLIC RIGHT OF WAYS)


It is agreed that this policy is amended as follows:

Section **IV. EXCLUSIONS** is amended to include the following additional exclusion:

   **Residential Construction Operations**

   This policy does not provide coverage for **Bodily Injury**, **Property Damage** or **Personal Injury and
   Advertising Injury** arising out of **Residential Construction Operations**.  This exclusion applies
   whether or not the **Residential Construction Operations** have been completed or are ongoing.

Section **VI. DEFINITIONS** is amended to include the following additional definition:

   **Residential Construction Operations** means any activity by or on behalf of any **Insured**, in any
   capacity, regarding, related to, or in support of, any construction of detached single family houses,
   attached single family houses, residential condominiums or residential cooperatives.

   **Residential Construction Operations** do not include construction of public streets or roads or public
   right of ways.



All other terms and conditions of this **policy** remain unchanged.



**By:**

Joseph Cellura

**Title:**    **President, North American Casualty Division**

**Date:**    **September 8, 2016**




FC Manu G                         Page 1 of 1

**POLICYHOLDER DISCLOSURE STATEMENT**
**UNDER THE**
**TERRORISM RISK INSURANCE ACT**

The **Insured** is hereby notified that under the federal Terrorism Risk Insurance Act, as amended, (the "Act"), the **Insured** has a right to purchase insurance coverage for **Losses** arising out of an Act of Terrorism, as defined in Section 102(1) of the Act. The term "act of terrorism" means any act certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside of the United States in case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. The **Insured** should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism covered by the Act is final and not subject to review.

Coverage provided by this policy for **Losses** caused by a Certified Act of Terrorism may be partially reimbursed by the United States Government under a formula established by federal law. However, the **Insured's** policy may contain other exclusions that might affect coverage, such as an exclusion for nuclear events. Under the formula, the United States Government will generally reimburse 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020, of covered terrorism **Losses** exceeding a statutorily established deductible that we must meet, and which deductible is based on a percentage of our direct earned premiums for the year preceding the Certified Act of Terrorism.

Be advised that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap on all losses resulting from Certified Acts of Terrorism. If aggregate insured losses attributable to Certified Acts of Terrorism exceed $100 billion in a calendar year, the United States Government shall not make any payment for any portion of the amount of such loss that exceeds $100 billion. If aggregate insured losses attributable to Certified Acts of Terrorism exceed $100 billion in a calendar year and we have met our deductible under the Act, we shall not be liable for payment of any portion of the losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Coverage for "insured losses" as defined in the Act is subject to the coverage terms, conditions, amounts and limits in this policy applicable to **Losses** arising from events other than Certified Acts of Terrorism.

The **Insured** should know that under federal law, the **Insured** is not required to purchase coverage for **Losses** caused by Certified Acts of Terrorism.

Please indicate the selection of the **Insured** below.

___The **Insured** hereby elects to purchase coverage in accordance with the Act for a premium of ████ .

___The **Insured** hereby rejects coverage and accepts reinstatement of the exclusion in accordance with the Act.

_____
Signature of **Insured**

_____
Print/Title

_____
Date

Flatiron Construction Corp.

0308-4113

UM 00005 00 (01/15)

Page 1 of 1



## ALLIED WORLD SPECIALTY INSURANCE COMPANY
## Umbrella Liability Insurance Policy

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the **Named Insured** shown in the Declarations and any other person or organization qualifying as a **Named Insured** under this policy.

The words "we," "us" and "our" refer to the company providing this insurance. The word **Insured** means any person or organization qualifying as such under Section VI., "Definitions."

Except for headings, words that appear in **bold print** have special meaning. See Section VI., "Definitions."

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree to provide coverage as follows:

**I.   INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY**

A.   We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract.**

The amount we will pay for damages is limited as described in Section III., "Limits of Insurance."

B.   This policy applies, only if:

1.   the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period;** and

2.   the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period.**

C.   This policy applies to **Bodily Injury** or **Property Damage**, only if prior to the **Policy Period**, no **Insured** listed under subparagraphs 2.a., 2.b., 2.c. or 2.e. of Paragraph F. of Section VI., "Definitions," no executive officer or director listed under subparagraph 2.d. of Paragraph F. of Section VI. and no employee authorized by you to give or receive notice of an **Occurrence,** claim or **Suit,** knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part. If such an **Insured** or authorized employee knew, prior to the **Policy Period,** that the **Bodily Injury** or **Property Damage** had occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period.**

**Bodily Injury** or **Property Damage** which occurs during the **Policy Period** and was not, prior to the **Policy Period,** known to have occurred by any **Insured** listed under subparagraphs 2.a., 2.b., 2.c. or 2.e. of Paragraph F. of Section VI., "Definitions," any executive officer or director listed under subparagraph 2.d. of Paragraph F. of Section VI. or any employee authorized by you to give or receive notice of an **Occurrence** or claim, includes any continuation, change or resumption of that **Bodily Injury** or **Property Damage** after the end of the **Policy Period.**

D.  **Bodily Injury** or **Property Damage** will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under subparagraphs 2.a., 2.b., 2.c. or 2.e. of Paragraph F. of Section VI., "Definitions," any executive officer or director listed under subparagraph 2.d. of Paragraph F. of Section VI. or any employee who was authorized by you to give or receive notice of an **Occurrence,** claim or **Suit:**

   1.  reports all, or any part, of the **Bodily Injury** or **Property Damage** to us or any other insurer;

   2.  receives a written or verbal demand or claim for damages because of the **Bodily Injury** or **Property Damage**; or

   3.  becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur.

E.  Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

F.  If we are prevented by law or statute from paying damages covered by this policy on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the **Retained Limit**.

## II.  DEFENSE PROVISIONS

A.  We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

   1.  the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

   2.  the damages sought because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance,** even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

   If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B.  We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance does not apply.

C.  When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

   1.  investigate, negotiate and settle the **Suit** as we deem expedient; and

   2.  pay the following supplementary payments to the extent that such payments are not covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**:

      a.  premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

b.  premiums on appeal bonds required by law to appeal a judgment in a **Suit** for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

c.  all court costs taxed against the **Insured** in the **Suit**;

d.  pre-judgment interest awarded against the **Insured** on that part of the judgment within the applicable Limits of Insurance of this policy we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest accruing after we make such offer;

e.  post-judgment interest that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

f.  the **Insured's** expenses incurred at our request or with our consent.

D.  Except as provided in Paragraph A. above, we will have no duty to defend any **Suit** against the **Insured**. We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

E.  We will not defend any **Suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph C. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of **Loss** and we will have the right to withdraw from the further defense of such **Suit** by tendering control of said defense to the **Insured.**

## III.  LIMITS OF INSURANCE

A.  The Limits of Insurance shown in Item 3. of the Declarations and the rules below state the most we will pay for all damages under this policy regardless of the number of:

1.  **Insureds;**

2.  claims made or **Suits** brought;

3.  persons or organizations making claims or bringing **Suits**; or

4.  coverages provided under this policy.

B.  The General Aggregate Limit stated in Item 3. of the Declarations is the most we will pay for all damages under this policy, except for:

1.  damages included within the **Products-Completed Operations Hazard;** and

2.  damages because of **Bodily Injury** or **Property Damage** to which this policy applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto** covered under **Scheduled Underlying Insurance.**

C.  The Products-Completed Operations Aggregate Limit stated in Item 3. C. of the Declarations is the most we will pay for all damages included in the **Products-Completed Operations Hazard.**

D.  Subject to Paragraphs B. and C. above, the Each Occurrence Limit stated in Item 3. A. of the Declarations is the most we will pay for the sum of all damages arising out of any one **Occurrence.**

E.  Subject to Paragraphs B. and C. above, the most we will pay for damages under this policy on behalf of any person or organization to whom you are obligated by written **Insured Contract** to provide insurance such as is afforded by this policy is the lesser of the Limits of Insurance shown in Item 3. of the Declarations or the minimum Limits of Insurance you agreed to procure in such written **Insured Contract.**

F.  This policy applies only in excess of the **Retained Limit.** If however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

1.  greater than the amount shown in such schedule, this policy will apply in excess of the greater amount of valid and collectible insurance; or

2.  less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G.  If the total applicable limits of **Scheduled Underlying Insurance** are reduced or exhausted by the payment of **Loss** to which this policy applies and the total applicable limits of applicable **Other Insurance** are reduced or exhausted, we will:

1.  in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance;** and

2.  in the event of exhaustion, continue in force as underlying insurance.

H.  Expenses incurred to defend any **Suit** or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy. Provided, however, that if such expenses reduce the applicable limits of **Scheduled Underlying Insurance,** then such expenses will reduce the applicable Limits of Insurance of this policy.

I.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

J.  We will not make any payment under this policy unless and until:

1.  the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which this policy applies and any applicable **Other Insurance** has been exhausted by the payment of **Loss**; or

2.  the total applicable **Self-Insured Retention** has been satisfied by the payment of **Loss** to which this policy applies.

When the amount of **Loss** has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the **Insured** the amount of such **Loss** falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

**IV.   EXCLUSIONS**

A.  **Aircraft and Watercraft**

This policy does not provide coverage for **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any **Insured.** Use includes operation and loading and unloading.

This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured,** if the **Occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any **Insured.**

This exclusion does not apply to a watercraft you do not own that is:

1.  less than 26 feet long; and

2.  not being used to carry persons or property for a charge.

B.  **Asbestos**

This policy does not provide coverage for any liability arising out of:

1.  the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos containing products or materials, asbestos fibers or asbestos dust;

2.  any obligation of the **Insured** to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.  any obligation to defend any **Suit** or claim against the **Insured** that seeks damages if such **Suit** or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

C.  **Contractual Liability**

This policy does not provide coverage for any liability for which the **Insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1.  that the **Insured** would have in the absence of a contract or agreement; or

2.  assumed in an **Insured Contract**, provided **Bodily Injury** or **Property Damage** occurs subsequent to the execution of the **Insured Contract**. Solely for the purposes of liability assumed in an **Insured Contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury** or **Property Damage** and included in the Limits of Insurance of this policy, provided:

a.  liability to such party for, or for the cost of, that party's defense has also been assumed in the same **Insured Contract**; and

    b.   such attorney fees and litigation expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this policy applies are alleged.

D.  **Damage to Impaired Property or Property Not Physically Injured**

This policy does not provide coverage for **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1.   a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2.   a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

E.  **Damage to Property**

This policy does not provide coverage for **Property Damage** to:

1.   property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2.   premises you sell, give away or abandon, if the **Property Damage** arises out of any part of those premises;

3.   property loaned to you;

4.   personal property in the care, custody or control of the **Insured**;

5.   that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the **Property Damage** arises out of those operations; or

6.   that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

Subparagraph 2. of this exclusion does not apply if the premises are **Your Work** and were never occupied, rented or held for rental by you.

Subparagraphs 3., 4., 5. and 6. of this exclusion do not apply to liability assumed under a sidetrack agreement.

Subparagraph 6. of this exclusion does not apply to **Property Damage** included in the **Products-Completed Operations Hazard**.

F.  **Damage to Your Product**

This policy does not provide coverage for **Property Damage** to **Your Product** arising out of it or any part of it.

G. **Damage to Your Work**

This policy does not provide coverage for **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H. **Electronic Chatrooms or Bulletin Boards and Electronic Data**

This policy does not provide coverage for **Personal Injury and Advertising Injury** arising out of an electronic chatroom or bulletin board any **Insured** hosts, owns, or over which any **Insured** exercises control. Additionally, this insurance does not apply to damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

I. **Employees and Volunteers**

This policy does not provide coverage for liability of any employee or volunteer qualifying as an **Insured** under this policy arising out of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury**:

1.  to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to an employee of yours while in the course of his or her employment or performing duties related to the conduct of your business, or to another volunteer of yours while performing duties related to the conduct of your business;

2.  to the spouse, child, parent, brother or sister of such injured employee or volunteer as a consequence of subparagraph 1. above;

3.  for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in subparagraphs 1. or 2. above; or

4.  arising out of his or her providing or failing to provide professional health care services.

Subparagraphs 1., 2. and 3. above do not apply to any liability arising out of **Bodily Injury** or **Personal Injury and Advertising Injury** if such coverage is provided by **Scheduled Underlying Insurance.** Coverage under this policy for **Bodily Injury** or **Personal Injury and Advertising Injury** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance,** subject to the **Policy Period,** Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance.**

J. **Employment Practices**

This policy does not provide coverage for any liability arising out of:

1.  failure to hire any prospective employee or any applicant for employment;

2.  dismissal, discharge or termination of any employee;

3.  failure to promote or advance any employee; or

4.  employment-related practices, policies, acts, omissions or misrepresentations directed at a present, past, future or prospective employee, including, but not limited to:

   a.  coercion, harassment, humiliation or discrimination;

   b.  demotion, evaluation, reassignment, discipline, or retaliation;

   c.  libel, slander, humiliation, defamation, or invasion of privacy; or

   d.  violation of civil rights.

This exclusion applies:

1.  whether an **Insured** may be liable as an employer or in any other capacity; and

2.  to any obligation to share damages with or repay someone else who must pay damages because of the injury.

### K. Expected or Intended Injury

This policy does not provide coverage for **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured.** However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

### L. Infringement of Copyright, Patent, Trademark or Trade Secret

This policy does not provide coverage for **Personal Injury and Advertising Injury** arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement, in your **Advertisement,** of copyright, trade dress or slogan.

### M. Liquor Liability

This policy does not provide coverage for **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

1.  causing or contributing to the intoxication of any person;

2.  the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3.  any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, this exclusion will not apply if coverage is provided for such **Bodily Injury** or **Property Damage** by **Scheduled Underlying Insurance.**

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance,** subject to the **Policy Period,** Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance.**

N.  **Media and Internet Type Businesses**

This policy does not provide coverage for **Personal Injury and Advertising Injury** committed by any **Insured** whose business is:

1.  advertising, broadcasting, publishing or telecasting;

2.  designing or determining content of web-sites for others; or

3.  an Internet search, access, content or service provider.

However, this exclusion does not apply to subparagraphs M.1., M.2. and M.3. of Section VI., "Definitions."

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

O.  **No-Fault, Uninsured Motorist or Underinsured Motorist Laws**

This policy does not provide coverage for any obligation of the **Insured** under any No-Fault, Uninsured Motorist or Underinsured Motorist law, or any similar law.

P.  **Nuclear Liability**

This policy does not provide coverage for:

1.  any liability:

    a.  with respect to which the **Insured** is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability;

    b.  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendment or revision thereto, or any similar law; (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

    c.  for **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material if:

        i)   the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf or (2) has been discharged or dispensed therefrom;

        ii)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

        iii) the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located

within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

2. As used in this exclusion:

   a. "hazardous properties" includes radioactive, toxic or explosive properties;

   b. "nuclear material" means source material, special nuclear material or by-product material;

   c. "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any amendment or revision thereto;

   d. "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   e. "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

   f. "nuclear facility" means:

      i)   any nuclear reactor;

      ii)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

      iii) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than twenty-five (25) grams of plutonium or uranium 233 or any combination thereof, or more than two-hundred-fifty (250) grams of uranium 235; or

      iv)  any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and

      includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

   g. "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material; and

   h. **Property Damage** includes all forms of radioactive contamination of property.

Q. **Pollution**

This policy does not provide coverage for:

1. Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3. Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of **Pollutants**.

However, Paragraph 1. of this exclusion will not apply if coverage for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) below is provided by **Scheduled Underlying Insurance**:

1) **Products-Completed Operations Hazard**

Paragraph 1. of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

a) discarded, dumped, abandoned, thrown away; or

b) transported, handled, stored, treated, disposed of or processed as waste;

by anyone.

2) **Hostile Fire**

Paragraph 1. of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**.

3) **Equipment to Cool, Dehumidify, or Heat the Building and Contractor/Lessee Operations**

Paragraph 1. of this exclusion does not apply to:

a) **Bodily Injury** sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment used to heat water for personal use, by the building's occupants or their guests;

b) **Bodily Injury** or **Property Damage** for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional **Insured** with respect to your ongoing operations performed for that additional **Insured** at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than the additional **Insured**.

4) **Fuels, Lubricants and Other Operating Fluids - Mobile Equipment**

Paragraph 1. of this exclusion does not apply to:

a) **Bodily Injury** or **Property Damage** arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of **Mobile Equipment** or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **Bodily Injury** or **Property Damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or

released as part of the operations being performed by such insured contractor or subcontractor; or

b) **Bodily Injury** or **Property Damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5) **Fuels, Lubricants, Fluids, etc. – Auto**

Paragraph 1. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar **Pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an **Auto** covered by **Scheduled Underlying Insurance** or its parts, if:

a) the **Pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **Auto** part designed by its manufacturer to hold, store, receive or dispose of such **Pollutants**; and

b) the **Bodily Injury** or **Property Damage** does not arise out of the operation of any equipment described in subparagraphs 6.b. and 6.c. of the definition of **Mobile Equipment**.

6) **Upset, Overturn or Damage of an Auto**

Paragraph 1. of this exclusion does not apply to **Occurrences** that take place away from premises owned by or rented to an **Insured** with respect to **Pollutants** not in or upon an **Auto** covered by **Scheduled Underlying Insurance** if:

a) the Pollutants or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **Auto** covered by **Scheduled Underlying Insurance**; and

b) the discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

Coverage under this policy for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) above will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

R. **Recall of Your Product, Your Work or Impaired Property**

This policy does not provide coverage for damages claimed for any **Loss**, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. **Your Product**;

2. **Your Work**; or

3. **Impaired Property**;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

S. **Securities**

This policy does not provide coverage for any liability arising out of:

1. any violation of any securities law or similar law or any regulation promulgated thereunder;

2. the purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

3. any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

4. any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

T. **Unauthorized Use of Another's Name or Product**

This policy does not provide coverage for **Personal Injury and Advertising Injury** arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

U. **Various Personal Injury and Advertising Injury**

This policy does not provide coverage for **Personal Injury and Advertising Injury**:

1. caused by or at the direction of the **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal Injury and Advertising Injury**;

2. arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of any **Insured** with knowledge of its falsity;

3. arising out of oral, written or electronic publication, in any manner, of material whose first publication took place before the beginning of the **Policy Period**;

4. arising out of a criminal act committed by or at the direction of the **Insured**;

5. for which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement;

6. arising out of a breach of contract, except an implied contract to use another's advertising idea in your **Advertisement**;

7. arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your **Advertisement**; or

8. arising out of the wrong description of the price of goods, products or services stated in your **Advertisement**.

V. **Various Laws**

This policy does not provide coverage for any obligation of the **Insured** under any of the following:

1. the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), or any amendment or revision thereto, or any similar law; or

2. any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

W. **Violation of Communication or Information Law**

This policy does not provide coverage for any liability arising out of any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws that prohibits or limits the sending, transmitting or communicating of material or information.

X. **War**

This policy does not provide coverage for any **Loss**, costs, injury, damage, claim, dispute and/or or **Suit** arising therefrom, caused directly or indirectly, in whole or in part, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes:

1. Civil war;

2. Armed conflict between two or more nations, armed conflict between military forces of any origin, or warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## V. CONDITIONS

A. **Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable limits of **Scheduled Underlying Insurance**, we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

B. **Audit**

We may audit and examine your books and records as they relate to this policy at any time during the **Policy Period** of this policy and for up to three (3) years after the expiration or termination of this policy.

C. **Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this

policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under **Scheduled Underlying Insurance**.

D. **Cancellation**

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1. of the Declarations will be sufficient to prove notice.

3. The **Policy Period** will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium shown in Item 6. of the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium shown in Item 6 of the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first **Named Insured** in Item 1. of the Declarations will act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

E. **Change In Control**

If during the **Policy Period:**

1. the first **Named Insured** designated in Item 1. of the Declarations consolidates with or merges into, or sells all or substantially all of its assets to any person or entity; or

2. any person or entity acquires an amount of the outstanding ownership interests representing more than fifty percent (50%) of the voting or designation power for the election of directors of the first **Named Insured** designated in Item 1. of the Declarations, or acquires the voting or designation rights of such an amount of ownership interests;

this policy will continue in full force and effect as to **Bodily Injury** and **Property Damage** that occur prior to the effective date of such transaction and **Personal Injury and Advertising Injury** caused by an **Occurrence** that takes place prior to the effective date of such transaction.

Coverage will be afforded by this policy for **Bodily Injury** or **Property Damage** that occurs on or after the effective date of such transaction and **Personal Injury and Advertising Injury** caused

by an **Occurrence** that takes place on or after the effective date of such transaction if the **Named Insured** notifies us of the transaction no later than ninety (90) days after the effective date of the transaction.

If the **Named Insured** fails to notify us within ninety (90) days of the effective date of such transaction coverage afforded by this policy will cease on the ninetieth (90th) day after the effective date of such transaction at 12:01 am standard time of the address of the **Named Insured** shown in Item 1. of the Declarations or the end of the **Policy Period,** whichever is earlier.

The provisions of paragraph E. shall only apply to transactions with third parties not under control or ownership of the **Named Insured** on the inception date of this policy.

F.  **Changes**

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy. This policy can be changed only by a written endorsement that we make to this policy.

G.  **Duties in the Event of an Occurrence, Claim or Suit**

1.  You must see to it that we are notified as soon as practicable of an **Occurrence** that may result in a claim or **Suit** under this policy. To the extent possible, notice should include:

    a.  how, when and where the **Occurrence** took place;

    b.  the names and addresses of any injured persons and any witnesses; and

    c.  the nature and location of any injury or damage arising out of the **Occurrence.**

2.  If a claim is made or **Suit** is brought against any **Insured** which is reasonably likely to involve this policy, you must notify us in writing as soon as practicable.

    Written notice should be mailed, delivered, faxed or e-mailed to us at the addresses designated in the Declarations.

3.  You and any other involved **Insured** must:

    a.  immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **Suit;**

    b.  authorize us to obtain records and other information;

    c.  cooperate with us in the investigation, settlement or defense of the claim or **Suit**; and

    d.  assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4.  No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

H.  **Headings**

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

I.   **Inspection**

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions that we find. We may also recommend changes. We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

J.   **Legal Actions Against Us**

No person or organization has a right under this policy:

1.   to join us as a party or otherwise bring us into a **Suit** asking for damages from an **Insured**; or

2.   to sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an **Insured**; but we will not be liable for damages that are not payable under this policy or that are in excess of the applicable Limits of Insurance of this policy. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

K.   **Maintenance of Scheduled Underlying Insurance**

You agree that during the **Policy Period**:

1.   you will keep **Scheduled Underlying Insurance** in full force and effect;

2.   the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance** will not materially change;

3.   the total applicable limits of **Scheduled Underlying Insurance** will not decrease, except for any reduction or exhaustion of aggregate limits by payment of **Loss** to which this policy applies; and

4.   any renewals or replacements of **Scheduled Underlying Insurance** will provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would have, had you fully complied with these requirements.

L.   **Other Insurance**

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the **Other Insurance.** However, this provision will not apply if the **Other Insurance** is specifically written to be excess of this policy.

M.   **Premium**

The first **Named Insured** designated in Item 1. of the Declarations will be responsible for payment of all premiums when due. The premium for this policy will be computed on the basis set

forth in Item 6. of the Declarations. At the beginning of the **Policy Period,** you must pay us the Advance Premium shown in Item 6. of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event, we will retain the Minimum Premium as shown in Item 6. of the Declarations for each twelve months of the **Policy Period.**

N.  **Separation of Insureds**

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to the first **Named Insured** designated in Item 1. of the Declarations, this insurance applies:

  1.  as if each **Named Insured** were the only **Named Insured;** and

  2.  separately to each **Insured** against whom claim is made or **Suit** is brought.

O.  **Transfer of Rights of Recovery**

  1.  If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

  2.  Any recoveries will be applied as follows:

    a.  any person or organization, including the **Insured,** that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

    b.  we then will be reimbursed up to the amount we have paid; and

    c.  lastly, any person or organization, including the **Insured** that has paid an amount over which this policy is excess is entitled to claim the remainder.

    Expenses incurred in the exercise of rights of recovery will be apportioned among the persons or organizations, including the **Insured,** in the ratio of their respective recoveries as finally settled.

  3.  If, prior to the time of an **Occurrence**, you waive any right of recovery against a specific person or organization for injury or damage as required under an **Insured Contract**, we will also waive any rights we may have against such person or organization

P.  **Transfer of Your Rights and Duties**

Your rights and duties under this policy may not be transferred without our written consent. If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1.A. of the Declarations and mailed to the address designated in Item 1.B. of the Declarations of this policy will be sufficient notice to effect cancellation of this policy.

Q. **Unintentional Failure to Disclose**

Your failure to disclose all hazards existing as of the inception date of the policy will not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

R. **Violation of Economic or Trade Sanctions**

If coverage for a claim or **Suit** under this policy is in violation of any United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim or **Suit** will be null and void.

## VI. DEFINITIONS

A. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1. notices that are published include material placed on the internet or on similar electronic means of communication; and

2. regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an **Advertisement**.

B. **Auto** means:

1. a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

2. any other land vehicle that is subject to a compulsory or financial responsibility law in the state where it is licensed or principally garaged. However, **Auto** does not include **Mobile Equipment**.

C. **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

D. **Hostile Fire** means a fire that becomes uncontrollable or breaks out from where it was intended to be.

E. **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

1. it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2. you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2. your fulfilling the terms of the contract or agreement.

F.   **Insured** means:

1.   the **Named Insured**;

2.   if you are designated in the Declarations as:

a.   an individual, you and your spouse are **Insureds**, but only with respect to the conduct of a business of which you are the sole owner;

b.   a partnership or joint venture, you are an **Insured**. Your members, your partners, and their spouses are also **Insureds**, but only with respect to the conduct of your business;

c.   a limited liability company, you are an **Insured**. Your members are also **Insureds**, but only with respect to the conduct of your business. Your managers are **Insureds**, but only with respect to their duties as your managers;

d.   an organization other than a partnership, joint venture or limited liability company, you are an **Insured**. Your executive officers and directors are **Insureds**, but only with respect to their duties as your officers or directors. Your stockholders are also **Insureds**, but only with respect to their liability as stockholders;

e.   a trust, you are an **Insured**. Your trustees are also **Insureds**, but only with respect to their duties as trustees;

3.   your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

4.   your volunteer workers only while performing duties related to the conduct of your business;

5.   any person (other than your employee or volunteer worker) or organization while acting as your real estate manager;

6.   your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy;

7.   any person or organization, other than the **Named Insured,** included as an Additional Insured under **Scheduled Underlying Insurance,** but not for broader coverage than would be afforded by such **Scheduled Underlying Insurance.**

Notwithstanding any of the above:

a.   no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1. of the Declarations; and

b.   no person or organization is an **Insured** under this policy who is not an **Insured** under applicable **Scheduled Underlying Insurance.** This provision shall not apply to any organization set forth in the definition of **Named Insured** in subparagraphs J. 2 and 3.

G.   **Insured Contract** means that part of any contract or agreement pertaining to your business under which any **Insured** assumes the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**Insured Contract** does not include that part of any contract or agreement:

1. that indemnifies a railroad for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the **Insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **Insured's** rendering or failure to render professional services, including those shown in subparagraph 2. above and supervisory, inspection, architectural or engineering activities.

H. **Loss** means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a **Suit** or to investigate a claim reduce the applicable limits of **Scheduled Underlying Insurance**, then **Loss** shall include such expenses.

I. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises you own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. vehicles not described in subparagraphs 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in subparagraphs 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Autos**:

   a. equipment designed primarily for:

       i)   snow removal;

       ii)   road maintenance, but not construction or resurfacing; or

       iii)  street cleaning;

  **b.**  cherry pickers and similar devices mounted on auto or truck chassis and used to raise or lower workers; and

  **c.**  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, **Mobile Equipment** does not include any land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law are considered **Autos.**

**J.**  **Named Insured** means:

  1.  any person or organization designated in Item 1. of the Declarations;

  2.  as of the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

  3.  after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

      **a.**  coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

      **b.**  you give us prompt notice after you acquire or form such organization.

      Subject to the provisions of subparagraphs 3. a. and 3. b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

      We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

You agree that any organization to which subparagraphs 2. and 3. above apply, will be required to be included as an **Insured** under applicable **Scheduled Underlying Insurance.** If you fail to comply with this requirement, coverage under this policy will apply as though the organization was included as an **Insured**, under the highest applicable limit of **Scheduled Underlying Insurance**.

K.  **Occurrence** means:

1.  as respects **Bodily Injury or Property Damage,** an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence.**

2.  as respects **Personal Injury and Advertising Injury,** an offense arising out of your business that causes **Personal Injury and Advertising Injury.** All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

L.  **Other Insurance** means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance**, the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

M.  **Personal Injury and Advertising Injury** means injury arising out of your business, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

1.  false arrest, detention or imprisonment;

2.  malicious prosecution;

3.  the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

4.  oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

5.  oral or written publication, in any manner, of material that violates a person's right of privacy;

6.  the use of another's advertising idea in your **Advertisement**; or

7.  infringement upon another's copyright, trade dress or slogan in your **Advertisement**.

N.  **Policy Period** means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of termination of this policy.

O.  **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

P.  **Products-Completed Operations Hazard** means all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

1.  products that are still in your physical possession; or

2.  work that has not yet been completed or abandoned. However, **Your Work** will be deemed completed at the earliest of the following times:

a. when all of the work called for in your contract has been completed;

b. when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

c. when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project. Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**Products-Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

1. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any **Insured**; or

2. the existence of tools, uninstalled equipment or abandoned or unused materials.

Q. **Property Damage** means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the **Occurrence** that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

R. **Retained Limit** means the greater of the following amounts:

1. the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the **Insured**; or

2. the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

S. **Scheduled Underlying Insurance** means:

1. the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

2. automatically any renewal or replacement of any policy in subparagraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

T. **Self-Insured Retention** means the amount that is shown in Item 5. of the Declarations.

U. **Suit** means a civil proceeding in which damages because of **Bodily Injury, Property Damage,** or **Personal Injury and Advertising Injury** to which this policy applies are alleged. **Suit** includes:

    1. an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

    2. any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with our consent.

V. **Your Product** means:

    1. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        a. you;

        b. others trading under your name; or

        c. a person or organization whose business or assets you have acquired; and

    2. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **Your Product** includes:

    1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product;** and

    2. the providing of or failure to provide warnings or instructions. **Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

W. **Your Work** means:

    1. work or operations performed by you or on your behalf; and

    2. materials, parts or equipment furnished in connection with such work or operations.

    **Your Work** includes:

    1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

    2. the providing of or failure to provide warnings or instructions.

**EXHIBIT B**



# SANCTIONS EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided.  Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**



# Important Notice to Policyholders

The address for the headquarters of Zurich North America will change after August 1, 2016 due to a relocation of our office in the same city. The new address is:

Customer Inquiry Center
Zurich North America
1299 Zurich Way
Schaumburg, IL 60196
1-800-382-2150

For specific questions regarding your policy, please contact your agent or broker.  For other questions, you may contact the Customer Inquiry Center of Zurich North America.   Any references to post office boxes previously provided remain unchanged.

**Insured Name:**
**Policy Number:**
**Effective Date:**



### THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

**SCHEDULE\***

| |
|---|
| Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA: |
| General Liability ▮▮▮▮▮▮▮▮▮▮ |

\*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government may pay a share of insured losses resulting from an act of terrorism. The federal share will decrease by 5% from 85% to 80% over a five year period while the insurer share increases by the same amount during the same period. The schedule below illustrates the decrease in the federal share:

January1, 2015 – December 31, 2015 federal share: 85%

January1, 2016 – December 31, 2016 federal share: 84%

January1, 2017 – December 31, 2017 federal share: 83%

January1, 2018 – December 31, 2018 federal share: 82%

January1, 2019 – December 31, 2019 federal share: 81%

January1, 2020 – December 31, 2020 federal share: 80%

**C. Disclosure of $100 Billion Cap on All Insurer and Federal Obligations**

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**D. Availability**

As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-GU-630-D CW (01/15)
Page 1 of 2

**E.  Definition of Act of Terrorism under TRIA**

TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

**1.**  To be an act of terrorism;

**2.**  To be a violent act or an act that is dangerous to human life, property or infrastructure;

**3.**  To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

**4.**  To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.



# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| Insureds Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
| | | | |

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies your insurance:

## A.  Cap on Losses From Certified Terrorism Losses

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

**1.**  To be an act of terrorism;

**2.**  To be a violent act or an act that is dangerous to human life, property or infrastructure;

**3.**  To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

**4**.  To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

If aggregate insured losses attributable to one or more "certified acts of terrorism" exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

## B.  Application of Other Exclusions

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-GU-767-B CW (01/15)
Page 1 of 1

# Disclosure Statement



It is our pleasure to present the enclosed policy to you
for presentation to your customer.

**INSTRUCTION TO AGENT OR BROKER:**

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER
WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.

# Disclosure Statement



**NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number:  (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.



**COMMERCIAL INSURANCE**

**ZURICH**

**COMMON POLICY DECLARATIONS**

| | |
|---|---|
| Policy Number   GLO 5939707-08 | Renewal of Number   GLO 5939707-07 |

Named Insured and Mailing Address

FLATIRON CONSTRUCTION CORP.
(SEE NAMED INSURED ENDT)
PO BOX 2239
LONGMONT CO 80502-2239

Producer and Mailing Address

TURNER SURETY AND INSURANCE BR
650 FROM RD STE 295
PARAMUS NJ 07652-3517

Producer Code   25554-000

Policy Period:  Coverage begins   06-01-2016   at 12:01 A.M.;  Coverage ends 06-01-2017   at 12:01 A.M.

The name insured is   ☐ Individual         ☐ Partnership         ☒ Corporation
☐   Other:

This insurance is provided by one or more of the stock insurance companies which are members of the Zurich-American Insurance Group. The company that provides coverage is designated on each Coverage Part Common Declarations. The company or companies providing this insurance may be referred to in this policy as "The Company", we, us, or our. The address of the companies of the Zurich-American Insurance Group are provided on the next page.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE(S):**

GENERAL LIABILITY COVERAGE
  issued by ZURICH AMERICAN INSURANCE COMPANY

| | | |
|---|---|---|
| **THIS PREMIUM MAY BE SUBJECT TO AUDIT.** | **TOTAL** | |
| This premium does not include Taxes and Surcharges. | | |
| **Taxes and Surcharges** | **TOTAL** | $ |

The Form(s) and Endorsement(s) made a part of this policy at the time of issue are listed on the **SCHEDULE of FORMS and ENDORSEMENTS.**

Countersigned this         day of

Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART FORM(S), FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

**Policy Number**
**GLO 5939707-08**

**SCHEDULE OF FORMS AND ENDORSEMENTS**

**Zurich American Insurance Company**

Named Insured   FLATIRON CONSTRUCTION CORP.                    Effective Date: 06-01-16
                                                               12:01 A.M., Standard Time

Agent Name   TURNER SURETY AND INSURANCE BR                    Agent No.  25554-000

COMMON POLICY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-GU-1191-A CW | 03-15 | SANCTIONS EXCLUSION ENDORSEMENT |
| U-GU-630-D CW | 01-15 | DISCLOSURE OF INFO RELATING TO TRIA |
| U-GU-767-B CW | 01-15 | CAP ON LOSS FROM CERTIFIED ACTS OF TERR |
| U-GU-D-310-A | 01-93 | COMMON POLICY DECLARATIONS |
| U-GU-619-A CW | 10-02 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| U-GU-319-F | 01-09 | IMPORTANT NOTICE - IN WITNESS CLAUSE |
| U-GU-621-A CW | 10-02 | SCHEDULE OF NAMED INSURED(S) |
| U-GU-406-A | 07-94 | INSTALLMENT PREMIUM SCHEDULE |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 21 | 09-08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| IL 01 25 | 11-13 | COLORADO CHANGES - CIVIL UNION |
| IL 02 28 | 09-07 | COLORADO CHANGES-CANC & NONRENEWAL |
| IL 00 03 | 09-08 | CALCULATION OF PREMIUM |
| U-GU-D-639-A CW | 07-07 | COMBINED AGGREGATE DEDUCTIBLE SCHEDULE |
| U-GU-1169-A CO | 06-13 | CO CIVIL UNION ACT POLICYHOLDER NOTICE |

GENERAL LIABILITY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-GL-1447-A CW | 05-10 | NOTIF TO OTHERS OF CANC NONR OR REDUCT |
| U-GL-1517-B CW | 04-13 | RECORD OR DISTRB OF MATRL OR INFO EXCL |
| U-GL-1518-A CW | 04-13 | BROADENED NAMED INSURED |
| U-GL-851-B CW | 06-04 | EMPLOYEE BENEFITS LIAB (OCCURRENCE) COV |
| U-GL-917-C CW | 08-04 | INCIDENTAL MEDICAL MALPRACTICE COV ENDT |
| U-GL-925-B CW | 12-01 | WAIVER OF SUBROGATION (BLANKET) ENDT. |
| U-GL-D-851-B CW | 09-04 | EMPLOYEE BENEFITS LIAB (OCCURRENCE) COV |
| U-GL-D-1115-B CW | 09-04 | COMMERCIAL GL COVERAGE PART DECLARATIONS |
| U-GL-1378-A CW | 03-09 | LIMITED COVERAGE/BLANKET WRAP-UP |
| CG 00 01 | 04-13 | COMMERCIAL GENERAL LIABILITY COV FORM |
| U-GL-1114-A CW | 10-02 | BROAD FORM NAMED INSURED |
| U-GL-1114-A CW | 10-02 | ADDITIONAL |
| | | INSURED-OWNERS,LESSEES,CONTRACTORS |
| U-GL-1060-E CW | 04-13 | CONTRACTORS LIABILITY ENDORSEMENT |
| UGL1171ACW | 07-03 | FUNGI OR BACTERIA EXCLUSION |
| U-GL-1175-F CW | 04-13 | ADDL INSD-AUTO-OWNERS LESSEES CONTRACTR |
| U-GL-1177-F CW | 04-13 | ADL INSD OWNER,LESSE,CONT-SCHEDULED |
| U-GL-1326-B CW | 10-07 | DEDUCTIBLE |
| U-GL-1327-B CW | 04-13 | OTH INS AMNDMT-PRIMARY & NONCONTRIBUTORY |
| U-GL-1342-A CW | 10-07 | LEAD LIABILITY EXCLUSION |
| U-GL-1178ACW | 07-03 | ASBESTOS EXCLUSION ENDORSEMENT |
| U-GL-872-B CW | 04-09 | PREMIUM & REPORTS AGREEMENT-COMP RATED |
| U-GL-852-A CW | 07-96 | EMPL BENEFITS LIAB (OCCURRENCE) DED ENDT |
| CG 02 24 | 10-93 | EARLIER NOTICE OF CANC PROVIDED BY US |
| CG 03 00 | 01-96 | DEDUCTIBLE LIABILITY INSURANCE |
| CG 20 10A | 04-13 | ADDL INSD - OWNERS/LESSEES/CONTRACTORS |
| CG 20 12 | 04-13 | ADDL INS-ST,GOV AGY,SUB,POL SUB-PERM |
| CG 20 26 | 04-13 | ADDL INSD-DESIGNATED PERSON/ORGANIZATION |
| CG 20 28 | 04-13 | ADDL INSD-LESSOR OF LEASED EQUIPMENT |
| CG 20 37. | 04-13 | ADDL INSD-OWNERS/LESSEES/CONTR-COMP OPS |
| CG 21 08 | 05-14 | EXCL-ACC/DISCL OF CONFI OR PERSONAL INFO |
| CG 21 47 | 12-07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 54 | 01-96 | EXCL-DESIGNATED OPERATIONS |
| CG 21 65 | 12-04 | TOTAL POLLUTION EXCL-WITH EXCEPTIONS |
| CG 21 86 | 12-04 | EXCL-EXTERIOR INSULATION & FINISH SYSTEM |

**U-GU-619-A CW (10/02)**

**Policy Number**
**GLO 5939707-08**

**SCHEDULE OF FORMS AND ENDORSEMENTS**

**Zurich American Insurance Company**

Named Insured   FLATIRON CONSTRUCTION CORP.

Effective Date: 06-01-16
12:01 A.M., Standard Time

Agent Name   TURNER SURETY AND INSURANCE BR

Agent No.  25554-000

| | | |
|---|---|---|
| CG 22 43 | 04-13 | EXCL-ENGINEERS, ARCH OR SURV (PROF LIAB) |
| CG 22 80 | 04-13 | LIMITED EXCL-CONTRACTORS-PROF LIAB |
| CG 24 17 | 10-01 | CONTRACTUAL LIABILITY - RAILROADS |
| CG 25 03 | 05-09 | DESIGNATED CONSTRUCTION PROJECTS GENERAL |
| CG 25 04 | 05-09 | DESIGNATED LOCATIONS GENERAL AGGREGATE |
| CG 33 78 | 05-10 | CO CHANGES-EMPLOYEE BENEFITS LIAB COV |
| CG 04 42 | 11-03 | STOP GAP - EMPLOYERS LIABILITY COVERAGE |

U-GU-619-A CW (10/02)



# Important Notice – In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

President

Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?**  Your agent or broker is best equipped to provide information about your insurance.  Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois  60196-1056
**1-800-382-2150** (Business Hours:  8am - 4pm [CT])
**Email:** info.source@zurichna.com

---

**Policy Number**
**GLO 5939707-08**

### SCHEDULE OF NAMED INSURED(S)

# ZURICH AMERICAN INSURANCE COMPANY

| | | |
|---|---|---|
| Named Insured | FLATIRON CONSTRUCTION CORP. | Effective Date: 06-01-16 |
| | | 12:01 A.M., Standard Time |
| Agent Name | TURNER SURETY AND INSURANCE BR | Agent No. 25554-000 |

NAMED INSURED

```
FLATIRON CONSTRUCTION CORP.
FLATIRON CONSTRUCTORS, INC.
FLATIRON ELECTRIC GROUP, INC.
FLATIRON WEST, INC.
FLATIRON/HARDY & HARPER, A JOINT VENTURE
FLATIRON/HERZOG, A JOINT VENTURE
FLATIRON/KIEWIT, A JOINT VENTURE
FLATIRON/H&H, A JOINT VENTURE
FLATIRON WEST, INC. DESILVA GATES A JOINT VENTURE
FLATIRON/PARSONS, A JOINT VENTURE
DRAGADOS USA/FLATIRON WEST INC./SUKUT CONSTRUCTION, A JOINT VENTURE
FLATIRON/ACC, A JOINT VENTURE
FLATIRON/GOODFELLOW TOP GRADE/TURNER, A JOINT VENTURE
FLATIRON/UNITED
FLATIRON WEST, INC./SUKUT
FLATIRON CONSTRUCTION CORP./FLATIRON CONSTRUCTORS, INC.
FLATIRON/ZACHRY, A JOINT VENTURE
FLATIRON BLYTHE DEVELOPMENT COMPANY, A JOINT VENTURE
FLATIRON/SKANSKA/STACY & WITBECK, A JOINT VENTURE
FLATIRON LANE, A JOINT VENTURE
FLATIRON HARPER, A JOINT VENTURE C/O FLATIRON CONSTRUCTORS, INC.
```

U-GU-621-A CW (10/02)

**INSTALLMENT PREMIUM SCHEDULE**

The total premium shown in the Declarations of this policy is made payable in installments, on the dates and in the amount shown below.

| NAMED INSURED | POLICY NUMBER |
|---|---|
| FLATIRON CONSTRUCTION CORP. | GLO 5939707-08 |



Failure to pay the Installment Premium by the Date Due shown shall constitute non-payment of premium for which we may cancel this policy.

U-GU-406-A (07/94)
PAGE 1 OF 1

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

IL 01 25 11 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COLORADO CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Colorado law.

**B.** Under the Commercial Automobile Coverage Part, the term "family member" is replaced by the following and supersedes any other provisions to the contrary:

"Family member" means a person related to:

**1.** The individual Named Insured by blood, adoption, marriage or civil union recognized under Colorado law, who is a resident of such Named Insured's household, including a ward or foster child;

**2.** The individual named in the Schedule by blood, adoption, marriage or civil union recognized under Colorado law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individuals endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Colorado law, who is a resident of your household, including a ward or foster child.

 © Insurance Services Office, Inc., 2013

IL 02 28 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COLORADO CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation Of Policies In Effect For 60 Days Or More**

**a.** If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy by mailing through first-class mail to the first Named Insured written notice of cancellation:

**(1)** Including the actual reason, at least 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(2)** At least 45 days before the effective date of cancellation if we cancel for any other reason.

We may only cancel this policy based on one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** A false statement knowingly made by the insured on the application for insurance; or

**(3)** A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

**C.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will mail through first-class mail to the first Named Insured shown in the Declarations written notice of the nonrenewal at least 45 days before the expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

**D.** The following condition is added:

**INCREASE IN PREMIUM OR DECREASE IN COVERAGE**

We will not increase the premium unilaterally or decrease the coverage benefits on renewal of this policy unless we mail through first-class mail written notice of our intention, including the actual reason, to the first Named Insured's last mailing address known to us, at least 45 days before the effective date.

Any decrease in coverage during the policy term must be based on one or more of the following reasons:

**1.** Nonpayment of premium;

**2.** A false statement knowingly made by the insured on the application for insurance; or

**3.** A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

If notice is mailed, proof of mailing will be sufficient proof of notice.

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

     CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
     COMMERCIAL AUTOMOBILE COVERAGE PART
     COMMERCIAL GENERAL LIABILITY COVERAGE PART
     COMMERCIAL INLAND MARINE COVERAGE PART
     COMMERCIAL PROPERTY COVERAGE PART
     CRIME AND FIDELITY COVERAGE PART
     EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
     EQUIPMENT BREAKDOWN COVERAGE PART
     FARM COVERAGE PART
     LIQUOR LIABILITY COVERAGE PART
     MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
     OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
     POLLUTION LIABILITY COVERAGE PART
     PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
     RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

# Combined Aggregate Deductible Schedule



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. |
|---|---|---|
| GLO 5939707-08 | 06-01-2016 | 06-01-2017 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement provides supplementary information to be used with the following:
**Business Auto Coverage Form**
**Commercial General Liability Coverage Part**
**Employee Benefits Liability Coverage Part**
**Garage Coverage Form**
**Liquor Liability Coverage Part**
**Motor Carrier Coverage Form**
**Stop Gap – Employers Liability Coverage Part**
**Truckers Coverage Form**
**Workers Compensation and Employers Liability Policy**

| The Combined Aggregate Deductible is adjustable and determined as the sum of the rate(s) multiplied by the final audited Exposure(s). | Estimated Exposure | Rate | Per | Of (Exposure Basis) |
|---|---|---|---|---|
| | ███████ | █████ | ███ | ████████ |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| The Deductible Amounts for the policies listed here will be combined with this policy for the application of the Combined Aggregate Deductible Amount. Policy Number(s): | | | |
|---|---|---|---|
| GLO 5939707-08 | $250,000 | | |
| WC 5939706-08 | $250,000 | | |
| WC 6542462-07 | $25,000 | | |
| | | | |

| Combined Aggregate Deductible Amount | $  6,200,000 |
|---|---|
| Minimum Combined Aggregate Deductible Amount | $  6,200,000 |

U-GU-D-639-A CW (7/07)
Page 1 of 1



**Important Notice**
# Texas Safety Consultation Services

Zurich in North America has loss control services available at no additional charge.

If you would like additional information regarding these services, please contact us or visit our website.  If you would like to request services, please complete the information on this form and mail it to the address listed below.

Zurich Services Corporation
Risk Engineering
1400 American Lane
Schaumburg, Illinois 60196-1056
1-800-982-5964
 http://www.zurichna.com/riskengineering

☐ I request additional safety and health services

Company name

Contact name

Address

| City | State | Zip code |
|------|-------|----------|

| Telephone number | Policy number |
|------------------|---------------|



# Colorado Civil Union Act
# Policyholder Notice

On January 1, 2014, the Civil Union Act ("the Act") becomes effective.   Under the Act, two persons of the same sex may enter into a civil union.   A party to a civil union is entitled to the same legal obligations, responsibilities, protections, and benefits as are afforded or recognized by the law of Colorado to a spouse; whether they derive from statute, administrative rule, common law, or any other source of civil or criminal law.

The Act further provides that a party to a civil union shall be included in any definition or use of the term "dependent", "family", "heir", "immediate family", "next of kin", "spouse", and other terms that denote a familial or spousal relationship.

A marriage between persons of the same sex, a civil union, domestic partnerships or a substantially similar legal relationship, legally entered into in another jurisdiction, shall be legally recognized in Colorado as a civil union.

# Notification to Others of Cancellation, Nonrenewal or Reduction of Insurance


**ZURICH** ®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products / Completed Operations Liability Coverage Part**

**A.** If we cancel or non-renew this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation or non-renewal:

    **1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

    **2.** At least 10 days prior to the effective date of the cancellation or non-renewal, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If coverage afforded by this Coverage Part(s) is reduced or restricted, except for any reduction of Limits of Insurance due to payment of claims, we will mail or deliver notice of such reduction or restriction:

    **1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

    **2.** At least 10 days prior to the effective date of the reduction or restriction, or the longer number of days notice if indicated in the Schedule below.

**D.** If notice as described in Paragraphs **A.**, **B.** or **C.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

| SCHEDULE | |
|---|---|
| **Name and Address of Other Person(s) / Organization(s):** | **Number of Days Notice:** |
| CITY OF LOS ANGELES DEPARTMENT OF PUBLIC WORKS | 30 |
| 900 S FREEMONT AVE | |
| ALHAMBRA, CA 91803-1331 | |
|  | |

All other terms and conditions of this policy remain unchanged.

U-GL-1447-A CW (05/10)
Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 139 of 409

# Notification to Others of Cancellation, Nonrenewal or Reduction of Insurance



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Liquor Liability Coverage Part**
**Products / Completed Operations Liability Coverage Part**

**A.** If we cancel or non-renew this Coverage Part(s) by written notice to the first Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation or non-renewal:

  **1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

  **2.** At least 10 days prior to the effective date of the cancellation or non-renewal, as advised in our notice to the first Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the first Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If coverage afforded by this Coverage Part(s) is reduced or restricted, except for any reduction of Limits of Insurance due to payment of claims, we will mail or deliver notice of such reduction or restriction:

  **1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

  **2.** At least 10 days prior to the effective date of the reduction or restriction, or the longer number of days notice if indicated in the Schedule below.

**D.** If notice as described in Paragraphs **A.**, **B.** or **C.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

| SCHEDULE | |
|---|---|
| **Name and Address of Other Person(s) / Organization(s):** | **Number of Days Notice:** |
| NEW YORK STATE DEPARTMENT OF TRANSPORTATION | 30 |
| OFFICE OF CONTRACT MANAGEMENT | |
| 50 WOLF RD, 1ST FLOOR | |
| ALBANY, NY  12232 | |

All other terms and conditions of this policy remain unchanged.

U-GL-1447-A CW (05 / 10)
Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Recording And Distribution Of Material Or Information In Violation Of Law Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** Exclusion **q. Recording And Distribution Of Material Or Information In Violation Of Law** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p. Recording And Distribution Of Material Or Information In Violation Of Law** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Broadened Named Insured



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** The following is added to Section **II – Who Is An Insured**:

    **1.** Any current organization of yours, other than a partnership, joint venture or limited liability company, which is not shown in the Declarations, will qualify as a Named insured if:

        **a.** Such entity has been incorporated or organized prior to the effective date of this policy, under the laws of the United States of America (including its territories and possessions), Puerto Rico or Canada; and

        **b.** You maintain ownership or majority interest in such organization as of the effective date of this Coverage Part.

    Coverage is afforded only until the 180th day after inception of our policy or the end of the policy period, whichever is earlier, unless you notify and provide information to us before the end of this timeframe as to the nature and operations of such organization.

    **2.** With regard to any terminated partnership or joint venture not shown in the Declarations, you are an insured as respects the "products-completed operations hazard" only, for "bodily injury" or "property damage" arising out of such terminated partnership or joint venture.  The insurance provided by this provision will not inure to the benefit of any party except you.

    **3.** To the extent only that coverage is provided in Paragraph **A.2.** above for organizations not shown in the Declarations, the last sentence under Section **II – Who Is An Insured** does not apply.

**B.** Paragraph **3.** of Section **II – Who Is An Insured** is replaced by the following:

    **3.** Any organization you newly acquire or form during the policy period, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest in such organization, will qualify as a Named Insured if there is no other similar insurance available to that organization.  However:

        **a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

        **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

        **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**C.** Solely with respect to Paragraphs **A.** and **B.** of this endorsement, the following is added to Paragraph **b. Excess Insurance** of Paragraph **4. Other Insurance** under **Section IV – Commercial General Liability Conditions** after Paragraphs **(a)(i)** through **(a)(iv)**:

    **b. Excess Insurance**

    **(1)** This insurance is excess over:

        **(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

            **(v)** That is or was purchased to insure:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(aa)** Your participation in a partnership or joint venture which terminated or ended prior to the effective date of this policy; or

**(bb)** An organization not shown as a Named Insured at inception of our policy, to the extent such organization is an insured as described in Paragraphs **A.** and **B.** of this endorsement.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Policyholder Notice - General Liability Access Or Disclosure Of Confidential Or Personal Information Exclusions



This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.  If there is a conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL**.

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new endorsements, which applies to your renewal policy being issued by us:

**CG 21 06 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data – related Liability – With Limited Bodily Injury Exception (For Use With The Commercial General Liability Coverage Part)**

When this endorsement is attached to your policy:

- Under Coverage **A** – Bodily Injury And Property Damage Liability, coverage is excluded for damages arising out of any access to or disclosure of any person's or organization's confidential or personal information. This is a reinforcement of coverage intent.

- Under Coverage **B** - Personal And Advertising Injury Liability, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of any person's or organization's confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**CG 21 07 05 14 – Exclusion – Access or Disclosure of Confidential or Personal Information and Data-related Liability – Limited Bodily Injury Exception Not Included (For Use With The Commercial General Liability Coverage Part)**

When this endorsement is attached to your policy:

- Under Coverage **A** – Bodily Injury And Property Damage Liability, coverage is excluded for damages arising out of any access to or disclosure of any person's or organization's confidential or personal information.  This is a reinforcement of coverage intent.  Coverage is also excluded for damages because of bodily injury arising out of loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.  This is a reduction of coverage.

- Under Coverage **B** – Personal and Advertising Injury Liability, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of any person's or organization's confidential or personal information.  To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction of coverage.

**CG 21 08 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information (Coverage B Only) (For Use With The Commercial General Liability Coverage Part)**

When this endorsement is attached to your policy, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of any person's or organization's confidential or personal information.  To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**CG 04 37 05 14 – Electronic Data Liability (For Use With The Commercial General Liability Coverage Part)**

With respect to damages arising out of any access to or disclosure of any person's or organization's confidential or personal information, when this endorsement is attached to your policy:

- Under Coverage **A** – Bodily Injury And Property Damage Liability, coverage is excluded for damages arising out of any access to or disclosure of any person's or organization's confidential or personal information.  This is a reinforcement of coverage intent.

- Under Coverage **B** – Personal And Advertising injury Liability, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of any person's or organization's confidential or personal information.  To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction of coverage.

**CG 33 53 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data – related Liability – With Limited Bodily Injury Exception (For Use With The Owners and Contractors Protective Liability Coverage Part and Products/Completed Operations Coverage Parts)**

When this endorsement is attached to your policy, coverage is excluded for damages arising out of any access to or disclosure of any person's or organization's confidential or personal information. This is a reinforcement of coverage intent.

**CG 33 59 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability – Limited Bodily Injury Exception Not Included (For Use With The Owners And Contractors Protective Liability and Products/Completed Operations Liability Coverage Parts)**

When this endorsement is attached to your policy, coverage is excluded for damages arising out of any access to or disclosure of any person's or organization's confidential or personal information.  This is a reinforcement of coverage intent.  Coverage is also excluded for damages because of bodily injury arising out of loss, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data. This is a reduction of coverage.

# Employee Benefits Liability -
# Occurrence Coverage Form


**ZURICH**

This Coverage Form provides *occurrence* coverage.  Please read the entire form carefully.
**Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties, and what is and is not covered.**

**Throughout this policy, the words 'you" and 'your" refer to the Named Insured shown in the Declarations.  The words "we", "us", and 'our" refer to the Company providing this insurance.**

Other words and phrases that appear in quotes have special meaning.  Refer to the Definitions Section.

## Section I. Coverage - Employee Benefit Liability

### 1.  Insuring Agreement

**A.**  We will pay those sums that the "insured" becomes legally obligated to pay as damages because of any act, error, or omission of the "insured" in the "administration" of the "insured's" "employee benefit programs".  We will have the right and duty to defend the "insured" against any suit seeking those damages.  However, we will have no duty to defend the "insured" against any "suit" seeking damages for any act, error, or omission for which this insurance does not apply.  We may, at our discretion, investigate any claim and settle any "suit" that may result; but:

**1.**  The amount we pay for damages is limited as described in Section II. - Limits of Insurance of this Coverage Part; and

**2.**  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Employee Benefit Liability coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments of this Coverage Part.

**B.**  This insurance applies to an act, error or omission only if:

**1.**  The act, error, or omission takes place in the "coverage territory";

**2.**  The "insured" had no knowledge of and could not have reasonably foreseen any circumstances which might result in a claim or "suit"; and

**3.**  The act, error, or omission occurs during the policy period.

### 2.  Exclusions

This insurance does not apply to any:

**A.**  "Bodily injury", "property damage" or "personal and advertising injury";

**B.**  Any "claim" or "suit" arising out of any dishonest, fraudulent, criminal or malicious act;

**C.**  Any "claim" or "suit" arising out of discrimination or humiliation;

**D.**  Any "claim" or "suit"  arising out of an insurer's or other provider's failure to perform its contract;

**E.**  Any "claim" or "suit" arising out of your failure to comply with any workers compensation, unemployment insurance, social security, or disability benefits law;

**F.**  Any "claim" or "suit" arising out of the failure of any of your "employee benefit plans" to meet obligations due to insufficient funds;

**G.**  Any "claim" or "suit" arising out of:

**a.**  Advice given to any person to participate or not participate in a plan or program included in "employee benefit programs";

**b.**  The appointment of, or failure to appoint, any investment manager, administrator, trustee, actuary, advisor, counsel, accountant, custodian, or consultant;

**c.**  Any investment activity, including the management, administration, or disposition of assets of your "employee benefit programs"; or

**d.**  Failure of any investment to perform as represented by any "insured".

**H.**  Any "claim or "suit" arising out of an "Insured's" liability as a fiduciary under:

**a.** The Employee Retirement Income Security Act of 1974 (PL93-406) and its amendments; or

**b.** The Internal Revenue Code of 1986 (including the Internal Revenue Code of 1954) and its amendments.

**3. Supplementary Payments**

We will pay, in addition to the applicable Limits of Insurance, with respect to any claim we investigate or settle or "suit" we defend:

**A.** All expenses incurred by us, all costs taxed against the "insured" in any "suit" defended by us, and all interest on the full amount of any judgment which accrues after entry of the judgment and before we have paid or tendered or deposited in court, that part of the judgment which does not exceed the limit of our liability.

**B.** Premiums on appeal bonds required and on bonds to release attachments in any "suit". We do not have to furnish these bonds.

**C.** All reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**D.** Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

## II. Limits of Insurance

**A.** The Limits of Insurance shown in the Declarations and the rules below establish the most we will pay regardless of the number of:

**(1)** "Insureds";

**(2)** Claims made or "suits" brought; or

**(3)** "Employees" or dependents or beneficiaries of "employees" making claims or bringing "suits".

**B.** The Aggregate Limit is the most we will pay for all damages because of all "claims" or "suits" arising from the "administration" of your "employee benefit programs" during the policy period.

**C.** Subject to the Aggregate Limit provisions in **B.** above, the Each Act, Error, or Omission Limit is the most we will pay for all damages sustained by any one "employee", including the "employee's" dependents and beneficiaries, because of acts, errors, or omissions committed in the "administration" of your "employee benefit programs".

**D.** The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## III. Conditions

**A. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of our obligations.

**B. Duties in the Event of an Act, Error, Omission, Claim or Suit**

**(1)** Regardless of whether the loss exceeds any applicable deductible amount, you must see to it that we are notified as soon as practicable of any act, error, or omission which may result in a claim. To the extent possible, notice should include:

**a.** How, when, and where the act, error, or omission took place;

**b.** The names and addresses of any injured "employee", dependents, or beneficiaries of any "employee" and witnesses.

**(2)** If a claim is received by any "insured", you must:

**a.** Immediately record the specifics of the claim and the date received; and

**b.** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim as soon as practicable.

**(3)** You and any other involved "insured" must:

**a.** Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

**b.** Authorize us to obtain records and other information;

**c.** Cooperate with us in the investigation, settlement, or defense of the claim or "suit"; and

**d.** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury to which this insurance may also apply.

**(4)** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**C. Legal Action Against Us**

No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an "insured"; or

**(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the "insured", and the claimant or the claimant's legal representative.

**D.   Other Insurance**

**(1)** This Coverage Part is primary insurance, except when stated, to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which applies to the loss on an excess or contingent basis, the amount of our liability under this Coverage Part shall not be reduced because of such other insurance.

**(2)** When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess, or contingent, we shall not be liable for a greater proportion of the loss than that stated in the applicable contribution provision below:

**a.   Contribution by Equal Shares**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

**b.   Contribution by Limits**

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**E.   Separation of Insureds**

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**(1)** As if each Named Insured were the only Named Insured; and

**(2)** Separately to each "insured" against whom claim is made or "suit" is brought.

**F.   Transfer Of Rights Of Recovery Against Others To Us**

If the "insured" has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

**IV.   Definitions**

**A.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**(1)** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**(2)** Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**B.** "Administration" means:

**(1)** Counseling "employees", including their dependents and beneficiaries, with respect to "employee benefit programs";

**(2)** Handling records in connection with "employee benefit programs"; or

**(3)** Effecting or terminating an "employee's" participation in a plan included in "employee benefit programs".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**D.** "Coverage territory" means:

**(1)** The United States of America (including its territories and possessions), Puerto Rico, and Canada; or

**(2)** All parts of the world if the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **D. (1)** above, or in a settlement to which we agree.

**E.** "Employee" means:

Your officers and employees, whether actively employed, disabled, or retired.

**F.** "Employee benefit programs" mean:

Group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers compensation, unemployment insurance, salary continuation

plans, social security, disability benefits insurance, savings plans, vacation plans, or any other similar plans or programs.

**G.** "Insured" means:

You and any of your partners, executive officers, directors, members, stockholders or "employees", provided such "employee" is authorized to act in the "administration" of your "employee benefit programs".

**H.** "Personal and advertising injury" means:

Injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**(1)** False arrest, detention, or imprisonment;

**(2)** Malicious prosecution;

**(3)** The wrongful eviction from wrongful entry into, or invasion of the right of private occupancy of, a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor;

**(4)** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

**(5)** Oral or written publication,' in any manner, of material that violates a person's right of privacy;

**(6)** The use of another's advertising idea in your "advertisement"; or

**(7)** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**I.** "Property damage" means:

**(1)** Physical injury to tangible property, including all resulting loss of use of that property.

**(2)** Loss of use of tangible property that is not physically injured.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications, software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**J.** "Suit" means:

A civil proceeding in which damages to which this insurance applies is alleged. "Suit" includes:

**(1)** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

**(2)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

# Incidental Medical Malpractice
# Coverage Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**I.**   Sections **2.a.(1)(d)** of **Section II. WHO IS AN INSURED** are deleted and replaced by the following:

    **2.**   Each of the following is also an insured:

        **a.**   Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  However, none of these "employees" or "volunteer workers" are insured for:

        **(1)**   "Bodily injury" or "personal and advertising injury":

            **(d)**   Arising out of his or her providing or failing to provide professional health care services, except any "bodily injury" or "personal and advertising injury" arising out of:

                **(1)**   medical or paramedical services to persons performed by any physician, dentist, nurse, emergency medical technician, paramedic or other licensed medical care person employed by you to provide such services: or

                **(2)**   emergency cardiopulmonary resuscitation (CPR) or first aid services performed by any other employee of yours who is not a licensed medical professional.

**II.**   Any insurance coverage provided by this endorsement is excess over any other valid and collectible insurance.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Waiver Of Subrogation (Blanket) Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following is added to the **Transfer Of Rights Of Recovery Against Others To Us Condition**:

If you are required by a written contract or agreement, which is executed before a loss, to waive your rights of recovery from others, we agree to waive our rights of recovery.  This waiver of rights shall not be construed to be a waiver with respect to any other operations in which the insured has no contractual interest.

**EMPLOYEE BENEFIT LIABILITY COVERAGE PART – OCCURRENCE DECLARATIONS**

Policy Number: GLO 5939707-08

Named Insured: FLATIRON CONSTRUCTION CORP.

Policy Period: Coverage begins  06-01-2016 at 12:01 A.M; Coverage ends 06-01-2017 at 12:01 A.M.

Producer Name: TURNER SURETY AND INSURANCE BR

Producer No. 25554-000

**Item 1.** Limits of Insurance

$ 1,000,000 Aggregate Limit

$ 1,000,000 Each Act, Error or Omission Limit

**Item 2.** Form of Business:

☐ Individual    ☐ Partnership    ☐ Joint Venture    ☒ Corporation
☐ Other _____

**Item 3.** Premium Schedule:

| Code No. | Premium Basis | Rate | Advance Premium |
|---|---|---|---|
| | | | |

Total Advance Premium For This Coverage Part: ███████████

Audit Period:  ☒ Annual    ☐ Semi-annual    ☐ Quarterly    ☐ Monthly

**Forms And Endorsements Applicable To This Coverage Part:**

   **SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS**

Policy Number: GLO 5939707-08

# ZURICH AMERICAN INSURANCE COMPANY

Named Insured FLATIRON CONSTRUCTION CORP.

Policy Period: Coverage begins 06-01-2016 at 12:01 A.M.; Coverage ends 06-01-2017 at 12:01 A.M.

Producer Name: TURNER SURETY AND INSURANCE BR          Producer No. 25554-000

**Item 1.** Business Description:

**Item 2.** Limits of Insurance

| | |
|---|---|
| GENERAL AGGREGATE LIMIT | $ __4,000,000__ |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ __4,000,000__ |
| EACH OCCURRENCE LIMIT | $ __2,000,000__ |
|     DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ __300,000__ Any one premises |
|     MEDICAL EXPENSE LIMIT | $ __10,000__ Any one person |
| PERSONAL AND ADVERTISING INJURY LIMIT | $ __2,000,000__ Any one person or organization |

**Item 3.** Retroactive Date **(CG 00 02 ONLY)**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" offense which occurs before the Retroactive Date, if any, shown here: NONE

(Enter Date or "None" if no Retroactive Date applies)

**Item 4.** Form of Business and Location Premises

Form of Business: CORPORATION

Location of All Premises You Own, Rent or Occupy: **See Schedule of Locations**

**Item 5.** Schedule of Forms and Endorsements

Form(s) and Endorsement(s) made a part of this Policy at time of issue: **See Schedule of Forms and Endorsements**

**Item 6.** Premiums

| | |
|---|---|
| Coverage Part Premium: | ■■■■■■ |
| Other Premium: | ■■■■■■ |
| Total Premium: | ■■■■■■ |



# Limited Coverage For Insured's Interest In Wrap-Up Or Consolidated Insurance Program

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**I.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I - Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2.**, **Exclusions** of **Coverage B – Personal And Advertising Injury Liability**:

**Wrap-Up / Consolidated Insurance Program Project(s)**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of either your ongoing operations or the "products-completed operations hazard" at or from any wrap-up or other consolidated insurance program project(s), for which insurance is otherwise separately provided to you by a wrap-up or other consolidated insurance program, except as follows:

**A.** This insurance coverage will pay on your behalf, any wrap-up or other consolidated insurance program related claims or defend any such "suits" covered by this policy, but we will have no duty to pay such claims or defend "suits" until after:

**1.** All separate wrap-up or other consolidated insurance program insurers have paid the full amount of the Limits of Insurance of all their policies providing coverage for the wrap-up or other consolidated insurance program project(s), in settlement of claims or "suits"; and

**2.** You have paid any applicable deductibles or self-insured retentions for which you are responsible to pay in the separate wrap-up or other consolidated insurance program providing coverage for the wrap-up or other consolidated insurance program project(s);

**B.** If this insurance provides broader coverage for any exposures at or from a wrap-up or other consolidated insurance program project(s), and such broader coverage is not provided by a separate wrap-up or other consolidated insurance program coverage, then this policy will provide primary coverage as respects those exposures.

The exception coverage provided in paragraphs **A.** and **B.** of this endorsement will not inure to the benefit of any other party except you.

**II.** With regard to the exception coverage provided in paragraph **I.A.** above, this insurance is excess over any and all other insurance provided to the wrap-up or other consolidated insurance program project(s), whether that other insurance is primary, excess, contingent or on any other basis.

**III.** As respects any claims or "suits" arising at or from a wrap-up or other consolidated insurance program project(s), for which this exception coverage may apply, any existing provisions of Condition **4.**, **Other Insurance** that may be contrary to the provisions of this endorsement are amended to comply with the changes in coverage as stipulated in Sections **I.** and **II.** above.

All other terms and conditions of your Policy remain unchanged.

U-GL-1378-A CW (03/09)
Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

© Insurance Services Office, Inc., 2012

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

**CG 00 01 04 13**

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g.  Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h.  Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.  War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.  Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

© Insurance Services Office, Inc., 2012

**COVERAGE C — MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS — COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** — Coverage **A** — Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

© Insurance Services Office, Inc., 2012

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** — Coverage **A** — Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

   **(a)** Snow removal;

   **(b)** Road maintenance, but not construction or resurfacing; or

   **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

   **(a)** When all of the work called for in your contract has been completed.

   **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

   **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

**Policy Number**
**GLO 5939707-08**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

Named Insured    FLATIRON CONSTRUCTION CORP.    Effective Date:    06-01-16

12:01 A.M., Standard Time

Agent Name    TURNER SURETY AND INSURANCE BR    Agent No.    25554-000

## BROAD FORM NAMED INSURED

SECTION II, WHO IS AN INSURED, INCLUDES THE FOLLOWING:

FLATIRON CONSTRUCTION CORP., FLATIRON ELECTRIC GROUP AND ANY
SUBSIDIARY COMPANY AS NOW FORMED OR CONSTITUTED, AND ANY OTHER
COMPANY OVER WHICH THE NAMED INSURED OR ANY SUBSIDIARY COMPANY:

1.  HAS A MAJOR OWNERSHIP INTEREST IN SUCH COMPANY OR

2.  HAS ONLY A PARTIAL OWNERSHIP INTEREST, BUT IS REQUIRED THROUGH
WRITTEN CONTRACT TO PROVIDE INSURANCE FOR SUCH COMPANY.

**U-GL-1114-A CW (10/02)**

**Policy Number**
**GLO 5939707-08**

**ENDORSEMENT**

# ZURICH AMERICAN INSURANCE COMPANY

Named Insured    FLATIRON CONSTRUCTION CORP.      Effective Date:    06-01-16
                                                              12:01 A.M., Standard Time

Agent Name    TURNER SURETY AND INSURANCE BR      Agent No.    25554-000

**ADDITIONAL INSURED—OWNERS,LESSEES,CONTRACTORS**

ADDITIONAL INSURED – OWNERS, LESSEES, CONTRACTORS AMENDMENT ENDT

NAME OF PERSON OR ORGANIZATION:
THE CITY OF TEMECULA, TEMECULA COMMUNITY SERVICES DISTRICT AND
REDEVELOPMENT AGENCY, ITS OFFICERS, OFFICIALS, EMPLOYEES OR
VOLUNTEERS.

RE: (IF NO ENTRY APPEARS ABOVE, INFORMATION REQUIRED TO COMPLETE THIS
ENDORSEMENT WILL BE SHOWN IN THE DECLARATIONS AS APPLICABLE TO THIS
ENDORSEMENT.)

WHO IS INSURED IS AMENDED TO INCLUDE AS AN INSURED THE PERSON OR
ORGANIZATION SHOWN IN THE SCHEDULE, BUT ONLY WITH RESPECT TO
LIABILITY ARISING OUT OF "YOUR WORK" FOR THAT INSURED BY OR FOR YOU.

PRIMARY INSURANCE
IT IS AGREED THAT SUCH INSURANCE AS IS AFFORDED BY THIS POLICY FOR
THE BENEFIT OF THE NAMED INSURED AND THE CITY OF TEMECULA SHALL BE
PRIMARY INSURANCE AS RESPECTS ANY CLAIM, LOSS OR LIABILITY ARISING
OUT OF OPERATIONS BY THE NAMED INSURED, OR BY ITS INDEPENDENT
CONTRACTORS FOR WHICH THE NAMED INSURED IS FOUND TO BE LIABLE AND
WHICH LIABILITY APPLIES TO THE SPECIAL CONTRACT UNDER WHICH THE NAMED
INSURED HAS AGREED TO PERFORM SPECIFIC OPERATIONS, AND ANY OTHER
INSURANCE MAINTAINED BY THE CITY OF TEMECULA, SHALL BE EXCESS AND
NON-CONTRIBUTORY WITH THE INSURANCE PROVIDED HEREUNDER.

SEVERABILITY OF INTEREST
IT IS AGREED THAT THE INSURANCE AFFORDED BY THIS POLICY APPLIES
SEPARATELY TO EACH INSURED WHO IS SEEKING COVERAGE OR AGAINST WHOM A
CLAIM IS MADE OR A SUITE IS BROUGHT, EXCEPT WITH RESPECT TO THE
COMPANY'S LIMIT OF LIABILITY.

**U-GL-1114-A CW (10/02)**

# Contractors Liability Supplemental Coverages And Conditions



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

### NON-OWNED WATERCRAFT SCHEDULE

Watercraft Length: _____ feet

(If no amount is shown above, 51 feet applies.)

**A. Non-owned Watercraft Liability Extended Coverage**

Paragraph **(2)** of Exclusion **2.g. Aircraft, Auto Or Watercraft** under Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**(2)** A watercraft you do not own that is:

**(a)** Less than the length shown in the Non-Owned Watercraft Schedule of this endorsement; and

**(b)** Not being used to carry persons or property for a charge;

**B. Damage To Premises Rented Or Occupied By You**

**1.** The last paragraph under Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

Exclusions **c.** through **n.** do not apply to damage by "specific perils" to premises while rented to you or temporarily occupied by you with permission of the owner.  A separate Damage to Premises Rented To You Limit of Insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**2.** The paragraph directly following Paragraph **(6)** in Exclusion **j.** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" to premises (other than damage by "specific perils"), including "property damage" to the contents of such premises, rented to you under a rental agreement for a period of 14 or fewer consecutive days.  A separate Limit of Insurance applies to Damage to Premises Rented to You as described in Section **III** – Limits Of Insurance.

**3.** Paragraph 6. of Section **III – Limits Of Insurance** is replaced by the following:

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises while rented to you, or in the case of damage by one or more "specific perils" to any one premises, while rented to you or temporarily occupied by you with permission of the owner.

**4.** Paragraph **a.** of the "insured contract" definition under the **Definitions** Section is replaced by the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

   **a.** A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by "specific perils" to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**5.** Paragraph **(ii)** under Paragraph **4.b.(1)** of the **Other Insurance** Condition under Section **IV — Commercial General Liability Conditions** is replaced by the following:

   **(ii)** That is property insurance providing coverage for "specific perils" for premises rented to you or temporarily occupied by you with permission of the owner;

**6.** The following definitions are added to the **Definitions** Section:

"Specific perils" means fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing equipment, weight of snow, ice or sleet or "water damage".

"Water damage" means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

**C.  Additional Insured — Lessor Of Leased Equipment — Automatic Status When Required In Lease Agreement With You**

**1.** Section **II — Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) from whom you lease equipment when you and such person(s) or organization(s) have agreed in a written contract or written agreement that such person(s) or organization(s) be added as an additional insured on your policy.  Such person(s) or organization(s) is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However, the insurance afforded to such additional insured:

   **a.** Only applies to the extent permitted by law; and

   **b.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends.

**2.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**3.** With respect to the insurance afforded to these additional insureds, the following is added to Section **III — Limits of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

   **a.** Required by the written contract or written agreement you have entered into with the additional insured; or

   **b.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

The insurance provided by this Paragraph **C.** shall not increase the applicable Limits of Insurance shown in the Declarations.

**D.  Additional Insured — Managers Or Lessors Of Premises**

**1.** Section **II — Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) that you have agreed in a written contract or written agreement to name as an additional insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of premises leased to you and subject to the following additional exclusions:

This insurance does not apply to:

   **a.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

   **b.** Structural alterations, new construction or demolition operations performed by or on behalf of the additional insured manager or lessor of the premises leased to you.

However, the insurance afforded to such additional insured:

   **a.** Only applies to the extent permitted by law; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

    **b.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**2.** With respect to the insurance afforded to these additional insureds, the following is added to Section **III – Limits of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

    **a.** Required by the written contract or written agreement you have entered into with the additional insured; or

    **b.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

The insurance provided by this Paragraph **D.** shall not increase the applicable Limits of Insurance shown in the Declarations.

**E. Additional Insured – State Or Governmental Agency Or subdivision Or Political Subdivision – Permits Or Authorizations**

**1.** Section **II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision that you have agreed in a written contract or written agreement or that you are required by statute, ordinance or regulation to name as an additional insured, subject to the following provisions:

    **a.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

    **b.** This insurance does not apply to:

        **(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

        **(2)** "Bodily injury" or "property damage included within the "products-completed operations hazard".

However, the insurance afforded to such additional insured:

    **a.** Only applies to the extent permitted by law; and

    **b.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**2.** With respect to the insurance afforded to these additional insureds, the following is added to Section **III – Limits of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

    **a.** Required by the written contract or written agreement you have entered into with the additional insured; or

    **b.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

The insurance provided by this Paragraph **E.** shall not increase the applicable Limits of Insurance shown in the Declarations.

**F. Personal And Advertising Injury Coverage – Assumed Under Contract Or Agreement**

**1.** Exclusion **e.** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

    **2. Exclusions**

This insurance does not apply to:

    **e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to:

        **(1)** Liability for damages that the insured would have in the absence of the contract or agreement; or

        **(2)** Liability for "personal and advertising injury" if:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(a)** The liability pertains to your business and is assumed in a contract or agreement that is an "insured contract"; and

**(b)** The "personal and advertising injury" occurs subsequent to the execution of the contract or agreement.

Solely for the purposes of liability so assumed in such "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "personal and advertising injury", provided:

**(i)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same contract or agreement; and

**(ii)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**2.** For purposes of this "personal and advertising injury" coverage only:

Paragraph **d.** and the second to last paragraph under Paragraph **2.** of **Supplementary Payments – Coverages A** and **B** are replaced by the following:

**d.** The allegations in the "suit" and the information we know about the "occurrence" or offense are such that no conflict appears to exist between the interests of the insured and the interest of the indemnitee;

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments.  Such payments will not be deemed to be damages for "bodily injury", "property damage" or "personal and advertising injury" and will not reduce the limits of insurance.

## G. Insured Contract Amendment

Paragraph **f.** and **f.(1)** through **f.(3)** of the "insured contract" definition under the **Definitions** Section is replaced by the following:

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury", "property damage" or "personal and advertising injury" arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities;

**(4)** That indemnifies a person or organization for "personal and advertising injury":

**(a)** Arising out of advertising, publishing, broadcasting or telecasting done for you or on your behalf; or

**(b)** To an "employee" of such person or organization that does advertising, publishing, broadcasting or telecasting for you or on your behalf; or

**(5)** That indemnifies a labor leasing firm for "bodily injury" to "leased workers".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**H. Medical Payments — Increased Reporting Period**

Paragraph **a.** of Section **I — Coverage C — Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within three years of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**I. Broad Bail Bond Coverage**

Paragraph **1.b.** under **Supplementary Payments — Coverages A And B** is replaced by the following:

**b.** The cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies.  We do not have to furnish these bonds.

**J. Amendment — Duties In The Event of Occurrence, Offense, Claim or Suit**

The following paragraphs are added to Paragraph **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** of Section **IV – Commercial General Liability Conditions**:

Notice of an "occurrence" or of an offense which may result in a claim under this insurance or notice of a claim or "suit" shall be given to us as soon as practicable after knowledge of the "occurrence", offense, claim or "suit" has been reported to your officer, manager, partner or an "employee" authorized by you to give or receive such notice. Knowledge by "employees" other than your officer, manager, partner or "employee" authorized by you to give or receive such notice of an "occurrence", offense, claim or "suit" does not imply that you also have such knowledge.

In the event that an insured reports an "occurrence" to your workers compensation carrier and this "occurrence" later develops into a General Liability claim, covered by this Coverage Part, the insured's failure to report such "occurrence" to us at the time of the "occurrence" shall not be deemed to be a violation of this Condition.  You must, however, give us notice as soon as practicable after being made aware that the particular claim is a General Liability rather than a Workers Compensation claim.

**K. Unintentional Failure To Disclose Or Describe Hazards**

Paragraph **6. Representations** of Section **IV — Commercial General Liability Conditions** is replaced by the following:

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

Coverage will continue to apply if you unintentionally:

**(1)** Fail to disclose all hazards existing at the inception of this policy; or

**(2)** Make an error, omission or improper description of premises or other statement of information stated in this policy.

You must notify us in writing as soon as possible after the discovery of any hazards or any other information that was not provided to us prior to inception of this Coverage Part.

**L. Bodily Injury Redefined**

The "bodily injury" definition under the **Definitions** Section is replaced by the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.  This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease.

**M.  Two Or More Of Our Coverage Parts/Policies**

The following is added to Section **III – Limits of Insurance**:

**1.** Subject to Paragraph **2.** or **3.** above, whichever applies, if this Coverage Part and any other Commercial General Liability Coverage Part or policy providing Commercial General Liability insurance issued to you by us or any other Zurich underwriting company affiliated with us apply to the same "occurrence", only the highest available Each Occurrence Limit under any such Coverage Part or policy applies to such "occurrence".

**2.** Subject to Paragraph **2.** above, if this Coverage Part and any other Coverage Part or policy providing Commercial General Liability insurance issued to you by us or any other Zurich underwriting company affiliated with us apply to the same offense, only the highest available Personal And Advertising Injury Limit under any such Coverage Part or policy applies to such offense.

**3.** Under this Coverage Part and all other Zurich underwriting company Coverage Parts or policies to which Paragraphs **1.** and **2.** above combined apply, the most we will pay for all injury or damage because of "bodily injury" or "property damage" "occurrences", "personal and advertising injury" offenses and medical expenses is:

**a.** The single highest Coverage Part or policy General Aggregate Limit; or

**b.** The single highest Coverage Part or policy Products-Completed Operations Aggregate Limit,

whichever applies, whether such "occurrence", offenses or medical expenses are covered by one or more than one Zurich underwriting company policy.

**4.** Any existing provisions under Paragraph **4. Other Insurance** under Section **IV — Commercial General Liability Conditions** that may be contrary to the provisions of this endorsement are amended to comply with the changes in coverage as stipulated in Paragraphs **1.**, **2.**, and **3.** above.

This provision does not apply to any Coverage Part or policy issued by us or any other Zurich underwriting company affiliated with us specifically to apply as excess insurance over this Coverage Part.

**N.  Your Work Redefined**

Paragraph **a.(1)** of the "your work" definition under the **Definitions** Section is replaced by the following:

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf, but does not include work or operations performed by another entity who joined with you to form a partnership or joint venture not shown as a Named Insured in the Declarations, which terminated or ended prior to the effective date of this policy; and

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Fungi Or Bacteria Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions**  of **Section I. – Coverage A – Bodily Injury And Property Damage Liability** and paragraph **2. Exclusions**  of **Coverage B – Personal And Advertising Injury Liability**:

**2.   Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

A.   "Bodily injury", "property damage" or "personal and advertising injury " caused directly or indirectly by the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any:

  1.   "Fungi"or "bacteria"; or

  2.    Substance, vapor or gas produced by or arising out of any "fungi" or "bacteria".

B.   Loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or "bacteria", by any insured or by any other person or entity.

C.   For the purposes of this exclusion, the following definitions are added:

  1.   "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, "spores", scents or byproducts produced or released by fungi.

  2.   "Spores" means reproductive bodies produced by or arising out of  "fungi".

  3.   "Bacteria" means any type or form of bacteria and any materials or substances that are produced or released by bacteria.

This exclusion does not apply to any "fungi"or "bacteria" that are, are on, or are contained in, an edible good or edible product intended for human or animal consumption.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Additional Insured – Automatic – Owners, Lessees Or Contractors



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**Named Insured**: FLATIRON CONSTRUCTION CORP.
**Address (including ZIP Code)**:

PO BOX 2239

LONGMONT, CO 80502

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV – Commercial General Liability Conditions**:

The additional insured must see to it that:

**1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

**2.** We receive written notice of a claim or "suit" as soon as practicable; and

**3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity.  This provision does not apply to insurance on which the additional insured is a Named Insured if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purposes of the coverage provided by this endorsement:

**1.** The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

**Primary and Noncontributory insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

**a.** The additional insured is a Named Insured under such other insurance; and

**b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

**2.** The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit".  This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by a written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.** This endorsement does not apply to an additional insured which has been added to this policy by an endorsement showing the additional insured in a Schedule of additional insureds, and which endorsement applies specifically to that identified additional insured.

**F.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the written contract or written agreement referenced in Paragraph **A.** of this endorsement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization



| Policy  No. | Eff.  Date  of  Pol. | Exp.  Date  of  Pol. | Eff.  Date  of  End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**Named Insured**: FLATIRON CONSTRUCTION CORP.

**Address (including ZIP Code)**:

PO BOX 2239

LONGMONT, CO 80502-2239

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Covered Operations |
|---|---|
| SCHEDULED PER CONTRACT AGREEMENT REQUIREMENT | |

**A.** Section **II – Who Is An Insured** is amended to include as an additional insured the person or organization shown in the Schedule above, whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of  your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement at the Location designated and described in the Schedule above.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

U-GL-1177-F CW (04/13)
Page 1 of 2

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 183 of 409

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

**a.**   The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.**   Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved, the rendering of or the failure to render any professional architectural, engineering or surveying services.

**C.**   The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV – Commercial General Liability Conditions**:

The additional insured must see to it that:

**1.**   We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

**2.**   We receive written notice of a claim or "suit" as soon as practicable; and

**3.**   A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity.  This provision does not apply to insurance on which the additional insured is a Named Insured, if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.**   For the purpose of the coverage provided by this endorsement:

**1.**   The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

**Primary and Noncontributory insurance**

This Insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

**a.**   The additional insured is a Named Insured under such other insurance; and

**b.**   You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

**2.**   The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

This insurance is excess over:

Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit".  This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.**   With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.**   Required by the contract or agreement referenced in Paragraph **A.** of this endorsement; or

**2.**   Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Deductible



| Policy No. | Eff. Date of Pol. | Eff. Date of End. |
|---|---|---|
|  |  |  |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**
**Employee Benefits Liability Coverage Part**
**Liquor Liability Coverage Part**
**Stop Gap Employers Liability Coverage Part**

**DEDUCTIBLE SCHEDULE**

| Coverage | | | Deductible Amount | Basis |
|---|---|---|---|---|
| Coverage | A. | "Bodily Injury" and "Property Damage" Liability All persons or organizations | $ 250,000 | Each "Occurrence" |
| | | "Bodily Injury" Liability Only All persons or organizations | | Each "Occurrence" |
| | | "Property Damage" Liability Only All persons or organizations | | Each "Occurrence" |
| Coverage | A. | "Bodily Injury" and "Property Damage" Liability | | Each Claim |
| | | "Bodily Injury" Liability Only | | Each Claim |
| | | "Property Damage" Liability Only | | Each Claim |
| Coverage | B. | "Personal and Advertising Injury" Liability By offense – Any one person or organization | $ 250,000 | Each Claim |
| Coverage | C. | Medical Payments | $ 250,000 | Any One Person |
| Additional Coverage | | Employee Benefits Liability | $ 250,000 | Each Act, Error or Omission |
| Additional Coverage | | Liquor Liability | | Each Common Cause |
| Additional Coverage | | Stop Gap Employers Liability Stop Gap Employers Liability - disease | | Each Accident Each "Employee" |
| Aggregate Deductible Amount | | | $ 6,200,000 | ☒ Adjustable at a rate $7.044 of per $100 of WC PAYROLL ☐ Flat |
| Initial Exposure | | | | 88,018,701 |
| Minimum Aggregate Deductible Amount | | | $ 6,200,000 | |

## ALLOCATED LOSS ADJUSTMENT EXPENSE SELECTION SCHEDULE

| | Select One | |
|---|---|---|
| Option 1 | [X] | As respects each Deductible Amount, you will reimburse us for all "allocated loss adjustment expense", even if there is no payment for other than "allocated loss adjustment expense". "Allocated loss adjustment expense" reimbursements will contribute toward your Deductible Amount and your Aggregate Deductible Amount as shown in the **Deductible Schedule**. |
| Option 2 | [ ] | As respects each Deductible Amount, you will reimburse us for "allocated loss adjustment expense" as follows: |
| | | (a) If the total amount payable for other than "allocated loss adjustment expense" as respects the basis for each Deductible Amount is equal to or less than the Deductible Amount(s) or if there is no amount payable other than "allocated loss adjustment expense", then you will reimburse us for all "allocated loss adjustment expense". "Allocated loss adjustment expense" reimbursements will not contribute toward either your Deductible Amount or your Aggregate Deductible Amount as shown in the **Deductible Schedule**; or |
| | | (b) If the total amount payable for other than "allocated loss adjustment expense" exceeds the Deductible Amount, you will reimburse us a pro-rata share of total "allocated loss adjustment expense" based on the ratio of the Deductible Amount divided by the total amount payable for other than "allocated loss adjustment expense" as respects the basis for each Deductible Amount. "Allocated loss adjustment expense" reimbursements will not contribute toward either your Deductible Amount or your Aggregate Deductible Amount as shown in the **Deductible Schedule**. |
| Option 3 | [ ] | As respects each Deductible Amount, you will reimburse us for all "allocated loss adjustment expense", even if there is no payment for other than "allocated loss adjustment expense". "Allocated loss adjustment expense" reimbursements will not contribute toward either your Deductible Amount or your Aggregate Deductible Amount as shown in the **Deductible Schedule**. |

**If no option is selected, Option 3 will apply.**

**A. How the Deductible Amount Applies**

You will reimburse us for the Deductible Amount(s) shown in the **Deductible Schedule** and for "allocated loss adjustment expenses" incurred based on the **Allocated Loss Adjustment Expense Selection Schedule**. The Deductible Amount(s) applies as follows:

1. If an Each Occurrence Deductible is shown, the Deductible Amount applies to all sums payable because of any one "Occurrence", regardless of the number of persons or organizations who sustain damages because of that "Occurrence".

2. If an Each Claim Deductible is shown, the Deductible Amount applies to all sums payable for each claim, sustained by any one person or organization.

   a. For Other than Coverage B, to all sums payable for each claim, sustained by any one person or organization, and

   b. For Coverage B, to all damages sustained by any one person or organization as the result of an offense.

3. Medical Payments - If an Any One Person limit is shown, the Deductible Amount applies to all sums payable to any one person as a result of an accident sustained by that person.

4. Employee Benefits Liability - If an Each Act, Error or Omission Deductible is shown, the Deductible Amount applies to all sums payable for all damages sustained by any one "Employee", including the "Employee's" dependents and beneficiaries, because of acts, errors or omissions committed in the administration of employee benefit programs.

5. Liquor Liability - If a Common Cause Deductible is shown, the Deductible Amount applies to all sums payable for all injury sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

6. Stop Gap Employers Liability - If an Each Accident Deductible is shown, the Deductible Amount applies to all sums payable as the result of an accident, regardless of the number of people who sustain damages because of that accident.

7. Stop Gap Employers Liability - disease - If an Each Employee Deductible is shown, the Deductible Amount applies to all sums payable because of any one disease, and applies separately to each affected "Employee".

## B. Deductible Provisions

1. If more than one Deductible Amount applies to sums payable arising from the same "incident" because more than one Coverage applies, you will be responsible for each and every applicable Deductible Amount.

2. Deductible Amount(s) apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

3. Your obligation to pay the Deductible Amount(s) shown on this policy is not fulfilled by:

   a. The payment of a Deductible Amount under any other policy; or

   b. Any payment made by us or another insurance company;

   even if 3.a. or 3.b. above applies to the same "incident" as the Deductible Amount due under this policy.

4. If more than one policy issued by us applies to sums payable because of a single continuous "incident", the Deductible Amount(s) applies separately to each policy that we issue to which this endorsement or a similar Deductible Endorsement applies. Deductible Amounts also apply separately to each annual period and any remaining period of less than 12 months as described in **B.2.** above.

5. If a Coverage Part or Additional Coverage of this policy specifically applies a separate deductible(s):

   a. the separate additional deductible amount applies to any loss separately and before the Deductible Amount(s) shown on the Schedule of this endorsement; and

   b. the Deductible Amount(s) shown on the Schedule of this endorsement applies only if the loss exceeds the separate additional deductible amount described in 5.a. above, subject to the other terms and conditions of this endorsement.

## C. Aggregate Deductible Amount

1. The Aggregate Deductible Amount shown in the **Deductible Schedule** is the most you must reimburse us for the sum of:

   a. all applicable Deductible Amount(s) as shown in the **Deductible Schedule**; and

   b. all applicable "allocated loss adjustment expense" in accordance with the **Allocated Loss Adjustment Expense Selection Schedule**, above.

This single Aggregate Deductible Amount applies to the entire policy period and to any remaining extension period.

2.  If an Aggregate Deductible Amount is shown in the **Deductible Schedule** and is designated as adjustable, the final Aggregate Deductible Amount will be determined at the end of the policy period by an audit of your records, and will be based upon the Rate shown in the **Deductible Schedule** multiplied by the final audited Exposure. The amount shown in the **Deductible Schedule** as the Aggregate Deductible Amount is an estimated amount, and is based on an estimate of what the audit of your records will develop.

In no event will the final audited Aggregate Deductible Amount be less than the Aggregate Deductible Amount shown in the **Deductible Schedule**, unless a Minimum Aggregate Deductible Amount is shown in the **Deductible Schedule**. If a Minimum Aggregate Deductible Amount is shown, the final audited Aggregate Deductible Amount will not be less than the Minimum Aggregate Deductible Amount.

3.  If an Aggregate Deductible Amount is shown in the **Deductible Schedule** and is designated as Flat, the Aggregate Deductible Amount will not be adjusted. In no event will the Flat Aggregate Deductible Amount be less than or more than the Aggregate Deductible Amount shown in the **Deductible Schedule**.

4.  If no Aggregate Deductible Amount is stated in the **Deductible Schedule**, then your obligation to reimburse us for the sum of all applicable Deductible Amount(s) as shown in the **Deductible Schedule** and all applicable "allocated loss adjustment expense" in accordance with the **Allocated Loss Adjustment Expense Selection Schedule** above, is unlimited.

**D.   Allocated Loss Adjustment Expense Reimbursement**

In accordance with the **Allocated Loss Adjustment Expense Selection Schedule**:

1.  If Option 1 is selected, "allocated loss adjustment expense" reimbursements made by you contribute to your Deductible Amount and Aggregate Deductible Amount.

2.  If Option 2 or Option 3 is selected, then you will reimburse us for all or pro-rata "allocated loss adjustment expense", as may apply, in accordance with the **Allocated Loss Adjustment Expense Selection Schedule** above, even if the Deductible Amount or the Aggregate Deductible Amount, if applicable, is exceeded.

**E.   Application of the Deductible Amount to Payable Amounts**

1.  You will reimburse us for "allocated loss adjustment expense" according to the option selected in the **Allocated Loss Adjustment Expense Selection Schedule**.

2.  Upon settlement or final adjudication of a claim, we will apply the Deductible Amount against payable amounts as follows:

a.  Sums other than those attributable to "allocated loss adjustment expense"; then

b.  "Allocated loss adjustment expense" already reimbursed by you; then

c.  "Allocated loss adjustment expense" yet to be reimbursed by you, if applicable.

**F.   Effect of Deductible Amount on Limits of Insurance**

The applicable limits of insurance for the coverage part to which a Deductible Amount applies will be reduced only by that portion of the Deductible Amount that is not attributable to "allocated loss adjustment expenses".

**G.   Conditions**

**1.   Voluntary Payments**

If you voluntarily make any payment, assume any obligation or incur any expense, without our consent, then you do so at your own cost. Any such voluntary payment, assumed obligation or incurred expense does not contribute towards any applicable Deductible Amount(s) or Aggregate Deductible Amount under this policy.

**2. Application of Recovered Amounts**

We have your rights and the rights of persons entitled to the benefits of this insurance to recover sums that are reimbursable under this endorsement and any Deductible Amount from anyone liable for the injury or damages. You will do everything necessary to protect those rights for us and to help us enforce them.

If we recover any payment made under this policy from anyone liable for injury or damages, the recovered amount will first be applied to any payments made by us in excess of the Deductible Amount. The remainder of the recovery, if any, will then be applied to reduce the Deductible Amount reimbursed or reimbursable by you as respects that injury or damages.

**3. Payment of Amounts Owed Under This Endorsement**

a.   We may pay any part or all of any Deductible Amount(s) or "allocated loss adjustment expense" to effect settlement of any claim and, upon notification of the action taken you will reimburse us for such part of any Deductible Amount(s) or "allocated loss adjustment expense" as shown on the billing from us. You must pay us for all amounts for which you are responsible under this endorsement and reimburse us for any such amounts that we pay by the due date shown on the billing from us.

b.   If you fail to reimburse us for any amounts as required by this endorsement or policy, we may cancel this policy for nonpayment in accordance with the applicable law. Cancellation of this policy does not relieve you from any deductible obligations reimbursable by you.

c.   The first Named Insured shown in the Declarations is authorized to and will reimburse us for all amounts paid by us on behalf of all "insureds".

d.   Each Named Insured is jointly and severally liable for all reimbursements due to us under this endorsement, whether or not that Named Insured is involved in the claim, proceeding or "suit" causing any such amount to be due to us.

**H.   Definitions**

1.   "Allocated loss adjustment expense" is an expense directly allocable to a specific claim including but not limited to: all supplementary payments as set forth in this policy; all court costs, fees and expenses; all costs, fees and expenses for or incurred in connection with all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution proceedings; interest; investigative services, non-employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation claims and proceedings, and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under this policy.

2.   "Incident", for purposes of this endorsement only, means an "occurrence", offense, claim, accident, act, error or omission, common cause, disease or any other event, as defined or used in our policy, to which a Deductible Amount(s) applies.

**I.   Other Terms**

1.   The terms of this insurance apply irrespective of the application of any Deductible Amount(s), including those with respect to:

a.   Our right and duty to investigate or defend the insured against any "suits" seeking those damages; and

b.   Your duties in the event of a claim or circumstances likely to result in a claim.

2.   You understand that your duties under this endorsement may continue after this policy expires or is cancelled.

# Other Insurance Amendment – Primary And Non-Contributory



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**Named Insured**:

**Address (including ZIP Code)**:

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

1. The following paragraph is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

   This insurance is primary insurance to and will not seek contribution from any other insurance available to an additional insured under this policy provided that:

   **a.** The additional insured is a Named Insured under such other insurance; and

   **b.** You are required by a written contract or written agreement that this insurance would be primary and would not seek contribution from any any other insurance available to the additional insured.

2. The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

   This insurance is excess over:

   Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit".  This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

All other terms and conditions of this policy remain unchanged.

U-GL-1327-B  CW (04/13)
Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Lead Liability Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to Paragraph **2. Exclusions,** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2**. **Exclusions**, of **Coverage B - Personal And Advertising Injury Liability**:

This insurance does not apply to:

**Lead**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of, resulting from, caused by or related to: the actual, alleged or threatened:

    **(a)** Exposure to or existence of lead, paint containing lead, or any other material, product  or substance containing lead; or

    **(b)** Manufacture, distribution, sale, resale, re-branding, installation, repair, removal, encapsulation, abatement, replacement or handling of lead, paint containing lead, or any other material, product or substance containing lead,

    whether the lead is or was at any time airborne, ingested, inhaled, absorbed, transmitted in any fashion, or found in any form whatsoever, or whether any other cause, event, material, product or substance contributed concurrently or in any sequence to the injury or damage.;

**(2)** Any sums that any insured or other entity must pay, repay or reimburse because of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, sample, monitor, clean up, remove, abate, cover, contain, treat, mitigate, or neutralize lead, paint containing lead, or any other material, product or substance containing lead, or in any way respond to, or assess the effects of lead in any form; or

    **(b)** Claim or "suit" for damages relating to testing for, sampling, monitoring, cleaning up, removing, abating, covering, containing, treating, mitigating, or neutralizing lead, paint containing lead, or any other material, product or substance containing lead or in any way responding to or assessing the effects of lead in any form.

**(3)** Any other loss, cost or expense arising out of, caused by or relating in any way to lead.

# Asbestos Exclusion Endorsement

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
|  |  |  |  |  | $ | $ |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I - Coverage A – Bodily Injury And Property Damage Liability** and **Coverage B - Personal And Advertising Injury Liability:**

**2.   Exclusions**

This insurance does not apply to:

**Asbestos**

**A.**   "Bodily injury", "property damage" or "personal and advertising injury" arising out of or which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or

**B.**   Any sums that any insured or other entity must pay, repay or reimburse because of any:

  1.   Request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or others  test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

  2.   Claim  or "suit"  for damages arising out of or relating in any way to any request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or  others  test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

**C.**   Any other loss, cost or expense arising out of or relating in any way to asbestos.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# Premium And Reports Agreement – Composite Rated Policies



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under any of the following:
**Commercial General Liability Coverage Part**
**Products/Completed Operations Liability Coverage Part**
**Owners Contractors Protective Coverage Part**
**Railroad Protective Coverage Part**

**Schedule**

1.  **Unit of Exposure:**

| | | |
|---|---|---|
| ☐ Gross sales | ☐ Area | ☐ Gallons |
| ☐ Each | ☐ Rooms | ☐ General Liability Payroll |
| ☐ Admissions | ☐ Units | ☐ Rounds played |
| ☐ Total Cost | ☐ Total Operating Expenditures | ☐ Occupied rooms |
| ☐ Licensed Autos | ☒ Workers Compensation Payroll | ☐ Other |

2.

| Coverage   /   Description | Unit of Exposure | Rate(s) | Estimated Premium(s) |
|---|---|---|---|
| ███████████████ | ███████████ | ████████ | ██████████ |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

(Add more rows as required)

3.  **Deposit Premium:**
4.  **Minimum Premium:**

Condition **5, Premium Audit**, of Section **IV**, **Commercial General Liability Conditions**, is replaced by the following:

**5. Premium Audit**

    **a.** We will compute all premiums for this Coverage Part according to our rules and the composite rates shown in the Schedule above or attached hereto.

    **b.** For policies other than Annual Reporting, the deposit premium shown in the Schedule is due and payable on the first day of the policy period.  The first Named Insured will pay, within 20 days following the mailing or delivery of the statement of audited premium for each audit period, the earned premium due.

    **c.** Within 180 days after this Coverage Part expires we will conduct an audit, which may not be waived. We will compute the earned premium for the policy period by multiplying the composite rate against the total developed exposure.  If the earned premium is greater than the sum of the deposit and any interim adjustment premiums, the first Named Insured will pay us the excess; if less, we will return the unearned portion to the first Named Insured.  However, the earned premium will not be less than the Minimum Premium as shown in the Schedule.

    **d.** The first Named Insured must maintain records of the information we need for premium computation and send us copies at such times as we may request.

    **e.** The units of exposure shown in the Schedule are defined as follows:

        1. **Admissions** means the total number of persons, other than employees of the named insured, admitted to events conducted on the insured premises whether on paid admissions, tickets, complimentary tickets or passes.

        2. **Gallons** means the total number of gallons of liquefied petroleum gasses invoiced on any basis to any customer, whether or not the insured actually takes possession of such gases.

        3. **Gross sales** means gross sales invoiced, before discounts, but does not include taxes collected for any governmental unit.

        4. **Licensed "auto"** means the final average of the number of "autos" at policy inception and the number of "autos" at policy termination.

        5. **Occupied rooms** means the number of rooms actually rented during the policy year in a hotel or other place of lodging.

        6. **General Liability payroll** means total remuneration for all "employees" of the insured as defined in our rating manuals.

        7. **Workers Compensation payroll** means total remuneration for all "employees" of the insured as defined in our rating manuals.

        8. **Rounds played** means the number of both paid and gratuitous rounds of golf played on an 18 hole golf course during the policy year.  Rounds that are less then 10 holes will be counted as a half round toward the total number of rounds of golf played.

        9. **Each** means the total number of exposure units as described in the exposure basis.

        10. **Rooms** mean the total number of rooms available for rent in a hotel or other place of lodging.

        11. **Total cost** means the total cost of all work let or sublet in connection with each specified project including the cost of all labor, material and equipment furnished, used or delivered in the execution of the work, however, do not include the cost of finished equipment installed but not furnished by the subcontractor if the subcontractor does no other work on or in connection with such equipment; and all fees, bonuses or commissions made, paid or due.

        12. **Total Operating Expenditures** means expenditures (including grants, entitlements and shared revenue) without regard to source of revenue, including accounts payable.

        13. **Units** means a single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone.

        14. **Area** means the total number of square feet of floor space at the insured premises they occupy or lease to others.

        15. **Other** means the unit of exposure as defined in the Unit of Exposure Schedule of this endorsement

U-GL-872-B CW 04 09
Page 2 of 2

# Deductible Endorsement - Occurrence



| Policy No. | Exp. Date of Pol. | Eff  Date of End. | Agency No. | Add!. Prem. | Return Prem. |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

Employee Benefits Liability  Coverage Part

It is agreed that the following deductible provisions are added to the policy as respects the Employee Benefit Liability Coverage Part:

Deductible: $ 250,000 ($25,000 Intermountain / Electric / WA State

1. The deductible amount stated above shall be deducted from the amount of all claims arising out of the same act, error, or omission. We shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable on a per act, error, or omission basis. The Aggregate Limit will not be reduced by the application of such deductible.

2. The terms of this Coverage Part apply regardless of the application of the deductible amount. This includes those terms with respect to:

   a. Our rights and duties with respect to the defense of "suits";  and

   b. The "insured's" duties in the event of an act, error, or omission or a claim  or "suit."

3. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit". You shall promptly reimburse us for such part of the deductible amount as has been paid by us after we notify you of our action.

U-GL-852-A CW (7/96)
Page I of I

POLICY NUMBER: GLO 5939707-08

**COMMERCIAL GENERAL LIABILITY**
**CG 02 24 10 93**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EARLIER NOTICE OF CANCELLATION PROVIDED BY US

This endorsement modifies insurance provided under the following:

     COMMERCIAL GENERAL LIABILITY COVERAGE PART
     LIQUOR LIABILITY COVERAGE PART
     POLLUTION LIABILITY COVERAGE PART
     PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Number of Days' Notice** 90

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph **2.** of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

**CG 02 24 10 93**       Copyright, Insurance Services Office, Inc.,  1992       **Page 1 of 1**  ☐

POLICY NUMBER: **GLO 5939707-08**

**COMMERCIAL GENERAL LIABILITY**
**CG 03 00 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Amount and Basis of Deductible PER CLAIM or PER OCCURRENCE | |
|---|---|---|
| Bodily Injury Liability OR | $ | $ |
| Property Damage Liability OR | $ | $ |
| Bodily Injury Liability and/or | | |
| Property Damage Liability Combined | $ | $ 250,000 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement.  If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**$25,000 - AS RESPECTS TO INTERMOUNTAIN / ELECTRIC GROUP / WA STATE**

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis.  Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above.  The deductible amount stated in the Schedule above applies as follows:

   **1.** **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

      **a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

      **b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

      **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

        **(1)** "Bodily injury";

        **(2)** "Property damage"; or

        **(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

    **a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

    **b.** Under Property Damage Liability Coverage, to all damages because of "property damage"; or

    **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

        **(1)** "Bodily injury";

        **(2)** "Property damage"; or

        **(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C.** The terms of this insurance, including those with respect to:

    **1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

    **2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

**CG 03 00 01 96**   ☐

POLICY NUMBER:GLO 5939707-08

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| THE STATE OF WASHINGTON, THE GOVERNOR, THE COMMISSION, THE SECRETARY, THE CONTRACTING AGENCY, UNITED STATES DEPARTMENT OF TRANSPORTATION (USDOT), ALL OFFICERS, EMPLOYEES OF THE STATE, AND RESPECTIVE MEMBERS, DIRECTORS, OFFICERS, AGENTS, AND CONSULTANTS. | PROJECT DESCRIPTION:  SR 520-MONTLAKE TO EVERGREEN PT. BRIDGE WEST APPROACH BRIDGE NORTH<br><br>LOCATION: KING COUNTY, WA<br><br>PROJECT NUMBER:  BR-NHPP-0520(053) |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© Insurance Services Office, Inc., 2012

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

    **1.** Required by the contract or agreement; or

    **2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

POLICY NUMBER: GLO 5939707-08

**COMMERCIAL GENERAL LIABILITY
CG 20 12 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION – PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| State Or Governmental Agency Or Subdivision Or Political Subdivision: |
| --- |
| WE WILL PROVIDE IF REQUIRED BY CONTRACT ONLY |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

**1.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**2.** This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 12 04 13

© Insurance Services Office, Inc., 2012

**Page 1 of 1**

POLICY NUMBER: GLO 5939707-08

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| WE WILL PROVIDE IF REQUIRED BY CONTRACT ONLY |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

POLICY NUMBER: GLO 5939707-08

**COMMERCIAL GENERAL LIABILITY**
**CG 20 28 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| WE WILL PROVIDE IF REQUIRED BY CONTRACT ONLY |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**CG 20 28 04 13**       © Insurance Services Office, Inc., 2012       **Page 1 of 1**

POLICY NUMBER: GLO 5939707-08

**COMMERCIAL GENERAL LIABILITY**
CG 20 37 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| THE STATE OF WASHINGTON, THE GOVERNOR, THE COMMISSION, THE SECRETARY, THE CONTRACTING AGENCY, UNITED STATES DEPARTMENT OF TRANSPORTATION (USDOT), ALL OFFICERS, EMPLOYEES OF THE STATE, AND RESPECTIVE MEMBERS, DIRECTORS, OFFICERS, AGENTS, AND CONSULTANTS. | PROJECT DESCRIPTION:  SR 520-MONTLAKE TO EVERGREEN PT. BRIDGE WEST APPROACH BRIDGE NORTH<br><br>LOCATION: KING COUNTY, WA<br><br>PROJECT NUMBER:  BR-NHPP-0520 (053) |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION (COVERAGE B ONLY)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

POLICY NUMBER: GLO 5939707-08

**COMMERCIAL GENERAL LIABILITY**
**CG 21 54 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description and Location of Operation(s):**

ANY LOCATION WHERE THE INSURED HAS, OR HAD, OPERATIONS INSURED BY A
CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM. THIS EXCLUSION DOES NOT
APPLY TO ANY LOCATION(S) THAT MAY BE DESCRIBED IN U-GL-1058, EXCESS
COVERAGE FOR INSUREDS INTEREST IN SPECIFIED WRAP UP PROGRAMS.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.,** Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** - Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

**(1)** Provides coverage identical to that provided by this Coverage Part;

**(2)** Has limits adequate to cover all claims; or

**(3)** Remains in effect.

**CG 21 54 01 96**          Copyright, Insurance Services Office, Inc., 1994          Page **1** of **1**

COMMERCIAL GENERAL LIABILITY
CG 21 65 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2. Exclusions** of **Section I — Coverage A — Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

**(a)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

**(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(i)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(ii)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

© ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced or unreinforced base coat;

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.

© ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 22 43 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

COMMERCIAL GENERAL LIABILITY
CG 22 80 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you, but only with respect to your providing engineering, architectural or surveying services in your capacity as an engineer, architect or surveyor.

Professional services include:

1. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

2. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you with respect to your providing engineering, architectural or surveying services in your capacity as an engineer, architect or surveyor.

This exclusion does not apply to your operations in connection with construction work performed by you or on your behalf.

POLICY NUMBER:  GLO 5939707-08

**COMMERCIAL GENERAL LIABILITY**
CG 24 17 10 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY - RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Scheduled Railroad: | Designated Job Site: |
|---|---|
| ALL CONTRACTS FOR WORK DONE BY OR NEAR ANY RAILROAD | |

 (If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the Definitions section is replaced by the following:

**9.** "Insured Contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(1)** above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2000

POLICY NUMBER: GLO 5939707-08

**COMMERCIAL GENERAL LIABILITY**
**CG 25 03 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Designated Construction Project(s): |
|---|
| A GENERAL AGGREGATE LIMIT APPLIES TO EACH CONSTRUCTION PROJECT WHERE THE NAMED INSURED IS PERFORMING OPERATIONS; HOWEVER, ONLY ONE GENERAL AGGREGATE LIMIT WILL APPLY TO ALL CONSTRUCTION PROJECTS WHERE THE NAMED INSURED IS PERFORMING OPERATIONS THAT ARE INSURED UNDER A WRAP-UP OR ANY OTHER COMBINED, CONSOLIDATED OR SIMILAR INSURANCE PROGRAM. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

  **1.** A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

  **2.** The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

    **a.** Insureds;

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

  **3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

  **4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

  **1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

  **2.** Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

© Insurance Services Office, Inc., 2008

POLICY NUMBER: GLO 5939707-08

**COMMERCIAL GENERAL LIABILITY**
**CG 25 04 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Designated Location(s): |
|---|
| ALL LOCATIONS, OTHER THAN CONSTRUCTION PROJECTS, OCCUPIED BY THE NAMED INSURED |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which can be attributed only to operations at a single designated "location" shown in the Schedule above:

  **1.** A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

  **2.** The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

    **a.** Insureds;

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

  **3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

  **4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

1. Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

© Insurance Services Office, Inc., 2008

**CG 25 04 05 09**   □

COMMERCIAL GENERAL LIABILITY
CG 33 78 05 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COLORADO CHANGES – EMPLOYEE BENEFITS LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

EMPLOYEE BENEFITS LIABILITY COVERAGE ENDORSEMENT

For the purposes of the coverage provided by Employee Benefits Liability Coverage Endorsement **CG 04 35,** the following condition is added and supersedes any provision to the contrary:

**Your Right To Claim And Act, Error Or Omission Information**

We will provide the first Named Insured shown in the Declarations the following information relating to this and any preceding Employee Benefits Liability Coverage Endorsement we have issued to you during the previous three years:

**a.** A list or other record of each act, error or omission, not previously reported to any other insurer, of which we were notified in accordance with Paragraph **2.a.** of the Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit" condition (Paragraph **E.**). We will include the date and brief description of the act, error or omission if that information was in the notice we received.

**b.** A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

If we cancel or elect not to renew the Employee Benefits Liability Coverage Endorsement, we will provide such information no later than 30 days before the date of policy termination. In other circumstances, we will provide this information only if we receive a written request from the first Named Insured within 60 days after the end of the policy period. In this case, we will provide this information within 30 days of receipt of the request.

We compile "claim" and acts, errors or omissions information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective, even if we inadvertently provide inaccurate information.

© Insurance Services Office, Inc., 2009

POLICY NUMBER: GLO 5939707-08

COMMERCIAL GENERAL LIABILITY
CG 04 42 11 03

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# STOP GAP – EMPLOYERS LIABILITY COVERAGE ENDORSEMENT – WASHINGTON

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SCHEDULE**

| Limits Of Insurance | | | |
|---|---|---|---|
| Bodily Injury By Accident | $ | 1,000,000 | Each Accident |
| Bodily Injury By Disease | $ | 1,000,000 | Aggregate Limit |
| Bodily Injury By Disease | $ | 1,000,000 | Each Employee |
| | | | |
| | | | |

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – STOP GAP – EMPLOYERS LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated by Washington Law to pay as damages because of "bodily injury by accident" or "bodily injury by disease" to your "employee" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any accident and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in **Section III – Limits Of Insurance;** and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under this coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to "bodily injury by accident" or "bodily injury by disease" only if:

**(1)** The:

**(a)** "Bodily injury by accident" or "bodily injury by disease" takes place in the "coverage territory";

**(b)** "Bodily injury by accident" or "bodily injury by disease" arises out of and in the course of the injured "employee's" employment by you; and

**(c)** "Employee", at the time of the injury, was covered under a worker's compensation policy and subject to a "workers compensation law" of Washington; and

**(2)** The:

**(a)** "Bodily injury by accident" is caused by an accident that occurs during the policy period; or

**(b)** "Bodily injury by disease" is caused by or aggravated by conditions of employment by you and the injured "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury by disease" occurs during the policy period.

**c.** The damages we will pay, where recovery is permitted by law, include damages:

**(1)** For:

**(a)** Which you are liable to a third party by reason of a claim or "suit" against you by that third

Copyright, ISO Properties, Inc., 2003

Wolters Kluwer Financial Services | Uniform Forms™

party to recover the damages claimed against such third party as a result of injury to your "employee";

**(b)** Care and loss of services; and

**(c)** Consequential "bodily injury by accident" or "bodily injury by disease" to a spouse, child, parent, brother or sister of the injured "employee";

provided that these damages are the direct consequence of "bodily injury by accident" or "bodily injury by disease" that arises out of and in the course of the injured "employee's" employment by you; and

**(2)** Because of "bodily injury by accident" or "bodily injury by disease" to your "employee" that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

**2. Exclusions**

This insurance does not apply to:

**a. Intentional Injury**

"Bodily injury by accident" or "bodily injury by disease" intentionally caused or aggravated by you, or "bodily injury by accident" or "bodily injury by disease" resulting from an act which is determined to have been committed by you if it was reasonable to believe that an injury is substantially certain to occur.

**b. Fines Or Penalties**

Any assessment, penalty, or fine levied by any regulatory inspection agency or authority.

**c. Statutory Obligations**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**d. Contractual Liability**

Liability assumed by you under any contract or agreement.

**e. Violation Of Law**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your "executive officers".

**f. Termination, Coercion Or Discrimination**

Damages arising out of coercion, criticism, demotion, evaluation, reassign-

ment, discipline, defamation, harassment, humiliation, discrimination against or termination of any "employee", or arising out of other employment or personnel decisions concerning the insured.

**g. Failure To Comply With "Workers Compensation Law"**

"Bodily injury by accident" or "bodily injury by disease" to an "employee" when you are:

**(1)** Deprived of common law defenses; or

**(2)** Otherwise subject to penalty;

because of your failure to secure your obligations or other failure to comply with any "workers compensation law".

**h. Violation Of Age Laws Or Employment Of Minors**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any person:

**(1)** Knowingly employed by you in violation of any law as to age; or

**(2)** Under the age of 14 years, regardless of any such law.

**i. Federal Laws**

Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by or granted pursuant to:

**(1)** The Federal Employer's Liability Act (45 USC Section 51-60);

**(2)** The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173);

**(3)** The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950);

**(4)** The Outer Continental Shelf Lands Act (43 USC Section 1331-1356);

**(5)** The Defense Base Act (42 USC Sections 1651-1654);

**(6)** The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

**(7)** The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872);

**(8)** Any other workers compensation, unemployment compensation or disability laws or any similar law; or

**(9)** Any subsequent amendments to the laws listed above.

**j. Punitive Damages**

Multiple, exemplary or punitive damages.

Copyright, ISO Properties, Inc., 2003
CG 04 42 11 03

**k. Crew Members**

"Bodily injury by accident" or "bodily injury by disease" to a master or member of the crew of any vessel or any member of the flying crew of an aircraft.

**B.** The **Supplementary Payments** provisions apply to Coverage – Stop Gap Employers Liability as well as to Coverages **A** and **B.**

**C.** For the purposes of this endorsement, **Section II – Who Is An Insured,** is replaced by the following:

If you are designated in the Declarations as:

**1.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**2.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**3.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**4.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D.** For the purposes of this endorsement, **Section III – Limits Of Insurance,** is replaced by the following:

**1.** The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The "Bodily Injury By Accident" – Each Accident Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance because of "bodily injury by accident" to one or more "employees" in any one accident.

**3.** The "Bodily Injury By Disease" – Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance and arising out of "bodily injury by disease", regardless of the number of "employees" who sustain "bodily injury by disease".

**4.** Subject to Paragraph **D.3.** of this endorsement, the "Bodily Injury By Disease" – Each "Employee" Limit shown in the Schedule of this endorsement is the most we will pay for all damages because of "bodily injury by disease" to any one "employee".

The limits of the coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E.** For the purposes of this endorsement, Condition **2. – Duties In The Event Of Occurrence, Claim Or Suit** of the Conditions Section **IV** is deleted and replaced by the following:

**2. Duties In The Event Of Injury, Claim Or Suit**

**a.** You must see to it that we or our agent are notified as soon as practicable of a "bodily injury by accident" or "bodily injury by disease" which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "bodily injury by accident" or "bodily injury by disease" took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the injury, claim, proceeding or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us and assist us, as we may request, in the investigation

or settlement of the claim or defense against the "suit";

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and

**(5)** Do nothing after an injury occurs that would interfere with our right to recover from others.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**F.** For the purposes of this endorsement, Paragraph **4.** of the **Definitions** Section is replaced by the following:

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of the activities of a person whose home is in the territory described in **a.** above, but who is away for a short time on your business;

provided the insured's responsibility to pay damages is determined in the United States (including its territories and possessions), Puerto Rico, or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

**G.** The following are added to the **Definitions** Section:

**1.** "Workers Compensation Law" means the Workers Compensation Law and any Occupational Disease Law of Washington. This does not include provisions of any law providing non-occupational disability benefits.

**2.** "Bodily injury by accident" means bodily injury, sickness or disease sustained by a person, including death, resulting from an accident. A disease is not "bodily injury by accident" unless it results directly from "bodily injury by accident".

**3.** "Bodily injury by disease" means a disease sustained by a person, including death. "Bodily injury by disease" does not include a disease that results directly from an accident.

**H.** For the purposes of this endorsement, the definition of "bodily injury" does not apply.

Copyright, ISO Properties, Inc., 2003
**CG 04 42 11 03**

**EXHIBIT C**

"HAND DELIVER ONLY"

From: Office Engineer          227-6299
"Please call when signed & ready to pick-up"

## STATE OF CALIFORNIA
## DEPARTMENT OF TRANSPORTATION

# EXECUTION

# OF

# CONTRACT

### FOR CONSTRUCTION ON
## STATE HIGHWAY

### IN

**SAN BERNARDINO COUNTY ON ROUTE 138 NEAR
PHELAN FROM 0.6 MILE WEST OF PHELAN ROAD TO
THE JUNCTION OF ROUTE 15 AND ON ROUTE 2 FROM
0.1 MILE NORTH OF WILD HORSE CANYON ROAD TO
ROUTE 138**

**DISTRICT  08   ROUTE  2, 138**

For use in Connection with Standard Specifications Dated  July 10 , Standard
Plans Dated  July 10 , and Labor Surcharge and Equipment Rental Rates.

**Contract No.     08-3401U4**

**08-SBd-2, 138-6.2/6.4,2.3/R15.2**

**ACSTP-P138(049)E**

FLATIRON/HARDY & HARPER ( A JOINT VENTURE)

Please return Contracts Within
10 Days to:

Department of Transportation
Attn:  Office Engineer MS 43
1727 30th Street
Sacramento CA  95816

**Bids Open:   July 24, 2014**

**BIDDERS PLEASE NOTE**
Bid Summaries available at:
http://www.dot.ca.gov/hq/esc/oe/



### STATE OF CALIFORNIA

# DEPARTMENT OF TRANSPORTATION

#### CONTRACT NO.    08-3401U4

THIS AGREEMENT, made and concluded, in duplicate,
between the State of California, by the Department of Transportation thereof, party of the first part, and

## FLATIRON/HARDY & HARPER  A JOINT VENTURE
**1770 LA COSTA MEADOWS DRIVE**
**SAN MARCOS CA 92078**

**License:** 995477        **Class:** A              **Phone:** (760)916-9100

Contractor, party of the second part.

**ARTICLE I.-- WITNESSETH,** That for and in consideration of the payments and agreements hereinafter mentioned, to be made and performed by the said party of the first part, and under the conditions expressed in the 2 bonds, bearing even date with these presents, and hereunto annexed, the said party of the second part agrees with the said party of the first part, at his own proper cost and expense, to do all the work and furnish all the materials, except such as are mentioned in the specifications to be furnished by said party of the first part, necessary to construct and complete in a good, workmanlike and substantial manner and to the satisfaction of the Department of Transportation, the work described in the special provisions and the project plans described below, including any addenda thereto, and also in accordance with the Department of Transportation Standard Plans, dated July, 2010, the Standard Specifications, dated July, 2010, and the Labor Surcharge And Equipment Rental Rates in effect on the date the work is accomplished, which said special provisions, project plans, Standard Plans, Standard Specifications, and Labor Surcharge And Equipment Rental Rates are hereby specially referred to and by such reference made a part hereof.

The special provisions for the work to be done are dated May 12,2014 and are entitled:

**STATE OF CALIFORNIA; DEPARTMENT OF TRANSPORTATION; NOTICE TO CONTRACTORS AND SPECIAL PROVISIONS FOR CONSTRUCTION ON STATE HIGHWAY IN SAN BERNARDINO COUNTY ON ROUTE 138 NEAR PHELAN FROM 0.6 MILE WEST OF PHELAN ROAD TO THE JUNCTION OF ROUTE 15 AND ON ROUTE 2 FROM 0.1 MILE NORTH OF WILD HORSE CANYON ROAD TO ROUTE 138**

The project plans for the work to be done were approved March 3,1014 and are entitled:

**STATE OF CALIFORNIA; DEPARTMENT OF TRANSPORTATION; PROJECT PLANS FOR CONSTRUCTION ON STATE HIGHWAY IN SAN BERNARDINO COUNTY ON ROUTE 138 NEAR PHELAN FROM 0.6 MILE WEST OF PHELAN ROAD TO THE JUNCTION OF ROUTE 15 AND ON ROUTE 2 FROM 0.1 MILE NORTH OF WILD HORSE CANYON ROAD TO ROUTE 138**

**Type of Work:**    **Widening highway, bridges and constructing retaining walls.**

1

**ARTICLE II.--**   The said party of the first part hereby promises and agrees with the said Contractor to employ, and does hereby employ, the said Contractor to provide the materials and to do the work according to the terms and conditions herein contained and referred to, for the prices hereinafter set forth, and hereby contracts to pay the same at the time, in the manner and upon the conditions herein set forth; and the said parties for themselves, their heirs, executors, administrators, successors and assigns, do hereby agree to the full performance of the covenants herein contained.

**ARTICLE III.--**   The statement of prevailing wages appearing in the General Prevailing Wage Rates is hereby specifically referred to and by this reference is made a part of this contract.  It is further expressly agreed by and between the parties hereto that should there be any conflict between the terms of this instrument and the bid or proposal of said Contractor, then this instrument shall control and nothing herein shall be considered as an acceptance of the said terms of said proposal conflicting herewith.

**ARTICLE IV.--**   By my signature hereunder, as Contractor, I certify that I am aware of the provisions of Section 3700 of the Labor Code which require every employer to be insured against liability for workmen's compensation or to undertake self-insurance in accordance with the provisions of that code, and I will comply with such provisions before commencing the performance of the work of this contract.

**ARTICLE V.--**   And the said Contractor agrees to receive and accept the following price or prices as full compensation for furnishing all materials and for doing all the work contemplated and embraced in this agreement;  also for all loss or damage, arising out of the nature of the work aforesaid, or from the action of the elements, or from any unforeseen difficulties or obstructions which may arise or be encountered in the prosecution of the work until its acceptance by the Department of Transportation, and for all risks of every description connected with the work;  also for all expenses incurred by or in consequence of the suspension or discontinuance of work and for well and faithfully completing the work, and the whole thereof, in the manner and according to the plans and special provisions, and the requirements of the Engineer under them, to wit:

08-3401U4

STATE OF CALIFORNIA  DEPARTMENT OF TRANSPORTATION

**CONTRACT**

DES-OE-0103A (REV 3/2010)



## STATE OF CALIFORNIA
## DEPARTMENT OF TRANSPORTATION
## CONTRACT NO.   08-3401U4

This contract is entered into between the State of California's Department of Transportation and the Contractor named below:

FLATIRON/HARDY & HARPER  A JOINT VENTURE

CONTRACTOR'S NAME

The parties agree to comply with the terms of the following exhibits that are by this reference made a part of this contract.

| | |
|---|---|
| Exhibit A - Bid book dated | 5/12/2014 |
| Exhibit B - Notice to Bidders and Special Provisions dated | 5/12/2014 |
| Exhibit C - Project Plans approved | 3/3/1014 |
| Exhibit D - Standard Specifications dated | 2010 |
| Exhibit E - Standard Plans dated | 2010 |
| Exhibit F - Addenda | |

Exhibits A, B, C, and F are those exhibits identified with the same contract number as this contract.

**This contract has been executed by the following parties:**

### CONTRACTOR

CONTRACTOR'S NAME (if other than an individual, state whether a corporation, partnership, etc.)
Flatiron/Hardy & Harper A Joint Venture

BY (Authorized Signature)

DATE SIGNED (Do not type)
9/22/2014

PRINTED NAME AND TITLE OF PERSON SIGNING
Christian M. Peich, Attorney-in-fact

FEDERAL EMPLOYER IDENTIFICATION NUMBER
47-1433560

### DEPARTMENT OF TRANSPORTATION

BY (Authorized Signature)

DATE SIGNED (Do not type)
6/6/14

PRINTED NAME AND TITLE OF PERSON SIGNING
Earl R. Seaberg, Jr.    Chief, Office of Contract Awards / Services

**This contract has been certified as complying with the State Contract Act:**

BY (Authorized Signature)

DATE SIGNED (Do not type)
10/10/14

PRINTED NAME AND TITLE OF PERSON SIGNING
Erin Holbrook, Deputy Attorney

**ADA Notice**  For individuals with sensory disabilities, this document is available in alternate formats. For information call (916) 654-6410 or TDD (916) 654-3880 or write Records and Forms Management, 1120 N Street, MS-89, Sacramento, CA 95814.

Flatiron Bond Nos. - Liberty - 015045190, Travelers - 106123159, F&D/Zurich - 9163010
Federal - 82320160, CNA - 929593295, XL - SUR7402539

Executed in Triplicate   H&H Bond No. - Zurich - 9106719
Premium: $252,507.00

STATE OF CALIFORNIA

Bond No. _____

DEPARTMENT OF TRANSPORTATION

# PERFORMANCE BOND

( To Accompany Contract )

WHEREAS, the State of California, Department of Transportation, hereafter referred to as "Obligee", has awarded to Contractor

## FLATIRON/HARDY & HARPER  A JOINT VENTURE

hereafter referred to as "Principal", a contract for the work described as follows:

## 08-3401U4    08-SBd-2, 138-6.2/6.4,2.3/R15.2

Widening highway, bridges and constructing retaining walls.

AND, WHEREAS,  said Principal is required to furnish a bond in connection with said contract, guaranteeing the faithful performance thereof:

NOW, THEREFORE, we the undersigned Principal and Surety are held firmly bound to the Obligee, in the sum of

**Twenty three million seven hundred fourteen thousand twenty and 66/100**

dollars ($ **23,714,020.66** ) to be paid to the Obligee, for which payment, we bind ourselves, jointly and severally.

THE CONDITION OF THIS OBLIGATION IS SUCH,

That if said Principal shall faithfully perform this contract, then this obligation shall be null and void; otherwise it shall be in full force and effect.

No right of action shall accrue under this bond to or for the use of any person other than the Obligee named herein.

Dated:   SEP 1 0 2014

FLATIRON/HARDY & HARPER  A JOINT VENTURE

By _____

Christian M. Peich,*        *Principal*        *Attorney-in-fact*

**See Attachment A**

*Surety*

By   **See Attachment A**

*Attorney-in-fact*

| |
|---|
| Correspondence or claims relating to this bond should be sent to the surety at the following address: |
| **Liberty Mutual Insurance Company** |
| **2815 Forbs Avenue, Suite 102** |
| **Hoffman Estates, IL  60192** |

NOTE:  Signatures of those executing for the surety must be properly acknowledged, and a Power of Attorney attached.

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California
County of _____ }

On this _____ before me, _____
          *Date*                                    *Here Insert Name and Title of the Officer*

personally appeared _____
                              *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

*Signature of Notary Public*

(SEAL)

4

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**
CIVIL CODE § 1189

State of California

County of _____ San Diego _____ }

On ___ September 24, 2014 ___ before me, _____ Jannette M. Carter, Notary Public _____,
            *Date*                                             *Name and Title of the Officer*

personally appeared _____ Christian M. Peich _____
                                                             *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____
               *Signature of Notary Public*

**JANNETTE M. CARTER**
Commission # 2047538
Notary Public - California
San Diego County
My Comm. Expires Nov 28, 2017

*Place Notary Seal Above*

——————————————— **OPTIONAL** ———————————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: Performance Bond _____ Document Date: September 10, 2014

Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: Christian M. Peich | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual   ☑ Attorney in Fact | ☐ Individual   ☐ Attorney in Fact |
| ☐ Trustee   ☐ Guardian or Conservator | ☐ Trustee   ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |

Signer Is Representing: Flatiron/Hardy & Harper A Joint Venture

Signer Is Representing: _____

© 2013 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

STATE OF CALIFORNIA  DEPARTMENT OF TRANSPORTATION

**CONTRACT**

DES-OE-0103A (REV 3/2010)



### STATE OF CALIFORNIA
### DEPARTMENT OF TRANSPORTATION
### CONTRACT NO.   08-3401U4

This contract is entered into between the State of California's Department of Transportation and the Contractor named below:

FLATIRON/HARDY & HARPER  A JOINT VENTURE

CONTRACTOR'S NAME

The parties agree to comply with the terms of the following exhibits that are by this reference made a part of this contract.

| | |
|---|---|
| Exhibit A - Bid book dated | 5/12/2014 |
| Exhibit B - Notice to Bidders and Special Provisions dated | 5/12/2014 |
| Exhibit C - Project Plans approved | 3/3/1014 |
| Exhibit D - Standard Specifications dated | 2010 |
| Exhibit E - Standard Plans dated | 2010 |
| Exhibit F - Addenda | |

Exhibits A, B, C, and F are those exhibits identified with the same contract number as this contract.

**This contract has been executed by the following parties:**

### CONTRACTOR

CONTRACTOR'S NAME (if other than an individual, state whether a corporation, partnership, etc.)
Flatiron/Hardy & Harper A Joint Venture

BY (Authorized Signature)                               DATE SIGNED (Do not type) 9/22/2014

PRINTED NAME AND TITLE OF PERSON SIGNING
Christian M. Peich, Attorney-in-fact

FEDERAL EMPLOYER IDENTIFICATION NUMBER
47-1433560

### DEPARTMENT OF TRANSPORTATION

BY (Authorized Signature)                               DATE SIGNED (Do not type) 16/8/14

PRINTED NAME AND TITLE OF PERSON SIGNING
Earl R. Seaberg, Jr.   Chief, Office of Contract Awards/Services

**This contract has been certified as complying with the State Contract Act:**

BY (Authorized Signature)                               DATE SIGNED (Do not type) 10/10/14

PRINTED NAME AND TITLE OF PERSON SIGNING
Erin Holbrook, Deputy Attorney

**ADA Notice** For individuals with sensory disabilities, this document is available in alternate formats. For information call (916) 654-6410 or TDD (916) 654-3880 or write Records and Forms Management, 1120 N Street, MS-89, Sacramento, CA 95814.

# STANDARD SPECIFICATIONS

**STATE OF CALIFORNIA**
**BUSINESS, TRANSPORTATION AND HOUSING AGENCY**
**DEPARTMENT OF TRANSPORTATION**

# 2010

**PUBLISHED BY**

**DEPARTMENT OF TRANSPORTATION**



Copies of this book may be obtained from:

STATE OF CALIFORNIA
DEPARTMENT OF TRANSPORTATION
PUBLICATION DISTRIBUTION UNIT
1900 ROYAL OAKS DRIVE
SACRAMENTO, CALIFORNIA  95815-3800
Telephone (916) 263-0822
Fax (916) 263-0470
Publication Unit Web site: http://caltrans-opac.ca.gov/publicat.htm

**SECTION 7**                    **LEGAL RELATIONS AND RESPONSIBILITY TO THE PUBLIC**

2.  Paving, grinding, or grooving
3.  Installing, maintaining, or removing traffic control devices except Type K temporary railing

Do not reduce an open traffic lane width to less than 10 feet. When traffic cones or delineators are used for temporary edge delineation, the side of the base of the cones or delineators nearest to traffic is considered the edge of the traveled way.

If a traffic lane is closed with channelizers for excavation work, move the devices to the adjacent edge of the traveled way when not excavating. Space the devices as specified for the lane closure.

Do not move or temporarily suspend anything over a traffic lane open to the public unless the public is protected.

## 7-1.05 INDEMNIFICATION

### 7-1.05A General

You must defend, indemnify, and save harmless the State, including its officers, employees, and agents (excluding agents who are design professionals), from any and all claims, demands, causes of action, damages, costs, expenses, actual attorneys' fees, losses or liabilities, in law or in equity (Section 7-1.05 Claims) arising out of or in connection with your performance of this Contract for:

1.  Bodily injury including, but not limited to, bodily injury, sickness or disease, emotional injury or death to persons, including, but not limited to, the public, any employees or agents of you, the State, or any other contractor; and
2.  Damage to property of anyone including loss of use thereof; caused or alleged to be caused in whole or in part by any negligent or otherwise legally actionable act or omission of you or anyone directly or indirectly employed by you or anyone for whose acts you may be liable.

Except as otherwise provided by law, these requirements apply regardless of the existence or degree of fault of the State. You are not obligated to indemnify the State for Claims arising from conduct delineated in Civ Code § 2782 and for Claims arising from any defective or substandard condition of the highway that existed at or before the start of work, unless this condition has been changed by the work or the scope of the work requires you to maintain existing highway facilities and the Claim arises from your failure to maintain. Your defense and indemnity obligation shall extend to Claims arising after the work is completed and accepted if the Claims are directly related to alleged acts or omissions by you that occurred during the course of the work. Any inspection of the work by the State is not a waiver of full compliance with these requirements.

Your obligation to defend and indemnify is not excused because of your inability to evaluate liability or because you evaluate liability and determine that you are not liable. You must respond within 30 days to the tender of any Claim for defense and indemnity by the State, unless this time has been extended by the State. If you fail to accept or reject a tender of defense and indemnity within 30 days, in addition to any other remedy authorized by law, the Department may withhold such funds the State reasonably considers necessary for its defense and indemnity until disposition has been made of the Claim or until the Contractor accepts or rejects the tender of defense, whichever occurs first.

With respect to third-party claims against you, you waive all rights of any type to express or implied indemnity against the State, its officers, employees, or agents (excluding agents who are design professionals).

Nothing in the Contract is intended to establish a standard of care owed to any member of the public or to extend to the public the status of a third-party beneficiary for any of these indemnification specifications.

### 7-1.05B Responsibility to Other Entities

You are responsible for any liability imposed by law and for injuries to or death of any person, including workers and the public, or damage to property. Indemnify and save harmless any county, city or district and its officers and employees connected with the work, within the limits of which county, city, or district the work is being performed, all in the same manner and to the same extent specified for the protection of the State.

**EXHIBIT D**

1  PANISH SHEA & BOYLE LLP
   ADAM SHEA, State Bar No. 166800
2    *shea@psblaw.com*
   RYAN A. CASEY, State Bar No. 271865
3    *casey@psblaw.com*
   PATRICK GUNNING, State Bar No. 280457
4    *gunning@psblaw.com*
   11111 Santa Monica Boulevard, Suite 700
5  Los Angeles, California 90025
   Telephone: 310.477.1700
6  Facsimile: 310.477.1699

7  PERONA, LANGER, BECK, SERBIN & HARRISON, PC
   ALVIN CHANG, State Bar No. 222620
8    *AlvinChang@plblaw.com*
   300 East San Antonio Drive
9  Long Beach, California 90807
   Telephone: 800.435.7542
10 Facsimile:  562.490.9823

11 Attorneys for Plaintiff

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

SEP 20 2018

BY_____
DAISY MONDRAGON, DEPUTY

12        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13        **COUNTY OF SAN BERNARDINO, SAN BERNARDINO DISTRICT**

14

15 JORDYN BREWER,                        | Case No. CIVDS1810814
                                          | Assigned for All Purposes to Dept. S23
16        Plaintiff,                      | Judge Donald R. Alvarez
                                          | *{related action: CIVDS1812736}*
17        v.
                                          | **FIRST AMENDED COMPLAINT FOR**
18 STATE OF CALIFORNIA, DEPARTMENT        | **PERSONAL INJURY**
   OF TRANSPORTATION OF THE STATE
19 OF CALIFORNIA (CALTRANS), a public     | 1.   **DANGEROUS CONDITION OF**
   entity; COUNTY OF SAN BERNARDINO, a    |      **PUBLIC PROPERTY**
20 public entity; MARCO ANTONIO
   ESQUIVEL an individual; HILDA TORRES,  | 2.   **NEGLIGENCE**
21 an individual, and DOES 1-100, Inclusive
                                          | **DEMAND FOR JURY TRIAL**
22        Defendants.
                                          | **Action Filed:**   May 3, 2018
23                                        | **Trial Date:**     None Set

24

25        COMES NOW Plaintiff, JORDYN BREWER, a disabled person by and through her

26 Guardian ad Litem, Psychomey L. Brewer, for causes of action against Defendants STATE OF

27 CALIFORNIA, DEPARTMENT OF TRANSPORTATION OF THE STATE OF CALIFORNIA

28 (CALTRANS), a public entity; COUNTY OF SAN BERNARDINO, a public entity; MARCO

───────────────────────────────

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY, DEMAND FOR JURY TRIAL

*PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax*

COPY

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

1   ANTONIO ESQUIVEL, an individual; HILDA TORRES, an individual; and DOES 1 through

2   100, inclusive, and each of them, and complains and alleges as follows:

3

4                                    **GENERAL ALLEGATIONS**

5        1.       The instant personal injury case arises out of a motor vehicle collision that occurred

6   on May 15, 2017, at approximately 10:20 p.m. (hereinafter "SUBJECT COLLISION").  The

7   SUBJECT COLLISION occurred on State Route 138 and approximately 150 feet east of Dusty

8   Lane.  At said date, time, and location, Defendant MARCO ANTONIO ESQUIVEL (hereinafter

9   "ESQUIVEL") was running an errand for his employer Defendant HILDA TORRES (hereinafter

10  "TORRES").  Defendant ESQUIVEL was travelling westbound on State Route 138 when he

11  crossed the double yellow line in an attempt to pass a big rig.  Plaintiff JORDYN BREWER

12  (hereinafter "BREWER") was in the passenger seat of her vehicle and traveling eastbound on State

13  Route 138 when the driver of her vehicle encountered Defendant ESQUIVEL's 2017 Dodge Ram

14  going the opposite direction and directly in her lane of travel.  As the concrete jersey wall had

15  reduced the recovery emergency shoulder from fifteen feet to one foot in width, the driver of

16  BREWER's vehicle had no alternative but to immediately apply the brakes.  This caused the driver

17  of BREWER's vehicle to loss control of the vehicle and rotate in a counter-clockwise manner.

18  Defendant ESQUIVEL collided directly into the right side of BREWER's vehicle.  The

19  "SUBJECT ROADWAY" constituted a dangerous condition since the concrete jersey wall

20  reduced the recovery emergency shoulder from fifteen feet to one foot in width.  As a result of the

21  dangerous condition, BREWER's vehicle could not avoid a collision.  The SUBJECT

22  ROADWAY was owned, controlled, designed, constructed, maintained, and repaired by the

23  STATE OF CALIFORNIA, DEPARTMENT OF TRANSPORTATION OF THE STATE OF

24  CALIFORNIA (CALTRANS) and THE COUNTY OF SAN BERNARDINO.  Defendant

25  TORRES was at all times relevant herein was the employer of Defendant ESQUIVEL.

26       2.       Plaintiff JORDYN BREWER's claims for personal injury is brought on her behalf

27  by her father and Guardian ad Litem Psychomey Brewer.  Plaintiff BREWER was at all times

28  relevant herein a resident of Victorville, California.

                                                2

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

1       3.     Defendant MARCO ANTONIO ESQUIVEL, an individual, was at all times

2  relevant herein a resident of Riverside, California.

3       4.     HILDA TORRES, an individual, was at all times relevant herein a resident of

4  Canyon Country, California.

5       5.     Defendant STATE OF CALIFORNIA, DEPARTMENT OF TRANSPORTATION

6  OF THE STATE OF CALIFORNIA, a public entity (hereinafter "CALTRANS"), is, and at all

7  time herein mentioned was, a public entity duly organized and existing under an by virtue of the

8  laws of the State of California and authorized to do, and doing, business in the State of California.

9       6.     Defendant THE COUNTY OF SAN BERNARDINO, a public entity (hereinafter

10  "SBC"), is, and at all time herein mentioned was, a public entity duly organized and existing under

11  an by virtue of the laws of the State of California and authorized to do, and doing, business in the

12  State of California.

13       7.     Defendants CALTRANS and SBS are public entity defendants, and are herein

14  collectively referred to as GOVERNMENTAL ENTITIES.

15       8.     GOVERNMENTAL ENTITIES are each a separate "public entity," upon which

16  Plaintiff has, pursuant to any and all applicable provisions in the California *Government Code*,

17  served written government claims.  GOVERNMENTAL ENTITIES have rejected and/or may be

18  deemed to have rejected said claims as of the date of filing of this complaint.  Consequently,

19  Plaintiff therefore has standing to bring suit for monetary damages against the aforementioned

20  GOVERNMENTAL ENTITIES, as well as their agents, employees, and/or independent

21  contractors.

22       9.     BREWER is informed and believes, and thereon alleges, that at all times mentioned

23  herein, Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them,

24  were and are responsible for maintaining, operating, patrolling, servicing, facilitating, owning,

25  building, drafting, engineering, controlling, designing, inspecting, modifying, planning,

26  contracting, and regulating the provisions of the SUBJECT ROADWAY and its adjacent property,

27  including, but not limited to, the SUBJECT CONCRETE JERSEY WALL.

28  / / /

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

10.     BREWER is informed and believes, and thereon alleges, that at all times mentioned herein, defendants ESQUIVEL, TORRES, CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, were agents, servants, employees, successors in interest, and/or joint venturers of their co-defendants, and were, as such, acting within the course, scope, and authority of sad agency, employment, and/or venture, and that each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every other defendant as an agent, servant, employee, successor in interest, and/or joint venturer.

11.     BREWER is informed and believes, and thereon alleges, that at all times mentioned herein, defendants CALTRANS and SBC personnel who BREWER contends are responsible for the negligent and reckless acts and omissions as described herein, which BREWER contends are the legal and proximate cause of Plaintiff's damages as described herein.  BREWER will amend this complaint to set forth the same as soon as the identities of the culpable individuals are identified.

12.     BREWER is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants CALTRANS and SBC personnel and DOES 1 through 100, inclusive, and each of them, were agents, servants, employees, successors in interest, and/or joint venturers of their co-defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture, and that each and every defendant, as foresaid, when acting as a principal, was negligent in the selection and hiring of each and every other defendant as an agent, servant, employee, successor in interest, and/or joint venturer.

13.     The true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise, of DOES 1 through 100, inclusive, are unknown to Plaintiff who therefore sues said defendants by such fictitious names.  The full extent of the facts linking such fictitiously sued defendants is unknown to Plaintiff.  Plaintiff is informed and believes, and thereupon alleges, that each of the defendants designated herein as a DOE was, and is, negligent, or in some other actionable manner, responsible for the events and happenings hereinafter referred to, and thereby negligently, or in some other actionable manner, legally and proximately caused the hereinafter described injuries and damages to Plaintiff.  Plaintiff will hereafter seek leave of the Court to

4

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

1  amend this complaint to show the defendants' true names and capacities after the same have been

2  ascertained.

3

4  **FIRST CAUSE OF ACTION**

5  **(Dangerous Condition of Public Property by BREWER Against Defendants CALTRANS,**

6  **SBC, and DOES 1 through 100, inclusive.)**

7       14.    BREWER re-alleges and incorporates herein by reference each and every allegation

8  and statement contained in the prior paragraphs.

9       15.    At the time of the SUBJECT COLLISION, at the location of the public property

10  located on, at, or near the SUBJECT ROADWAY, including, but not limited to, the SUBJECT

11  CONCRETE JERSEY WALL where the SUBJECT COLLISION occurred, there existed various

12  dangerous condition(s) on said property that created a substantial risk of injury when such

13  property or adjacent property was used with due care in a manner in which it is and was

14  reasonably foreseeable that it would be and was used, including, but not limited to, in the

15  following respects:

16       a.    The SUBJECT ROADWAY is improperly and dangerously delineated,

17            placed, angled, and designed;

18       b.    The SUBJECT ROADWAY lacks any, or has insufficient and/or defective,

19            barriers, warning signs or signals, or other forms of warning to protect

20            persons, such as BREWER, from the unreasonable risk of harm posed by

21            the SUBJECT CONCRETE JERSEY WALL;

22       c.    The SUBJECT ROADWAY includes the existence of various features,

23            including, but not limited to, the unprotected, unmarked SUBJECT

24            CONCRETE JERSEY WALL, which pose an unreasonable risk of harm to

25            persons, such as BREWER;

26       d.    The SUBJECT ROADWAY in its totality is improperly and dangerously

27            designed, creating and/or aggravating a confusing and inherently

28            dangerous condition, by virtue of, but not limited to, the presence of the

5

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY, DEMAND FOR JURY TRIAL

SUBJECT CONCRETE JERSEY WALL that eliminates the presence an emergency shoulder;

e.  The SUBJECT ROADWAY lacks a reasonable emergency shoulder. Specifically, persons driving near the SUBJECT CONCRETE JERSEY WALL do not have any space to pull into in case of emergency, thereby creating a concealed trap;

f.  The SUBJECT ROADWAY constituted a dangerous condition, which was created by Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive.  Said Defendants had actual and constructive notice of the dangerous condition on the SUBJECT ROADWAY;

g.  Defendants should have known that the SUBJECT ROADWAY currently under construction is known as the "Highway of Death" because of the numerous crossover accidents during ongoing construction work, which required protective measures to prevent crossover accidents along the highway and particularly the area of construction where the SUBJECT COLLISION took place;

h.  The SUBJECT ROADWAY lacked appropriate signs to adequately warn motorists not to cross over the double yellow line and further warning of potential fines if a motorist did cross over the double yellow line;

i.  The SUBJECT ROADWAY was absent of sufficient recovery space on either side of the highway where the SUBJECT COLLISION took place to accommodate drivers attempting to remain on the highway;

j.  The posted speed limit on the SUBJECT ROADWAY is excessive, thereby creating a hazard to motorist;

k.  The SUBJECT ROADWAY surface was in a deteriorated condition, including, but not limited to, its markings and controls;

l.  The SUBJECT ROADWAY and adjacent property were designed, constructed, and maintained in such a manner as to obstruct and interfere

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

6

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

with the vision and perception of drivers, thereby interfering with the normal flow of traffic and with the safe operation of vehicles;

m.   The absence of sufficient roadway recovery width and shoulder area to safely accommodate the volume, direction, movement, and flow of traffic using the roadway on a daily basis;

n.   The absence of any shoulder or emergency parking for vehicles adjacent to the lanes of travel;

o.   The SUBJECT ROADWAY was dangerously and unreasonably, designed, constructed, and maintained so as to increase the likelihood that vehicles would leave the traveled portion of the highway;

p.   The absence of any protective device to prevent vehicles from crossing the lines;

q.   The design and condition of the SUBJECT ROADWAY and adjacent property forced motorists to travel and encroach upon the highway, exposing motorists to injury; and

r.   Such other conditions unknown to Plaintiff at this time, but which may be established through discovery.

16.   The SUBJECT ROADWAY lacks any, or has insufficient, warning signs, either temporary or permanent, that would provide warning to persons near the SUBJECT CONCRETE JERSEY WALL about the dangerous conditions described herein.

17.   Any existing warning signs, either temporary or permanent, that would provide warning to persons encountering the dangerous conditions of the SUBJECT ROADWAY and adjacent property, including, but not limited to, the SUBJECT CONCRETE JERSEY WALL, were defective, inadequate, and/or nor properly functioning.

18.   Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, failed to maintain the SUBJECT ROADWAY and related signage and devices, so as to create a concealed trap.

///

19.     Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, were responsible for the planning, design, supervision, control, construction, servicing, management, inspection, operation, signing, striping, maintenance, repair, traffic control, and other activities related to the SUBJECT ROADWAY where the SUBJECT COLLISION occurred, including, but not limited to, properly adjacent to the SUBJECT ROADWAY, which directly affected the amount, type, direction, and speed of traffic on the SUBJECT ROADWAY.

20.     BREWER further is informed and believes that Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, caused, created, and/or allowed to exist, and allowed to continue to exist, said dangerous condition(s) with respect to the SUBJECT ROADWAY and its adjacent property, including, but not limited to, the SUBJECT CONCRETE JERSEY WALL.  BREWER is further informed and believes, and thereon alleges, that Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, misconduct in causing, creating, allowing to exist, and allowed to exist said dangerous conditions(s) with respect to the SUBJECT ROADWAY and its adjacent property, including, but not limited to, the SUBJECT CONCRETE JERSEY WALL, created a reasonably foreseeable risk of injury to persons using the SUBJECT ROADWAY in a reasonable manner, such as BREWER. At all times mentioned, Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, were responsible for the planning, design, supervision, control, construction, servicing, management, inspection, operation, signing, striping, maintenance, repair, traffic control, any other activities related to the SUBJECT ROADWAY where the accident occurred, including but not limited to, property adjacent to the SUBJECT CONCRETE JERSEY WALL.

21.     At said time and place, Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, by and through their employees, agents, servants, and independent contractors, proximately caused the injuries and damages as hereafter mentioned to BREWER by negligently, wantonly, recklessly, tortuously, wrongfully, unreasonably, and unlawfully:

a.     Planning, designing, constructing, owning, possessing, controlling, operating, maintaining, servicing, inspecting, repairing, and monitoring the SUBJECT ROADWAY and adjacent property, including, but not limited to,

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

8

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

1      the design and construction of the SUBJECT CONCRETE JERSEY

2      WALL.

3      b.    Supervising, controlling, contracting, inspecting, repairing, maintaining,

4      monitoring, and working on or at the SUBJECT ROADWAY with regard to

5      design configurations, geometrics, sight distances, absence of traffic control

6      devices, and warning devices on or adjacent to the SUBJECT ROADWAY,

7      which created a dangerous condition that was not reasonably apparent to

8      prudent motorists and pedestrians.

9      c.    Failing to guard, warn, and protect motorists from hazards, which

10     Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and

11     each of them, knew about, or in the exercise of reasonable diligence should

12     have known about;

13     d.    Designing, constructing, owning, supervising, controlling, testing,

14     entrusting, permitting, managing, maintaining, servicing, repairing,

15     inspecting, and operating with regard to the SUBJECT ROADWAY so as

16     to cause, permit, and allow dangerous, defective, and unsafe conditions at

17     the accident site to exist;

18     e.    Failing to install appropriate traffic control devices, including signs signals,

19     lights, road markers, striping, and the like; failure to install warning signs,

20     signals or devices to warn and/or apprise motorists of the presence of the

21     dangerous condition of the SUBJECT ROADWAY, which was not

22     reasonably apparent at or near the SUBJECT CONCRETE JERSEY

23     WALL.

24     f.    Failing to install appropriate areas for travel, including signs, shoulder

25     areas, road markers, striping, and the like; failure to install warning signs,

26     signals or devices to warn and/or apprise motorists on the SUBJECT

27     ROADWAY and failing to otherwise advise or control traffic at or near the

28     SUBJECT CONCRETE JERSEY WALL of the danger.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

22.    BREWER is informed and believes, and thereon alleges that that the aforementioned conditions constituted dangerous condition(s) of public property as set forth under *Government Code* section 835, *et seq*.  BREWER is informed and believes, and thereon alleges, that Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, had, within the meaning of *Government Code* section 835.2, actual and constructive knowledge of the said dangerous and defective conditions of the SUBJECT CONCRETE JERSEY WALL and adjacent property for a sufficient period of time prior to the SUBJECT COLLISION to have taken measures to prevent such incidents due to the longstanding condition(s) of the SUBJECT CONCRETE JERSEY WALL and adjacent property.  BREWER is informed and believes, and thereon alleges, that Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them also had actual knowledge of a number of prior vehicle collisions of a similar nature to the SUBJECT COLLISION at the same, or nearby, location for sufficient period of time prior to the SUBJECT COLLISION to have taken measures to prevent further such incidents.

23.    BREWER is informed and believes, and thereon alleges, that Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, caused, created, and/or allowed to exist, and allowed to continue to exist, said dangerous condition(s) with respect to the SUBJECT ROADWAY and its adjacent property, including, but not limited to, the SUBJECT CONCRETE JERSEY WALL.  BREWER is further informed and believes, and thereon alleges, that Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, misconduct in causing, creating, allowing to exist, and allowed to continue to exist, said dangerous condition(s) with respect to the SUBJECT ROADWAY and its adjacent property, including, but not limited to, the SUBJECT CONCRETE JERSEY WALL, created a reasonably foreseeable risk of injury to persons using the SUBJECT ROADWAY in a reasonable manner, such as BREWER.

24.    Based upon the aforementioned facts, the SUBJECT ROADWAY and adjacent property thereto, including, but not limited to, the SUBJECT CONCRETE JERSEY WALL, constituted a dangerous condition of public property at the time of the SUBJECT COLLISION for many reasons, including, but not limited to, the following:

/ / /

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

a.  The SUBJECT ROADWAY and adjacent property, including, but not limited to, the SUBJECT CONCRETE JERSEY WALL, was dangerous and defectively planned, designed, drafted, engineered, constructed, and positioned, and was either not approved in accordance with standard procedure, regulations, and statutes (thereby violating same) or could not reasonably have been approved by any appropriate and responsible governmental entity or any delegates and agents thereof;

b.  To the extent the design of the SUBJECT ROADWAY and adjacent property, including, but not limited to, the SUBJECT CONCRETE JERSEY WALL, was approved, if any approval was requested and given, the requesting and responding authority(ies)/delegate(s) and agent(s) were incompetent or failed to possess the requisite skills and expertise to render a reasonable evaluation of the benefits, risks, and dangers of the plan as submitted or amended and approved;

c.  To the extent the design of the SUBJECT ROADWAY was approved, said approval was unreasonable and constituted a manifest abuse of discretion, or otherwise was negligent by failing to address the applicable engineering standards and conditions then existing or reasonably contemplated to exist in the future, once said design was implemented;

d.  The SUBJECT ROADWAY and adjacent property, including, but not limited to, the SUBJECT CONCRETE JERSEY WALL, were, at all relevant times, dangerous, improperly and defectively maintained, managed, inspected, installed, repaired, modified, reviewed, and evaluated, if in fact they were maintained, managed, inspected, reviewed, and evaluated.  To the extent such functions were not performed, they should have been, and, to the extent they were performed, they were done improperly, negligently, and in violation of applicable engineering standards and regulations pertaining to similarly situated public property;

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

e.   The SUBJECT ROADWAY and its adjacent property, including, but not limited to, the SUBJECT CONCRETE JERSEY WALL, were, at all relevant times, in a dangerous condition due to the lack of appropriate barriers, signage, markings, warnings, or other measures necessary to prevent incidents of the type that occurred in this case;

f.   There was negligence in the ownership, control, construction, maintenance, inspection, placement, supervision, repairs, design, and modifications of the SUBJECT ROADWAY and adjacent property, including, but not limited to, the SUBJECT CONCRETE JERSEY WALL, including creating and failing to warn against non-obvious and concealed traps.  There was further negligence in the failure to properly supervise, educate, train, monitor, and test workers, including employees and independent contractors who were responsible for doing the acts and tasks noted above.  There was further negligence in the failure to warn of these known risks and hazards, some of which were created by Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, and some of which existed for a sufficient period of time to provide warnings and/or remove the risk or hazard and failure to warn of previous similar incidents;

g.   The area of the SUBJECT ROADWAY was in a dangerous condition because of the failure to exercise due care in the ownership or control of the SUBJECT ROADWAY and adjacent property, including, but not limited to, the SUBJECT CONCRETE JERSEY WALL, in that the lack of emergency shoulder, safety devices, signage, markings, as well as the other dangers noted previously, created a concealed trap.  Said property further was unsafe because of improper materials used, as well as the failure to properly supervise, educate, train, monitor, and test workers, including employees and independent contractors who were responsible for doing the acts and tasks noted above.  There was a failure to warn of these known risks and

hazards, some of which were created by Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, and some of which existed for a sufficient period of time to provide warnings and/or remove the risk or hazard;

h.   Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, failed to properly plan, modify, alter, construct, monitor, improve, repair, manage, design, control, maintain, and service said property after changes in the condition of the SUBJECT ROADWAY, and changes in traffic patterns and usage of the property since its original design and construction

25.   BREWER is informed and believes, and thereon alleges, that Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, had, within the meaning of *Government Code* section 835.2, actual and constructive knowledge of the said dangerous and defective conditions of the SUBJECT ROADWAY and adjacent property, including, but not limited to, the SUBJECT CONCRETE JERSEY WALL, for a sufficient period of time prior to the SUBJECT COLLISION to have taken measures to prevent such incidents due to the longstanding condition(s) of the SUBJECT ROADWAY and adjacent property, including, but not limited to, the SUBJECT CONCRETE JERSEY WALL.

26.   BREWER is informed and believes, and thereon alleges, that Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, had actual knowledge of a number of prior incidents of a similar nature to the SUBJECT COLLISION at the same location for sufficient period of time prior to the SUBJECT COLLISION to have taken measures to prevent further such incidents.

27.   BREWER is informed and believes, and thereon alleges, that said dangerous condition(s) were not, nor would not have been, reasonably apparent to, and were not, nor would not have been anticipated by, persons exercising due care, such as BREWER.  For those reasons and others stated above, the SUBJECT ROADWAY and adjacent property, including, but not

/ / /

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

1   limited to, the SUBJECT CONCRETE JERSEY WALL, constituted a concealed trap for those

2   exercising due care and acting in a foreseeable manner, including BREWER.

3       28.     BREWER further alleges that Defendants CALTRANS, SBC, and DOES 1 through

4   100, inclusive, and each of them, and their employees, agents, servants, and independent

5   contractors are liable for BREWER's damages pursuant to *Government Code* sections 815.2,

6   815.4, 820, subdivision (a), *et seq*., for negligently, carelessly, and/or recklessly owning,

7   designing, maintaining, allowing, permitting, regulating, controlling, servicing, inspecting,

8   repairing, modifying, altering, monitoring, improving, constructing, warning or failing to warn,

9   and/or supervising the SUBJECT ROADWAY and adjacent property, including, but not limited

10  to, the SUBJECT CONCRETE JERSEY WALL, and said negligent, careless, and reckless acts, or

11  failure to act, created said dangerous and defective condition(s) of said property, which legally

12  caused the SUBJECT COLLISION and the injuries and damages of BREWER, as herein alleged.

13      29.     BREWER is further informed and believes, and thereon alleges, that said

14  dangerous condition(s) were the legal, direct, and proximate cause of the injury and damages

15  suffered by BREWER.

16      30.     BREWER is informed and believes, and thereon alleges, that said dangerous

17  condition(s) were not, nor would not have been reasonably apparent to, and were not, nor would

18  not have been anticipated by, persons exercising due care, such as BREWER.  For those reasons

19  and others stated above, the SUBJECT ROADWAY and adjacent SUBJECT CONCRETE

20  JERSEY WALL constituted a concealed trap for those exercising due care and acting in a

21  foreseeable manner, including BREWER.

22      31.     As a legal, direct and proximate result of the above-mentioned conduct of the

23  Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, BREWER

24  was injured in her health, strength and activity, sustaining injury to her body, and shock and injury

25  to her person, all of which have caused and continued to cause BREWER great physical, mental,

26  and emotional pain and suffering.  BREWER is further informed, believes and thereon alleges that

27  said injuries will result in permanent disability, all to her general damage in an amount which will

28  be stated according to proof, pursuant to California *Code of Civil Procedure*, section 425.10.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

32.     As a legal, direct and proximate result of the above-mentioned conduct of the Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, BREWER was compelled to and did employ the services of hospitals, physicians, surgeons, nurses and the like, to care for and treat her, and did incur hospital, medical, professional and incidental expenses, the exact amount of which expenses will be stated according to proof, pursuant to California *Code of Civil Procedure*, section 425.10.

33.     As a legal, direct and proximate result of the above-mentioned conduct of the Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, BREWER will necessarily incur additional like expenses for an indefinite period of time in the future, the exact amount of which expenses will be stated according to proof, pursuant to *California Code of Civil Procedure*, section 425.10.

34.     As a legal, direct and proximate result of the above-mentioned conduct of the Defendants CALTRANS, SBC, and DOES 1 through 100, inclusive, and each of them, BREWER was prevented from attending to her usual occupation, and Plaintiff is informed, believes and thereon alleges that she will be prevented from attending to her usual occupation for an indefinite period of time in the future, and thereby will sustain a loss of earning capacity, in addition to lost earnings, past, present, and future, the exact amount of such losses will be stated according to proof pursuant to California *Code of Civil Procedure*, section 425.10.

## SECOND CAUSE OF ACTION

### (Negligence by BREWER Against Defendants MARCO ANTONIO ESQUIVEL, HILDA TORRES, and DOES 1 through 100, inclusive.)

35.     BREWER re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

36.     BREWER is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants ESQUIVEL, TORRES, and DOES 1 through 100, inclusive, and each of them, owed a duty of care to all reasonably foreseeable people, including BREWER, to manage,

/ / /

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

1  maintain, control, instruct, and/or to act reasonably to best ensure the safety of foreseeable persons

2  involved in the SUBJECT COLLISION, including, but not limited to, BREWER.

3       37.     BREWER is informed and believes, and thereon alleges, that at all times mentioned

4  herein, Defendants ESQUIVEL, TORRES, and DOES 1 through 100, inclusive, and each of them,

5  breached their duty of care when they carelessly, improperly, recklessly, and negligently caused

6  BREWER's vehicle to be trapped on the SUBJECT ROADWAY, where BREWER subsequently

7  was struck by the vehicle driven by Defendant ESQUIVEL, and suffered severe and permanent

8  injuries.

9       38.     Defendant ESQUIVEL, was at all times relevant herein in the course and scope of

10  employment for Defendant TORRES.

11       39.     The unreasonable risk of harm of motor vehicle collision, such as the one suffered

12  by BREWER, was known, or should have been known, to Defendant ESQUIVEL, and DOES 1

13  through 100, inclusive, and each of them, and each of them because of the risk of driving on the

14  wrong side of the road.

15       40.     Defendant TORRES, and DOES 1 through 100, inclusive, and each of them, are

16  vicariously liable for the acts and/or omissions of its personnel, including its employee Defendant

17  ESQUIVEL, California *Civil Code* section 2295, *et seq.*

18       41.     As a legal, direct and proximate result of the above-mentioned conduct of the

19  Defendants ESQUIVEL, TORRES, and DOES 1 through 100, inclusive, and each of them,

20  BREWER was injured in her health, strength and activity, sustaining injury to her body, and shock

21  and injury to her person, all of which have caused and continued to cause BREWER great

22  physical, mental, and emotional pain and suffering.  BREWER is further informed, believes and

23  thereon alleges that said injuries will result in permanent disability, all to her general damage in an

24  amount which will be stated according to proof, pursuant to California *Code of Civil Procedure*,

25  section 425.10.

26       42.     As a legal, direct and proximate result of the above-mentioned conduct of the

27  Defendants ESQUIVEL, TORRES, and DOES 1 through 100, inclusive, and each of them,

28  BREWER was compelled to and did employ the services of hospitals, physicians, surgeons, nurses

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

16

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY, DEMAND FOR JURY TRIAL

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

1   and the like, to care for and treat her, and did incur hospital, medical, professional and incidental

2   expenses, the exact amount of which expenses will be stated according to proof, pursuant to

3   California *Code of Civil Procedure*, section 425.10.

4       43.    As a legal, direct and proximate result of the above-mentioned conduct of the

5   Defendants ESQUIVEL, TORRES, and DOES 1 through 100, inclusive, and each of them,

6   BREWER will necessarily incur additional like expenses for an indefinite period of time in the

7   future, the exact amount of which expenses will be stated according to proof, pursuant to

8   *California Code of Civil Procedure*, section 425.10.

9       44.    As a legal, direct and proximate result of the above-mentioned conduct of the

10  Defendants ESQUIVEL, TORRES, and DOES 1 through 100, and each of them, BREWER was

11  prevented from attending to her usual occupation, and Plaintiff is informed, believes and thereon

12  alleges that she will be prevented from attending to her usual occupation for an indefinite period of

13  time in the future, and thereby will sustain a loss of earning capacity, in addition to lost earnings,

14  past, present, and future, the exact amount of such losses will be stated according to proof

15  pursuant to California *Code of Civil Procedure*, section 425.10.

16

17  **PRAYER FOR RELIEF**

18      WHEREFORE, Plaintiff JORDYN BREWER, a disabled person by and through her

19  Guardian ad Litem, Psychomey L. Brewer, prays for judgment against Defendants STATE OF

20  CALIFORNIA, DEPARTMENT OF TRANSPORTATION OF THE STATE OF CALIFORNIA

21  (CALTRANS), a public entity; COUNTY OF SAN BERNARDINO, a public entity; MARCO

22  ANTONIO ESQUIVEL, an individual; HILDA TORRES, an individual; and DOES 1 through

23  100, inclusive, and each of them, as follows:

24      1.    For past and future general damages in an amount in excess of the jurisdictional

25  minimum, according to proof;

26      2.    For economic damages related to loss of earnings, lost earning capacity, and loss of

27  financial support in an amount in excess of the jurisdictional minimum, according to proof;

28  / / /

1      3.     For past and future hospital, medical, professional, and incidental expenses, in an

2  amount in excess of the jurisdictional minimum, according to proof;

3      4.     For damages for Plaintiff's other economic losses, in an amount in excess of the

4  jurisdictional minimum, according to proof;

5      5.     For such other and further relief as this Court may deem just and proper.

6

7      Additionally, Plaintiff JORDYN BREWER, a disabled person by and through her

8  Guardian ad Litem, Psychomey L. Brewer, prays for judgment against Defendants MARCO

9  ANTONIO ESQUIVEL, HILDA TORRES, and DOES 1 through 100, inclusive, and each of

10  them, as follows::

11      1.     For pre-trial interest, in an amount in excess of the jurisdictional minimum,

12  according to proof; and

13      2.     For prejudgment interest, in an amount in excess of the jurisdictional minimum,

14  according to proof.

15

16  DATED:  August 14, 2018         PANISH SHEA & BOYLE LLP

17

18

19                    By: _____

20                       Adam Shea
                          Attorneys for Plaintiff

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY, DEMAND FOR JURY TRIAL

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff JORDYN BREWER, a disabled person by and through her Guardian ad Litem,

3   Psychomey L. Brewer, hereby demands trial by jury for all causes of action that may be tried to a

4   jury.

5

6   DATED:  August 14, 2018                    PANISH SHEA & BOYLE LLP

7

8

By:   _____

9                                                     Adam Shea

10                                                    Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

19

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY, DEMAND FOR JURY TRIAL

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

     At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 11111 Santa Monica Boulevard, Suite 700, Los Angeles, CA 90025.

     On September 20, 2018, I served true copies of the following document(s) described as **FIRST AMENDED COMPLAINT FOR PERSONAL INJURY** on the interested parties in this action as follows:

<center>SEE ATTACHED SERVICE LIST</center>

     **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the practice of Panish Shea & Boyle LLP for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I am a resident or employed in the county where the mailing occurred.  The envelope was placed in the mail at Los Angeles, California.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     Executed on September 20, 2018, at Los Angeles, California.

                               _____

                               Kira R. McCoy

---

<center>FIRST AMENDED COMPLAINT FOR PERSONAL INJURY, DEMAND FOR JURY TRIAL</center>

1
2

**SERVICE LIST**
**Jordyn Brewer v. State of California, et al.**
**Case No. CIVDS1810814**

| | |
|---|---|
| Matthew J. Marnell, Deputy Counsel Counsel<br>San Bernardino County<br>385 North Arrowhead Avenue, Fourth Floor<br>San Bernardino, California  92415-0140<br>Tel: (909) 387-5455; Fax: (909) 387-4069<br>Email: mmarnell@cc.sbcounty.gov<br>***Attorneys for Defendant SAN BERNARDINO COUNTY*** | Harvey I. Stern<br>Mitchell Reed Sussman<br>9454 Wilshire Boulevard, Penthouse<br>Beverly Hills, CA  90212<br>Tel: (310) 276-8800; Fax: (310) 276-8801<br>Emails: hsternla@gmail.com;<br>bryan@harveysternlaw.com<br>***Attorneys for Defendant HILDA TORRES*** |
| Alvin Chang<br>PERONA LANGER BECK<br>  SERBIN & HARRISON PC<br>300 East San Antonio Drive<br>Long Beach, California 90807<br>Tel: (562) 426-6155; Fax: (562) 490-9823<br>Emails: AlvinChang@plblaw.com;<br>DavidHwang@plblaw.com;<br>Nurys@plblaw.com<br>***Attorneys for Plaintiff (Co-Counsel)*** | Has not officially appeared yet<br>Robert A Baggs<br>Maryam Azizi<br>California Department of Transportation<br>100 South Main Street, Suite 1300<br>Los Angeles, CA  90012-3702<br>Tel: (213) 687-6000; Fax: 213) 687-8300<br>Emails:  Robert_Baggs@dot.ca.gov;<br>Maryam.Azizi@dot.ca.gov<br>***Attorneys for Defendant STATE OF CALIFORNIA, DEPT. OF TRANSPORTATION (CALTRANS)*** |
| <div align="center">**Related** *Matter:*<br>CIVDS1812736 – *Glover v. State, DOT; County of San Bernardino, et al.*<br>*Filed 5/24/18*</div> ||
| Minh T. Nguyen<br>Nguyen Lawyers, ALC<br>3777 Long Beach Boulevard, Third Floor<br>Long Beach, CA  90807<br>Tel: (562) 283-5415; Fax: (562) 283-5416<br>Email: minh@nguyenlawyers.com;<br>edith@nguyenlawyers.com<br>***Attorneys for Plaintiffs SHAMARI GLOVER; ROYCE GLOVER, a minor by and through his Father and Guardian ad Litem*** | |

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY, DEMAND FOR JURY TRIAL

**EXHIBIT E**



August 7, 2020

Robert.baggs@dot.ca.gov
Robert Baggs, Esq.
Deputy Counsel
Caltrans/Legal Division
100 S. Main Street
Suite 1300
Los Angeles, CA  90012

Re:    Brewer v State of California, et, al. and related actions
       Named Insured: Flatiron Construction Corp.
       Claim No.:  2020009088
       Date of Loss:  May 15, 2017

Dear Mr. Baggs:

I am the claims handler for Allied World National Assurance Company ("Allied World") with
respect to the State of California, Department of Transportation's ("Caltrans") demand for
indemnity with regard to the referenced matters.

Allied World issued umbrella liability policy no. 0308-4113 to Flatiron Construction Corp.
("Flatiron") for the policy period June 1, 2016 to June 1, 2017 with limits of $25,000,000 per
occurrence and in the aggregate ("Allied World Policy").

Caltrans seeks indemnity coverage under the Allied World Policy for claims arising out of the
complaints entitled *Brewer et.al. v Caltrans et. al,* San Bernardino County Case no.
CIVDS1810814 and *Glover et. al v Caltrans et. al,* San Bernardino County Case no.
CIVDS1812736 ("Actions"). The defendants in the action are Caltrans, Marco Esquivel
("Esquivel"), Flatiron West, Inc. and Harper and Harper.

We write to provide our coverage position in light of the information received to date.

Background

The Actions arise out of a motor vehicle accident that occurred on May 15, 2017 on the
westbound direction of State Route 138 ("SR-138"), 151 feet east of Dusty Lane in
unincorporated San Bernardino County. Plaintiff Jordyn Brewer and minor plaintiff Royce
Glover were passengers in a car driven by plaintiff Sharmair Glover ("Mr. Glover") (collectively
referred to as "Plaintiffs"). Mr. Glover's vehicle was heading eastbound on SR-138.

Esquivel was traveling in his vehicle, westbound on SR-138, and crossed the double yellow line in an attempt to pass a big rig. Esquivel's vehicle collided with the right side of Mr. Glover's vehicle.

Plaintiffs allege general damages, economic damages, hospital, medical, professional and incidental damages.

Policies

The Allied World Policy has limits of $25,000,000 excess to the **Retained Limit**. The Allied World Policy defines **Retained Limit**, in relevant part, as "the total applicable limits of **Scheduled Underlying Insurance** and any other applicable **Other Insurance** providing coverage to the **Insured**." The **Scheduled Underlying Insurance** is Zurich American Insurance Company policy no. GLO 5939707-08 issued to Flatiron for the policy period June 1, 2016 to June 1, 2017 with limits of $2,000,000 per occurrence and $4,000,000 in the aggregate ("Zurich Policy").

Discussion

The Allied World Policy provides that its will "pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**… to which this insurance applies or because of **Bodily Injury** …to which this insurance applies assumed by the **Insured** under an **Insured Contract**."

The Allied World Policy defines **Insured** as any person or organization, other than the **Named Insured**, included as an additional insured under **Scheduled Underlying Insurance**, but not for broader coverage than would be afforded by such **Scheduled Underlying Insurance** and the coverage does not apply to liability which results solely from the acts or omissions of the additional insured. Allied World reserves all rights pursuant to the foregoing provision.

The Zurich Policy, which is the **Scheduled Underlying Insurance,** defines "Insured" to include as an additional insured any person or organization whom Flatiron is required to add as an additional insured under a written contract or agreement. The Zurich Policy provides that Caltrans is an additional insured only with respect to "bodily injury" caused in whole or in part by Flatiron's acts or omissions or the acts or omissions of those acting on Flatiron's behalf. The insurance afforded Caltrans only applies to the extent permitted by law and will not be broader than that which Flatiron is required by the written contract to provide to Caltrans. Allied World reserves its right to deny coverage to the extent that Caltrans is not an "Insured" and/or the "bodily injury" alleged in the Actions was not caused in whole or in part by Flatiron's acts or omissions.

In the "Execution of Contract" provided to Allied World on August 3, 2020, it provides in section 7-1.05 **INDEMNIFICATION** that Flatiron is not obligated to indemnify Caltrans for claims arising out of conduct delineated in Civil Code section 2782 and for claims arising from any defective or substandard condition of the highway that existed before the start of work,

unless this condition has been changed by the work or the scope of work requires Flatiron to maintain existing highway facilities and the claim arises from Flatiron's failure to maintain. The Actions allege that the area on SR-138 where the accident happened was a dangerous condition created and designed by Caltrans. Allied World reserves its right to deny coverage based on the foregoing provision.

California Civil Code section 2782(b) provides that in the context of construction contracts, that Caltrans cannot be indemnified by contractors for liability arising out of its active negligence. Insurance Code section 11580.04 provides that insurers have no obligation to indemnify Caltrans where it would not be entitled to indemnity pursuant to Civil Code section 2782. The Actions allege active negligence by Caltrans in the planning, design, supervision, control, inspection, maintenance and repair of the area on SR-138 where the accident happened. Allied World denies coverage for Caltrans' active negligence pursuant to the foregoing code sections.

The Zurich Policy provides that with respect to coverage afforded to additional insureds, there is no coverage for bodily injury arising out of the rendering of, or failure to render, any professional architectural, engineering or survey services including the preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications or supervisory, inspection, architectural or engineering activities. The Actions allege that the area on SR-138 where the accident happened was a dangerous condition created and designed by Caltrans. Allied World reserves its right to deny coverage based on the foregoing provision.

Allied World is not aware of any exhaustion of the **Retained Limit**. Accordingly, no present duty to indemnify any insured has arisen under the Allied World Policy.

The Allied World Policy provides that it will not make any payment under the policy unless and until the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss** to which the Allied World Policy applies and any applicable **Other Insurance** has been exhausted by payment of **Loss. Other Insurance** means a valid and collectible policy of insurance providing coverage for damages covered in whole or part by the Allied World Policy.

Conclusion

Please note that Allied World's coverage position is based on the information presently available to us. Nothing contained in this correspondence constitutes a waiver, alteration, or modification of the terms and conditions contained in the Allied World Policy. Allied World retains the right to amend, modify, and supplement the position contained herein should subsequent information warrant such amendment, modification or supplement.

Allied World reserves the right to assert any other terms, conditions, endorsements and exclusions of the Allied World and Zurich Policies. Allied World submits this letter reserving all of its rights and defenses in every respect under the terms, conditions, exclusions and endorsements of the policies, as well as all rights and defenses which it may have in law and

equity. Any action taken by Allied World should, therefore, not be construed as a waiver of any of those rights or defenses.

Allied World reserves the right to seek a coverage determination with respect to any and all issues raised by this matter.

Should you have any additional information which you believe will lead us to a different conclusion, we request that you forward it to us for review immediately. In the meantime, Allied World reserves the right, without prejudice to you, to amend this letter and to address additional questions of coverage as they may arise.

You may have this matter reviewed by the California Department of Insurance.  The address and phone number are:

<div align="center">

California Department of Insurance
Consumer Communications Bureau
300 South Spring Street
South Tower
Los Angeles, CA  90013
(800) 927-4357

</div>

Should you have any questions or comments regarding this matter, please feel free to contact the undersigned at (646) 794-0845 or Patrick.Espey@awac.com.

Sincerely,

Patrick Espey
Senior Claims Analyst
North American Claims Group
Allied World Assurance Company

cc:      Tim Lippert lip@darlaw.com

**EXHIBIT F**



12671 High Bluff Drive, Suite 350
San Diego, CA  92130
Phone 619.237.3095
Fax 619.237.3789


MICHAEL DRURY
DIRECT DIAL:  619.237.4002
mdrury@mwwdlaw.com

***Via E-Mail***

December 13, 2021


Heather L. Mills, Esq.
Skane Mills
1055 West 7th Street, Suite 1700
Los Angeles, CA 90017
hmills@skanemills.com

|  |  |
|---|---|
| Re: | *Jordyn Brewer, et al. v. State of California, et al.* |
|  | San Bernardino County Superior Court Case No. CIVDS1819814 |
| Insured: | Flatiron Construction Corporation |
|  | Flatiron West, Inc. |
|  | Flatiron/Hardy & Harper, a Joint Venture |
| Claim No. | 2020019881 |

Dear Ms. Mills:

Our office is coverage counsel for Allied World Specialty Insurance Company ("Allied World") with respect to the above-referenced lawsuit pending in San Bernardino County Superior Court (the "Lawsuit").   Allied World issued Umbrella Liability Insurance Policy No. 0308-4113 to Flatiron Construction Corp. ("Flatiron"), effective from June 1, 2016 to June 1, 2017 (the "Allied Policy").   The Allied Policy identifies Zurich American Insurance Company Policy No. GLO 5939707-08, effective from June 1, 2016 to June 1, 2017, as the Scheduled Underlying Insurance for general liability. The Department of Transportation of the State of California ("Caltrans") seeks indemnity coverage under the Allied Policy for the claims asserted by plaintiffs against Caltrans in the Lawsuit.

This correspondence follows the parties' participation in Mediation on November 11, 2021 with Troy Roe.  This correspondence also supplements Allied World's August 7, 2020 letter to Caltrans with respect to Allied World's coverage position for the claims asserted against Caltrans in the Lawsuit.  Finally, this correspondence additionally follows up on correspondence between Flatiron and Caltrans relating to the issues of Caltrans' alleged active/passive negligence

Heather L. Mills, Esq.
December 13, 2021
Page 2

pertaining to the Lawsuit.[1] Please refer to the prior correspondence for a more detailed factual background of the Lawsuit.

Following our discussions during the Mediation, we wanted to clarify Allied World's coverage position in the Lawsuit and attempt to formulate a framework for Caltrans and Allied World to work together in an attempt to engage in meaningful settlement discussions with plaintiffs. Caltrans previously declined any obligation to contribute towards a global settlement of the Lawsuit. We request that Caltrans reconsider its wholesale refusal to meaningfully participate in settlement in light of its potential exposure arising out of its active negligence as discussed herein.

1.    **Limitations of Additional Insured Coverage to Caltrans under the Zurich Policy and the Allied Policy**

Initially, the Allied Policy provides that "we will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**. . . to which this insurance applies or because of **Bodily Injury** . . . to which this insurance applies assumed by the **Insured** under an **Insured Contract**." The **Retained Limit** is defined, in relevant part, as "the total applicable limits **of Scheduled Underlying Insurance** and any other applicable **Other Insurance** providing coverage to the **Insured**. Endorsement No. 1 to the Allied Policy identifies a Commercial General Liability Policy issued by Zurich American Insurance Company ("Zurich"), policy number GLO 5939707-08, effective June 1, 2016 to June 1, 2017 (the "Zurich Policy") as the **Scheduled Underlying Insurance** for General Liability.

Zurich is currently defending Flatiron (and Hardy & Harper, Inc.)[2] and Caltrans in the Lawsuit subject to reservation of rights. Both the Zurich Policy and the Allied Policy provide specific limitations on the additional insured coverage provided to Caltrans which are particularly relevant to plaintiffs' claims against Caltrans in the Lawsuit. The Zurich Policy includes an Additional Insured – Automatic – Owners, Lessees or Contractors Endorsement (U-GL-1175-F-CW  04/13) which provides as follows:

<div align="center">

**ADDITIONAL INSURED - AUTOMATIC – OWNERS, LESSEES or CONTRACTORS**

</div>

This endorsement modifies insurance provided under the:

---

[1]Please see September 10, 2020 letter from Tyson Mendes to Demler Armstrong and October 13, 2020 letter from Caltrans to Tyson Mendes and Allied World.
[2]"Flatiron" hereinafter collectively refers to Flatiron West, Inc.; Hardy and Harper, Inc.; and Flatiron West, Inc./Hardy & Harper, a Joint Venture.

Heather L. Mills, Esq.
December 13, 2021
Page 3

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.      Section II – **Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement.  Such person or organization is an additional insured only with respect to "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.      Your acts or omissions; or

2.      The acts or omissions of those acting on your behalf, in the performance of "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

However, this insurance afforded to such additional insured:

1.      Only applies to the extent permitted by law; and

2.      Will not be broader than that which you are required by written contract or written agreement to provide for such additional insured.

B.      With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services, including:

a.      The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

b.      Supervisory, inspection, architectural or engineering activities.

***

Heather L. Mills, Esq.
December 13, 2021
Page 4

As set forth in the Additional Insured Endorsement in the Zurich Policy, Zurich only has an obligation to indemnify Caltrans with respect to acts or omissions of Flatiron and *not the independent acts or omissions of Caltrans*. Furthermore, the Additional Insured Endorsement also provides that Zurich has no obligation to indemnify Caltrans with respect to any liability arising out of the rendering, or failure to render, any professional, architectural, engineering or surveying services. Plaintiff Jordan Brewer's First Amended Complaint ("FAC") specifically alleges that Caltrans was negligent in its engineering, design and planning of the SR-138 expansion project (the "Project"). As a result, a significant portion of plaintiffs' claims against Caltrans are not covered under the Zurich Policy or the Allied Policy.

The same limitations of additional insured coverage to Caltrans also apply under the Allied Policy pursuant to the Contractors' Limitation Endorsement. The Contractors' Limitation Endorsement modifies the definition of insured and provides, in pertinent part, as follows:

B.      It is agreed that Section VI., "Definitions" F. **Insured**, Paragraph 7. is deleted in its entirety and replaced by the following:

7.      any person or organization, other than the **Named Insured**, included as an additional insured in the policies listed in **Scheduled Underlying Insurance** however:

a.      coverage will not be broader than is available to such person or organization under such **Scheduled Underlying Insurance;** and

b.      the coverage granted by this provision does not apply to any liability which results solely from the acts or omissions of such person or organization.

Based on the foregoing, Allied World has no obligation to indemnify Caltrans *for its own independent acts or omissions related to the subject accident.* In addition, because Allied World's coverage is not broader than Zurich's coverage to Caltrans, Allied World has no obligation to indemnify Caltrans with respect to any liability arising out of the rendering, or failure to render, any professional, architectural, engineering or_surveying services. The claims asserted by Plaintiffs against Caltrans are based on design and planning activities excluded under the professional services exclusion in the Allied Policy.

In addition, California Insurance Code § 11580.04 provides that any **additional insured endorsement issued to a public agency** in connection with, collateral to, or affecting any construction contract to which the provisions of subdivision (b) of Section 2782 of the Civil Code apply, shall not provide any duty of indemnity coverage for the active negligence of the additional

Heather L. Mills, Esq.
December 13, 2021
Page 5

insured in any case where an agreement to indemnify the additional insured would be invalid under subdivision (b) of Section 2782 of the Civil Code.  Therefore, if Caltrans is found to be actively negligent in the Lawsuit, Allied World has no obligation to indemnify Caltrans under the terms of the Allied Policy.

**2.      Potential Limitations of Indemnity Owed to the Caltrans Under California Civil Code § 2782 for Caltrans' Design Defects and Active Negligence**

Pursuant to the terms of the contract between Caltrans and Flatiron (the "Contract"), Flatiron is obligated to indemnify Caltrans as follows:

**7-1.05 Indemnification**
**7-1.05A. General**

You must defend, indemnify, and save harmless the State, including its officers, employees, and agents (excluding agents who are design professionals), from any and all claims, demands, causes of action, damages, costs, expenses, actual attorneys' fees, losses or liabilities, in law or in equity (Section 7-1.05 Claims) arising out of or in connection with your performance of this Contract for:

1.      Bodily injury, including, but not limited to, bodily injury, sickness or disease, emotional injury or death to persons, including, but not limited to, the public, any employees, agents of you, the State, or any other contractor; and

2.      Damage to property of anyone including loss of use thereof, caused or alleged to be caused in whole or in part by any negligent or otherwise legally actionable act or omission of you or anyone directly or indirectly employed by you or anyone whose acts you may be liable.

Except as otherwise provided by law, these requirements apply regardless of the existence or degree of fault of the State.  You are not obligated to indemnify the State for Claims arising from conduct delineated in Civ Code §2782 and for Claims arising from any defective or substandard condition of the highway that existed at or before the start of work, unless this condition has been changed by the work or the scope of work requires you to maintain existing highway facilities and the Claim arises from your failure to maintain.

<p style="text-align:center">***</p>

Heather L. Mills, Esq.
December 13, 2021
Page 6

Civil Code § 2782 provides as follows:

(a)     Except as provided in Sections 2782.1, 2782.2, 2782.5 and 2782.6,
provisions, clauses, covenants, or agreements continue in, collateral to, or
affecting any construction contract that purport to indemnify the promisee
against liability for damages for death or bodily injury to persons, injury to
property, or any other loss, damage or expense arising from the sole
negligence or willful misconduct of the promisee or the promisee's agents,
servants or independent contractors who are directly responsible to the
promisee, or for defects in design furnished by those persona are against
public policy and are void and unenforceable, provided however, that this
section shall not affect the validity of any insurance contract, workers'
compensation, or agreement issued by an admitted insurer as defined by the
Insurance Code.

***

(b)(2)  Except as provided in Sections 2782.1, 2782.2 and 2782.5, provisions,
clauses, covenants, or agreements contained in, collateral to, or affecting
any construction contract with a public agency entered into after January 1,
2013, that purport to impose on any contractor, subcontractor, or supplier
of goods or services, or relieve the public agency from, liability for the
active negligence of the public agency are void and unenforceable.

***

As you are aware, Flatiron disputes any indemnity obligation to Caltrans based on its
position that Caltrans was actively negligent with respect to its design and planning of the Project.
Initially, the Contract specifically excludes any indemnity obligation owed by Flatiron to Caltrans
that is prohibited by Civ. Code §2782.  Additionally, California Insurance Code § 11580.04
excludes this same liability from Allied World's additional insured obligations.  Therefore,
Caltrans has no right to indemnification from either Flatiron or its insurers for its own active
negligence.  Based on the discovery to date and plaintiffs' liability theories against Caltrans, Allied
World has no obligation to indemnify Caltrans for defects in design of the construction project
(location of k-rails, lack of channelizers, improper narrowing of shoulder, etc.) under 2782(a).

This issue of whether Caltrans' alleged negligence was "active" or "passive" is an
unresolved and disputed legal issue in this Lawsuit.  Plaintiffs have alleged substantial claims
against Caltrans that would support a court's finding that Caltrans was actively negligent with
respect to the subject traffic accident.  In addition, the Contract provisions and the 2010 Standard
Specifications (governing the Contract) cannot alter the statutory indemnity limitations outlined in

Heather L. Mills, Esq.
December 13, 2021
Page 7

Civil Code § 2782.  If a court determines that Caltrans was actively negligent, Flatiron and Allied World have no obligation to indemnify Caltrans in the Lawsuit.  Caltrans should consider the very real possibility of this outcome when refusing to meaningfully participate in settlement.

**3**.     **Active Negligence and Passive Negligence Under California Law**

The leading case in California evaluating the distinction between "active" and "passive" negligence is *Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d. 622, 629.  In *Rossmoor*, the California Supreme Court explained that "[p]assive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law.  Active negligence, on the other hand, is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence or has failed to perform a precise duty which the indemnitee had agreed to perform."  *Rossmoor*, *supra*, 13 Cal.3d at 629.  The Supreme Court provided the following examples:

> Passive negligence has been found or assumed from the failure to discover a defective condition created by others (*Markley v. Beagle, supra*, at pp. 955-956, 962), failure to exercise a right to inspect certain work and specify changes (*Muth* v. *Urricelqui* (1967) 251 Cal.App.2d 901, 911 [60 Cal.Rptr. 166]), and failure to exercise a supervisory right to order removal of defective material (*Safeway Stores, Inc. v. Massachusetts Bonding & Ins. Co*. (1962) 202 Cal.App.2d 99, 111-113 [20 Cal.Rptr. 820]).  Active negligence has been found in digging a hole which later caused an injury (*Morgan v. Stubblefield, supra*, at pp. 626-627), knowingly supplying a scaffold which did not meet the requirements of a safety order (*id*. at pp. 625-626), creating a perilous condition that resulted in an explosion (*Burlingame Motor Co.* v. *Peninsula Activities, Inc., supra*, at p. 661), and failing to install safety nets in violation of a contract (*MacDonald & Kruse, Inc.* v. *San Jose Steel Co., supra*, at pp. 424-425).

*Id.* at 630.

Ultimately, "[t]he crux of the inquiry is to determine whether there is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform a duty imposed upon him by law." *Id.* at 629.  Based on the allegations in the Lawsuit and Caltrans' design, engineering and control of the Project, a reasonable that a trier of fact will likely determine that Caltrans was actively negligent since it participated in the alleged conduct or omission which caused the injury and the subject accident. In fact, on February 26, 2021, Judge Alvarez denied Caltrans' MSJ with respect to the dangerous condition of public property cause of action and found that there were triable issues of fact as to whether the placement of the k-rails was proper, whether the reduction of the width of the emergency lane was proper and whether additional safeguards were necessary in the area of the

Heather L. Mills, Esq.
December 13, 2021
Page 8

accident.  The court took issue with Caltrans' design and set-up of the Project.  There is no evidence in this case which shows that Flatiron deviated from the plans and specification designed/provided by Caltrans.

In *County of Riverside v. Yeager Skanska, Inc.* (Cal. Ct. App., Nov. 27, 2012, No. E052034) 2012 WL 5929943 (unpublished), plaintiff was seriously injured when the front wheel of his motorcycle went off the road and crashed on a near 90–degree curve on Bridge Street, a County roadway. *Id.* at *1.  At the time of the accident, traffic heading east on Gilman Springs Road, another County roadway, was being detoured southbound to Bridge Street while the County made improvements to Gilman Springs Road. *Id.*  Lim & Nascimento Engineering Corp. ("LAN") was the County's design engineer on portions of the Gilman Springs Road project, and Yeager Skanska, Inc. ("Yeager") was the County's general contractor. *Id.*  Shortly before the near 90–degree curve, a reflective detour sign with an arrow pointing straight ahead partly obscured an existing curve sign. *Id.*  Yeager placed the detour signs on Bridge Street in accordance with a detour plan created by LAN. *Id.*  Around the area of the curve, the lines in the middle of the roadway were faded or washed out, there was no striping or edge lines delineating the pavement from the soft shoulder of the roadway, and the shoulder was even with the pavement. *Id.*  Plaintiff sued the County, Yeager, and LAN. *Id.*  Yeager denied it was obligated to defend or indemnify the County, in part because the claims arose from the County's sole and active negligence. *Id.* at *2. The trial court denied the County's contractual indemnity claims against both Yeager and LAN, holding that County was actively negligent in failing to remediate the dangerous conditions on Bridge Street that caused the accident. *Id.* at *3.

As is relevant here, the Court of Appeal found the trial court reasonably determined that the County was actively negligent. *Id.* at *5.  The County had "reserve[d] the right" to "make any necessary changes, as field conditions warrant," in "traffic control plans," and the County's resident engineer was to determine the "[e]xact location of all ... traffic control devices." *Id.* at *8. Before the accident, the County's resident engineer, Jesus Mendoza, inspected the detour route and approved Yeager's placement of the detour signs in accordance with the detour plan. *Id.*  The County's traffic engineer, Lawrence Tai, also inspected portions of the detour route before the accident and "made no adjustment in the detour signage" or any other changes in the detour route. *Id.*  Then, several days after the accident but before the County was aware of the accident, Mr. Tai's assistant, Arthur Higgs, drove both ways on Bridge Street at night and recommended placing chevron signs on the curve, placing an additional curve sign for motorists who might not be familiar with the roadway, and installing a painted edge line for guidance when opposing headlights made it difficult to see the center line. *Id.* Mr. Tai approved these recommendations, and the chevrons, curve signs, and edge line were installed. *Id.*

Although the lack of an edge line along the curve and other visual cues delineating the pavement from the soft shoulder—not the placement of the detour sign before the curve—was the principal cause of the accident, the Court of Appeal found that "the County had a duty to

Heather L. Mills, Esq.
December 13, 2021
Page 9

remedy *all* of the dangerous conditions on the detour route, including those that may have been created by Yeager's placement of the detour sign before the curve." *Id.* at *9. Indeed, because the County had "reserved the right to determine the final placement of the detour signs, and effectively approved Yeager's placement of the detour sign before the curve" (*Id.* at *8), the Court of Appeal held that "[t]he trial court reasonably determined that the County was actively negligent in failing to 'make the appropriate traffic engineering recommendations concerning striping and signage at the curve' before the accident, and in failing to 'make the remedial recommendations that both plaintiffs' expert, Mr. Royer, and Mr. Tai's own assistant, Mr. Higgs, found obvious and necessary due to the increased volume on Bridge Street' before the accident" (*Id.* at *9).

Similar to the court's determination in the *County of Riverside* case, the facts and circumstances of the present case logically lead to the conclusion that the trier of fact in the Lawsuit, or in subsequent litigation, would similarly find that Caltrans is "actively" negligent based on the fact that Caltrans designed the traffic control plans and Caltrans' engineers determined the placement of all traffic control devices, including the k-rails, which are alleged to have caused or contributed to the accident. Even more problematic for Caltrans in the present case is that plaintiffs (and the court denied summary judgment on the issue) are specifically alleging that Caltrans' design and planning of the Project created a dangerous condition which led to the accident.

**4**.    **Plaintiffs' Allegations Pertaining the Dangerous Conditions on SR-138**

The first cause of action for Dangerous Condition of Public Property in Plaintiffs' FAC is only pled against Caltrans and alleges that SR-138 contained various dangerous condition(s), including the Subject Concrete Jersey Wall (or k-rail) where the Subject Collision occurred, that created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it is and was reasonably foreseeable that it would be and was used, including, but not limited to, in the following respects:

> a) the subject roadway is improperly and dangerously delineated, placed, angled and designed; b) the subject roadway lacks any, or has insufficient  and/or defective barriers, warning signs, signals, or other forms of warning to protect persons, such as Brewer, from the unreasonable risk of harm posed by the Subject Concrete Jersey Wall; c) the subject roadway includes the existence of various features, including, but not limited to, the unprotected, unmarked Subject Concrete Jersey Wall, which pose an unreasonable risk of harm to persons, such as Brewer; (d) the subject roadway, in its totality is improperly and dangerously designed, creating and/or aggravating a confusing and inherently dangerous condition by virtue of, but not limited to, the presence of the Subject Concrete Jersey Wall that eliminates the presence of an emergency shoulder and (e) the subject roadway lacks a reasonable emergency shoulder.  Specifically, persons

Heather L. Mills, Esq.
December 13, 2021
Page 10

driving near the Subject Concrete Jersey Wall do not have space to pull into in case of emergency, thereby creating a concealed trap.[3]

All 18 of the specifically delineated dangerous conditions (in paragraph 15 of the FAC) are alleged against Caltrans. Caltrans engineered and designed the Project and the traffic control plan. Elvira Lenart, the resident engineer for Caltrans, testified that Caltrans had control and final approval as the design and implementation of the plans and specifications for the project, as well as supervision and oversight of all work on the project. Caltrans control extended to the placement of all traffic control devices, including the specific location of the k-rails (which are alleged to have improperly narrowed the shoulder from 15 feet to one foot) and all warning signs. Flatiron followed the plans designed and engineered by Caltrans. Any attempt to shift liability to Flatiron for design defects is prohibited by Civil Code § 2782(a).

**5**.      **Caltrans Indemnity Claims Against Flatiron are Tenuous**

As outlined above, there are numerous limitations on Flatiron and Allied World's potential indemnity obligations to Caltrans: (1) Coverage Limitations under the endorsements of the Zurich Policy and the Allied Policy (which exclude coverage to Caltrans for (a) the independent acts or omissions of Caltrans and (b) for the rendering, or failure to render any professional, engineering or surveying services); (2) Insurance Code Section 11580.04 which precludes additional insured coverage under the Allied Policy for Caltrans' active negligence; (3) Civil Code § 2782(a) which negates any indemnity obligation for Caltrans' negligent or defective design of the Project and (4) Civil Code § 2782(b)(2) which negates any indemnity obligation for Caltrans' active negligence relating to the Lawsuit. Based on all of these limitations, Caltrans must acknowledge that it has significant exposure in the Lawsuit for which it bears independent responsibility – exposure that is not subject to an indemnity claim against Flatiron and/or covered under the Allied Policy.

Caltrans' October 13, 2020 letter to Flatiron/Allied World asserts that Caltrans is being deprived its benefit of the bargain of the Contract and that the parties' intent controls the interpretation of the Contract. However, it is clear from the Contract that the parties never intended for Flatiron to indemnify Caltrans for Caltrans' *defects in design* of the construction plan or for its own *active negligence.*   The Contract specifically carves out any indemnification obligation for these two issues.  In addition. Caltrans relies on numerous provisions of the 2010 Standard Specifications to try to shift the burden for overall project "safety" to Flatiron.  However, none of these contractual provisions can alter the impact or effectiveness of the statutory prohibitions on indemnification owed by Flatiron or the applicable limits of the additional insured coverage under the Zurich Policy and Allied Policy.  Finally, Caltrans' position deprives Flatiron and Allied World

---

[3] Plaintiffs' FAC continues with additional alleged dangerous conditions of the subject roadway that are identified in paragraphs (f) through (r) in paragraph 15 of the FAC.

Heather L. Mills, Esq.
December 13, 2021
Page 11

of the statutory protections and limitations that the Legislature put in place to preclude Caltrans from seeking indemnification under these specific circumstances.

　　　　If the parties are to engage in meaningful settlement negotiations, Caltrans cannot continue to assert that it will only offer a negligible sum of money to "close the deal." Caltrans must recognize that the claims asserted against it are based on Caltrans' active negligence and must come to the negotiation table willing to make a significant contribution towards a global settlement with plaintiffs.

　　　　Thank you for your attention to the foregoing. We look forward to discussing these issues in more detail. Please do not hesitate to contact our office should you have any questions regarding this matter.

Sincerely,

Michael Drury

MD/nt

McCLOSKEY, WARING, WAISMAN & DRURY LLP

12671 HIGH BLUFF DRIVE, SUITE 350, SAN DIEGO, CA 92130        PHONE: 619.237.3095   FAX: 619.237.3789

**EXHIBIT G**

STATE OF CALIFORNIA—CALIFORNIA STATE TRANSPORTATION AGENCY                                GAVIN NEWSOM, Governor

**DEPARTMENT OF TRANSPORTATION**
LEGAL DIVISION
100 SOUTH MAIN STREET, SUITE 1300
LOS ANGELES, CA 90012-3702
PHONE  (213) 687-6000
FAX  (213) 687-8300
TTY  711
www.dot.ca.gov



*Serious drought.*
*Help save water!*

October 13, 2020

**VIA ELECTRONIC MAIL**

Kara A. Pape                                        Patrick Espey
Christine Luong-Pham                   North American Claims Group
Jason Shon                                        Allied World Assurance Company
TYSON & MENDES                         Patrick.Espey@awac.com
1055 West 7th Street, Suite 2500
Los Angeles, California 90017
KPape@TysonMendes.com
CLuong-Pham@TysonMendes.com
JShon@TysonMendes.com

Re:     *Jordyn Brewer v. State of California, et al.*
           San Bernardino County SCC No. CIVDS1810814

           *Shamari Glover v. State of California, et al.*
           San Bernardino County SCC No. CIVDS1812736

Dear Counsel:

Please accept this correspondence as response to your request for contribution in the above-referenced matters.  As detailed below, Defendant, the People of the State of California, acting by and through the Department of Transportation, ("Caltrans") declines to contribute.  As detailed below, Flatiron West, Inc. and Hardy & Harper, A Joint Venture (collectively "Flatiron") has a legal obligation to defend and indemnify Caltrans.  We expect Flatiron to do the same throughout this litigation.  To not honor our agreement is bad faith on the part of Flatiron and its insurer, Allied World Assurance Company ("Allied").

Caltrans remains open, however, to further discussion, and continued mediation following settlement and/or judgment in these matters.

*"Provide a safe, sustainable, integrated and efficient transportation system*
*to enhance California's economy and livability"*

Counsel for Flatiron West, Inc.
October 13, 2020
Page 2


<u>The September 10, 2020 Correspondence Concedes Bad Faith.</u>

First and foremost, the September 10, 2020 correspondence seeking contribution acknowledged that "the reason the accident took place was because of the actions of Mr. Esquivel."[i]  This acknowledgement, alone, reveals Flatiron's and Allied's disingenuous stance that Caltrans was actively negligent during the subject construction project.  It appears their request for contribution is based on an argument that Flatiron, itself, contests.  This makes Flatiron's and Allied's behavior at the August 11, 2020 mediation even more egregious.

Specifically, Flatiron and Allied waited until the morning of the mediation to refuse to participate, absent contribution from Caltrans.  They failed to present any claims regarding contribution, active negligence, or the unenforceability of the operative contract at any point prior to the August 11, 2020 mediation.  This was despite their knowing plaintiffs' allegations regarding the placement of Type K temporary railing and lack of channelizers well in advance of the mediation date.[ii]  Thus, Flatiron and Allied inherently bolstered plaintiffs' settlement position and increased the settlement value of these actions.

Having done so, Flatiron now concedes that it does not believe any negligence— let alone active negligence—by Caltrans caused the subject collision.  Instead, it admits that "the reason the accident took place was because of the actions of Mr. Esquivel."[iii]

Now, in presenting its arguments regarding active and passive negligence, Flatiron takes a myopic view of the law and facts in an attempt to deny Caltrans of the benefit of its bargain. *See Hernandez v. Badger Constr. Equip. Co.* (1994) 28 Cal.App.4th 1791, 1821 ("denying indemnity 'would deprive the indemnitee of the benefit of its bargain and read out of the contract essential provisions intended by the parties to govern their relationship, in violation of the principle that contracts should be read in a manner which renders them reasonable and

---

[i] September 10, 2020 correspondence at pg. 3.
[ii] *See* First Amended Complaint and July 2, 2020 emails regarding San Diego depositions, in addition to depositions discussing both k-rails and channelizers.
[iii] September 10, 2020 correspondence at pg. 3.

*"Provide a safe, sustainable, integrated and efficient transportation system to enhance California's economy and livability"*

Page 274 of 409

Counsel for Flatiron West, Inc.
October 13, 2020
Page 3

capable of being put into effect.'")(quoting *Morton Thiokol, Inc. v. Metal Building Alteration, Co.* (1987) 193 Cal.App.3d 1025).

<u>The Intent of the Parties Placed a Nondelegable Duty of Public Safety on Flatiron, Alone.</u>

While focusing on the elusive distinction between active and passive negligence, the September 10, 2020 correspondence ignores the ultimate holding of *Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622:

> "Thus, while adhering to the underlying distinction between active and passive negligence which has long been accepted by the bench, the bar, and the insurance industry, **we hold that, as declared in Harvey, the question whether an indemnity agreement covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control.**" *Id. at 633* (emphasis added).

Thus, in *Rossmoor* the Supreme Court clearly stated, "we do not employ the active-passive dichotomy as wholly dispositive of this or any other case." *Rossmoor, supra* at 632. *Rossmoor's* progeny has repeatedly affirmed this holding. *See Morton Thiokol, Inc. v. Metal Building Alteration, Co.* (1987) 193 Cal.App.3d 1025. ("it is the intent of the parties as expressed in the agreement that should control."); *Oltmans Construction Co. v. Bayside Interiors, Inc.* (2017) 10 Cal.App.5th 355, 362 ("the analysis of an indemnity clause was a matter of contract interpretation and the 'active-passive dichotomy" are not wholly dispositive."); *Hernandez v. Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791, 1821 ("and thus the applicable rules should be that the parties' intent controls, contract words are given their ordinary meaning, and despite its active negligence the indemnitee recovers where liability arises from precisely the contemplated risk against which the indemnitee was promised protection.")

Here, the 2010 Standard Specification, governing the operative contract, clearly states the intent of the parties to impose a nondelegable duty of public safety on Flatiron:

*"Provide a safe, sustainable, integrated and efficient transportation system to enhance California's economy and livability"*

Page 275 of 409

Counsel for Flatiron West, Inc.
October 13, 2020
Page 4

<u>4-1.02 INTENT:</u>

**"Nothing in the specifications voids the Contractor's public safety responsibilities."**

<u>7.1-04 LEGAL RELATIONS AND RESPONSIBILITY TO THE PUBLIC:</u>

**"You are responsible to provide for public safety."**

<u>7-1.11B FHWA-1273 – LEGAL RELATIONS AND RESPONSIBILITY TO THE PUBLIC</u>

"In the performance of this contract the contractor shall comply with all applicable Federal, State, and local laws governing safety, health and sanitation (23 CFR 635). **The contractor shall provide all safeguards, safety devices and protective equipment and take any other needed actions as it determines, or as the SHA [Department] contracting officer may determine, to be reasonably necessary to protect** the life and health of employees on the job and **the safety of the public** and to protect property **in connection with the performance of the work covered by the contract.**

Those public safety responsibilities include, without limitation, the following:

<u>7-1.03 – LEGAL RELATIONS AND RESPONSILBITY TO THE PUBLIC</u>

"Install signs, lights, flares, Type K temporary railing, barricades and other facilities to direct traffic.  Provide flaggers whenever necessary to direct the movement of the public through or around the work."

"Do not construct a temporary facility that interferes with the safe passage of traffic."

"Whenever your operations create a condition hazardous to the public, furnish, erect and maintain those fences, temporary railing, barricades, lights, signs, and other devices and take any other necessary protective measures to prevent damage or injury to the public."

*"Provide a safe, sustainable, integrated and efficient transportation system
to enhance California's economy and livability"*

Page 276 of 409

Counsel for Flatiron West, Inc.
October 13, 2020
Page 5

"Do not install or place temporary facilities used to perform the work which interfere with the free and safe passage of traffic."

The plain language of the 2010 Standard Specifications reveal the intent of the parties to impose the duty of public safety on Flatiron, alone.  Thus, Flatiron cannot hide behind the claim that "all elements of construction, including the implementation of traffic control systems at issue in this action, were performed under plans and specifications approved by Caltrans."[iv]

<u>5-1.01 CONTROL OF WORK</u>

"Where the means and methods to complete the work are not described in the Contract, choose the means and methods to complete the work."

"Where the Contract describes more than 1 construction method or more than 1 type of material or equipment, the Department does not assure that each construction method or type of material or equipment  can be used successfully throughout all or any part of the project.  **You are responsible to use the alternative or alternatives that will accomplish the work under the conditions encountered."**

<u>7.1-04 LEGAL RELATIONS AND RESPONSIBILITY TO THE PUBLIC:</u>

"If you appear to be neglectful or negligent in furnishing warning devices and taking protective measures, the Engineer may direct your attention to the existence of a hazard.  You must furnish and install the necessary warning devices.  If the Engineer point out the inadequacy of warning devices and protective measures, **that action on the part of the Engineer does not relieve you from your responsibility for public safety or abrogate your obligation to furnish and pay for these devices and measures."**

---

[iv]September 10, 2020 correspondence at pg. 3.

*"Provide a safe, sustainable, integrated and efficient transportation system to enhance California's economy and livability"*

Page 277 of 409

Counsel for Flatiron West, Inc.
October 13, 2020
Page 6

### 7-1.03 – LEGAL RELATIONS AND RESPONSILBITY TO THE PUBLIC

"Compliance with section 7-1.03 [Public Convenience] **does not relieve you of your responsibility for public safety."**

These sections illustrate how neither Caltrans' undertaking of an aspect of public safety, nor Flatiron's compliance with one aspect of the contract, relieve Flatiron of its nondelegable duty to provide for public safety.

The 2010 Standard Specifications also describe the process by which Flatiron could be relieved of its maintenance and protection obligations.[v]  Such relief was not granted during the relevant period.  Accordingly, Flatiron's responsibility for public safety at the subject collision site was ever present and entirely independent of Flatiron's compliance with any other duties (*e.g.*, "elements of construction").  Moreover, Flatiron was entitled to make requests of Caltrans, if it felt public safety was compromised:

### 5-1.42 CONTROL OF WORK – REQUESTS FOR INFORMATION

"Submit an RFI upon recognition of any event or question of fact arising under the Contract."

### 7-1.02A – LEGAL RELATIONS AND RESPONSIBILIITIES TO THE PUBLIC – LAWS – GENERAL

"Immediately report to the Engineer a discrepancy or inconsistency between the Contract and a law, regulation, order, or decree."

Flatiron's employees understood this duty and acknowledged their ability to use protective measures that are not within project plans, to comply with this duty.[vi]

---

[v] *See* 5-1.38 CONTROL OF WORK – MAINTENANCE AND PROTECTION RELIEF; 5-1.46 – CONTROL OF WORK – FINAL INSPECTION AND CONTRACT ACCEPTANCE
[vi] Deposition of Daniel Hoyt at 16:14-19, 21:1-22:.1; Deposition of George Butorovich at 44:14-16, 141:1-5, 148:15-24, 149:11-13, 153:6-156:24, 171:6-18, 174:24-175:8, 188:21-190:5, 192:3-14,  195:7-13, 196:9-13, 197:13-20; Deposition of Rick Finken at 53:15-54:8, 59:8-60:25, 106:25-107:6, 130:2-10,

*"Provide a safe, sustainable, integrated and efficient transportation system
to enhance California's economy and livability"*

Page 278 of 409

Counsel for Flatiron West, Inc.
October 13, 2020
Page 7


The parties clearly intended that Flatiron indemnify Caltrans for claims arising out of the failure to provide for public safety.  The plain language of the contract imposes a nondelegable duty for public safety on Flatiron.  Here, plaintiffs' allegations, if accepted, arise from the failure to take protective measures against cross-over collisions in the construction zone with a reduced shoulder.  Thus, "liability arises from precisely the contemplated risk against which [Caltrans] was promised protection."  *Hernandez v. Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791, 1821.

<u>Even the Active-Passive Dichotomy Weighs Against Flatiron.</u>

Flatiron's reliance on the active-passive dichotomy ignores relevant case law that weighs against Flatiron.

First, in *Harvey Mach. Co. v. Hatzel & Buehler, Inc.* (1960) 54 Cal.2d 445, our Supreme Court held that a property owner was to be indemnified by its contractor because (a) the property owner did not maintain independent operations on the premises while the construction was in progress; (b) the injury did not result from some conduct or omission unrelated to the performance of the contractor; (c) the claimed breach of duty was not active affirmative misconduct but at most passive negligence, a failure to act in fulfillment of a duty of care which devolved upon the indemnitee as the owner and occupier of land; and (d) the misconduct did not relate to some matter over which the indemnitee exercised exclusive control.  The Supreme Court then concluded that under the circumstances, the parties had knowingly bargained for the very protection in issue and affirmed the declaratory judgment in favor of the owner against the construction contractor.

Later, in *Gonzalez v. R.J. Novick Constr. Co.* (1978) 20 Cal.3d 798, the Supreme Court held that a general contractor was only passively negligent, where an employee of its subcontractor was injured on the job site.  There, the contractor had a superintendent who conducted daily safety inspections of the premises, was in the practice of reporting any safety hazards he could not immediately remedy himself to the subcontractor's foreman (whose primary responsibility was erecting the scaffold which injured the employee), and had failed to take action

*"Provide a safe, sustainable, integrated and efficient transportation system
to enhance California's economy and livability"*

Page 279 of 409

Counsel for Flatiron West, Inc.
October 13, 2020
Page 8

himself or report to the foreman the fact that he noticed the scaffold wasn't completed the morning of the subject incident.  *Id*. at 810.

Then, in *Edmondson Property Management v. Kwock* (2007) 156 Cal.App.4th 197, the property owner (Kwock) was deemed passively negligent, while the property manager (Edmondson) was deemed actively negligent.  There, liability arose from a child falling off the roof of a storage shed on Kwock's property.  The Court found Edmondson was actively negligent because it had notice prior to the fall that children generally, and the injured child specifically, played on the shed roof, but failed to take immediate preventative action.  The resident manager had directed the child to get off the roof and called Edmondson to tell it about children playing there.  The Court held that "The failure to take action when there is knowledge and a contractual duty to act is active negligence."  *Id.* at 209.

Finally, in relying on the unreported *County of Riverside v. Yeager Skanska, Inc.* (Cal. App. 2012) 2012 WL 5929943, the September 10, 2020 correspondence ignored a primary basis of the Court's finding of active negligence.  The Court noted that County's sole claim against Yeager was based on Yeager's placement of a detour sign.  However, the principal cause of the accident was not the placement of a detour sign, but instead, the lack of edge line along the curve and other visual cues delineating the pavement from the soft shoulder.  Thus, the Court found the County had a duty beyond placement of the detour sign, which it breached.  *Id.* at *9.

As detailed above, Flatiron's responsibility to public safety, *i.e.,* Caltrans' basis for claiming indemnity in this action, is much broader than just sign placement.  Should plaintiffs succeed in establishing the construction condition posed a hazard to public safety, then "there [was] a duty to act coupled with a failure to act" by Flatiron.  *Ibid* (citing *Edmondson, supra, at* 209 (citing *Rossmoor, supra,* at p. 629)).  Here, Flatiron's personnel testified to witnessing illegal passing maneuvers during this construction, but nevertheless failing to either report it, or implement protective measures.[vii]

---

[vii]  Deposition of Oscar Arellano 26:15-27:14. 30:21-31:3; Deposition of Rick Finken at 74:25-75:7, 77:15-17, 78:2-7.

*"Provide a safe, sustainable, integrated and efficient transportation system to enhance California's economy and livability"*

Page 280 of 409

Counsel for Flatiron West, Inc.
October 13, 2020
Page 9


Caltrans Looks Forward to Further Discussion and Mediation

Caltrans disagrees with the analysis set forth in the September 10, 2020 correspondence.  The governing law entitles Caltrans to the benefit of its bargain and the contractual terms of the operative contract imposed a nondelegable duty of public safety on Flatiron.  We will expect Flatiron and its insurers to defend and indemnify Caltrans throughout the litigation.

Caltrans agrees with the sentiment that we should not help prove plaintiffs' case.  To that end, Caltrans is willing to mediate these issues following settlement and/or judgment in these matters.  Caltrans will not, however, contribute toward any settlement.

Let me know how you want to proceed.

Very truly yours,

JERALD M. MONTOYA
Deputy Chief Counsel


By
    Maryam Azizi
    Deputy Attorney

MA

*"Provide a safe, sustainable, integrated and efficient transportation system
to enhance California's economy and livability"*

Page 281 of 409

**EXHIBIT H**



M cCLOSKEY
W ARING
W AISMAN &
D RURY LLP
—— ATTORNEYS AT LAW ——

12671 High Bluff Drive, Suite 350
San Diego, CA  92130
Phone 619.237.3095
Fax 619.237.3789


MICHAEL DRURY
DIRECT DIAL:  619.237.4002
mdrury@mwwdlaw.com

*Via E-Mail*

December 13, 2021


Heather L. Mills, Esq.
Skane Mills
1055 West 7th Street, Suite 1700
Los Angeles, CA 90017
hmills@skanemills.com

> Re:   *Jordyn Brewer, et al. v. State of California, et al.*
> San Bernardino County Superior Court Case No. CIVDS1819814
> Insured:   Flatiron Construction Corporation
> Flatiron West, Inc.
> Flatiron/Hardy & Harper, a Joint Venture
> Claim No.   2020019881

Dear Ms. Mills:

Our office is coverage counsel for Allied World Specialty Insurance Company ("Allied World") with respect to the above-referenced lawsuit pending in San Bernardino County Superior Court (the "Lawsuit").   Allied World issued Umbrella Liability Insurance Policy No. 0308-4113 to Flatiron Construction Corp. ("Flatiron"), effective from June 1, 2016 to June 1, 2017 (the "Allied Policy").   The Allied Policy identifies Zurich American Insurance Company Policy No. GLO 5939707-08, effective from June 1, 2016 to June 1, 2017, as the Scheduled Underlying Insurance for general liability. The Department of Transportation of the State of California ("Caltrans") seeks indemnity coverage under the Allied Policy for the claims asserted by plaintiffs against Caltrans in the Lawsuit.

This correspondence follows the parties' participation in Mediation on November 11, 2021 with Troy Roe.  This correspondence also supplements Allied World's August 7, 2020 letter to Caltrans with respect to Allied World's coverage position for the claims asserted against Caltrans in the Lawsuit.  Finally, this correspondence additionally follows up on correspondence between Flatiron and Caltrans relating to the issues of Caltrans' alleged active/passive negligence

Heather L. Mills, Esq.
December 13, 2021
Page 2

pertaining to the Lawsuit.[1] Please refer to the prior correspondence for a more detailed factual background of the Lawsuit.

Following our discussions during the Mediation, we wanted to clarify Allied World's coverage position in the Lawsuit and attempt to formulate a framework for Caltrans and Allied World to work together in an attempt to engage in meaningful settlement discussions with plaintiffs.  Caltrans previously declined any obligation to contribute towards a global settlement of the Lawsuit.  We request that Caltrans reconsider its wholesale refusal to meaningfully participate in settlement in light of its potential exposure arising out of its active negligence as discussed herein.

1.      **Limitations of Additional Insured Coverage to Caltrans under the Zurich Policy and the Allied Policy**

Initially, the Allied Policy provides that "we will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**. . . to which this insurance applies or because of **Bodily Injury** . . . to which this insurance applies assumed by the **Insured** under an **Insured Contract**."  The **Retained Limit** is defined, in relevant part, as "the total applicable limits **of Scheduled Underlying Insurance** and any other applicable **Other Insurance** providing coverage to the **Insured**.  Endorsement No. 1 to the Allied Policy identifies a Commercial General Liability Policy issued by Zurich American Insurance Company ("Zurich"), policy number GLO 5939707-08, effective June 1, 2016 to June 1, 2017 (the "Zurich Policy") as the **Scheduled Underlying Insurance** for General Liability.

Zurich is currently defending Flatiron (and Hardy & Harper, Inc.)[2] and Caltrans in the Lawsuit subject to reservation of rights. Both the Zurich Policy and the Allied Policy provide specific limitations on the additional insured coverage provided to Caltrans which are particularly relevant to plaintiffs' claims against Caltrans in the Lawsuit.  The Zurich Policy includes an Additional Insured – Automatic – Owners, Lessees or Contractors Endorsement (U-GL-1175-F-CW  04/13) which provides as follows:

<div align="center">

**ADDITIONAL INSURED - AUTOMATIC – OWNERS, LESSEES or CONTRACTORS**

</div>

This endorsement modifies insurance provided under the:

---

[1]Please see September 10, 2020 letter from Tyson Mendes to Demler Armstrong and October 13, 2020 letter from Caltrans to Tyson Mendes and Allied World.
[2]"Flatiron" hereinafter collectively refers to Flatiron West, Inc.; Hardy and Harper, Inc.; and Flatiron West, Inc./Hardy & Harper, a Joint Venture.

Heather L. Mills, Esq.
December 13, 2021
Page 3

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.   Section II – **Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement.  Such person or organization is an additional insured only with respect to "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

  1.   Your acts or omissions; or

  2.   The acts or omissions of those acting on your behalf, in the performance of "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

  However, this insurance afforded to such additional insured:

  1.   Only applies to the extent permitted by law; and

  2.   Will not be broader than that which you are required by written contract or written agreement to provide for such additional insured.

B.   With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

  This insurance does not apply to:

  Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services, including:

  a.   The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

  b.   Supervisory, inspection, architectural or engineering activities.

***

Heather L. Mills, Esq.
December 13, 2021
Page 4

As set forth in the Additional Insured Endorsement in the Zurich Policy, Zurich only has an obligation to indemnify Caltrans with respect to acts or omissions of Flatiron and *not the independent acts or omissions of Caltrans*. Furthermore, the Additional Insured Endorsement also provides that Zurich has no obligation to indemnify Caltrans with respect to any liability arising out of the rendering, or failure to render, any professional, architectural, engineering or surveying services. Plaintiff Jordan Brewer's First Amended Complaint ("FAC") specifically alleges that Caltrans was negligent in its engineering, design and planning of the SR-138 expansion project (the "Project"). As a result, a significant portion of plaintiffs' claims against Caltrans are not covered under the Zurich Policy or the Allied Policy.

The same limitations of additional insured coverage to Caltrans also apply under the Allied Policy pursuant to the Contractors' Limitation Endorsement. The Contractors' Limitation Endorsement modifies the definition of insured and provides, in pertinent part, as follows:

B.      It is agreed that Section VI., "Definitions" F. **Insured**, Paragraph 7. is deleted in its entirety and replaced by the following:

7.      any person or organization, other than the **Named Insured**, included as an additional insured in the policies listed in **Scheduled Underlying Insurance** however:

a.      coverage will not be broader than is available to such person or organization under such **Scheduled Underlying Insurance;** and

b.      the coverage granted by this provision does not apply to any liability which results solely from the acts or omissions of such person or organization.

Based on the foregoing, Allied World has no obligation to indemnify Caltrans *for its own independent acts or omissions related to the subject accident.* In addition, because Allied World's coverage is not broader than Zurich's coverage to Caltrans, Allied World has no obligation to indemnify Caltrans with respect to any liability arising out of the rendering, or failure to render, any professional, architectural, engineering or_surveying services. The claims asserted by Plaintiffs against Caltrans are based on design and planning activities excluded under the professional services exclusion in the Allied Policy.

In addition, California Insurance Code § 11580.04 provides that any **additional insured endorsement issued to a public agency** in connection with, collateral to, or affecting any construction contract to which the provisions of subdivision (b) of Section 2782 of the Civil Code apply, shall not provide any duty of indemnity coverage for the active negligence of the additional

Heather L. Mills, Esq.
December 13, 2021
Page 5

insured in any case where an agreement to indemnify the additional insured would be invalid under subdivision (b) of Section 2782 of the Civil Code. Therefore, if Caltrans is found to be actively negligent in the Lawsuit, Allied World has no obligation to indemnify Caltrans under the terms of the Allied Policy.

**2.    Potential Limitations of Indemnity Owed to the Caltrans Under California Civil Code § 2782 for Caltrans' Design Defects and Active Negligence**

Pursuant to the terms of the contract between Caltrans and Flatiron (the "Contract"), Flatiron is obligated to indemnify Caltrans as follows:

**7-1.05 Indemnification**
**7-1.05A. General**

You must defend, indemnify, and save harmless the State, including its officers, employees, and agents (excluding agents who are design professionals), from any and all claims, demands, causes of action, damages, costs, expenses, actual attorneys' fees, losses or liabilities, in law or in equity (Section 7-1.05 Claims) arising out of or in connection with your performance of this Contract for:

1.    Bodily injury, including, but not limited to, bodily injury, sickness or disease, emotional injury or death to persons, including, but not limited to, the public, any employees, agents of you, the State, or any other contractor; and

2.    Damage to property of anyone including loss of use thereof, caused or alleged to be caused in whole or in part by any negligent or otherwise legally actionable act or omission of you or anyone directly or indirectly employed by you or anyone whose acts you may be liable.

Except as otherwise provided by law, these requirements apply regardless of the existence or degree of fault of the State. You are not obligated to indemnify the State for Claims arising from conduct delineated in Civ Code §2782 and for Claims arising from any defective or substandard condition of the highway that existed at or before the start of work, unless this condition has been changed by the work or the scope of work requires you to maintain existing highway facilities and the Claim arises from your failure to maintain.

                                        ***

Heather L. Mills, Esq.
December 13, 2021
Page 6

Civil Code § 2782 provides as follows:

(a)    Except as provided in Sections 2782.1, 2782.2, 2782.5 and 2782.6, provisions, clauses, covenants, or agreements continue in, collateral to, or affecting any construction contract that purport to indemnify the promisee against liability for damages for death or bodily injury to persons, injury to property, or any other loss, damage or expense arising from the sole negligence or willful misconduct of the promisee or the promisee's agents, servants or independent contractors who are directly responsible to the promisee, or for defects in design furnished by those persona are against public policy and are void and unenforceable, provided however, that this section shall not affect the validity of any insurance contract, workers' compensation, or agreement issued by an admitted insurer as defined by the Insurance Code.

<div align="center">***</div>

(b)(2)    Except as provided in Sections 2782.1, 2782.2 and 2782.5, provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction contract with a public agency entered into after January 1, 2013, that purport to impose on any contractor, subcontractor, or supplier of goods or services, or relieve the public agency from, liability for the active negligence of the public agency are void and unenforceable.

<div align="center">***</div>

As you are aware, Flatiron disputes any indemnity obligation to Caltrans based on its position that Caltrans was actively negligent with respect to its design and planning of the Project. Initially, the Contract specifically excludes any indemnity obligation owed by Flatiron to Caltrans that is prohibited by Civ. Code §2782. Additionally, California Insurance Code § 11580.04 excludes this same liability from Allied World's additional insured obligations. Therefore, Caltrans has no right to indemnification from either Flatiron or its insurers for its own active negligence. Based on the discovery to date and plaintiffs' liability theories against Caltrans, Allied World has no obligation to indemnify Caltrans for defects in design of the construction project (location of k-rails, lack of channelizers, improper narrowing of shoulder, etc.) under 2782(a).

This issue of whether Caltrans' alleged negligence was "active" or "passive" is an unresolved and disputed legal issue in this Lawsuit. Plaintiffs have alleged substantial claims against Caltrans that would support a court's finding that Caltrans was actively negligent with respect to the subject traffic accident. In addition, the Contract provisions and the 2010 Standard Specifications (governing the Contract) cannot alter the statutory indemnity limitations outlined in

Heather L. Mills, Esq.
December 13, 2021
Page 7

Civil Code § 2782.  If a court determines that Caltrans was actively negligent, Flatiron and Allied World have no obligation to indemnify Caltrans in the Lawsuit.  Caltrans should consider the very real possibility of this outcome when refusing to meaningfully participate in settlement.

**3**.　　**Active Negligence and Passive Negligence Under California Law**

The leading case in California evaluating the distinction between "active" and "passive" negligence is *Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d. 622, 629.  In *Rossmoor*, the California Supreme Court explained that "[p]assive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law.  Active negligence, on the other hand, is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence or has failed to perform a precise duty which the indemnitee had agreed to perform." *Rossmoor*, *supra*, 13 Cal.3d at 629.  The Supreme Court provided the following examples:

> Passive negligence has been found or assumed from the failure to discover a defective condition created by others (*Markley v. Beagle, supra*, at pp. 955-956, 962), failure to exercise a right to inspect certain work and specify changes (*Muth* v. *Urricelqui* (1967) 251 Cal.App.2d 901, 911 [60 Cal.Rptr. 166]), and failure to exercise a supervisory right to order removal of defective material (*Safeway Stores, Inc. v. Massachusetts Bonding & Ins. Co.* (1962) 202 Cal.App.2d 99, 111-113 [20 Cal.Rptr. 820]).  Active negligence has been found in digging a hole which later caused an injury (*Morgan v. Stubblefield, supra*, at pp. 626-627), knowingly supplying a scaffold which did not meet the requirements of a safety order (*id*. at pp. 625-626), creating a perilous condition that resulted in an explosion (*Burlingame Motor Co.* v. *Peninsula Activities, Inc., supra*, at p. 661), and failing to install safety nets in violation of a contract (*MacDonald & Kruse, Inc.* v. *San Jose Steel Co., supra*, at pp. 424-425).

*Id.* at 630.

Ultimately, "[t]he crux of the inquiry is to determine whether there is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform a duty imposed upon him by law." *Id.* at 629.  Based on the allegations in the Lawsuit and Caltrans' design, engineering and control of the Project, a reasonable that a trier of fact will likely determine that Caltrans was actively negligent since it participated in the alleged conduct or omission which caused the injury and the subject accident. In fact, on February 26, 2021, Judge Alvarez denied Caltrans' MSJ with respect to the dangerous condition of public property cause of action and found that there were triable issues of fact as to whether the placement of the k-rails was proper, whether the reduction of the width of the emergency lane was proper and whether additional safeguards were necessary in the area of the

Heather L. Mills, Esq.
December 13, 2021
Page 8

accident.  The court took issue with Caltrans' design and set-up of the Project.  There is no evidence in this case which shows that Flatiron deviated from the plans and specification designed/provided by Caltrans.

In *County of Riverside v. Yeager Skanska, Inc.* (Cal. Ct. App., Nov. 27, 2012, No. E052034) 2012 WL 5929943 (unpublished), plaintiff was seriously injured when the front wheel of his motorcycle went off the road and crashed on a near 90–degree curve on Bridge Street, a County roadway. *Id.* at *1.  At the time of the accident, traffic heading east on Gilman Springs Road, another County roadway, was being detoured southbound to Bridge Street while the County made improvements to Gilman Springs Road. *Id.*  Lim & Nascimento Engineering Corp. ("LAN") was the County's design engineer on portions of the Gilman Springs Road project, and Yeager Skanska, Inc. ("Yeager") was the County's general contractor. *Id.*  Shortly before the near 90–degree curve, a reflective detour sign with an arrow pointing straight ahead partly obscured an existing curve sign. *Id.*  Yeager placed the detour signs on Bridge Street in accordance with a detour plan created by LAN. *Id.*  Around the area of the curve, the lines in the middle of the roadway were faded or washed out, there was no striping or edge lines delineating the pavement from the soft shoulder of the roadway, and the shoulder was even with the pavement. *Id.*  Plaintiff sued the County, Yeager, and LAN. *Id.*  Yeager denied it was obligated to defend or indemnify the County, in part because the claims arose from the County's sole and active negligence. *Id.* at *2. The trial court denied the County's contractual indemnity claims against both Yeager and LAN, holding that County was actively negligent in failing to remediate the dangerous conditions on Bridge Street that caused the accident. *Id.* at *3.

As is relevant here, the Court of Appeal found the trial court reasonably determined that the County was actively negligent. *Id.* at *5.  The County had "reserve[d] the right" to "make any necessary changes, as field conditions warrant," in "traffic control plans," and the County's resident engineer was to determine the "[e]xact location of all ... traffic control devices." *Id.* at *8. Before the accident, the County's resident engineer, Jesus Mendoza, inspected the detour route and approved Yeager's placement of the detour signs in accordance with the detour plan. *Id.*  The County's traffic engineer, Lawrence Tai, also inspected portions of the detour route before the accident and "made no adjustment in the detour signage" or any other changes in the detour route. *Id.*  Then, several days after the accident but before the County was aware of the accident, Mr. Tai's assistant, Arthur Higgs, drove both ways on Bridge Street at night and recommended placing chevron signs on the curve, placing an additional curve sign for motorists who might not be familiar with the roadway, and installing a painted edge line for guidance when opposing headlights made it difficult to see the center line. *Id.* Mr. Tai approved these recommendations, and the chevrons, curve signs, and edge line were installed. *Id.*

Although the lack of an edge line along the curve and other visual cues delineating the pavement from the soft shoulder—not the placement of the detour sign before the curve—was the principal cause of the accident, the Court of Appeal found that "the County had a duty to

Heather L. Mills, Esq.
December 13, 2021
Page 9

remedy *all* of the dangerous conditions on the detour route, including those that may have been created by Yeager's placement of the detour sign before the curve." *Id.* at *9.  Indeed, because the County had "reserved the right to determine the final placement of the detour signs, and effectively approved Yeager's placement of the detour sign before the curve" (*Id.* at *8), the Court of Appeal held that "[t]he trial court reasonably determined that the County was actively negligent in failing to 'make the appropriate traffic engineering recommendations concerning striping and signage at the curve' before the accident, and in failing to 'make the remedial recommendations that both plaintiffs' expert, Mr. Royer, and Mr. Tai's own assistant, Mr. Higgs, found obvious and necessary due to the increased volume on Bridge Street' before the accident" (*Id.* at *9).

Similar to the court's determination in the *County of Riverside* case, the facts and circumstances of the present case logically lead to the conclusion that the trier of fact in the Lawsuit, or in subsequent litigation, would similarly find that Caltrans is "actively" negligent based on the fact that Caltrans designed the traffic control plans and Caltrans' engineers determined the placement of all traffic control devices, including the k-rails, which are alleged to have caused or contributed to the accident.  Even more problematic for Caltrans in the present case is that plaintiffs (and the court denied summary judgment on the issue) are specifically alleging that Caltrans' design and planning of the Project created a dangerous condition which led to the accident.

**4**.       **Plaintiffs' Allegations Pertaining the Dangerous Conditions on SR-138**

The first cause of action for Dangerous Condition of Public Property in Plaintiffs' FAC is only pled against Caltrans and alleges that SR-138 contained various dangerous condition(s), including the Subject Concrete Jersey Wall (or k-rail) where the Subject Collision occurred, that created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it is and was reasonably foreseeable that it would be and was used, including, but not limited to, in the following respects:

> a) the subject roadway is improperly and dangerously delineated, placed, angled and designed; b) the subject roadway lacks any, or has insufficient  and/or defective barriers, warning signs, signals, or other forms of warning to protect persons, such as Brewer, from the unreasonable risk of harm posed by the Subject Concrete Jersey Wall; c) the subject roadway includes the existence of various features, including, but not limited to, the unprotected, unmarked Subject Concrete Jersey Wall, which pose an unreasonable risk of harm to persons, such as Brewer; (d) the subject roadway, in its totality is improperly and dangerously designed, creating and/or aggravating a confusing and inherently dangerous condition by virtue of, but not limited to, the presence of the Subject Concrete Jersey Wall that eliminates the presence of an emergency shoulder and (e) the subject roadway lacks a reasonable emergency shoulder.  Specifically, persons

Heather L. Mills, Esq.
December 13, 2021
Page 10

driving near the Subject Concrete Jersey Wall do not have space to pull into in case of emergency, thereby creating a concealed trap.[3]

All 18 of the specifically delineated dangerous conditions (in paragraph 15 of the FAC) are alleged against Caltrans. Caltrans engineered and designed the Project and the traffic control plan. Elvira Lenart, the resident engineer for Caltrans, testified that Caltrans had control and final approval as the design and implementation of the plans and specifications for the project, as well as supervision and oversight of all work on the project. Caltrans control extended to the placement of all traffic control devices, including the specific location of the k-rails (which are alleged to have improperly narrowed the shoulder from 15 feet to one foot) and all warning signs. Flatiron followed the plans designed and engineered by Caltrans. Any attempt to shift liability to Flatiron for design defects is prohibited by Civil Code § 2782(a).

**5**.     **Caltrans Indemnity Claims Against Flatiron are Tenuous**

As outlined above, there are numerous limitations on Flatiron and Allied World's potential indemnity obligations to Caltrans: (1) Coverage Limitations under the endorsements of the Zurich Policy and the Allied Policy (which exclude coverage to Caltrans for (a) the independent acts or omissions of Caltrans and (b) for the rendering, or failure to render any professional, engineering or surveying services); (2) Insurance Code Section 11580.04 which precludes additional insured coverage under the Allied Policy for Caltrans' active negligence; (3) Civil Code § 2782(a) which negates any indemnity obligation for Caltrans' negligent or defective design of the Project and (4) Civil Code § 2782(b)(2) which negates any indemnity obligation for Caltrans' active negligence relating to the Lawsuit. Based on all of these limitations, Caltrans must acknowledge that it has significant exposure in the Lawsuit for which it bears independent responsibility – exposure that is not subject to an indemnity claim against Flatiron and/or covered under the Allied Policy.

Caltrans' October 13, 2020 letter to Flatiron/Allied World asserts that Caltrans is being deprived its benefit of the bargain of the Contract and that the parties' intent controls the interpretation of the Contract. However, it is clear from the Contract that the parties never intended for Flatiron to indemnify Caltrans for Caltrans' *defects in design* of the construction plan or for its own *active negligence.*   The Contract specifically carves out any indemnification obligation for these two issues.  In addition. Caltrans relies on numerous provisions of the 2010 Standard Specifications to try to shift the burden for overall project "safety" to Flatiron.  However, none of these contractual provisions can alter the impact or effectiveness of the statutory prohibitions on indemnification owed by Flatiron or the applicable limits of the additional insured coverage under the Zurich Policy and Allied Policy.  Finally, Caltrans' position deprives Flatiron and Allied World

---

[3] Plaintiffs' FAC continues with additional alleged dangerous conditions of the subject roadway that are identified in paragraphs (f) through (r) in paragraph 15 of the FAC.

McCloskey, Waring, Waisman & Drury llp

12671 HIGH BLUFF DRIVE, SUITE 350, SAN DIEGO, CA 92130          PHONE: 619.237.3095   FAX: 619.237.3789

Heather L. Mills, Esq.
December 13, 2021
Page 11

of the statutory protections and limitations that the Legislature put in place to preclude Caltrans from seeking indemnification under these specific circumstances.

If the parties are to engage in meaningful settlement negotiations, Caltrans cannot continue to assert that it will only offer a negligible sum of money to "close the deal." Caltrans must recognize that the claims asserted against it are based on Caltrans' active negligence and must come to the negotiation table willing to make a significant contribution towards a global settlement with plaintiffs.

Thank you for your attention to the foregoing. We look forward to discussing these issues in more detail. Please do not hesitate to contact our office should you have any questions regarding this matter.

Sincerely,

Michael Drury

MD/nt

**EXHIBIT I**

**COPY**

**SUM-100**

**SUMMONS** ON FIRST AMENDED
**(CITACION JUDICIAL)** COMPLAINT

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):* | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)*<br>**FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN BERNARDINO<br>SAN BERNARDINO CIVIL DIVISION<br><br>JUN 21 2018<br><br>BY: _____<br>MANUEL HENRY ANDRIANO, DEPUTY |

STATE OF CALIFORNIA; KIM LYNNETTE BRAXTON; THE ESTATE OF JUSTIN MELVIN
MUNSON CHIVAS; FLATIRON WEST, INC.; HARDY & HARPER, INC.; FLATIRON WEST,
INC. & HARDY & HARPER, A JOINT VENTURE AND DOES 1-20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
GAYLIN EISENHAUER HOWBERT; JOSHUA HOWBERT; JACE HOWBERT, a
minor by and through his Guardian Ad Litem GAYLIN EISENHAUER HOWBERT

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

**BY FAX**

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA,<br>COUNTY OF SAN BERNARDINO | CASE NUMBER:<br>*(Número del Caso):* |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BRIAN J. MALLOY (State Bar No.: 234882)                Phone No.: (415) 989-1801
THE BRANDI LAW FIRM                                    Phone No.: (415) 989-1800
354 Pine Street, Third Floor, San Francisco, CA 94104

| DATE:<br>*(Fecha)* JUN 21 2018 | Clerk, by<br>*(Secretario)* **Manuel Henry Andriano** | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

*COPY*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify): FLATIRON WEST, INC.

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

*LexisNexis® Automated California Judicial Council Forms*

# COPY

1  THE BRANDI LAW FIRM
   THOMAS J. BRANDI, #53208
2  BRIAN J. MALLOY, #234882
   354 Pine Street, Third Floor
3  San Francisco, CA 94104
   Telephone: (415) 989-1800
4  Facsimile: (415) 989-1801

5  Attorneys for Plaintiffs
   GAYLIN EISENHAUER HOWBERT; JOSHUA HOWBERT;
6  JACE HOWBERT, a minor by and through his guardian ad litem
   GAYLIN EISENHAUER HOWBERT

7

8

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO CIVIL DIVISION

JUN 21 2018

BY _____
MANUEL HENRY ANDRIANO, DEPUTY

**BY FAX**

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN BERNARDINO

| | |
|---|---|
| 11  GAYLIN EISENHAUER HOWBERT; JOSHUA HOWBERT; JACE | ) Case No.: CIVDS 1715826 |
| 12  HOWBERT, a minor by and through his Guardian Ad Litem GAYLIN | ) **FIRST AMENDED COMPLAINT** |
| 13  EISENHAUER HOWBERT, | ) **FOR DAMAGES** |
| 14           Plaintiffs | ) 1. DANGEROUS CONDITION OF |
| | )    PUBLIC PROPERTY |
| 15  v. | ) 2. NEGLIGENCE |
| | ) 3. NEGLIGENCE |
| 16  STATE OF CALIFORNIA; KIM | ) 4. NEGLIGENCE |
| LYNNETTE BRAXTON; THE ESTATE | ) 5. WRONGFUL DEATH |
| 17  OF JUSTIN MELVIN MUNSON | ) |
| CHIVAS; FLATIRON WEST, INC.; | ) **JURY TRIAL DEMANDED** |
| 18  HARDY & HARPER, INC.; FLATIRON | ) |
| WEST, INC. & HARDY & HARPER, A | ) ASSIGNED FOR ALL PURPOSES TO: |
| 19  JOINT VENTURE and DOES 1-20, | ) The Hon. Thomas S. Garza, Dept. S27 |
| inclusive, | ) |
| 20 | ) *Complaint Filed August 15, 2017* |
| | ) Trial Date: Not yet assigned |
| 21           Defendants. | ) |

22

23  Plaintiffs GAYLIN EISENHAUER HOWBERT, JOSHUA HOWBERT, and JACE

   HOWBERT, a minor by and through his guardian ad litem GAYLIN EISENHAUER HOWBERT
24
   ("Plaintiffs"), allege as follows:

1

FIRST AMENDED COMPLAINT FOR DAMAGES

1  **GENERAL FACTUAL ALLEGATIONS**

2      1.      On or about September 5, 2016, at approximately 1:29 p.m., Decedent Bruce

3  Eisenhauer was driving his 2001 Mazda Tribute (California License Plate No.: 5NUS009) and

4  traveling eastbound on SR-138 just west of Santa Fe Road, in an unincorporated area of San

5  Bernardino County, State of California ("ACCIDENT LOCATION").  In the vehicle with him were

6  his daughter, Plaintiff GAYLIN EISENHAUER HOWBERT, her husband, Plaintiff JOSHUA

7  HOWBERT, and Plaintiffs GAYLIN EISENHAUER HOWBERT and JOSHUA HOWBERT's minor

8  son, JACE HOWBERT.

9      2.      As a proximate, direct and legal result of the ACCIDENT LOCATION being in a

10  dangerous condition, as is more fully described below, and the negligence of decedent JUSTIN

11  MELVIN MUNSON CHIVAS and of KIM LYNNETTE BRAXTON, decedent Bruce

12  Eisenhauer's vehicle collided with the vehicles driven by decedent JUSTIN MELVIN MUNSON

13  CHIVAS and KIM LYNNETTE BRAXTON.

14      3.      Bruce Eisenhauer died as a proximate, direct, and legal result of the ACCIDENT

15  LOCATION being in a dangerous condition, as is more fully described below, and the negligence

16  of decedent JUSTIN MELVIN MUNSON CHIVAS and of KIM LYNNETTE BRAXTON.

17      4.      Plaintiffs GAYLIN EISENHAUER HOWBERT, JOSHUA HOWBERT, and JACE

18  HOWBERT, a minor by and through his guardian ad litem GAYLIN EISENHAUER HOWBERT,

19  sustained injuries as a proximate, direct, and legal result of the ACCIDENT LOCATION being in a

20  dangerous condition, as is more fully described below and the negligence of decedent JUSTIN

21  MELVIN MUNSON CHIVAS and of KIM LYNNETTE BRAXTON.

22      5.      Prior to the filing of this complaint, Plaintiffs complied with all applicable

23  government claims statutes by filing a timely claim with the STATE OF CALIFORNIA on January

24  26, 2017 that was denied on May 25, 2017.

2

FIRST AMENDED COMPLAINT FOR DAMAGES

1        6.     At all relevant times herein, decedent Bruce Eisenhauer was the father of Plaintiff

2 GAYLIN EISENHAUER HOWBERT, and the maternal grandfather of Plaintiff JACE

3 HOWBERT.

4        7.     Defendants DOES 1 through 20, inclusive, are sued herein under fictitious names.

5 Plaintiffs do not at this time know the true names or capacities of said defendants, but pray that the

6 same may be inserted herein when ascertained.  Plaintiffs are informed and believe and thereon

7 allege that each of said fictitiously named defendants is legally responsible for the damages claimed

8 by Plaintiffs herein.

9        8.     At all times herein mentioned, each defendant was the agent, servant, employee,

10 partner and joint venturer of each of the other defendants and at all of said times was acting within

11 the course and scope of said agency, service, employment, partnership and joint venture.

12                           **FIRST CAUSE OF ACTION**
**(Dangerous Condition of Public Property)**

13       **(All Plaintiffs Against Defendant STATE OF CALIFORNIA)**

14        9.     Plaintiffs hereby incorporate paragraphs 1-8 above, and incorporate them into this

15 cause of action, as though fully set out herein.

16        10.    Plaintiffs are informed and believe and, upon such information and belief, allege that

17 the STATE OF CALIFORNIA by and through their authorized agencies, agents, servants, and

18 employees were charged with the responsibility of designing, constructing, operating, signing,

19 maintaining, repairing and regulating the ACCIDENT LOCATION.

20        11.    The STATE OF CALIFORNIA negligently and carelessly designed, warned, failed

21 to warn, constructed, created, maintained, repaired, owned, operated, controlled, signed, and

22 regulated the aforementioned ACCIDENT LOCATION, thereby creating a dangerous condition

23 due to:

24         •    failure to warn of, and/or prevent and/or correct a "dangerous condition" (a condition

of property that creates a substantial [as distinguished from a minor, trivial or insignificant] risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used) on, or immediately adjacent to, public property;

- failure to provide and/or maintain adequate, safe and appropriately placed K-Rails;
- failure to provide and/or maintain adequate and safe guardrails, bridge rails, and other structures and devices to prevent vehicles from leaving the roadway and shoulder;
- failure to provide and/or maintain an adequate shoulder along the roadway;
- failure to provide adequate rumble strips, botts dots, or other features along the centerline and along the edge of the travelled way to warn motorists that their vehicle was leaving the travelled way;
- failure to provide adequate sight distances for drivers;
- failure to provide an adequate clear zone or recovery area along the edge of the travelled way;
- failure to provide an adequate recovery area;
- failure to provide and/or maintain adequate signs, signals, devices, channelization, pavement, and striping;
- failure to provide a safe and reasonable geometric alignment of the roadway; and
- failure to adequately warn of the dangerous and unsafe conditions set forth above.

12.     The aforesaid acts and omissions of the STATE OF CALIFORNIA created and caused dangerous conditions in that said conditions created a substantial risk of the type of injury hereinafter alleged when defendant's property was used in a foreseeable manner.

13.     The STATE OF CALIFORNIA had actual and/or constructive notice of the defective and substantially dangerous conditions a sufficient time prior to decedent's injuries to have taken

4

FIRST AMENDED COMPLAINT FOR DAMAGES

1  measures to protect against the dangerous condition.  The actual notice existed because the STATE

2  OF CALIFORNIA and/or its employees and agents had actual knowledge of the existence of the

3  condition and knew, or should have known, of its dangerous character since the STATE OF

4  CALIFORNIA and/or its employees and agents owned, constructed, maintained and created by

5  direction said condition.  Constructive notice existed because the condition had existed for such a

6  period of time and was of such an obvious nature that the STATE OF CALIFORNIA, in the exercise

7  of due care, should have discovered the condition and its dangerous character.  The existence of the

8  condition and its dangerous character would have been discovered by an inspection system that was

9  reasonably adequate to inform the STATE OF CALIFORNIA whether the property was safe for the

10  use or uses for which the STATE OF CALIFORNIA used or intended others to use the public

11  property and for uses that the STATE OF CALIFORNIA actually knew others were making of the

12  public property, including but not limited to visual inspections of the ACCIDENT LOCATION in use.

13  During the course of any such reasonably adequate inspection, the STATE OF CALIFORNIA would

14  have discovered the conditions, and their dangerous character, as listed above.

15       14.     In light of the notice to the STATE OF CALIFORNIA and its agents and employees,

16  the STATE OF CALIFORNIA's failure to adequately sign, remedy, or otherwise warn of the

17  dangerous condition of the roadway caused a trap to exist for motorists approaching and proceeding on

18  the ACCIDENT LOCATION.

19       15.     As a direct and proximate result of the aforementioned conduct of Defendant,

20  Plaintiffs were caused to sustain serious and permanent personal injuries and have been compelled

21  to undergo a course of severe pain and suffering and to sustain general damages.

22       16.     As a direct and proximate result of the aforementioned conduct of Defendant,

23  Plaintiffs have been compelled to incur obligations for medical care, medicines, x-rays,

24  hospitalization, and medical supplies, and will in the future be compelled to incur additional

5

FIRST AMENDED COMPLAINT FOR DAMAGES

1   obligations therefore and other incidental expenses.  Plaintiffs do not at this time know the

2   reasonable value thereof but pray that the same may be inserted herein when ascertained.

3       17.   As a direct and proximate result of the aforementioned conduct of Defendant,

4   Plaintiffs have been deprived of their earnings and earning capacity and the ability to engage in

5   their usual and customary activities and will in the future be deprived thereof.  Plaintiffs do not at

6   this time know the reasonable value thereof, but prays that the same may be inserted herein when

7   ascertained.

8       18.   At all times herein mentioned, Plaintiffs GAYLIN EISENHAUER HOWBERT and

9   JOSHUA HOWBERT were husband and wife.  As a direct and proximate result of the

10  aforementioned conduct of Defendant, Plaintiffs GAYLIN EISENHAUER HOWBERT and

11  JOSHUA HOWBERT have been deprived of the care, comfort, support, society, and household

12  services of each other and have therefore each sustained general damages for loss of consortium.

13      19.   As a direct and proximate result of the aforementioned conduct of Defendant,

14  Plaintiffs claim prejudgment interest.  Plaintiffs do not know the reasonable value thereof but prays

15  that the same may be inserted herein when ascertained.

16  <div align="center">**SECOND CAUSE OF ACTION**
(Negligence)</div>

17  <div align="center">**(All Plaintiffs Against Defendant KIM LYNNETTE BRAXTON and DOES 1 through 5)**</div>

18      20.   Plaintiffs hereby incorporate paragraphs 1-19 above, and incorporate them into this

19  cause of action, as though fully set out herein.

20      21.   Defendants KIM LYNNETTE BRAXTON and DOES 1 through 5, inclusive so

21  carelessly and negligently owned, entrusted, controlled, serviced, repaired, maintained, drove and

22  operated their vehicle, a 2015 Buick Lacrosse,  as to cause the same to collide with the vehicle

23  containing the decedent Bruce Eisenhauer.

24      22.   As a direct and proximate result of the aforementioned conduct of Defendants,

<div align="center">6</div>

FIRST AMENDED COMPLAINT FOR DAMAGES

1  Plaintiffs were caused to sustain serious and permanent personal injuries and have been compelled

2  to undergo a course of severe pain and suffering and to sustain general damages.

3       23.    As a direct and proximate result of the aforementioned conduct of Defendants,

4  Plaintiffs have been compelled to incur obligations for medical care, medicines, x-rays,

5  hospitalization, and medical supplies, and will in the future be compelled to incur additional

6  obligations therefore and other incidental expenses.  Plaintiffs do not at this time know the

7  reasonable value thereof but pray that the same may be inserted herein when ascertained.

8       24.    As a direct and proximate result of the aforementioned conduct of Defendants,

9  Plaintiffs have been deprived of their earnings and earning capacity and the ability to engage in

10  their usual and customary activities and will in the future be deprived thereof.  Plaintiffs do not at

11  this time know the reasonable value thereof, but prays that the same may be inserted herein when

12  ascertained.

13       25.    At all times herein mentioned, Plaintiffs GAYLIN EISENHAUER HOWBERT and

14  JOSHUA HOWBERT were husband and wife.  As a direct and proximate result of the

15  aforementioned conduct of Defendants, Plaintiffs GAYLIN EISENHAUER HOWBERT and

16  JOSHUA HOWBERT have been deprived of the care, comfort, support, society, and household

17  services of each other and have therefore each sustained general damages for loss of consortium.

18       26.    As a direct and proximate result of the aforementioned conduct of Defendants,

19  Plaintiffs claim prejudgment interest.  Plaintiffs do not know the reasonable value thereof but prays

20  that the same may be inserted herein when ascertained.

21                          **THIRD CAUSE OF ACTION**
                                   (Negligence)
22  **(All Plaintiffs Against Defendant THE ESTATE OF JUSTIN MELVIN MUNSON CHIVAS
                          and DOES 6 through 10)**

23
24       27.    Plaintiffs hereby incorporate paragraphs 1-26 above, and incorporate them into this

   cause of action, as though fully set out herein.

                                      7

28.     Defendants THE ESTATE OF JUSTIN MELVIN MUNSON CHIVAS and DOES 6 through 10, inclusive so carelessly and negligently owned, entrusted, controlled, serviced, repaired, maintained, drove and operated their vehicle, a 2001 Chevrolet Malibu,  as to cause the same to collide with the vehicle containing the decedent Bruce Eisenhauer.

29.     As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs were caused to sustain serious and permanent personal injuries and has been compelled to undergo a course of severe pain and suffering and to sustain general damages.

30.     As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have been compelled to incur obligations for medical care, medicines, x-rays, hospitalization, and medical supplies, and will in the future be compelled to incur additional obligations therefore and other incidental expenses.  Plaintiffs do not at this time know the reasonable value thereof but pray that the same may be inserted herein when ascertained.

31.     As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs have been deprived of their earnings and earning capacity and the ability to engage in their usual and customary activities and will in the future be deprived thereof.  Plaintiffs do not at this time know the reasonable value thereof, but prays that the same may be inserted herein when ascertained.

32.     At all times herein mentioned, Plaintiffs GAYLIN EISENHAUER HOWBERT and JOSHUA HOWBERT were husband and wife.  As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs GAYLIN EISENHAUER HOWBERT and JOSHUA HOWBERT have been deprived of the care, comfort, support, society, and household services of each other and have therefore each sustained general damages for loss of consortium.

33.     As a direct and proximate result of the aforementioned conduct of Defendants, Plaintiffs claim prejudgment interest.  Plaintiffs do not know the reasonable value thereof but prays

8

FIRST AMENDED COMPLAINT FOR DAMAGES

1    that the same may be inserted herein when ascertained.

2    <div align="center">**FOURTH CAUSE OF ACTION**</div>
<div align="center">(Negligence)</div>

3    <div align="center">**(All Plaintiffs Against Defendants FLATIRON WEST, INC., HARDY & HARPER, INC.,**
**FLATIRON WEST, INC. & HARDY & HARPER, A JOINT VENTURE and DOES 11**</div>

4    <div align="center">**through 20)**</div>

5    34.    Plaintiffs hereby incorporate paragraphs 1-33 above, and incorporate them into this

6    cause of action, as though fully set out herein.

7    35.    At all times relevant hereto, Defendant THE STATE OF CALIFIORNIA hired

8    Defendants FLATIRON WEST, INC., HARDY & HARPER, INC., FLATIRON WEST, INC. &

9    HARDY & HARPER, A JOINT VENTURE, and DOES 11 through 20 to perform work at the

10    ACCIDENT LOCATION, including but not limited to pavement rehabilitation, roadway

11    realignment, profile correction, widening of the roadway and shoulder, installing median barriers,

12    paving the median, installing rumblestrips, and other work at the ACCIDENT LOCATION.

13    36.    Defendants FLATIRON WEST, INC., HARDY & HARPER, INC., FLATIRON

14    WEST, INC. & HARDY & HARPER, A JOINT VENTURE, and DOES 11 through 20 inclusive

15    so carelessly and negligently constructed, built, designed, operated, maintained, inspected,

16    modified, and/or repaired the ACCIDENT LOCATION.  In particular, Defendants FLATIRON

17    WEST, INC., HARDY & HARPER, INC., FLATIRON WEST, INC. & HARDY & HARPER, A

18    JOINT VENTURE, and DOES 11 through 20 negligently performed the work they were hired to

19    do by failing to perform the work contracted to do as described above in a careful manner with

20    reasonable care, failing to maintain the ACCIDENT LOCATION in a safe conditions while

21    completing the work, failing to warn oncoming motorists of hazards, and failing to take adequate

22    precautions and safeguards while performing work at the ACCIDENT LOCATION.

23    37.    Said negligence of Defendants FLATIRON WEST, INC., HARDY & HARPER,

24    INC., FLATIRON WEST, INC. & HARDY & HARPER, A JOINT VENTURE, and DOES 11

<div align="center">9</div>

FIRST AMENDED COMPLAINT FOR DAMAGES

1    through 20 caused or contributed to the September 5, 2016 accident at the ACCIDENT

2    LOCATION described herein.

3        38.    As a direct and proximate result of the aforementioned conduct of Defendants,

4    Plaintiffs were caused to sustain serious and permanent personal injuries and has been compelled to

5    undergo a course of severe pain and suffering and to sustain general damages.

6        39.    As a direct and proximate result of the aforementioned conduct of Defendants,

7    Plaintiffs have been compelled to incur obligations for medical care, medicines, x-rays,

8    hospitalization, and medical supplies, and will in the future be compelled to incur additional

9    obligations therefore and other incidental expenses.  Plaintiffs do not at this time know the

10   reasonable value thereof but pray that the same may be inserted herein when ascertained.

11       40.    As a direct and proximate result of the aforementioned conduct of Defendants,

12   Plaintiffs have been deprived of their earnings and earning capacity and the ability to engage in

13   their usual and customary activities and will in the future be deprived thereof.  Plaintiffs do not at

14   this time know the reasonable value thereof, but prays that the same may be inserted herein when

15   ascertained.

16       41.    At all times herein mentioned, Plaintiffs GAYLIN EISENHAUER HOWBERT and

17   JOSHUA HOWBERT were husband and wife.  As a direct and proximate result of the

18   aforementioned conduct of Defendants, Plaintiffs GAYLIN EISENHAUER HOWBERT and

19   JOSHUA HOWBERT have been deprived of the care, comfort, support, society, and household

20   services of each other and have therefore each sustained general damages for loss of consortium.

21       42.    As a direct and proximate result of the aforementioned conduct of Defendants,

22   Plaintiffs claim prejudgment interest.  Plaintiffs do not know the reasonable value thereof but prays

23   that the same may be inserted herein when ascertained.

24

<div align="center">10</div>

FIRST AMENDED COMPLAINT FOR DAMAGES

**FIFTH CAUSE OF ACTION**
(Wrongful Death)
(Plaintiff GAYLIN EISENHAUER HOWBERT against All Defendants
and DOES 1 through 20)

43.     Plaintiffs hereby incorporate paragraphs 1-42 above, and incorporate them into this cause of action, as though fully set out herein.

44.     As a result of Defendants' acts as described herein, and each of them, Bruce Eisenhauer died.  As a result, Plaintiff GAYLIN EISENHAUER HOWBERT, decedent's surviving child, has been deprived of the love, companionship, comfort, care, assistance, protection, affection, society, moral support, training, guidance and financial support of her father Bruce Eisenhauer.

45.     As a direct and proximate result of Defendants' negligence as described herein, Plaintiff GAYLIN EISENHAUER HOWBERT has been compelled to incur obligations for medical expenses, transportation, funeral and burial expenses in the interment of Bruce Eisenhauer, at a cost to be inserted herein when ascertained.

**WHEREFORE,** Plaintiffs demand a jury trial and pray for judgment as follows:

1.     For general damages for all Plaintiffs, according to proof;

2.     For special damages for all Plaintiffs, according to proof;

3.     For loss of consortium damages for Plaintiffs GAYLIN EISENHAUER HOWBERT and JOSHUA HOWBERT, according to proof;

4.     For wrongful death damages for Plaintiff GAYLIN EISENHAUER HOWBERT, according to proof;

5.     For prejudgment interest for all Plaintiffs, according to law;

6.     For costs of suit for all Plaintiffs; and

7.     For such other relief as the court deems proper or necessary.

11

FIRST AMENDED COMPLAINT FOR DAMAGES

1    DATED:  June 21, 2018                    THE BRANDI LAW FIRM

2                                             BY:  _____

3                                                   BRIAN J. MALLOY
                                                    Attorneys for Plaintiffs
4

5                                  **JURY DEMAND**

6         Plaintiffs hereby demand trial by jury.

7    DATED:  June 21, 2018                    THE BRANDI LAW FIRM

8                                             BY:  _____

9                                                   BRIAN J. MALLOY
                                                    Attorneys for Plaintiffs
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

                                        12

FIRST AMENDED COMPLAINT FOR DAMAGES

1    ## PROOF OF SERVICE BY MAIL - CCP §1013a(3)

2        The undersigned certifies and declares as follows:

3        I am over the age of eighteen years and not a party to this action.  My business address is
354 Pine Street, Third Floor, San Francisco, California, 94104, located in the county where the
4    mailing described below took place.

5        I am readily familiar with the business practice at my place of business for collection and
processing of correspondence for mailing with the United States Postal Service.  Correspondence
6    so collected and processed is deposited with the United States Postal Service that same day in the
ordinary course of business.

7
        On June 21, 2018, at my place of business at San Francisco, California, a copy of the
8    following document:

9        **FIRST AMENDED COMPLAINT FOR DAMAGES**

10   was placed for deposit in the United States Postal Service in a sealed envelope with postage fully
prepaid, addressed to the following named persons:

11
Robert W. Armstrong, Esq.
12   Tom S. Xu, Esq.
DEMLER, ARMSTRONG & ROWLAND, LLP
13   4500 E. Pacific Coast Highway, Fourth Floor
Long Beach, CA 90804
14   ***Counsel for Defendant STATE OF CALIFORNIA***

15   Catherine A. Gayer, Esq.
Sarah Y. Sorensen, Esq.
16   WINET, PATRICK, GAYER, CREIGHTON & HANES
1111 E. Tahquitz Canyon Way, Suite 113
17   Palm Springs, CA 92262
***Counsel for Defendant/Cross-Complainant KIM LYNETTE BRAXTON***
18
Michael Ghozland, Esq.
19   GHOZLAND LAW FIRM
626 Wilshire Boulevard, Suite 1170
20   Los Angeles, CA 90017
***Co-Counsel for Defendant/Cross-Complainant KIM LYNETTE BRAXTON***
21
Michael L. Bassett, Esq.
22   LAW OFFICES OF BASSETT, DISCOE, MCMAINS & KARGOZAR
1551 North Tustin Avenue, Suite 900
23   Santa Ana, CA 92705
***Counsel for Defendant/Cross-Defendant THE ESTATE OF JUSTIN MELVIN MUNSON***
24   ***CHIVAS***

13
FIRST AMENDED COMPLAINT FOR DAMAGES

1    and the envelopes so addressed were placed for collection and mailing on the above date following ordinary business practices.

2

3           I certify and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

4    DATED: June 21, 2018

     AIMEE CARDOZA

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

                                        14
     FIRST AMENDED COMPLAINT FOR DAMAGES

# COPY

1
THE BRANDI LAW FIRM
THOMAS J. BRANDI, #53208
2
BRIAN J. MALLOY, #234882
354 Pine Street, Third Floor
3
San Francisco, CA 94104
Telephone: (415) 989-1800
4
Facsimile: (415) 989-1801

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

MAY 1 5 2018

BY _____
AMBER M. GEAR, DEPUTY

5
Attorneys for Plaintiffs
GAYLIN EISENHAUER HOWBERT; JOSHUA HOWBERT;
6
JACE HOWBERT, a minor by and through his guardian ad litem
GAYLIN EISENHAUER HOWBERT

7

8

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

## IN AND FOR THE COUNTY OF SAN BERNARDINO

10

11
GAYLIN EISENHAUER HOWBERT;
JOSHUA HOWBERT; JACE
12
HOWBERT, a minor by and through his
Guardian Ad Litem GAYLIN
13
EISENHAUER HOWBERT,

14
                    Plaintiffs

15
v.

16
STATE OF CALIFORNIA; KIM
LYNNETTE BRAXTON; THE ESTATE
17
OF JUSTIN MELVIN MUNSON
CHIVAS; and DOES 1-10, inclusive,

18
                    Defendants.

19

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: CIVDS 1715826

**NOTICE OF CONTINUED TRIAL
SETTING CONFERENCE**

ASSIGNED FOR ALL PURPOSES TO:
The Hon. Thomas S. Garza, Dept. S27

*Complaint Filed August 15, 2017*
Trial Date: Not yet assigned

20

21

22

23

24

1

NOTICE OF CONTINUED TRIAL SETTING CONFERENCE

1   **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

2   PLEASE BE ADVISED THAT the Trial Setting Conference in the above-referenced matter

3   has been continued by the Court to Wednesday, September 12, 2018, at 8:30 a.m., in Department S27,

4   located at 247 West Third Street, San Bernardino, California 92415.  CourtCall is permitted.

5

6   DATED:  May 15, 2018                          THE BRANDI LAW FIRM

7                                                BY:  _____

8                                                     BRIAN J. MALLOY
                                                      Attorneys for Plaintiffs.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

                                        2
NOTICE OF CONTINUED TRIAL SETTING CONFERENCE.

<u>**PROOF OF SERVICE BY MAIL - CCP §1013a(3)**</u>

The undersigned certifies and declares as follows:

I am over the age of eighteen years and not a party to this action. My business address is 354 Pine Street, Third Floor, San Francisco, California, 94104, located in the county where the mailing described below took place.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

On May 15, 2018, at my place of business at San Francisco, California, a copy of the following document:

**NOTICE OF CONTINUED TRIAL SETTING CONFERENCE**

was placed for deposit in the United States Postal Service in a sealed envelope with postage fully prepaid, addressed to the following named persons:

Robert W. Armstrong, Esq.
Tom S. Xu, Esq.
DEMLER, ARMSTRONG & ROWLAND, LLP
4500 E. Pacific Coast Highway, Fourth Floor
Long Beach, CA 90804
*Counsel for Defendant STATE OF CALIFORNIA*

Catherine A. Gayer, Esq.
Sarah Y. Sorensen, Esq.
WINET, PATRICK, GAYER, CREIGHTON & HANES
1111 E. Tahquitz Canyon Way, Suite 113
Palm Springs, CA 92262
*Counsel for Defendant/Cross-Complainant KIM LYNETTE BRAXTON*

Michael Ghozland, Esq.
GHOZLAND LAW FIRM
626 Wilshire Boulevard, Suite 1170
Los Angeles, CA 90017
*Co-Counsel for Defendant/Cross-Complainant KIM LYNETTE BRAXTON*

Michael L. Bassett, Esq.
LAW OFFICES OF BASSETT, DISCOE, MCMAINS & KARGOZAR
1551 North Tustin Avenue, Suite 900
Santa Ana, CA 92705
*Counsel for Defendant THE ESTATE OF JUSTIN MELVIN MUNSON CHIVAS*

3

NOTICE OF CONTINUED TRIAL SETTING CONFERENCE

1   and the envelopes so addressed were placed for collection and mailing on the above date following
    ordinary business practices.

2
        I certify and declare under penalty of perjury under the laws of the State of California that
3   the foregoing is true and correct.

4   DATED: May 15, 2018

    AIMEE CARDOZA

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

                                    4
    NOTICE OF CONTINUED TRIAL SETTING CONFERENCE

**EXHIBIT J**



**VIA E-MAIL AND FIRST CLASS MAIL**

January 20, 2022

Breanne Denning, Esq.
State of California Department of Transportation
1055 West 7th Street, Suite 1700
Sacramento, CA  95814
Breanne.Denning@dot.ca.gov

> Re:   *Gaylin Eisenhauer Howbert, et al. v. State of California, et al.*
> San Bernardino County Superior Court Case No. CIVDS1715826
> Insured:      Flatiron Construction Corporation
>                    Flatiron West, Inc.
>                    Flatiron/Hardy & Harper, a Joint Venture
> Policy No.:   0308-4113 (eff. 6/1/16 to 6/1/17)
> Claim No.    2022000230

Dear Ms. Denning:

This correspondence provides you with the position of Allied World Specialty Insurance Company ("Allied World") with respect to the above-referenced lawsuit pending in San Bernardino County Superior Court (the "Lawsuit"). Allied World issued Umbrella Liability Insurance Policy No. 0308-4113 to Flatiron Construction Corp, effective from June 1, 2016 to June 1, 2017 (the "Allied Policy").   The Allied Policy identifies Zurich American Insurance Company Policy No. GLO 5939707-08, effective from June 1, 2016 to June 1, 2017, as the Scheduled Underlying Insurance for general liability (the "Zurich Policy").   The State of California Department of Transportation ("Caltrans") seeks indemnity under the Allied World Policy.   Please be advised that I am the adjuster handling the claim and all future correspondence should be directed to my attention.   Allied World reserves all rights under the terms of the Allied Policy, the Zurich Policy and applicable law with respect to the Lawsuit and the claims alleged against Caltrans.

## I.      FACTUAL BACKGROUND

Based on the information and documents that Allied World has reviewed pertaining to this Lawsuit, it is our understanding that the Lawsuit arises out of a fatal motor vehicle accident that occurred on September 5, 2016, on State Route 138 ("SR-138") just west of Santa Fe Road in San Bernardino County.   The accident occurred when the westbound vehicle driven by Justin Chivas ("Chivas") drifted to the right, struck and spun off a concrete k-rail and then veered into

**ALLIED WORLD** INSURANCE COMPANY          199 Water Street          T. 646 794 0500          E. info@awac.com

24<sub>th</sub> & 29th Floor          F. 646 794 0611          www.awac.com
New York, NY 10038
U.S.A.

Page 315 of 409

the eastbound lane colliding head on with the vehicle operated by Plaintiffs' Decedent Bruce Eisenhauer ("Eisenhauer").  Eisenhauer and Chivas both died as a result of the accident.

Plaintiffs Gaylin Howbert, Joshua Howbert and Jace Howbert ("Plaintiffs") were all passengers in Eisenhauer's vehicle.  Eisenhauer is Gaylin Howbert's father and Jace Howbert's grandfather.  All three passengers in Eisenhauer's car suffered injuries as a result of the accident.  Kim Braxton ("Braxton") was operating a 2015 Buick LaCrosse about one car length behind Eisenhauer's car and was unable to stop her vehicle in time and collided with the rear of Eisenhauer's vehicle after Chivas' vehicle collided with Eisenhauer's vehicle.

At the time of the accident, there was an ongoing Caltrans project to widen and improve a 15-mile portion of SR-138 between SR-2 and I-15 (the "Project").  Specifically, the Project entailed adding two lanes to SR-138 to create a four-lane highway.  Construction began on February 6, 2015 and concluded on February 23, 2018.

On July 18, 2014, Flatiron West, Inc. and Hardy & Harper, Inc. entered into a joint venture agreement (and formed Flatiron West, Inc. and Hardy & Harper, Inc., A Joint Venture) to bid on the Project, On September 22, 2014, the Joint Venture entered into Contract No. 08-3401U4 with Caltrans (the "Caltrans Agreement") to expand SR-138.[1]  The 2010 Department of Transportation Standard Specifications apply to the Caltrans Agreement.  The Joint Venture's scope of work included removal of the existing roadway, widening the highway to four lanes, installation of guardrails and placement of concrete barriers, including k-rails.

On or about June 21, 2018, Plaintiffs filed a First Amended Complaint ("FAC") against Caltrans, Braxton, the Chivas Estate, Flatiron West, Inc., Hardy & Harper Inc., and the Joint Venture.  The FAC alleges a cause of action for dangerous condition of public property against Caltrans and causes of action for negligence and wrongful death against all defendants.  Hardy & Harper, Inc. was voluntarily dismissed from the Lawsuit by plaintiffs on September 3, 2019.  Braxton filed a Cross-Complaint against the Chivas Estate, alleging causes of action for indemnity, partial indemnity, contribution, apportionment, declaratory relief, as well as personal injury and property damage.

## II.   POLICY INFORMATION

The Allied Policy is an Umbrella Liability Policy providing umbrella coverage for Flatiron, effective from June 1, 2016 to June 1, 2017.  The Allied Policy provides umbrella coverage attaching excess to the Zurich Policy and Other Insurance.  The Zurich Policy provides limits of $2 million each occurrence, $4 million general aggregate, and $4 million products-completed operations aggregate.  The Allied Policy provides coverage with $25 million each occurrence, $25 million general aggregate, and $25 million products-completed operations aggregate.

We understand that Zurich is currently defending Caltrans in the Lawsuit subject to a reservation of rights.  We understand that neither the Zurich Policy nor any applicable other insurance have

---

[1]Flatiron West, Inc., and Flatiron West, Inc. and Hardy & Harper, Inc. A Joint Venture, are collectively hereinafter referred to as "Flatiron."

made any payments towards settlement or satisfaction of the alleged claims in the lawsuit.  Please let us know if our understanding is incorrect for any reason.

Attached to this letter as **Exhibit A** and **Exhibit B** are the relevant policy provisions of the Allied Policy and the Zurich Policy for convenient review.  Kindly refer to the actual policies for their complete terms and conditions.  Allied World reserves the right to rely upon terms and provisions of the Allied Policy and the Zurich Policy that are not quoted herein in support of its coverage position.

## III.   **COVERAGE ANALYSIS**

As an initial matter, the Allied Policy provides umbrella liability coverage and attaches excess of the **Retained Limit**, defined to mean the applicable limits listed in the Schedule of Retained Limits.  The Schedule of Retained Limits identifies limits for general liability of $2 million each occurrence, $4 million General Aggrege and $4 million products-completed operations aggregate.[2] If there is **Scheduled Underlying Insurance** or **Other Insurance** available for a **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Retained Limi**t.  The Zurich Policy is identified as the **Scheduled Underlying Insurance** for general liability for the Allied Policy.

The Insuring Agreement of the Allied Policy provides that Allied World "will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract.**  The Allied Policy defines **Bodily Injury** to mean "bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time."  Allied World reserves the right to disclaim or deny coverage to the extent that the Lawsuit does not seek damages because of bodily injury and/or to the extent that the Lawsuit does not seek damages for which the insured is legally obligated to pay.

In addition, the Allied Policy only applies to **Bodily Injury** or **Property Damage** if the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the policy period.  The Allied Policy covers the period from June 1, 2016 to July 1, 2021.  The Allied Policy defines **Occurrence** to mean, in pertinent part, "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured**.[3]  Allied World reserves the right to disclaim or deny coverage to the extent that there was no "occurrence" as defined by the Allied Policy and to the extent that the Lawsuit does not seek damages because of "bodily injury" that occurred during the policy period.

---

[2] As modified by Endorsement No. 18 to the Allied Policy.
[3] As modified by Endorsement No. 14 to the Allied Policy.

The Caltrans Agreement contains certain provisions pertaining to Flatiron's obligations to Caltrans arising from Flatiron's work on the Project. The following provisions of the 2010 Standard Specifications provide as follows:

**7-1.05 Indemnification**

**7-1.05A. General**

> You must defend, indemnify, and save harmless the State, including its officers, employees, and agents (excluding agents who are design professionals), from any and all claims, demands, causes of action, damages, costs, expenses, actual attorneys' fees, losses or liabilities, in law or in equity (Section 7-1.05 Claims) arising out of or in connection with your performance of this Contract for:

> 1.      Bodily injury, including, but not limited to, bodily injury, sickness or disease, emotional injury or death to persons, including, but not limited to, the public, any employees, agents of you, the State, or any other contractor; and

> 2.      Damage to property of anyone including loss of use thereof, caused or alleged to be caused in whole or in part by any negligent or otherwise legally actionable act or omission of you or anyone directly or indirectly employed by you or anyone whose acts you may be liable.

> Except as otherwise provided by law, these requirements apply regardless of the existence or degree of fault of the State. You are not obligated to indemnify the State for Claims arising from conduct delineated in Civ Code §2782 and for Claims arising from any defective or substandard condition of the highway that existed at or before the start of work unless this condition has been changed by the work or the scope of work requires you to maintain existing highway facilities and the Claim arises from your failure to maintain.

<div align="center">***</div>

The 2010 Standard Specifications also require that Flatiron obtain certain insurance coverage in order to work on the Project and provide as follows:

**7-1.06D Liability Insurance**

**7-1.06D(1) General Provisions**

> Carry General Liability and Umbrella or Excess Liability insurance covering all operations by or on behalf of you providing insurance for bodily injury liability and property damage liability for the following limits and including coverage for:

> 1.      Premises, operations and mobile equipment

2.    Products and completed operations
3.    Broad form property damage (including completed operations)
4.    Explosion, collapse, and underground hazards
5.    Personal Injury
6.    Contractual Liability

*** 

**7-1.06D(2)    Liability Limits/Additional Insureds**

*** 

The State, including its officers, directors, agents (excluding agents who are design professionals), and employees, must be named as additional insureds under the General Liability and Umbrella Liability Policies with respect to liability arising out of or connected with work or operations performed by or on behalf of you under the Contract.  Coverage for such additional insureds does not extend to liability:

1.    Arising from any defective or substandard condition of the roadway which existed at or before the time you started work, unless such condition has been changed and the work or the scope of the work requires you to maintain existing roadway facilities and the claim arises from your failure to maintain;

2.    For claims occurring after the work is completed and accepted unless these claims are directly related to alleged acts or omission of you that occurred during the course of the work; or

3.    To the extent prohibited by Ins Code §11580.04.

Additional insured coverage must be provided on a policy provision or bay an endorsement providing coverage at lease as broad as Additional Insured (Form B) endorsement from CG 2010, a published by the Insurance Services Office (ISO), or other form designated by the Department.

Both the Zurich Policy and the Allied Policy provide specific limitations on the additional insured coverage potentially provided to Caltrans which are particularly relevant to plaintiffs' claims against Caltrans in the Lawsuit.  The Zurich Policy includes an Additional Insured – Automatic – Owners, Lessees or Contractors Endorsement (U-GL-1175-F-CW 04/13) which provides as follows:

**ADDITIONAL INSURED - AUTOMATIC – OWNERS, LESSEES or CONTRACTORS**

This endorsement modifies insurance provided under the:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.    Section II – **Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement.  Such person or organization is an additional insured only with respect to "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

    1.    Your acts or omissions; or

    2.    The acts or omissions of those acting on your behalf, in the performance of "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

However, this insurance afforded to such additional insured:

    1.    Only applies to the extent permitted by law; and

    2.    Will not be broader than that which you are required by written contract or written agreement to provide for such additional insured.

B.    With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services, including:

    a.    The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b.    Supervisory, inspection, architectural or engineering activities.

\*\*\*

The Allied Policy also limits the scope of potential additional insured coverage pursuant to the Contractors' Limitation Endorsement. The Contractors' Limitation Endorsement modifies the definition of insured and provides, in pertinent part, as follows:

B.    It is agreed that Section VI., "Definitions" F. **Insured**, Paragraph 7. is deleted in its entirety and replaced by the following:

    7.    any person or organization, other than the **Named Insured**, included as an additional insured in the policies listed in **Scheduled Underlying Insurance** however:

        a.    coverage will not be broader than is available to such person or organization under such **Scheduled Underlying Insurance;** and

        b.    the coverage granted by this provision does not apply to any liability which results solely from the acts or omissions of such person or organization.

Based on the foregoing, Allied World has no obligation to indemnify Caltrans for its own independent acts or omissions related to the subject accident. Allied World reserves all rights with respect to alleged liability against Caltrans that does not arise out of Flatiron's operations at the Project, including the right to limit or disclaim coverage to Caltrans. In addition, because Allied World's coverage is not broader than Zurich's coverage to Caltrans, Allied World has no obligation to indemnify Caltrans with respect to any liability arising out of the rendering, or failure to render, any professional architectural, engineering or surveying services. Allied World reserves all rights to deny coverage, in whole or in part, with respect to any claims against Caltrans in the Lawsuit arising out of Caltrans' rendering, or failure to render, any professional architectural, engineering or surveying services.

In addition, California Insurance Code § 11580.04 provides that any additional insured endorsement issued to a public agency in connection with, collateral to, or affecting any construction contract to which the provisions of subdivision (b) of Section 2782 of the Civil Code apply, shall not provide any duty of indemnity coverage for the active negligence of the additional insured in any case where an agreement to indemnify the additional insured would be invalid under subdivision (b) of Section 2782 of the Civil Code.[4]  Therefore, if Caltrans is found to be actively negligent in the Lawsuit, Allied World has no obligation to indemnify Caltrans under the terms of the Allied Policy.  Allied World reserves all rights to deny coverage, in whole or in part, to the extent that any claims against Caltrans in the Lawsuit arise out of Caltrans' active negligence relating to the Project and the subject accident.

Similarly, Civ. Code § 2782(a) also precludes any indemnity obligation owed by Flatiron to Caltrans pertaining to Caltrans' sole negligence or willful misconduct pertaining to the Project. Allied World reserves all rights to deny coverage, in whole or in part, to the extent that any claims against Caltrans in the Lawsuit arise out of Caltrans' sole negligence or willful misconduct relating to the Project and the subject accident.  Furthermore, Civ. Code § 2782(a) also precludes any indemnity obligation owed by Flatiron to Caltrans pertaining to defects in design for the Project provided by Caltrans.  Allied World reserves all rights to deny coverage, in whole or in part, to the

---

[4] Civil Code §2782(b)(2) provides as follows:  Except as provided in Sections 2782.1, 2782.2 and 2782.5, provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction contract with a public agency entered into after January 1, 2013, that purport to impose on any contractor, subcontractor, or supplier of goods or services, or relieve the public agency from, liability for the active negligence of the public agency are void and unenforceable.

extent that any claims against Caltrans in the Lawsuit arise out of defects in design provided by Caltrans for the Project.

The Allied Policy includes an Architects, Engineers and Surveyors Professional Liability Exclusion With Construction Means and Methods Exception Endorsement which precludes coverage for any liability arising out of the rendering of, or failure to render any professional services by the **Insured**, or on the **Insured's** behalf, but only with respect to either or both of the following operations: (1) providing engineering, architectural or surveying services to others in any **Insured's** capacity as an engineer, architect or surveyor; or (2) providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work any **Insured** performs.  "Professional Services" do not include services within construction means, methods, techniques, sequences and procedures employed by the **Insured** in connection with its operation in its capacity as a construction contractor.  Allied World reserves the right to disclaim or deny coverage to the extent that plaintiffs are pursuing claims against Caltrans for liability arising out of the rendering of, or failure to render any professional services as outlined above.

IV.    **CONCLUSION**

Pursuant to the language of the Allied Policy, Allied World has no duty to defend or any other coverage obligation until the Retained Limit has been satisfied by payment of Loss by the Scheduled Underlying Insurance or Other Insurance. Allied World has not been provided with evidence of satisfaction of the Retained Limit but will continue to monitor and investigate this matter pursuant to the foregoing reservation of rights.  Please continue to keep us advised of the status, claims, defenses, and all pertinent events with respect to the Lawsuit, including but not limited to impairment and/or exhaustion of the Scheduled Underlying Insurance.

Allied World's position under the Allied Policy as stated herein is based upon the information available and known to Allied World to date.  Allied World's position is also based upon the accuracy of the information supplied to it during its investigation.  Allied World reserves the right to modify and amend its coverage position, including if additional information is provided to Allied World and/or any of the information supplied to Allied World is determined to be inaccurate.

This correspondence is not intended, nor should it be construed, as an exhaustive listing of policy terms, conditions, or exclusions which might apply to this matter, as it has or may continue to develop.  Specifically, and without limitation, any coverage under the Allied Policy remains subject to the policy terms pertaining to the limits of liability, deductibles/retentions, other insurance, and any and all other conditions contained therein.  Allied World specifically reserves all rights and defenses based on the Allied Policy and the Zurich Policy and/or applicable law.

Finally, if you believe that any aspect of this claim has been wrongfully declined, you may seek review of this decision by contacting the California Department of Insurance at the following address and telephone numbers:

California Department of Insurance
Consumer Services Division
Claims Service Bureau
300 South Spring Street
Los Angeles, CA 90013
(213) 897-8921 (outside California)
(800) 927-HELP (inside California)
(800) 482-4833 (TDD Only)

Should you have any questions concerning this correspondence or should you wish to discuss it further, please contact us.

Very truly yours,


Steven Kroll
Senior Claims Analyst – Excess Casualty
North American Claims Group
Allied World Insurance Company
Tel: 646-794-0875
Steven.Kroll@awac.com

## <u>EXHIBIT A</u>

Allied World Specialty Insurance Company policy number 0308-4113 effective June 1, 2016 to June 1, 2017.

### Umbrella Liability Insurance Policy

* * *

## I.    INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY

A.    We will pay on behalf of the Insured those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.

The amount we will pay for damages is limited as described in Section III., "Limits of Insurance."

B.    This policy applies, only if:

1.    the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; and

2.    the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**.

C.    This policy applies to **Bodily Injury** or **Property Damage**, only if prior to the **Policy Period**, no **Insured** listed under subparagraphs 2.a., 2.b., 2.c. or 2.e. of Paragraph F. of Section VI., "Definitions," no executive officer or director listed under subparagraph 2.d. of Paragraph F. of Section VI. and no employee authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part. If such an **Insured** or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

**Bodily Injury** or **Property Damage** which occurs during the **Policy Period** and was not, prior to the **Policy Period**, known to have occurred by any **Insured** listed under subparagraphs 2.a., 2.b., 2.c. or 2.e. of Paragraph F. of Section VI., "Definitions," any executive officer or director listed under subparagraph 2.d. of

Paragraph F. of Section VI. or any employee authorized by you to give or receive notice of an **Occurrence** or claim, includes any continuation, change or resumption of that **Bodily Injury** or **Property Damage** after the end of the **Policy Period**.

D.     **Bodily Injury** or **Property Damage** will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under subparagraphs 2.a., 2.b., 2.c. or 2.e. of Paragraph F. of Section VI., "Definitions," any executive officer or director listed under subparagraph 2.d. of Paragraph F. of Section VI. or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

    1.     reports all, or any part, of the **Bodily Injury** or **Property Damage** to us or any other insurer;

    2.     receives a written or verbal demand or claim for damages because of the **Bodily Injury** or **Property Damage**; or

    3.     becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur.

\* \* \*

## II.     DEFENSE PROVISIONS

A.     We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

    1.     the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

    2.     the damages sought because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B.     We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance does not apply.

\* \* \*

## VI.   DEFINITIONS

\* \* \*

C.   **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

\* \* \*

F.   **Insured** means:

1.   the **Named Insured**;

2.   if you are designated in the Declarations as:

a.   an individual, you and your spouse are **Insureds**, but only with respect to the conduct of a business of which you are the sole owner;

b.   a partnership or joint venture, you are an **Insured**. Your members, your partners, and their spouses are also **Insureds**, but only with respect to the conduct of your business;

c.   a limited liability company, you are an **Insured**. Your members are also **Insureds**, but only with respect to the conduct of your business. Your managers are **Insureds**, but only with respect to their duties as your managers;

d.   an organization other than a partnership, joint venture or limited liability company, you are an **Insured**. Your executive officers and directors are **Insureds**, but only with respect to their duties as your officers or directors. Your stockholders are also **Insureds**, but only with respect to their liability as stockholders;

e.   a trust, you are an **Insured**. Your trustees are also **Insureds**, but only with respect to their duties as trustees;

3.   your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

4.      your volunteer workers only while performing duties related to the conduct of your business;

5.      any person (other than your employee or volunteer worker) or organization while acting as your real estate manager;

6.      your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy;

7.      any person or organization, other than the **Named Insured**, included as an Additional Insured under **Scheduled Underlying Insurance**, but not for broader coverage than would be afforded by such **Scheduled Underlying Insurance**.

Notwithstanding any of the above:

a.      no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1. of the Declarations; and

b.      no person or organization is an **Insured** under this policy who is not an **Insured** under applicable **Scheduled Underlying Insurance**. This provision shall not apply to any organization set forth in the definition of **Named Insured** in subparagraphs J. 2 and 3.

\* \* \*

K.    **Occurrence** means:

1.      as respects **Bodily Injury or Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**.

2.      as respects **Personal Injury and Advertising Injury**, an offense arising out of your business that causes **Personal Injury and Advertising Injury**. All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

L.    **Other Insurance** means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance**, the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

* * *

R.    **Retained Limit** means the greater of the following amounts:

1.    the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the **Insured**; or

2.    the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

S.    **Scheduled Underlying Insurance** means:

1.    the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

2.    automatically any renewal or replacement of any policy in subparagraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

* * *

**Endorsement No: 1**

### SCHEDULE OF UNDERLYING INSURANCE

| Type of Coverage | Insurer<br>Policy Number<br>Policy Period | Limits of Insurance |
|---|---|---|
| General Liability | Zurich American Insurance Company<br>GLO 5939707-08<br>June 1, 2016 -<br>June 1, 2017 | US$2,000,000  Each Occurrence<br>US$4,000,000  General Aggregate<br>(Per Project & Per Location – Uncapped)<br>US$4,000,000  Products-Completed Operations Aggregate<br>US$1,000,000  Employee Benefits Liability – Each Act, Error or Omission<br>US$1,000,000  Employee Benefits Liability - Aggregate |
| Defense costs:<br>☐ Erode  ☒ Do not erode<br>The Limits of Insurance listed in the policy above. | | |

\* \* \*

**Endorsement No: 14**

### AMEND DEFINITION OF OCCURRENCE
### (CONTINUING OR PROGRESSIVELY DETERIORATING
### DAMAGES ENDORSEMENT)

It is agreed that Definition K. **Occurrence** under Section VI., "Definitions" is deleted in its entirety and replaced by the following:

K.  **Occurrence**, means:

1.  as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **Bodily Injury or Property Damage** neither expected nor intended from the standpoint of the **Insured**.

    In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be deemed to be one **Occurrence** and shall be deemed to occur only when such damage first commenced.

2.  as respects **Personal Injury and Advertising Injury**, an offense arising out of your business that causes **Personal Injury and Advertising Injury**. All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

\* \* \*

**Endorsement No: 18**

### RETAINED LIMIT ENDORSEMENT

It is agreed that solely as respects coverages listed in the Schedule of Retained Limits, the following shall apply:

\* \* \*

2.  Paragraph A. of Section **II. DEFENSE PROVISIONS** is deleted in its entirety and replaced by the following:

    A.  We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or

fraudulent when the total applicable limits listed in the Schedule of Retained Limits have been exhausted by payment of **Loss** to which this policy applies.

If we are prevented by law or statute from assuming the obligations specified under this provision we will pay any expenses incurred with our consent.

\* \* \*

7.  Section **VI. DEFINITIONS** Paragraph F. is deleted in its entirety and replaced by the following:

F.  **Insured** means:

1.  the **Named Insured**;

2.  if you are designated in the Declarations as:

    a.  an individual, you and your spouse are **Insureds**, but only with respect to the conduct of a business of which you are the sole owner;

    b.  a partnership or joint venture, you are an **Insured**. Your members, your partners, and their spouses are also **Insureds**, but only with respect to the conduct of your business;

    c.  a limited liability company, you are an **Insured**. Your members are also **Insureds**, but only with respect to the conduct of your business. Your managers are **Insureds**, but only with respect to their duties as your managers;

    d.  an organization other than a partnership, joint venture or limited liability company, you are an **Insured**. Your executive officers and directors are **Insureds**, but only with respect to their duties as your officers or directors. Your stockholders are also **Insureds**, but only with respect to their liability as stockholders;

    e.  a trust, you are an **Insured**. Your trustees are also **Insureds**, but only with respect to their duties as trustees;

3.  your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

4.  your volunteer workers only while performing duties related to the conduct of your business;

5.      any person (other than your employee or volunteer worker) or organization while acting as your real estate manager;

6.      your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy;

7.      any person or organization to which you become obligated to include as an additional **Insured** under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations, including **Your Work** and **Your Product**, or premises owned by or rented to you. However, the insurance provided will not exceed the lesser of:

a.      The coverage and/or Limits of Insurance of this policy; or

b.      The coverage and/or Limits of Insurance required by said contract or agreement.

However, no such person or organization is an Insured by virtue of this provision 7. of this Paragraph F. of Section VI. if such person or organization is a partnership, joint venture or limited liability company of which the **Named Insured** is a partner or member, or is a partner or member of such partnership, joint venture or limited liability company.

Notwithstanding any of the above provisions 1. through 7. of this Paragraph F. of Section VI. no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations.

* * *

9.      Section **VI. DEFINITIONS**, Paragraph **J.** is deleted in its entirety and replaced by the following:

J.      **Named Insured** means:

1.      any person or organization designated in Item 1 of the Declarations;

2.      as of the inception date of this policy, any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or

formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

3.    after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

    a.    coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

    b.    you give us prompt notice after you acquire or form such organization.

    Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

    We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

10.    Section **VI. DEFINITIONS**, Paragraph R. is deleted in its entirety and replaced by the following:

    R.    **Retained Limit** means the applicable limit(s) listed in the Schedule of Retained Limits.

    The **Retained Limit(s)** listed in the Schedule of Retained Limits will apply whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance**. If there is **Scheduled Underlying Insurance** or **Other Insurance** applicable to a **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Retained Limit**. Furthermore:

    a.    If the applicable **Retained Limit** is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** shall reduce the **Retained Limit**.

b.     If the applicable **Retained Limit** is not specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** shall not reduce the **Retained Limit**.

\* \* \*

**Endorsement No: 22**

**ARCHITECTS, ENGINEERS AND SURVEYORS PROFESSIONAL LIABILITY EXCLUSION WITH CONSTRUCTION MEANS AND METHODS EXCEPTION**

It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Architects, Engineers and Surveyors Professional Liability (With Construction Means and Methods Exception)**

This policy does not provide coverage for any liability arising out of the rendering of, or failure to render, any professional services by the **Insured**, or on the **Insured's** behalf, but only with respect to either or both of the following operations:

1.     providing engineering, architectural or surveying services to others in any **Insured's** capacity as an engineer, architect or surveyor; or

2.     providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work any **Insured** performs.

As used in this exclusion, "professional services" include:

a.     preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

b.     supervisory or inspection activities performed as part of any related architectural or engineering activities.

"Professional services" do not include services within construction means, methods, techniques, sequences and procedures employed by the Insured in connection with its operations in its capacity as a construction contractor.

\* \* \*

**Endorsement No: 25**

### BROAD FORM NAMED INSURED AMENDATORY ENDORSEMENT

It is agreed that Section **VI. DEFINITIONS**, Paragraph J. **Named Insured** is deleted in its entirety and replaced by the following:

J.    **Named Insured** means:

    1.    the person or organization first named as the **Named Insured** in Item 1. of the Declarations (the "First Named Insured");

    2.    any other person or organization named as a **Named Insured** in Item 1. of the Declarations; or

    3.    any subsidiary or acquired company or corporation (including subsidiaries thereof) and any other legal entities (including joint ventures, limited liability companies and partnerships) in which:

        a.    any **Insured** named as the **Named Insured** in Item 1. of the Declarations has a majority ownership interest; or

        b.    any **Named Insured** or its subsidiaries have only partial ownership interest, but have entered into a written contract or written agreement to place insurance for each such entity.

The insurance afforded by this endorsement shall not be subject to the requirement of Section **VI. DEFINITIONS**, Paragraph F. **Insured** that the partnership, joint venture, or limited liability company be shown as a **Named Insured** it Item 1. of the Declarations.

Notwithstanding any of the above, no person or organization is an **Insured** by virtue of the provisions of this endorsement who is not an **Insured** under applicable **Scheduled Underlying Insurance**.

<div align="center">* * *</div>

**Endorsement No: 26**

### CONTRACTORS' LIMITATION
### (WITH LIMITED WRAP-UP)

It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Contractors**

<div align="center">* * *</div>

B.     It is agreed that Section VI., "Definitions" F. **Insured**, Paragraph 7. is deleted in its entirety and replaced by the following:

7.     any person or organization, other than the **Named Insured**, included as an additional insured in the policies listed in **Scheduled Underlying Insurance** however:

a.     coverage will not be broader than is available to such person or organization under such **Scheduled Underlying Insurance**; and

b.     the coverage granted by this provision does not apply to any liability which results solely from the acts or omissions of such person or organization.

## <u>EXHIBIT B</u>

Zurich American Insurance Company policy number GLO 5939707-08 effective June 1, 2016 to June 1, 2017.

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

\* \* \*

## SECTION I – COVERAGES

## COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured

or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

\* \* \*

### Additional Insured - Automatic - Owners, Lessees Or Contractors

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** **Section II - Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional

insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

\* \* \*

# EXHIBIT K

CALIFORNIA STATE TRANSPORTATION AGENCY                                                      GAVIN NEWSOM, GOVERNOR

## California Department of Transportation

  

OFFICE OF THE DIRECTOR
P.O. BOX 942873, MS–49  |  SACRAMENTO, CA 94273–0001
(916) 654-6130  |  FAX (916) 653-5776  TTY 711
**www.dot.ca.gov**

April 14, 2022

*VIA EMAIL*
Michael Drury
McCloskey, Waring, Waisman & Drury LLP
12671 High Bluff Drive, Suite 350
San Diego, CA 92130
mdrury@mwwdlaw.com
(619) 237-3095

Re:   Gaylin Eisenhauer Howbert, et al. v. State of California, et al.
      San Bernardino County Superior Court Case No. CIVDS1715826
      Insured: Flatiron Construction Corporation
      Flatiron West, Inc.
      Flatiron/Hardy & Harper, a Joint Venture
      Claim No. 2022000230

Dear Mr. Drury,

I am in-house counsel for the State of California, acting by and through the Department of Transportation ("Caltrans") in the Gaylin Howbert matter. I am in receipt of your letter dated April 11, 2022, addressed to Breanne Denning in my office. Please be advised that Ms. Denning is not handling the Howbert matter. Your letter is concerning for a number of reasons. As you are aware, my client is being indemnified and defended by Flatiron West, Inc. through its carrier Zurich. My client's expectation is that the defense and indemnity will cover any reasonable settlement offer within policy limits.

Your letter seeks contribution from Caltrans pre-resolution based solely on unproven allegations made by plaintiffs. You have cited no evidence, finding of fact, nor judgment that Caltrans committed independent acts of negligence. Allegations do not warrant a contribution to a settlement. This is supported by the unpublished County of Riverside case cited in your letter which involved traffic control decisions that were found to be the "principal cause of the accident." Unlike the county in that case, Caltrans expressly delegates public safety to the contractor. See Standard Specifications, Section 7-1.04 (PUBLIC SAFETY), which provides in part:

*"Provide a safe and reliable transportation network that serves all people and respects the environment"*

Mr. Michael Drury
April 14, 2022
Page 2

> You are responsible to provide for public safety.
>
> Do not construct a temporary facility that interferes with the safe passage of traffic.
>
> Whenever your operations create a condition hazardous to the public, furnish, erect and maintain those fences, temporary railing, barricades, lights, signs, and other devices and take any other necessary protective measures to prevent damage or injury to the public.

If mere allegations were sufficient to require settlement contributions, it would render the indemnity and defense clause meaningless. This is especially true in this matter where indemnity was accepted without a reservation of rights. (See my letter of February 24, 2020, addressing the belated attempt to reserve rights two years into the litigation.)

As you are aware, Allied World Assurance Company owes Caltrans a duty of good faith and fair dealing. (Commercial Union Assur. Cos. v Safeway Stores, Inc. (1980) 26 Cal.3d 912, 918.) This includes a duty to settle a claim within your policy limits to avoid any judgment as against Caltrans that exceeds the policy limits. (See, Northwestern Mut. Ins. Co. v Farmers Ins. Group (1978) 76 CA3d 1031, 1041.) It is not good faith and fair dealing to seek a settlement contribution based solely on plaintiffs' allegations in their complaint filed on August 18, 2017.

My understanding is that this matter will be mediated on May 24, 2022. My client will not be contributing money to any settlement at the mediation. Should you develop evidence of actual independent acts of negligence, we can engage in further discussions after the underlying matter is resolved. My client is amenable to a separate mediation or arbitration in that event.

Sincerely,

JERALD M. MONTOYA
Deputy Chief Counsel


By:
Robert A. Baggs
Deputy Attorney

Cc: Steven Kroll

**EXHIBIT L**



12671 High Bluff Drive, Suite 350
San Diego, CA  92130
Phone 619.237.3095
Fax 619.237.3789


MICHAEL DRURY
DIRECT DIAL:  619.237.4002
mdrury@mwwdlaw.com

*Via E-Mail*

April 11, 2022

Breanne Denning, Esq.
State of California Department of Transportation
1055 West 7th Street, Suite 1700
Sacramento, CA 95814
Breanne.Denning@dot.ca.gov

      Re:   *Gaylin Eisenhauer Howbert, et al. v. State of California, et al.*
           San Bernardino County Superior Court Case No. CIVDS1715826
           Insured:    Flatiron Construction Corporation
                      Flatiron West, Inc.
                      Flatiron/Hardy & Harper, a Joint Venture
           Claim No.   2022000230

Dear Ms. Denning:

      Our office is coverage counsel for Allied World Specialty Insurance Company ("Allied World") with respect to the above-referenced lawsuit pending in San Bernardino County Superior Court (the "Lawsuit").   Allied World issued Umbrella Liability Insurance Policy No. 0308-4113 to Flatiron Construction Corp. ("Flatiron"), effective from June 1, 2016 to June 1, 2017 (the "Allied Policy").   The Allied Policy identifies Zurich American Insurance Company Policy No. GLO 5939707-08, effective from June 1, 2016 to June 1, 2017, as the Scheduled Underlying Insurance for general liability.   The Department of Transportation of the State of California ("Caltrans") seeks indemnity coverage under the Allied Policy for the claims asserted by plaintiffs against Caltrans in the Lawsuit.

      This correspondence supplements Allied World's January 20, 2022 correspondence and supplements Allied World's coverage position for the claims asserted against Caltrans in the Lawsuit.   This correspondence is also sent in preparation for the upcoming May 24, 2022 Mediation with Jay Horton.  We want to clarify Allied World's coverage position in the Lawsuit and attempt to formulate a framework for Caltrans and Allied World to work together in an attempt to engage in meaningful settlement discussions with plaintiffs.  Caltrans previously declined any

Breanne Denning, Esq.
April 11, 2022
Page 2

obligation to contribute towards a global settlement of the Lawsuit.  We request that Caltrans reconsider its refusal to meaningfully participate in settlement funding in light of its potential exposure arising out of its active negligence pertaining to the Lawsuit as discussed herein.

1.      **Limitations of Additional Insured Coverage to Caltrans under the Zurich Policy and the Allied Policy**

Initially, the Allied Policy provides that "we will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**. . . to which this insurance applies or because of **Bodily Injury** . . . to which this insurance applies assumed by the **Insured** under an **Insured Contract**."  The **Retained Limit** is defined, in relevant part, as "the total applicable limits **of Scheduled Underlying Insurance** and any other applicable **Other Insurance** providing coverage to the **Insured**.  Endorsement No. 1 to the Allied Policy identifies a Commercial General Liability Policy issued by Zurich American Insurance Company ("Zurich"), policy number GLO 5939707-08, effective June 1, 2016 to June 1, 2017 (the "Zurich Policy") as the **Scheduled Underlying Insurance** for General Liability.

Zurich is currently defending Flatiron[1] and Caltrans in the Lawsuit subject to reservation of rights. Both the Zurich Policy and the Allied Policy provide specific limitations on the additional insured coverage provided to Caltrans which are particularly relevant to plaintiffs' claims against Caltrans in the Lawsuit.  The Zurich Policy includes an Additional Insured – Automatic – Owners, Lessees or Contractors Endorsement (U-GL-1175-F-CW  04/13) which provides as follows:

**ADDITIONAL INSURED - AUTOMATIC – OWNERS, LESSEES or CONTRACTORS**

This endorsement modifies insurance provided under the:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.      Section II – **Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement.  Such person or organization is an additional insured only with respect to "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.      Your acts or omissions; or

---

[1]"Flatiron" hereinafter collectively refers to Flatiron West, Inc, and Flatiron West, Inc./Hardy & Harper, a Joint Venture.

McCloskey, Waring, Waisman & Drury llp

12671 HIGH BLUFF DRIVE, SUITE 350, SAN DIEGO, CA 92130          PHONE: 619.237.3095   FAX: 619.237.3789

Breanne Denning, Esq.
April 11, 2022
Page 3

2.      The acts or omissions of those acting on your behalf, in the performance of "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

However, this insurance afforded to such additional insured:

1.      Only applies to the extent permitted by law; and

2.      Will not be broader than that which you are required by written contract or written agreement to provide for such additional insured.

B.      With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services, including:

a.      The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

b.      Supervisory, inspection, architectural or engineering activities.

*** 

As set forth in the Additional Insured Endorsement in the Zurich Policy, Zurich only has an obligation to indemnify Caltrans with respect to acts or omissions of Flatiron and *not the independent acts or omissions of Caltrans*.  Furthermore, the Additional Insured Endorsement also provides that Zurich has no obligation to indemnify Caltrans with respect to any liability arising out of the rendering, or failure to render, any professional, architectural, engineering or surveying services.  Plaintiffs' First Amended Complaint ("FAC") specifically alleges that Caltrans was negligent in its engineering, design and planning of the SR-138 expansion project (the "Project").  As a result, a significant portion of plaintiffs' claims against Caltrans are not covered under the Zurich Policy or the Allied Policy.

McCLOSKEY, WARING, WAISMAN & DRURY LLP

12671 HIGH BLUFF DRIVE, SUITE 350, SAN DIEGO, CA 92130            PHONE: 619.237.3095   FAX: 619.237.3789

Breanne Denning, Esq.
April 11, 2022
Page 4

The same limitations of additional insured coverage to Caltrans also apply under the Allied Policy pursuant to the Contractors' Limitation Endorsement. The Contractors' Limitation Endorsement modifies the definition of insured and provides, in pertinent part, as follows:

B.     It is agreed that Section VI., "Definitions" F. **Insured**, Paragraph 7. is deleted in its entirety and replaced by the following:

7.     any person or organization, other than the **Named Insured**, included as an additional insured in the policies listed in **Scheduled Underlying Insurance** however:

a.     coverage will not be broader than is available to such person or organization under such **Scheduled Underlying Insurance;** and

b.     the coverage granted by this provision does not apply to any liability which results solely from the acts or omissions of such person or organization.

Based on the foregoing, Allied World has no obligation to indemnify Caltrans *for its own independent acts or omissions related to the subject accident.* In addition, because Allied World's coverage is not broader than Zurich's coverage to Caltrans, Allied World has no obligation to indemnify Caltrans with respect to any liability arising out of the rendering, or failure to render, any professional, architectural, engineering or surveying services. The claims asserted by Plaintiffs against Caltrans are based on design and planning activities excluded under the professional services exclusion in the Allied Policy.

In addition, California Insurance Code § 11580.04 provides that any **additional insured endorsement issued to a public agency** in connection with, collateral to, or affecting any construction contract to which the provisions of subdivision (b) of Section 2782 of the Civil Code apply, shall not provide any duty of indemnity coverage for the active negligence of the additional insured in any case where an agreement to indemnify the additional insured would be invalid under subdivision (b) of Section 2782 of the Civil Code. Therefore, if Caltrans is found to be actively negligent in the Lawsuit, Allied World has no obligation to indemnify Caltrans under the terms of the Allied Policy.

**2.     Potential Limitations of Indemnity Owed to the Caltrans Under California Civil Code § 2782 for Caltrans' Design Defects and Active Negligence**

Pursuant to the terms of the contract between Caltrans and Flatiron (the "Contract"), Flatiron is obligated to indemnify Caltrans as follows:

Breanne Denning, Esq.
April 11, 2022
Page 5

**7-1.05 Indemnification**
**7-1.05A. General**

You must defend, indemnify, and save harmless the State, including its officers, employees, and agents (excluding agents who are design professionals), from any and all claims, demands, causes of action, damages, costs, expenses, actual attorneys' fees, losses or liabilities, in law or in equity (Section 7-1.05 Claims) arising out of or in connection with your performance of this Contract for:

1.     Bodily injury, including, but not limited to, bodily injury, sickness or disease, emotional injury or death to persons, including, but not limited to, the public, any employees, agents of you, the State, or any other contractor; and

2.     Damage to property of anyone including loss of use thereof, caused or alleged to be caused in whole or in part by any negligent or otherwise legally actionable act or omission of you or anyone directly or indirectly employed by you or anyone whose acts you may be liable.

Except as otherwise provided by law, these requirements apply regardless of the existence or degree of fault of the State.  You are not obligated to indemnify the State for Claims arising from conduct delineated in Civ Code §2782 and for Claims arising from any defective or substandard condition of the highway that existed at or before the start of work unless this condition has been changed by the work or the scope of work requires you to maintain existing highway facilities and the Claim arises from your failure to maintain.

*\*\*\**

Civil Code § 2782 provides as follows:

(a)     Except as provided in Sections 2782.1, 2782.2, 2782.5 and 2782.6, provisions, clauses, covenants, or agreements continue in, collateral to, or affecting any construction contract that purport to indemnify the promisee against liability for damages for death or bodily injury to persons, injury to property, or any other loss, damage or expense arising from the sole negligence or willful misconduct of the promisee or the promisee's agents, servants or independent contractors who are directly responsible to the promisee, or for defects in design furnished by those persona are against public policy and are void and unenforceable, provided however, that this

Breanne Denning, Esq.
April 11, 2022
Page 6

           section shall not affect the validity of any insurance contract, workers'
           compensation, or agreement issued by an admitted insurer as defined by the
           Insurance Code.

<div align="center">***</div>

(b)(2)   Except as provided in Sections 2782.1, 2782.2 and 2782.5, provisions,
           clauses, covenants, or agreements contained in, collateral to, or affecting
           any construction contract with a public agency entered into after January 1,
           2013, that purport to impose on any contractor, subcontractor, or supplier
           of goods or services, or relieve the public agency from, liability for the
           active negligence of the public agency are void and unenforceable.

<div align="center">***</div>

As you are aware, Flatiron disputes any indemnity obligation to Caltrans based on its position that Caltrans was actively negligent with respect to its design and planning of the Project. Initially, the Contract specifically excludes any indemnity obligation owed by Flatiron to Caltrans that is prohibited by Civ. Code §2782. Additionally, California Insurance Code § 11580.04 excludes this same liability from Allied World's additional insured obligations. Therefore, Caltrans has no right to indemnification from either Flatiron or its insurers for its own active negligence. Based on the discovery to date and plaintiffs' liability theories against Caltrans, Allied World has no obligation to indemnify Caltrans for defects in design of the construction project (location of k-rails, lack of channelizers, improper narrowing of shoulder, etc.) under 2782(a).

This issue of whether Caltrans' alleged negligence was "active" or "passive" is an unresolved and disputed legal issue in this Lawsuit. Plaintiffs have alleged substantial claims against Caltrans that would support a court's finding that Caltrans was actively negligent with respect to the subject traffic accident. In addition, the Contract provisions and the 2010 Standard Specifications (governing the Contract) cannot alter the statutory indemnity limitations outlined in Civil Code § 2782. If a court determines that Caltrans was actively negligent, Flatiron and Allied World have no obligation to indemnify Caltrans in the Lawsuit. Caltrans should consider the very real possibility of this outcome when refusing to meaningfully participate in settlement.

## 3. Active Negligence and Passive Negligence Under California Law

The leading case in California evaluating the distinction between "active" and "passive" negligence is *Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d. 622, 629. In *Rossmoor*, the California Supreme Court explained that "[p]assive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law. Active negligence, on the other hand, is found if an indemnitee has personally participated in an

---

Breanne Denning, Esq.
April 11, 2022
Page 7

affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence or has failed to perform a precise duty which the indemnitee had agreed to perform." *Rossmoor*, *supra*, 13 Cal.3d at 629.  The Supreme Court provided the following examples:

> Passive negligence has been found or assumed from the failure to discover a defective condition created by others (*Markley v. Beagle, supra*, at pp. 955-956, 962), failure to exercise a right to inspect certain work and specify changes (*Muth* v. *Urricelqui* (1967) 251 Cal.App.2d 901, 911 [60 Cal.Rptr. 166]), and failure to exercise a supervisory right to order removal of defective material (*Safeway Stores, Inc. v. Massachusetts Bonding & Ins. Co*. (1962) 202 Cal.App.2d 99, 111-113 [20 Cal.Rptr. 820]).  Active negligence has been found in digging a hole which later caused an injury (*Morgan v. Stubblefield, supra*, at pp. 626-627), knowingly supplying a scaffold which did not meet the requirements of a safety order (*id.* at pp. 625-626), creating a perilous condition that resulted in an explosion (*Burlingame Motor Co.* v. *Peninsula Activities, Inc., supra*, at p. 661), and failing to install safety nets in violation of a contract (*MacDonald & Kruse, Inc.* v. *San Jose Steel Co., supra*, at pp. 424-425).

*Id.* at 630.

Ultimately, "[t]he crux of the inquiry is to determine whether there is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform a duty imposed upon him by law." *Id.* at 629.  Based on the allegations in the Lawsuit and Caltrans' design, engineering and control of the Project, a reasonable that a trier of fact will likely determine that Caltrans was actively negligent since it participated in the alleged conduct or omission which caused the injury and the subject accident. There is no evidence in this case which shows that Flatiron deviated from the plans and specification designed/provided by Caltrans.

In *County of Riverside v. Yeager Skanska, Inc.* (Cal. Ct. App., Nov. 27, 2012, No. E052034) 2012 WL 5929943 (unpublished), plaintiff was seriously injured when the front wheel of his motorcycle went off the road and crashed on a near 90–degree curve on Bridge Street, a County roadway. *Id.* at *1.  At the time of the accident, traffic heading east on Gilman Springs Road, another County roadway, was being detoured southbound to Bridge Street while the County made improvements to Gilman Springs Road. *Id.*  Lim & Nascimento Engineering Corp. ("LAN") was the County's design engineer on portions of the Gilman Springs Road project, and Yeager Skanska, Inc. ("Yeager") was the County's general contractor. *Id.*  Shortly before the near 90–degree curve, a reflective detour sign with an arrow pointing straight ahead partly obscured an existing curve sign. *Id.*  Yeager placed the detour signs on Bridge Street in accordance with a detour plan created by LAN. *Id.*  Around the area of the curve, the lines in the middle of the roadway were faded or washed out, there was no striping or edge lines delineating the pavement

Breanne Denning, Esq.
April 11, 2022
Page 8

from the soft shoulder of the roadway, and the shoulder was even with the pavement. *Id.* Plaintiff sued the County, Yeager, and LAN. *Id.* Yeager denied it was obligated to defend or indemnify the County, in part because the claims arose from the County's sole and active negligence. *Id.* at *2. The trial court denied the County's contractual indemnity claims against both Yeager and LAN, holding that County was actively negligent in failing to remediate the dangerous conditions on Bridge Street that caused the accident. *Id.* at *3.

As is relevant here, the Court of Appeal found the trial court reasonably determined that the County was actively negligent. *Id.* at *5. The County had "reserve[d] the right" to "make any necessary changes, as field conditions warrant," in "traffic control plans," and the County's resident engineer was to determine the "[e]xact location of all ... traffic control devices." *Id.* at *8. Before the accident, the County's resident engineer, Jesus Mendoza, inspected the detour route and approved Yeager's placement of the detour signs in accordance with the detour plan. *Id.* The County's traffic engineer, Lawrence Tai, also inspected portions of the detour route before the accident and "made no adjustment in the detour signage" or any other changes in the detour route. *Id.* Then, several days after the accident but before the County was aware of the accident, Mr. Tai's assistant, Arthur Higgs, drove both ways on Bridge Street at night and recommended placing chevron signs on the curve, placing an additional curve sign for motorists who might not be familiar with the roadway, and installing a painted edge line for guidance when opposing headlights made it difficult to see the center line. *Id.* Mr. Tai approved these recommendations, and the chevrons, curve signs, and edge line were installed. *Id.*

Although the lack of an edge line along the curve and other visual cues delineating the pavement from the soft shoulder—not the placement of the detour sign before the curve—was the principal cause of the accident, the Court of Appeal found that "the County had a duty to remedy *all* of the dangerous conditions on the detour route, including those that may have been created by Yeager's placement of the detour sign before the curve." *Id.* at *9. Indeed, because the County had "reserved the right to determine the final placement of the detour signs, and effectively approved Yeager's placement of the detour sign before the curve" (*Id.* at *8), the Court of Appeal held that "[t]he trial court reasonably determined that the County was actively negligent in failing to 'make the appropriate traffic engineering recommendations concerning striping and signage at the curve' before the accident, and in failing to 'make the remedial recommendations that both plaintiffs' expert, Mr. Royer, and Mr. Tai's own assistant, Mr. Higgs, found obvious and necessary due to the increased volume on Bridge Street' before the accident" (*Id.* at *9).

Similar to the court's determination in the *County of Riverside* case, the facts of the present case logically lead to the conclusion that the trier of fact in the Lawsuit, or in subsequent litigation, would similarly find that Caltrans is "actively" negligent based on the fact that Caltrans designed the traffic control plans and Caltrans' engineers determined the placement of all traffic control devices, including the k-rails, which are alleged to have caused or contributed to the accident.

Breanne Denning, Esq.
April 11, 2022
Page 9

**4.**     **Plaintiffs' Allegations Pertaining the Dangerous Conditions on SR-138**

The first cause of action for Dangerous Condition of Public Property in Plaintiffs' FAC is only pled against Caltrans and alleges that SR-138 contained various dangerous conditions. Paragraph 11 of the FAC alleges that Caltrans negligently and carelessly designed, warned, failed to warn, constructed, created, maintained, repaired, owned, operated controlled, signed, and regulated the aforementioned ACCIDENT LOCATION, thereby creating a dangerous condition due to:

- Failure to provide and/or maintain adequate, safe and appropriately placed K-rails;

- Failure to provide and/or maintain adequate and safe guardrails, bridge rails, and other structures and devices to prevent vehicles from leaving the roadway an shoulder;

- Failure to provide and/or maintain an adequate shoulder along the roadway;

- Failure to provide adequate sight distances for drivers;

- Failure to provide and/or maintain adequate signs, signals, devices, channelization, pavement and striping;

- Failure to provide a safe and reasonable geometric alignment of the roadway; and

- Failure to adequately warn of the dangerous and unsafe conditions set forth above.

All of the specifically delineated dangerous conditions (in paragraph 11 of the FAC) are alleged against Caltrans. Caltrans engineered and designed the Project and the traffic control plan. Elvira Lenart, the resident engineer for Caltrans, testified that Caltrans had control and final approval as the design and implementation of the plans and specifications for the project, as well as supervision and oversight of all work on the project. Caltrans control extended to the placement of all traffic control devices, including the specific location of the k-rails (which are alleged to have improperly narrowed the shoulder) and all warning signs. Flatiron followed the plans designed and engineered by Caltrans. Any attempt to shift liability to Flatiron for design defects is prohibited by Civil Code § 2782(a).

**5.**     **Caltrans Indemnity Claims Against Flatiron are Tenuous**

As outlined above, there are numerous limitations on Flatiron and Allied World's potential indemnity obligations to Caltrans: (1) Coverage Limitations under the endorsements of the Zurich Policy and the Allied Policy (which exclude coverage to Caltrans for (a) the independent acts or

Breanne Denning, Esq.
April 11, 2022
Page 10

omissions of Caltrans and (b) for the rendering, or failure to render any professional, engineering or surveying services); (2) Insurance Code § 11580.04 which precludes additional insured coverage under the Allied Policy for Caltrans' active negligence; (3) Civil Code § 2782(a) which negates any indemnity obligation for Caltrans' negligent or defective design of the Project and (4) Civil Code § 2782(b)(2) which negates any indemnity obligation for Caltrans' active negligence relating to the Lawsuit. Based on all of these limitations, Caltrans must acknowledge that it has significant exposure in the Lawsuit for which it bears independent responsibility – exposure that is not subject to an indemnity claim against Flatiron and/or covered under the Allied Policy.

Under the terms of the Contract the parties never intended for Flatiron to indemnify Caltrans for Caltrans' *defects in design* of the construction plan or for its own *active negligence.* The Contract specifically carves out any indemnification obligation for these two issues. In addition. Caltrans relies on various provisions of the 2010 Standard Specifications to try to shift the burden for overall project "safety" to Flatiron. However, none of these contractual provisions can alter the impact or effectiveness of the statutory prohibitions on indemnification owed by Flatiron or the applicable limits of the additional insured coverage under the Zurich Policy and Allied Policy. Finally, Caltrans' position deprives Flatiron and Allied World of the statutory protections and limitations that the Legislature put in place to preclude Caltrans from seeking indemnification under these specific circumstances.

If the parties are to engage in meaningful settlement negotiations, Caltrans must recognize that the claims asserted against it are based on Caltrans' active negligence and must be willing to make a significant contribution towards a global settlement with plaintiffs.

Thank you for your attention to the foregoing. We look forward to discussing these issues in more detail. Please do not hesitate to contact me should you have any questions regarding this matter.

Sincerely,

Michael Drury

MD/nt

**EXHIBIT M**

Gary A. Dordick, Esq.  S/B# 128008
Diana S. Diskin, Esq.  S/B# 251366
DORDICK LAW CORPORATION
509 South Beverly Drive
Beverly Hills, California 90212
Tel: (310) 551-0949 • Fax: (855) 299-4444

Attorneys for Plaintiffs

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN BERNARDINO

| | |
|---|---|
| SUZY SIM; WENDY JUN, individually and as Successor-In-Interest to JUNG C. JUN; MINA JUN, individually and as Successor-In-Interest to JUNG C. CHUN; ALICE HAN, individually and as Successor-In-Interest to JUNG C. JAN; CANDICE VAN DEVENDER, individually and as Successor-In-Interest to JUNG C. JUN; STEWART JUN, individually and as Successor-In-Interest to JUNG C. JUN, <br><br> Plaintiff, <br><br> vs. <br><br> STATE OF CALIFORNIA; EFRAIN PEREZ MARCELO; ADOLFO CUEVAS, JR; and DOES 1 to 100, Inclusive, <br><br> Defendants. | Case No.: CIVDS1802564 <br><br> (Case Assigned for All Purposes to Honorable John Pacheco, Dept. S31) <br><br> **FIRST AMENDED COMPLAINT** |

## **GENERAL ALLEGATIONS**

1.      Plaintiff SUZY SIM was and, at all times mentioned herein, a resident of the County of Orange, State of California.

1.

**FIRST AMENDED COMPLAINT**

2.      Plaintiff WENDY JUN, individually and as Successor-In-Interest to JUNG C. JUN, was injured and is also the surviving spouse of Decedent, JUNG C. JUN, and was, and at all times mentioned herein, a resident of the County of San Bernardino, State of California.

3.      Plaintiff MINA JUN, individually and as Successor-In-Interest to JUNG C. JUN, is the surviving daughter of Decedent, JUNG C. JUN, was and at all times mentioned herein, a resident of the County of San Bernardino, State of California.

4.      Plaintiff ALICE HAN, individually and as Successor-In-Interest to JUNG C. JUN, is the surviving daughter of Decedent, JUNG C. JUN, was and at all times mentioned herein, a resident of the County of San Bernardino, State of California.

5.      Plaintiff CANDICE VAN DEVENDER, individually and as Successor-In-Interest to JUNG C. JUN, is the surviving daughter of Decedent, JUNG C. JUN, was and at all times mentioned herein, a resident of the County of San Bernardino, State of California.

6.      Plaintiff STEWART JUN, individually and as Successor-In-Interest to JUNG C. JUN, is the surviving son of Decedent, JUNG C. JUN, was and at all times mentioned herein, a resident of the County of San Bernardino, State of California.

7.      GRACE BYON is a surviving biological daughter of Decedent JUNG C. JUN.  Pursuant to *Code of Civil Procedure* §382, she is sued herein as a nominal defendant.  GRACE BYON will be made aware of this lawsuit, and Defendants are herein given notice of her existence.

8.      Defendant ADOLFO CUEVAS, JR., is and at all times mentioned herein was, an individual driving a 2004 Chevy Silverado, License No. 27521W1 and was a resident of the County of Riverside, State of California.

9.      Defendant EFRAIN PEREZ MARCELO, is and at all times mentioned herein was, an individual driving a 2008 Ford F-250, License No. 8R03549 and was a resident of the County of Orange, State of California.

2.

**FIRST AMENDED COMPLAINT**

10.     Defendant STATE OF CALIFORNIA is, and at all times mentioned was, a municipal corporation, duly organized and existing under the laws of the State of California and situated in the State of California.

11.     Plaintiffs are ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 100, Inclusive, and therefore sues these defendants by such fictitious names.  Plaintiffs will amend this complaint to allege their true names and capacities when the same have been ascertained.  Plaintiffs are informed and believe and thereon allege that each of the said fictitiously named defendants are responsible in some manner for the occurrence herein alleged, and that Plaintiffs injuries and the wrongful death of JUNG C. JUN herein alleged were proximately caused by their acts.

12.     Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, each of the defendants sued herein as Does 1 to 100, inclusive, were the agents, alter egos and/or employees of each co-defendant and of the remaining defendants and were at all times acting within the purpose and scope of such agency and employment.

13.     At all times herein mentioned State Route 138 at/or near Hess Road were public highways/roads/streets in the County of San Bernardino, State of California.

14.     On or about January 15, 2017, at the approximate hour of 5:27 p.m., Plaintiff WENDY JUN, along with her Passengers, her husband, Decedent, JUNG C. JUN and Plaintiff, SUZY SIM were driving westbound on State Route 138, approximately 1100 feet west of Hess Road (hereinafter referred to as "Subject Accident Site").  Said public highways/roads/streets are located in the County of San Bernardino, State of California, and were designed and maintained by Defendant STATE OFCALIFORNIA.

15.     On or about January 15, 2017, at the approximate hour of 5:27 p.m., Plaintiff WENDY JUN, along with her Passengers, her husband, Decedent, JUNG C. JUN and Plaintiff, SUZY SIM were driving westbound on State Route 138, approximately 1100 feet west of Hess Road, with due care and within the marked

3.

**FIRST AMENDED COMPLAINT**

1  westbound lane, when they were struck by a vehicle being driven eastbound on State
2  Route 138 by Defendant, EFRAIN PEREZ MARCELO who was struck by Defendant,
3  ALFREDO CUEVAS, JR.

4      16.    The vehicle being driven by Defendant EFRAIN PEREZ MARCELO at the
5  above-described time and place was a 2008 Ford F-250, License No. 8R03549.

6      17.    The vehicle being driven by Defendant ALFREDO CUEVAS, JR., at the
7  above-described time and place was a 2004, Chevy Silverado, License No. 27521W1.

8      18.    At the above-described place and time, Defendants, EFRAIN PEREZ
9  MARCELO, ADOLFO CUEVAS JR., and DOES 1 to 100, Inclusive, negligently,
10  recklessly, and carelessly operated their vehicles on State Route 198, to collide causing
11  Defendant, EFRAIN PEREZ MARCELO'S vehicle to cross the center line of State Route
12  198 and to go into the path of travel of Plaintiffs vehicle and striking Plaintiffs vehicle,
13  and resulting in the Wrongful death of Jung C. Jun and severe physical and mental
14  injuries to Plaintiffs and each of them.

15      19.    On or about July 7, 2017, Plaintiffs submitted claims to Defendant STATE
16  OF CALIFORNIA.  Said claims were timely and made in compliance with the
17  requirements of Government Code sections 905, 910, and 911.2.

18      20.    On or about August 9, 2017, the California Victim Compensation and
19  Government Claims Board, on behalf of Defendant STATE OF CALIFORNIA, rejected
20  Plaintiffs' government claims.  Notice of said rejection was mailed on August 9, 2017.
21  ///
22  ///
23  ///
24  //
25  ///
26  ///
27  ///
28  ///

4.

**FIRST AMENDED COMPLAINT**

**FIRST CAUSE OF ACTION**

**(Liability for Dangerous Condition of Public Property, pursuant to *Government Code* §835, et seq., against Defendant STATE OF CALIFORNIA and DOES 1 to 100)**

21.    Plaintiffs re-allege and incorporate by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

22.    Defendant STATE OF CALIFORNIA and DOES 1 to 100 owned, designed, constructed, engineered, managed, maintained, repaired, inspected, and controlled the aforementioned highway.

23.    Notwithstanding said duty, Defendants STATE OF CALIFORNIA and DOES 1 to 100 allowed said highway to be in a dangerous condition by failing to properly design, construct, engineer, manage, maintain, repair, inspect, failed to provide adequate warnings and signs about the condition of the highway/roadway/street, improperly configured the traffic lanes, failure to place a center median/wall/barrier and/or said highway so that the curvature, grade, land widths, shoulder widths, and lines of sight and/or sight distances at the Subject Accident Site were sufficient for vehicles such as defendants vehicles to stay within their own lane of travel and to not cross the center line of the highway into the opposing lane of travel.

24.    Further, Defendants STATE OF CALIFORNIA and DOES 1 to 100 failed to provide proper and/or properly placed warning(s) and/or notice(s) of the construction taking place and further failed to place warnings curvature, grade, lane width(s), shoulder widths, and/or line(s) of sight and/or sight distance limitation(s) of the highway relative to the Subject Accident Site.

25.    The physical characteristics of the Subject Accident Site and the failure to provide proper and/or properly placed warning(s) of construction relative to the Subject Accident Site created a dangerous condition for drivers such as Defendants EFRAIN PEREZ MARCELO, ADOLFO CUEVAS, JR., and DOES 1 to 100, inclusive, driving their vehicle, such that they could not reasonably perceive the difficulty in stopping their

5.

**FIRST AMENDED COMPLAINT**

1  vehicles safely and/or could not perceive the difficulty in control their vehicles so as to
2  negotiate the roadway without crossing the center line into the opposing lane of traffic.

3      26.    The physical characteristics of the Subject Accident Site and the failure to
4  provide proper and/or properly placed warning(s) of the construction relative to the
5  Subject Accident Site created a dangerous condition for drivers such as Plaintiff
6  WENDY JUN driving her vehicle, could not reasonably perceive the difficulty in
7  defendants, in the eastbound lanes, stopping their vehicles safely and/or could not
8  perceive the difficulty in defendants controlling their vehicles so as to not cross the
9  center line into the opposing lane of traffic.

10     27.    The negligence of Defendants STATE OF CALIFORNIA and DOES 1 to
11 100, caused a dangerous condition to exist and placed the general public in danger due
12 to the construction that was being done on State Route 138 and resulting in collisions
13 between vehicles to occur, such as this incident, wherein defendants crossed the center
14 line of State Route 138, resulting in the wrongful death of JUNG C. JUN and severe
15 physical and emotional injuries to plaintiffs and each of them.

16     28.    Plaintiff is informed and believes and, thereon, alleges that, at all times
17 mentioned herein, Defendants STATE OF CALIFORNIA and DOES 1 to 100 were
18 aware that vehicles such as the Tractor-Trailer traversed the Subject Accident Site.

19     29.    Further, Defendants STATE OF CALIFORNIA and DOES 1 to 100 allowed
20 said highway to remain in in a dangerous condition, notwithstanding the fact that these
21 defendants, and each of them, knew or should have known that the roadway and/or lack
22 of proper warning(s) and/or notice was inherently dangerous and would cause vehicles
23 to collide and lose control and cross the center line, resulting in the public sustaining
24 severe injuries and even death.

25     30.    As a proximate result of the dangerous condition of said highway, and the
26 failure of the defendants, and each of them, to inform Plaintiffs of said condition and/or
27 to remedy the dangerous condition, Plaintiffs was severely injured and JUNG C. JUN
28 sustained traumatic injuries which resulted in his untimely death.

6.

**FIRST AMENDED COMPLAINT**

31.     As a further proximate result of the acts of defendants, and each of them, and due to the dangerous condition as alleged, Plaintiffs have incurred substantial medical expenses and have incurred funeral and burial expenses and will continue to incur medical and related expenses, including but not limited to future hospitalizations, therapy, home care, medications, psychological therapy, family counseling and other cost related expenses, the total amount of such expenses is not known to plaintiffs at this time and plaintiffs will move to amend this complaint to state such amount when the same becomes known to them, or on proof thereof.

32.     As a proximate result of the above described conduct of Defendants, and each of them, the Plaintiffs have and will, suffer the loss of Decedent's love, companionship, guidance, comfort, society, solace, moral support, financial support and physical assistance, all to their general damages, in a sum to be proven at time of trial.

## SECOND CAUSE OF ACTION

### (For Negligence - Personal Injuries and Wrongful Death against Defendants, EFRAIN PEREZ MARCELO, ADOLFO CUEVAS, JR., and DOES 1 through 100)

33.     Plaintiff incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

34.     On January 15, 2017, Defendants and each of them carelessly, recklessly and negligently operated their vehicles.  Defendant, EFRAIN PEREZ MARCELO, drove his vehicle unsafely and carelessly stopped his abruptly due to traffic ahead of him. Defendant ADLOFO CUEVAS, JR., drove his vehicle and was unable to stop for the traffic ahead of him collided with the rear of Defendant EFRAIN PEREZ MARCELO's vehicle.  The impact pushed Defendant EFRAIN PEREZ MARCELO'S vehicle directly into the path of Plaintiff's vehicle. Plaintiff, unable to stop, collided head on with defendant's vehicle causing Plaintiffs to sustain injuries and resulting in the untimely death of JUNG C. JUN.

7.

## FIRST AMENDED COMPLAINT

35. As a result of Defendants' negligence, Plaintiffs sustained severe and permanent physical and mental injuries and damages as set forth and JUNG C. JUN sustained traumatic physical injuries resulting in his untimely death.

36. As a direct and proximate result of the negligence of Defendants, and each of them, Plaintiffs sustained severe physical and mental injuries and, further, JUNG C. JUN sustained traumatic injuries, resulting in his untimely death.

37. As a further proximate result of the acts of Defendants, and each of them, and due to the dangerous condition as alleged, Plaintiffs have incurred substantial medical expenses and have incurred funeral and burial expenses and will continue to incur medical and related expenses, including but not limited to future hospitalizations, therapy, home care, medications, psychological therapy, family counseling and other cost related expenses, the total amount of such expenses is not known to Plaintiffs at this time and plaintiffs will move to amend this complaint to state such amount when the same becomes known to them, or on proof thereof.

38. As a proximate result of the above described conduct of Defendants, and each of them, the Plaintiffs have and will, suffer the loss of Decedent's love, companionship, guidance, comfort, society, solace, moral support, financial support and physical assistance, all to their general damages, in a sum to be proven at time of trial.

///
///
///
///
///
///
///
///
///
///

8.

**FIRST AMENDED COMPLAINT**

**Prayer**

WHEREFORE Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.     All general damages, including but not limited to loss of the Decedent's love, guidance, financial support, future contributions, personal services, advice and training, according to proof at time of trial;

2.     All special damages, including all medical care, treatment and burial, consequential and incidental expenses incurred, and all additional economic losses, according to proof at time of trial;

3.     For prejudgment interest, as determined and accrued according to applicable statutes;

4.     Costs of bringing this suit; and

5.     Such other and further relief as the Court deems just and proper.

DATED:     January 15, 2018     DORDICK LAW CORPORATION

By:     _____
        Gary A. Dordick, Esq.
        Diana S. Diskin, Esq.
        Attorneys for Plaintiffs

9.

**FIRST AMENDED COMPLAINT**

1    <u>**DEMAND FOR JURY TRIAL**</u>

2

3        Plaintiffs hereby request a trial by jury.

4

5    DATED:        January 15, 2019                    DORDICK LAW CORPORATION

6

7

8

9                                           By:    _____
                                                   Gary A. Dordick, Esq.
10                                                 Diana S. Diskin, Esq.
                                                   Attorneys for Plaintiffs
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    10.
                        **FIRST AMENDED COMPLAINT**

1

**PROOF OF SERVICE**

2

3    STATE OF CALIFORNIA          )
                                  )   ss.
4    COUNTY OF LOS ANGELES        )

5

6        I am employed in the County of Los Angeles, State of California. I am over the
7    age of 18 and not a party to the within action; my business address is: 509 SOUTH
     BEVERLY DRIVE, BEVERLY HILLS, CALIFORNIA 90212.
8

9        On January 15, 2019, I served the foregoing documents described as **FIRST
     AMENDED COMPLAINT** on all parties in this action by placing a true copy thereof
10   enclosed in sealed envelopes addressed as follows.

11

12                    **[SEE ATTACHED SERVICE LIST]**

13   (X)      **BY UNITED STATES MAIL.**      I enclosed the documents in a sealed
              envelope or package addressed to the persons at the addresses listed
14            below and

15
              ( )   deposited the sealed envelope with the United States Postal
16                  Service with postage fully prepaid.

17
              (X)   placed the envelope for collection and mailing, following our
18                  ordinary business practices.  I am readily familiar with this
19                  business's practice for collecting and processing correspondence
                    for mailing.  On the same day that correspondence is placed for
20                  collection and mailing, it is deposited in the ordinary course of
                    business with the United States Postal Service, in a sealed
21                  envelope with postage fully prepaid.
22

23   I am employed in the county where the mailing occurred.  The envelope or
     package was placed in the mail at Beverly Hills, California.
24

25   ( )      **BY OVERNIGHT DELIVERY.**      I enclosed the documents in an
              envelope or package provided by an overnight delivery carrier and
26            addressed to the persons listed in the attached service list.  I placed the
27            envelope or package for collection and overnight delivery at an office or a
              regularly utilized drop box of the overnight delivery carrier.
28

---

11.

**FIRST AMENDED COMPLAINT**

1    ( )     **BY MESSENGER SERVICE.**    I placed the documents in an envelope
2            or package addressed to the persons at the addresses listed in the
             attached service list and providing them to a messenger service for
3            service
4    ( )     **BY PERSONAL SERVICE.**    I caused such documents to be
             delivered personally delivered to the persons addresses listed below.
5
6            ( )    For a party represented by an attorney, delivery was made to the
                    attorney or at the attorney's office by leaving the documents, in an
7                   envelope or package clearly labeled to identify the attorney being
                    served, with a receptionist or an individual in charge of the office,
8                   between normal business hours.
9
10           ( )    For a party, delivery was made to the party or by leaving the
                    documents at the party's residence with some person not younger
11                  than 18 years of age between normal business hours.
12
     ( )     **BY FAX TRANSMISSION.** I caused all of the pages of the above entitled
13           document to be sent to the recipients noted on the attached service list via
14           electronic transfer (FAX) at the respective FAX numbers pursuant to
             C.C.P. §1013(e) from DORDICK LAW CORPORATION on the date set
15           forth above.  The machine I used complied with California Rules of Court,
             Rule 2.306(h)(3) and no error was reported by the machine.
16
17   (X)     **BY ELECTRONIC SERVICE [E-MAIL]**  I caused the documents to be
             sent to the persons at the electronic notification addresses listed in the
18           attached service list.  I did not receive, within a reasonable time after the
19           transmission, any electronic message or other indication that the
             transmission was unsuccessful
20
21           Executed on January 15, 2019, at Beverly Hills, California.
22
             I declare under penalty of perjury under the laws of the State of California that
23   the above is true and correct.
24
25
26
27                                                    DIANA S. DISKIN, ESQ.
28

                                        12.
                          **FIRST AMENDED COMPLAINT**

1

## SERVICE LIST

2

3

### Sim, Suzy, et al., vs. State of California

4

### Case No. CIVDS1802564

5

6    Robert W. Armstrong, Esq.
     Timothy J. Lippert, Esq.
7    DEMLER, ARMSTRONG & ROWLAND, LLP
     4500 E. Pacific Coast Highway
8    Fourth Floor
9    Long Beach, CA  90804
           Tel:   (562) 597-0029
10          Fax:   (562) 494-3958
11          E-mail:   dar@darlaw.com
                      lip@darlaw.com
12

13   *Attorneys for Defendant, The People of the State of California, acting by and*
14   *through the Department of Transportation, erroneously sued as "State of*
     *California"*
15

16   Karen L. Jacobsen, Esq.
17   David H. Pollock, Esq.
     JACOBSEN & MCELROY PC
18   2401 American River Drive
19   Suite 100
     Sacramento, CA  95825
20          Tel:   (916) 971-4100
21          Fax:   (916) 971-4150
            E-mail:   kjacobsen@jacobsenmcelroy.com
22          E-mail:   dpollock@jacobsenmcelroy.com
23

24   *Attorneys for Defendants,*
     *FLATIRON WEST, INC. and HARDY & HARPER, INC.*
25

26

27

28

13.

### FIRST AMENDED COMPLAINT

| ATTORNEY OR PARTY WITHOUT (Name, State Bar Number, and address): Gary A. Dordick, Esq.  S/B#128008; Sung "Sean" Kim, Esq. S/B#239542 DORDICK LAW CORPORATION 509 South Beverly Drive Beverly Hills, California 90212 Telephone No.: 310-551-0949      Fax No. (Optional):  855-299-4444 | COURT USE ONLY |
|---|---|
| ATTORNEY FOR (Name):  Plaintiffs          Bar No.:  128008 | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

| STREET ADDRESS | 247 West Third Street | F I L E D SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN BERNARDINO SAN BERNARDINO DISTRICT JUN 03 2020 |
|---|---|---|
| MAILING ADDRESS | 247 West Third Street | |
| CITY AND ZIP CODE | San Bernardino, California 92415 | |
| BRANCH NAME | Central Justice Center | |

| PLAINTIFF(S)/PETITIONER(S):  SUZY SIM, et al. | CLERK'S USE ONLY BY NICOLE CARTWRIGHT DEPUTY |
|---|---|
| DEFENDANT(S)/RESPONDENT(S):   STATE OF CALIFORNIA, et al. | |

| AMENDMENT TO COMPLAINT | CASE NUMBER: CIVDS1802564 |
|---|---|

FIRST AMENDED

**FICTITIOUS NAME** (No order required)

FIRST AMENDED

Upon filing the complaint herein, plaintiff(s) being ignorant of the true name of a defendant, and having designated said
defendant in the complaint by the fictitious name of:      DOE 3
FIRST AMENDED

and having discovered the true name of the said defendant to be:

Flatiron/Hardy & Harper A Joint Venture

FIRST AMENDED

hereby amends the complaint by inserting such true name in place and stead of such fictitious name wherever it
appears in said complaint.
FIRST AMENDED

| April 15, 2020 | |
|---|---|
| Date | Declarant's Signature |

**INCORRECT NAME** (Order required)

Plaintiff(s) having designated a defendant in the complaint by the incorrect name of :

and having discovered the true name of the said defendant to be:

hereby amends the complaint by inserting such true name in place and stead of such fictitious name wherever it
appears in said complaint.

| | |
|---|---|
| Date | Declarant's Signature |

**ORDER**

Proper cause appearing, the above amendment to the complaint is allowed
FIRST AMENDED

Dated _____          _____
                                                                    Judge/Commissioner

AMENDMENT TO COMPLAINT

FIRST AMENDED

SB-16778,
Rev. 04-2014 **Optional**

## PROOF OF SERVICE

STATE OF CALIFORNIA     )
                           )   ss.
COUNTY OF LOS ANGELES   )

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 509 SOUTH BEVERLY DRIVE, BEVERLY HILLS, CALIFORNIA 90212.

     On April 15, 2020, I served the foregoing documents described as **AMENDMENT TO FIRST AMENDED COMPLAINT – DOE 3** on all parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows.

## [SEE ATTACHED SERVICE LIST]

( )     **BY UNITED STATES MAIL.**     I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed below and

    ( )     deposited the sealed envelope with the United States Postal Service with postage fully prepaid.

    ( )     placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I am employed in the county where the mailing occurred. The envelope or package was placed in the mail at Beverly Hills, California.

( )     **BY OVERNIGHT DELIVERY.**     I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons listed in the attached service list. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

( )     **BY MESSENGER SERVICE.**     I placed the documents in an envelope or package addressed to the persons at the addresses listed in the attached service list and providing them to a messenger service for service

1.

PROOF OF SERVICE

1  ( )   **BY PERSONAL SERVICE.**      I caused such documents to be
2  delivered personally delivered to the persons addresses listed below.

3      ( )   For a party represented by an attorney, delivery was made to the
4      attorney or at the attorney's office by leaving the documents, in an
       envelope or package clearly labeled to identify the attorney being
5      served, with a receptionist or an individual in charge of the office,
       between normal business hours.

6      ( )   For a party, delivery was made to the party or by leaving the
7      documents at the party's residence with some person not younger
8      than 18 years of age between normal business hours.

9  ( )   **BY FAX TRANSMISSION.** I caused all of the pages of the above entitled
10 document to be sent to the recipients noted on the attached service list via
   electronic transfer (FAX) at the respective FAX numbers pursuant to
11 C.C.P. §1013(e) from DORDICK LAW CORPORATION on the date set
   forth above.  The machine I used complied with California Rules of Court,
12 Rule 2.306(h)(3) and no error was reported by the machine.

13 (X)   **BY ELECTRONIC SERVICE [E-MAIL]**   I caused the documents to be
14 sent to the persons at the electronic notification addresses listed in the
   attached service list.  I did not receive, within a reasonable time after the
15 transmission, any electronic message or other indication that the
   transmission was unsuccessful
16

17 Executed on April 15, 2020, at Beverly Hills, California.

18     I declare under penalty of perjury under the laws of the State of California that
19 the above is true and correct.

20

21
                                    CRISTINA REYNOSA
22

23

24

25

26

27

28

                                    2.
                            PROOF OF SERVICE

**SERVICE LIST**

**Sim, Suzy, et al., vs. State of California**

**Case No. CIVDS1802564**

Robert W. Armstrong, Esq.
Timothy J. Lippert, Esq.
DEMLER, ARMSTRONG & ROWLAND, LLP
4500 E. Pacific Coast Highway, 4th Floor
Long Beach, CA 90804
     Tel:   (562) 597-0029
     Fax:  (562) 494-3958
     Email: dar@darlaw.com
     Email: lip@darlaw.com

*Attorneys for Defendant, STATE OF CALIFORNIA*

Kara A. Pape, Esq.
Kevin L. Pace, Esq.
Christine Luong-Pham, Esq.
TYSON & MENDES, LLP
1055 West 7th Street, Suite 2500
Los Angeles, CA 90017
     Tel:   (213) 745-8600
     Fax:  (213) 745-8604
     Email: kplace@tysonmendes.com
     Email: cluong-pham@tysonmendes.com

*Counsel for Defendants, FLATIRON WEST, INC. and HARDY & HARPER, INC.*

Mathew L. Walker, Esq.
Christopher A. McIntire, Esq.
LEWIS BRISBOIS BISGAARD & SMITH LLP
650 E. Hospitality Lane, Suite 600
San Bernardino, CA 92408
     Tel:   (909) 387-1130
     Fax:  (909) 387-1138
     Email: Mathew.Walker@lewisbrisbois.com
     Email: Christopher.McIntire@lewisbrisbois.com

*Counsel for Defendant, ADOLFO CUEVAS, JR.*

3.

PROOF OF SERVICE

# EXHIBIT N



**VIA E-MAIL AND FIRST CLASS MAIL**

January 20, 2022

Robert Baggs, Esq.
State of California Department of Transportation
1055 West 7th Street, Suite 1700
Sacramento, CA  95814
Robert.Baggs@dot.ca.gov

      Re:    *Suzy Sim, et al. v. State of California, et al.*
              San Bernardino County Superior Court Case No. CIVDS1802564
              Insured:      Flatiron Construction Corporation
                              Flatiron West, Inc.
                              Flatiron/Hardy & Harper, a Joint Venture
              Policy No.:   0308-4113 (eff. 6/1/16 to 6/1/17)
              Claim No.    2022000231

Dear Mr. Baggs:

This correspondence provides you with the position of Allied World Specialty Insurance Company ("Allied World") with respect to the above-referenced lawsuit pending in San Bernardino County Superior Court (the "Lawsuit"). Allied World issued Umbrella Liability Insurance Policy No. 0308-4113 to Flatiron Construction Corp, effective from June 1, 2016 to June 1, 2017 (the "Allied Policy"). The Allied Policy identifies Zurich American Insurance Company Policy No. GLO 5939707-08, effective from June 1, 2016 to June 1, 2017, as the Scheduled Underlying Insurance for general liability (the "Zurich Policy"). The State of California Department of Transportation ("Caltrans") seeks indemnity under the Allied World Policy. Please be advised that I am the adjuster handling the claim and all future correspondence should be directed to my attention. Allied World reserves all rights under the terms of the Allied Policy, the Zurich Policy and applicable law with respect to the Lawsuit and the claims alleged against Caltrans.

## I.    <u>FACTUAL BACKGROUND</u>

Based on the information and documents that Allied World has reviewed pertaining to this Lawsuit, it is our understanding that the Lawsuit arises out of a multi-vehicle accident involving three (3) vehicles, including one fatality, which occurred on January 15, 2017, at approximately 5:27 p.m., on State Route 138 ("SR-138"), approximately 1,163 feet west of Hess Road, in San Bernardino, California.

**ALLIED WORLD** INSURANCE COMPANY        199 Water Street       T. 646 794 0500       E. info@awac.com

24th & 29th Floor      F. 646 794 0611      www.awac.com
New York, NY 10038
U.S.A.

The accident occurred when Defendant Efrain Perez Marcelo (hereinafter "Perez Marcelo"), who was driving in the eastbound lane at 45-50 m.p.h., slowed to a stop when traffic in front of him came to a gradual stop. Defendant Adolfo Cuevas, Jr. (hereinafter "Cuevas") was driving his Chevy Silverado behind Perez Marcelo at approximately 30 m.p.h., and at a distance of approximately 100 feet. According to Cuevas, Perez Marcelo suddenly slammed on his brakes, causing Cuevas to slam on his brakes as well. He claims his truck began to slide out from under him to the left and "knicked" Perez Marcelo's truck. Cuevas swerved left, causing his truck to veer into oncoming westbound traffic. Cuevas' truck struck plaintiffs' Toyota 4Runner head on.

Plaintiff, Wendy Woolhee Jun ("Jun"), was driving the Toyota at the time of the incident, Plaintiff Suzy Sim ("Sim") was sitting in the driver's side passenger seat, and Decedent Jung Chul Jun was seated in the right rear passenger seat. Decedent was Wendy Jun's husband.

At the time of the accident, there was an ongoing Caltrans project to widen and improve a 15-mile portion of SR-138 between SR-2 and I-15 (the "Project"). Specifically, the Project entailed adding two lanes to SR-138 to create a four-lane highway. Construction began on February 6, 2015 and concluded on February 23, 2018.

On July 18, 2014, Flatiron West, Inc. and Hardy & Harper, Inc. entered into a joint venture agreement (and formed Flatiron West, Inc. and Hardy & Harper, Inc., A Joint Venture) to bid on the Project, On September 22, 2014, the Joint Venture entered into Contract No. 08-3401U4 with Caltrans (the "Caltrans Agreement") to expand SR-138.[1] The 2010 Department of Transportation Standard Specifications apply to the Caltrans Agreement. The Joint Venture's scope of work included removal of the existing roadway, widening the highway to four lanes, installation of guardrails and placement of concrete barriers, including k-rails.

Plaintiffs, Suzy Sim, Wendy Jun, Mina Jun, Alice Han, Candice Van Devender, and Stewart Jun filed their initial Complaint on February 2, 2018, in the Superior Court for the County of San Bernardino. Plaintiffs Mina Jun, Alice Han, Candice Devender, and Stewart Jun are Decedent's biological children. All of the Jun family Plaintiffs sue both in their individual capacities, and as Decedent's successors in interest. The Complaint named the following defendants: Caltrans, Efrain Perez Marcelo, and Adolfo Cuevas, Jr.

On August 1, 2018, Plaintiffs added Defendants Flatiron West, Inc. and Hardy & Harper, Inc., as DOES 1 and 2, respectively. On January 15, 2019, Plaintiffs filed their First Amended Complaint ("FAC") against Defendants Caltrans, Flatiron West, Hardy & Harper, Efrain Perez Marcelo, and Adolfo Cuevas, Jr., and named Grace Byun as a Nominal Defendant. The FAC alleges a cause of action for Liability for Dangerous Condition of Public Property pursuant to Government Code Section 835, et seq. against Defendant Caltrans and a cause of action for negligence – personal injuries and wrongful death – against all defendants. On April 15, 2020, plaintiffs added Flatiron/Hardy & Harper, a Joint Venture (hereinafter "Joint Venture") as DOE 3 to the FAC. Defendants Flatiron West, Hardy & Harper, and the Joint Venture are hereinafter collectively hereinafter referred to as "Flatiron."

---

[1] Flatiron West, Inc., and Flatiron West, Inc. and Hardy & Harper, Inc. A Joint Venture, are collectively hereinafter referred to as "Flatiron."

## II.   <u>POLICY INFORMATION</u>

The Allied Policy is an Umbrella Liability Policy providing umbrella coverage for Flatiron, effective from June 1, 2016 to June 1, 2017.  The Allied Policy provides umbrella coverage attaching excess to the Zurich Policy and Other Insurance.  The Zurich Policy provides limits of $2 million each occurrence, $4 million general aggregate, and $4 million products-completed operations aggregate.  The Allied Policy provides coverage with $25 million each occurrence, $25 million general aggregate, and $25 million products-completed operations aggregate.

We understand that Zurich is currently defending Caltrans in the Lawsuit subject to a reservation of rights.  We understand that neither the Zurich Policy nor any applicable other insurance have made any payments towards settlement or satisfaction of the alleged claims in the lawsuit.  Please let us know if our understanding is incorrect for any reason.

Attached to this letter as **Exhibit A** and **Exhibit B** are the relevant policy provisions of the Allied Policy and the Zurich Policy for convenient review.  Kindly refer to the actual policies for their complete terms and conditions.  Allied World reserves the right to rely upon terms and provisions of the Allied Policy and the Zurich Policy that are not quoted herein in support of its coverage position.

## III.   <u>COVERAGE ANALYSIS</u>

As an initial matter, the Allied Policy provides umbrella liability coverage and attaches excess of the **Retained Limit**, defined to mean the applicable limits listed in the Schedule of Retained Limits.  The Schedule of Retained Limits identifies limits for general liability of $2 million each occurrence, $4 million General Aggrege and $4 million products-completed operations aggregate.[2] If there is **Scheduled Underlying Insurance** or **Other Insurance** available for a **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Retained Limi**t.  The Zurich Policy is identified as the **Scheduled Underlying Insurance** for general liability for the Allied Policy.

The Insuring Agreement of the Allied Policy provides that Allied World "will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract.**  The Allied Policy defines **Bodily Injury** to mean "bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time."  Allied World reserves the right to disclaim or deny coverage to the extent that the Lawsuit does not seek damages because of bodily injury and/or to the extent that the Lawsuit does not seek damages for which the insured is legally obligated to pay.

---

[2] As modified by Endorsement No. 18 to the Allied Policy.

In addition, the Allied Policy only applies to **Bodily Injury** or **Property Damage** if the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the policy period.  The Allied Policy covers the period from June 1, 2016 to July 1, 2021. The Allied Policy defines **Occurrence** to mean, in pertinent part, "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured**.[3]  Allied World reserves the right to disclaim or deny coverage to the extent that there was no "occurrence" as defined by the Allied Policy and to the extent that the Lawsuit does not seek damages because of "bodily injury" that occurred during the policy period.

The Caltrans Agreement contains certain provisions pertaining to Flatiron's obligations to Caltrans arising from Flatiron's work on the Project.  The following provisions of the 2010 Standard Specifications provide as follows:

**7-1.05 Indemnification**

**7-1.05A. General**

> You must defend, indemnify, and save harmless the State, including its officers, employees, and agents (excluding agents who are design professionals), from any and all claims, demands, causes of action, damages, costs, expenses, actual attorneys' fees, losses or liabilities, in law or in equity (Section 7-1.05 Claims) arising out of or in connection with your performance of this Contract for:

> 1.  Bodily injury, including, but not limited to, bodily injury, sickness or disease, emotional injury or death to persons, including, but not limited to, the public, any employees, agents of you, the State, or any other contractor; and

> 2.  Damage to property of anyone including loss of use thereof, caused or alleged to be caused in whole or in part by any negligent or otherwise legally actionable act or omission of you or anyone directly or indirectly employed by you or anyone whose acts you may be liable.

> Except as otherwise provided by law, these requirements apply regardless of the existence or degree of fault of the State.  You are not obligated to indemnify the State for Claims arising from conduct delineated in Civ Code §2782 and for Claims arising from any defective or substandard condition of the highway that existed at or before the start of work unless this condition has been changed by the work or the scope of work requires you to maintain existing highway facilities and the Claim arises from your failure to maintain.

<p style="text-align:center">***</p>

---

[3] As modified by Endorsement No. 14 to the Allied Policy.

The 2010 Standard Specifications also require that Flatiron obtain certain insurance coverage in order to work on the Project and provide as follows:

**7-1.06D Liability Insurance**

**7-1.06D(1) General Provisions**

Carry General Liability and Umbrella or Excess Liability insurance covering all operations by or on behalf of you providing insurance for bodily injury liability and property damage liability for the following limits and including coverage for:

1.    Premises, operations and mobile equipment
2.    Products and completed operations
3.    Broad form property damage (including completed operations)
4.    Explosion, collapse, and underground hazards
5.    Personal Injury
6.    Contractual Liability

***

**7-1.06D(2)    Liability Limits/Additional Insureds**

***

The State, including its officers, directors, agents (excluding agents who are design professionals), and employees, must be named as additional insureds under the General Liability and Umbrella Liability Policies with respect to liability arising out of or connected with work or operations performed by or on behalf of you under the Contract.  Coverage for such additional insureds does not extend to liability:

1.    Arising from any defective or substandard condition of the roadway which existed at or before the time you started work, unless such condition has been changed and the work or the scope of the work requires you to maintain existing roadway facilities and the claim arises from your failure to maintain:
2.    For claims occurring after the work is completed and accepted unless these claims are directly related to alleged acts or omission of you that occurred during the course of the work; or
3.    To the extent prohibited by Ins Code §11580.04.

Additional insured coverage must be provided on a policy provision or bay an endorsement providing coverage at lease as broad as Additional Insured (Form B) endorsement from CG 2010, a published by the Insurance Services Office (ISO), or other form designated by the Department.

Both the Zurich Policy and the Allied Policy provide specific limitations on the additional insured coverage potentially provided to Caltrans which are particularly relevant to plaintiffs' claims

against Caltrans in the Lawsuit.  The Zurich Policy includes an Additional Insured – Automatic – Owners, Lessees or Contractors Endorsement (U-GL-1175-F-CW 04/13) which provides as follows:

### ADDITIONAL INSURED - AUTOMATIC – OWNERS, LESSEES or CONTRACTORS

This endorsement modifies insurance provided under the:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  Section II – **Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement.  Such person or organization is an additional insured only with respect to "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.  Your acts or omissions; or

2.  The acts or omissions of those acting on your behalf, in the performance of "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

However, this insurance afforded to such additional insured:

1.  Only applies to the extent permitted by law; and

2.  Will not be broader than that which you are required by written contract or written agreement to provide for such additional insured.

B.  With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services, including:

a.  The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

b.  Supervisory, inspection, architectural or engineering activities.

***

The Allied Policy also limits the scope of potential additional insured coverage pursuant to the Contractors' Limitation Endorsement. The Contractors' Limitation Endorsement modifies the definition of insured and provides, in pertinent part, as follows:

B.      It is agreed that Section VI., "Definitions" F. **Insured**, Paragraph 7. is deleted in its entirety and replaced by the following:

7.      any person or organization, other than the **Named Insured**, included as an additional insured in the policies listed in **Scheduled Underlying Insurance** however:

a.      coverage will not be broader than is available to such person or organization under such **Scheduled Underlying Insurance;** and

b.      the coverage granted by this provision does not apply to any liability which results solely from the acts or omissions of such person or organization.

Based on the foregoing, Allied World has no obligation to indemnify Caltrans for its own independent acts or omissions related to the subject accident.  Allied World reserves all rights with respect to alleged liability against Caltrans that does not arise out of Flatiron's operations at the Project, including the right to limit or disclaim coverage to Caltrans. In addition, because Allied World's coverage is not broader than Zurich's coverage to Caltrans, Allied World has no obligation to indemnify Caltrans with respect to any liability arising out of the rendering, or failure to render, any professional architectural, engineering or surveying services.  Allied World reserves all rights to deny coverage, in whole or in part, with respect to any claims against Caltrans in the Lawsuit arising out of Caltrans' rendering, or failure to render, any professional architectural, engineering or surveying services.

In addition, California Insurance Code § 11580.04 provides that any additional insured endorsement issued to a public agency in connection with, collateral to, or affecting any construction contract to which the provisions of subdivision (b) of Section 2782 of the Civil Code apply, shall not provide any duty of indemnity coverage for the active negligence of the additional insured in any case where an agreement to indemnify the additional insured would be invalid under subdivision (b) of Section 2782 of the Civil Code.[4]  Therefore, if Caltrans is found to be actively negligent in the Lawsuit, Allied World has no obligation to indemnify Caltrans under the terms of the Allied Policy.  Allied World reserves all rights to deny coverage, in whole or in part, to the

---

[4] Civil Code §2782(b)(2) provides as follows:  Except as provided in Sections 2782.1, 2782.2 and 2782.5, provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction contract with a public agency entered into after January 1, 2013, that purport to impose on any contractor, subcontractor, or supplier of goods or services, or relieve the public agency from, liability for the active negligence of the public agency are void and unenforceable.

extent that any claims against Caltrans in the Lawsuit arise out of Caltrans' active negligence relating to the Project and the subject accident.

Similarly, Civ. Code § 2782(a) also precludes any indemnity obligation owed by Flatiron to Caltrans pertaining to Caltrans' sole negligence or willful misconduct pertaining to the Project. Allied World reserves all rights to deny coverage, in whole or in part, to the extent that any claims against Caltrans in the Lawsuit arise out of Caltrans' sole negligence or willful misconduct relating to the Project and the subject accident. Furthermore, Civ. Code § 2782(a) also precludes any indemnity obligation owed by Flatiron to Caltrans pertaining to defects in design for the Project provided by Caltrans. Allied World reserves all rights to deny coverage, in whole or in part, to the extent that any claims against Caltrans in the Lawsuit arise out of defects in design provided by Caltrans for the Project.

The Allied Policy includes an Architects, Engineers and Surveyors Professional Liability Exclusion With Construction Means and Methods Exception Endorsement which precludes coverage for any liability arising out of the rendering of, or failure to render any professional services by the **Insured**, or on the **Insured's** behalf, but only with respect to either or both of the following operations: (1) providing engineering, architectural or surveying services to others in any **Insured's** capacity as an engineer, architect or surveyor; or (2) providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work any **Insured** performs. "Professional Services" do not include services within construction means, methods, techniques, sequences and procedures employed by the **Insured** in connection with its operation in its capacity as a construction contractor. Allied World reserves the right to disclaim or deny coverage to the extent that plaintiffs are pursuing claims against Caltrans for liability arising out of the rendering of, or failure to render any professional services as outlined above.

## IV.   <u>CONCLUSION</u>

Pursuant to the language of the Allied Policy, Allied World has no duty to defend or any other coverage obligation until the Retained Limit has been satisfied by payment of Loss by the Scheduled Underlying Insurance or Other Insurance. Allied World has not been provided with evidence of satisfaction of the Retained Limit but will continue to monitor and investigate this matter pursuant to the foregoing reservation of rights. Please continue to keep us advised of the status, claims, defenses, and all pertinent events with respect to the Lawsuit, including but not limited to impairment and/or exhaustion of the Scheduled Underlying Insurance.

Allied World's position under the Allied Policy as stated herein is based upon the information available and known to Allied World to date. Allied World's position is also based upon the accuracy of the information supplied to it during its investigation. Allied World reserves the right to modify and amend its coverage position, including if additional information is provided to Allied World and/or any of the information supplied to Allied World is determined to be inaccurate.

This correspondence is not intended, nor should it be construed, as an exhaustive listing of policy terms, conditions, or exclusions which might apply to this matter, as it has or may continue to

develop.  Specifically, and without limitation, any coverage under the Allied Policy remains subject to the policy terms pertaining to the limits of liability, deductibles/retentions, other insurance, and any and all other conditions contained therein.  Allied World specifically reserves all rights and defenses based on the Allied Policy and the Zurich Policy and/or applicable law.

Finally, if you believe that any aspect of this claim has been wrongfully declined, you may seek review of this decision by contacting the California Department of Insurance at the following address and telephone numbers:

<div align="center">

California Department of Insurance
Consumer Services Division
Claims Service Bureau
300 South Spring Street
Los Angeles, CA 90013
(213) 897-8921 (outside California)
(800) 927-HELP (inside California)
(800) 482-4833 (TDD Only)

</div>

Should you have any questions concerning this correspondence or should you wish to discuss it further, please contact us.

Very truly yours,


Steven Kroll
Senior Claims Analyst – Excess Casualty
North American Claims Group
Allied World Insurance Company
Tel: 646-794-0875
Steven.Kroll@awac.com

<u>**EXHIBIT A**</u>

Allied World Specialty Insurance Company policy number 0308-4113 effective June 1, 2016 to June 1, 2017.

**Umbrella Liability Insurance Policy**

\* \* \*

## I.  INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY

A.  We will pay on behalf of the Insured those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.

The amount we will pay for damages is limited as described in Section III., "Limits of Insurance."

B.  This policy applies, only if:

1.  the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; and

2.  the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**.

C.  This policy applies to **Bodily Injury** or **Property Damage**, only if prior to the **Policy Period**, no **Insured** listed under subparagraphs 2.a., 2.b., 2.c. or 2.e. of Paragraph F. of Section VI., "Definitions," no executive officer or director listed under subparagraph 2.d. of Paragraph F. of Section VI. and no employee authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part. If such an **Insured** or authorized employee knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period**.

**Bodily Injury** or **Property Damage** which occurs during the **Policy Period** and was not, prior to the **Policy Period**, known to have occurred by any **Insured** listed under subparagraphs 2.a., 2.b., 2.c. or 2.e. of Paragraph F. of Section VI., "Definitions," any executive officer or director listed under subparagraph 2.d. of

Paragraph F. of Section VI. or any employee authorized by you to give or receive notice of an **Occurrence** or claim, includes any continuation, change or resumption of that **Bodily Injury** or **Property Damage** after the end of the **Policy Period**.

D. **Bodily Injury** or **Property Damage** will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under subparagraphs 2.a., 2.b., 2.c. or 2.e. of Paragraph F. of Section VI., "Definitions," any executive officer or director listed under subparagraph 2.d. of Paragraph F. of Section VI. or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

    1. reports all, or any part, of the **Bodily Injury** or **Property Damage** to us or any other insurer;

    2. receives a written or verbal demand or claim for damages because of the **Bodily Injury** or **Property Damage**; or

    3. becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur.

* * *

## II. DEFENSE PROVISIONS

A. We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

    1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

    2. the damages sought because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** would not be covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B. We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance does not apply.

\* \* \*

## VI.    DEFINITIONS

\* \* \*

C.    **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

\* \* \*

F.    **Insured** means:

1.    the **Named Insured**;

2.    if you are designated in the Declarations as:

a.    an individual, you and your spouse are **Insureds**, but only with respect to the conduct of a business of which you are the sole owner;

b.    a partnership or joint venture, you are an **Insured**. Your members, your partners, and their spouses are also **Insureds**, but only with respect to the conduct of your business;

c.    a limited liability company, you are an **Insured**. Your members are also **Insureds**, but only with respect to the conduct of your business. Your managers are **Insureds**, but only with respect to their duties as your managers;

d.    an organization other than a partnership, joint venture or limited liability company, you are an **Insured**. Your executive officers and directors are **Insureds**, but only with respect to their duties as your officers or directors. Your stockholders are also **Insureds**, but only with respect to their liability as stockholders;

e.    a trust, you are an **Insured**. Your trustees are also **Insureds**, but only with respect to their duties as trustees;

3.    your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

4.      your volunteer workers only while performing duties related to the conduct of your business;

5.      any person (other than your employee or volunteer worker) or organization while acting as your real estate manager;

6.      your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy;

7.      any person or organization, other than the **Named Insured**, included as an Additional Insured under **Scheduled Underlying Insurance**, but not for broader coverage than would be afforded by such **Scheduled Underlying Insurance**.

Notwithstanding any of the above:

a.      no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1. of the Declarations; and

b.      no person or organization is an **Insured** under this policy who is not an **Insured** under applicable **Scheduled Underlying Insurance**. This provision shall not apply to any organization set forth in the definition of **Named Insured** in subparagraphs J. 2 and 3.

\* \* \*

K.    **Occurrence** means:

1.      as respects **Bodily Injury or Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**.

2.      as respects **Personal Injury and Advertising Injury**, an offense arising out of your business that causes **Personal Injury and Advertising Injury**. All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

L.    **Other Insurance** means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance**, the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

* * *

R.    **Retained Limit** means the greater of the following amounts:

    1.    the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the **Insured**; or

    2.    the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

S.    **Scheduled Underlying Insurance** means:

    1.    the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

    2.    automatically any renewal or replacement of any policy in subparagraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

    **Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

* * *

Endorsement No: 1

## SCHEDULE OF UNDERLYING INSURANCE

| Type of Coverage | Insurer<br>Policy Number<br>Policy Period | Limits of Insurance |
|---|---|---|
| General Liability | Zurich American Insurance Company<br>GLO 5939707-08<br>June 1, 2016 -<br>June 1, 2017 | US$2,000,000  Each Occurrence<br>US$4,000,000  General Aggregate<br>(Per Project & Per Location – Uncapped)<br>US$4,000,000  Products-Completed Operations Aggregate<br>US$1,000,000  Employee Benefits Liability – Each Act, Error or Omission<br>US$1,000,000  Employee Benefits Liability - Aggregate |
| Defense costs:<br>☐ Erode  ☒ Do not erode<br>The Limits of Insurance listed in the policy above. | | |

\* \* \*

**Endorsement No: 14**

### AMEND DEFINITION OF OCCURRENCE
### (CONTINUING OR PROGRESSIVELY DETERIORATING
### DAMAGES ENDORSEMENT)

It is agreed that Definition K. **Occurrence** under Section VI., "Definitions" is deleted in its entirety and replaced by the following:

K.   **Occurrence**, means:

1.   as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **Bodily Injury or Property Damage** neither expected nor intended from the standpoint of the **Insured**.

In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be deemed to be one **Occurrence** and shall be deemed to occur only when such damage first commenced.

2.   as respects **Personal Injury and Advertising Injury**, an offense arising out of your business that causes **Personal Injury and Advertising Injury**. All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

\* \* \*

**Endorsement No: 18**

### RETAINED LIMIT ENDORSEMENT

It is agreed that solely as respects coverages listed in the Schedule of Retained Limits, the following shall apply:

\* \* \*

2.   Paragraph A. of Section **II. DEFENSE PROVISIONS** is deleted in its entirety and replaced by the following:

A.   We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or

fraudulent when the total applicable limits listed in the Schedule of Retained Limits have been exhausted by payment of **Loss** to which this policy applies.

If we are prevented by law or statute from assuming the obligations specified under this provision we will pay any expenses incurred with our consent.

* * *

7.   Section **VI. DEFINITIONS** Paragraph F. is deleted in its entirety and replaced by the following:

F.   **Insured** means:

1.   the **Named Insured**;

2.   if you are designated in the Declarations as:

a.   an individual, you and your spouse are **Insureds**, but only with respect to the conduct of a business of which you are the sole owner;

b.   a partnership or joint venture, you are an **Insured**. Your members, your partners, and their spouses are also **Insureds**, but only with respect to the conduct of your business;

c.   a limited liability company, you are an **Insured**. Your members are also **Insureds**, but only with respect to the conduct of your business. Your managers are **Insureds**, but only with respect to their duties as your managers;

d.   an organization other than a partnership, joint venture or limited liability company, you are an **Insured**. Your executive officers and directors are **Insureds**, but only with respect to their duties as your officers or directors. Your stockholders are also **Insureds**, but only with respect to their liability as stockholders;

e.   a trust, you are an **Insured**. Your trustees are also **Insureds**, but only with respect to their duties as trustees;

3.   your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

4.   your volunteer workers only while performing duties related to the conduct of your business;

5.      any person (other than your employee or volunteer worker) or organization while acting as your real estate manager;

6.      your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy;

7.      any person or organization to which you become obligated to include as an additional **Insured** under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations, including **Your Work** and **Your Product**, or premises owned by or rented to you. However, the insurance provided will not exceed the lesser of:

        a.      The coverage and/or Limits of Insurance of this policy; or

        b.      The coverage and/or Limits of Insurance required by said contract or agreement.

        However, no such person or organization is an Insured by virtue of this provision 7. of this Paragraph F. of Section VI. if such person or organization is a partnership, joint venture or limited liability company of which the **Named Insured** is a partner or member, or is a partner or member of such partnership, joint venture or limited liability company.

Notwithstanding any of the above provisions 1. through 7. of this Paragraph F. of Section VI. no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a **Named Insured** in Item 1 of the Declarations.

\* \* \*

9.      Section **VI. DEFINITIONS**, Paragraph **J.** is deleted in its entirety and replaced by the following:

J.      **Named Insured** means:

1.      any person or organization designated in Item 1 of the Declarations;

2.      as of the inception date of this policy, any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or

formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

3. after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%), provided that:

    a. coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization or after you ceased to maintain an interest of more than fifty percent (50%) in such organization; and

    b. you give us prompt notice after you acquire or form such organization.

Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

10. Section **VI. DEFINITIONS**, Paragraph R. is deleted in its entirety and replaced by the following:

R. **Retained Limit** means the applicable limit(s) listed in the Schedule of Retained Limits.

The **Retained Limit(s)** listed in the Schedule of Retained Limits will apply whether or not there is any available **Scheduled Underlying Insurance** or **Other Insurance**. If there is **Scheduled Underlying Insurance** or **Other Insurance** applicable to a **Loss**, amounts received through such **Scheduled Underlying Insurance** or **Other Insurance** for payment of the **Loss** may be applied to reduce or exhaust the **Retained Limit**. Furthermore:

    a. If the applicable **Retained Limit** is specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** shall reduce the **Retained Limit**.

b.    If the applicable **Retained Limit** is not specifically designated in the Schedule of Retained Limits as including **Defense Expenses**, then amounts received through **Scheduled Underlying Insurance** or **Other Insurance** providing coverage to the **Insured** for the payment of **Defense Expenses** shall not reduce the **Retained Limit**.

\* \* \*

**Endorsement No: 22**

### ARCHITECTS, ENGINEERS AND SURVEYORS PROFESSIONAL LIABILITY EXCLUSION WITH CONSTRUCTION MEANS AND METHODS EXCEPTION

It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Architects, Engineers and Surveyors Professional Liability (With Construction Means and Methods Exception)**

This policy does not provide coverage for any liability arising out of the rendering of, or failure to render, any professional services by the **Insured**, or on the **Insured's** behalf, but only with respect to either or both of the following operations:

1.    providing engineering, architectural or surveying services to others in any **Insured's** capacity as an engineer, architect or surveyor; or

2.    providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work any **Insured** performs.

As used in this exclusion, "professional services" include:

a.    preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

b.    supervisory or inspection activities performed as part of any related architectural or engineering activities.

"Professional services" do not include services within construction means, methods, techniques, sequences and procedures employed by the Insured in connection with its operations in its capacity as a construction contractor.

\* \* \*

**Endorsement No: 25**

### BROAD FORM NAMED INSURED AMENDATORY ENDORSEMENT

It is agreed that Section **VI. DEFINITIONS**, Paragraph J. **Named Insured** is deleted in its entirety and replaced by the following:

J.     **Named Insured** means:

     1.     the person or organization first named as the **Named Insured** in Item 1. of the Declarations (the "First Named Insured");

     2.     any other person or organization named as a **Named Insured** in Item 1. of the Declarations; or

     3.     any subsidiary or acquired company or corporation (including subsidiaries thereof) and any other legal entities (including joint ventures, limited liability companies and partnerships) in which:

         a.     any **Insured** named as the **Named Insured** in Item 1. of the Declarations has a majority ownership interest; or

         b.     any **Named Insured** or its subsidiaries have only partial ownership interest, but have entered into a written contract or written agreement to place insurance for each such entity.

The insurance afforded by this endorsement shall not be subject to the requirement of Section **VI. DEFINITIONS**, Paragraph F. **Insured** that the partnership, joint venture, or limited liability company be shown as a **Named Insured** it Item 1. of the Declarations.

Notwithstanding any of the above, no person or organization is an **Insured** by virtue of the provisions of this endorsement who is not an **Insured** under applicable **Scheduled Underlying Insurance**.

* * *

**Endorsement No: 26**

### CONTRACTORS' LIMITATION
### (WITH LIMITED WRAP-UP)

It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Contractors**

* * *

B.      It is agreed that Section VI., "Definitions" F. **Insured**, Paragraph 7. is deleted in its entirety and replaced by the following:

   7.      any person or organization, other than the **Named Insured**, included as an additional insured in the policies listed in **Scheduled Underlying Insurance** however:

        a.      coverage will not be broader than is available to such person or organization under such **Scheduled Underlying Insurance**; and

        b.      the coverage granted by this provision does not apply to any liability which results solely from the acts or omissions of such person or organization.

<u>**EXHIBIT B**</u>

Zurich American Insurance Company policy number GLO 5939707-08 effective June 1, 2016 to June 1, 2017.

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

\* \* \*

## SECTION I – COVERAGES

## COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.**   **Insuring Agreement**

**a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)**   The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)**   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.**   This insurance applies to "bodily injury" and "property damage" only if:

**(1)**   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**   The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**   Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured

or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

\* \* \*

### Additional Insured - Automatic - Owners, Lessees Or Contractors

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

**A.** **Section II - Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement.  Such person or organization is an additional

insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf,

in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services including:

**a.** The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

\* \* \*

**EXHIBIT O**



McCLOSKEY
WARING
WAISMAN &
DRURY LLP
——— ATTORNEYS AT LAW

12671 High Bluff Drive, Suite 350
San Diego, CA  92130
Phone 619.237.3095
Fax 619.237.3789

MICHAEL DRURY
DIRECT DIAL:  619.237.4002
mdrury@mwwdlaw.com

*Via E-Mail*

April 25, 2022

Breanne Denning, Esq.
State of California Department of Transportation
1055 West 7th Street, Suite 1700
Sacramento, CA 95814
Breanne.Denning@dot.ca.gov

      Re:    *Suzy Sim, et al. v. State of California, et al.*
              San Bernardino County Superior Court Case No. CIVDS1802564
              Insured:    Flatiron Construction Corporation
                          Flatiron West, Inc.
                          Flatiron/Hardy & Harper, a Joint Venture
              Claim No.    2022000231

Dear Ms. Denning:

Our office is coverage counsel for Allied World Specialty Insurance Company ("Allied World") with respect to the above-referenced lawsuit pending in San Bernardino County Superior Court (the "Lawsuit").   Allied World issued Umbrella Liability Insurance Policy No. 0308-4113 to Flatiron Construction Corp. ("Flatiron"), effective from June 1, 2016 to June 1, 2017 (the "Allied Policy").   The Allied Policy identifies Zurich American Insurance Company Policy No. GLO 5939707-08, effective from June 1, 2016 to June 1, 2017, as the Scheduled Underlying Insurance for general liability. The Department of Transportation of the State of California ("Caltrans") seeks indemnity coverage under the Allied Policy for the claims asserted by plaintiffs against Caltrans in the Lawsuit.

This correspondence supplements Allied World's January 20, 2022 correspondence (a copy is being sent with this letter) and supplements Allied World's coverage position for the claims asserted against Caltrans in the Lawsuit.  This correspondence is also sent in preparation for the upcoming July 8, 2022 Mediation with Troy Roe.  We want to clarify Allied World's coverage position in the Lawsuit and attempt to formulate a framework for Caltrans and Allied World to work together in an attempt to engage in meaningful settlement discussions with plaintiffs.

Breanne Denning, Esq.
April 25, 2022
Page 2

Caltrans previously declined any obligation to contribute towards a global settlement of the Lawsuit. We request that Caltrans reconsider its refusal to meaningfully participate in settlement funding in light of its potential exposure arising out of its active negligence pertaining to the Lawsuit as discussed herein.

1.      **Limitations of Additional Insured Coverage to Caltrans under the Zurich Policy and the Allied Policy**

Initially, the Allied Policy provides that "we will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**. . . to which this insurance applies or because of **Bodily Injury** . . . to which this insurance applies assumed by the **Insured** under an **Insured Contract**." The **Retained Limit** is defined, in relevant part, as "the total applicable limits of **Scheduled Underlying Insurance** and any other applicable **Other Insurance** providing coverage to the **Insured**. Endorsement No. 1 to the Allied Policy identifies a Commercial General Liability Policy issued by Zurich American Insurance Company ("Zurich"), policy number GLO 5939707-08, effective June 1, 2016 to June 1, 2017 (the "Zurich Policy") as the **Scheduled Underlying Insurance** for General Liability.

Zurich is currently defending Flatiron[1] and Caltrans in the Lawsuit subject to reservation of rights. Both the Zurich Policy and the Allied Policy provide specific limitations on the additional insured coverage provided to Caltrans which are particularly relevant to plaintiffs' claims against Caltrans in the Lawsuit. The Zurich Policy includes an Additional Insured – Automatic – Owners, Lessees or Contractors Endorsement (U-GL-1175-F-CW  04/13) which provides as follows:

**ADDITIONAL INSURED - AUTOMATIC – OWNERS, LESSEES or CONTRACTORS**

This endorsement modifies insurance provided under the:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.      Section II – **Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

---

[1]"Flatiron" hereinafter collectively refers to Flatiron West, Inc., Hardy & Harper, Inc. and Flatiron West, Inc./Hardy & Harper, a Joint Venture.

Breanne Denning, Esq.
April 25, 2022
Page 3

    1.    Your acts or omissions; or

    2.    The acts or omissions of those acting on your behalf, in the performance of "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

However, this insurance afforded to such additional insured:

    1.    Only applies to the extent permitted by law; and

    2.    Will not be broader than that which you are required by written contract or written agreement to provide for such additional insured.

B.    With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to:

Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services, including:

    a.    The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b.    Supervisory, inspection, architectural or engineering activities.

\*\*\*

    As set forth in the Additional Insured Endorsement in the Zurich Policy, Zurich only has an obligation to indemnify Caltrans with respect to acts or omissions of Flatiron and *not the independent acts or omissions of Caltrans*. Furthermore, the Additional Insured Endorsement also provides that Zurich has no obligation to indemnify Caltrans with respect to any liability arising out of the rendering, or failure to render, any professional, architectural, engineering or surveying services. The first cause of action in Plaintiffs' First Amended Complaint ("FAC") specifically alleges that Caltrans was negligent in its engineering, design, inspection and planning of the SR-138 expansion project (the "Project"). As a result, a significant portion of plaintiffs' claims against Caltrans are not covered under the Zurich Policy or the Allied Policy.

Breanne Denning, Esq.
April 25, 2022
Page 4

The same limitations of additional insured coverage to Caltrans also apply under the Allied Policy pursuant to the Contractors' Limitation Endorsement. The Contractors' Limitation Endorsement modifies the definition of insured and provides, in pertinent part, as follows:

B.      It is agreed that Section VI., "Definitions" F. **Insured**, Paragraph 7. is deleted in its entirety and replaced by the following:

7.      any person or organization, other than the **Named Insured**, included as an additional insured in the policies listed in **Scheduled Underlying Insurance** however:

a.      coverage will not be broader than is available to such person or organization under such **Scheduled Underlying Insurance;** and

b.      the coverage granted by this provision does not apply to any liability which results solely from the acts or omissions of such person or organization.

Based on the foregoing, Allied World has no obligation to indemnify Caltrans *for its own independent acts or omissions related to the subject accident.* In addition, because Allied World's coverage is not broader than Zurich's coverage to Caltrans, Allied World has no obligation to indemnify Caltrans with respect to any liability arising out of the rendering, or failure to render, any professional, architectural, engineering or surveying services. The claims asserted by Plaintiffs against Caltrans are based on design and planning activities excluded under the professional services exclusion in the Allied Policy.

In addition, California Insurance Code § 11580.04 provides that any **additional insured endorsement issued to a public agency** in connection with, collateral to, or affecting any construction contract to which the provisions of subdivision (b) of Section 2782 of the Civil Code apply, shall not provide any duty of indemnity coverage for the active negligence of the additional insured in any case where an agreement to indemnify the additional insured would be invalid under subdivision (b) of Section 2782 of the Civil Code. Therefore, if Caltrans is found to be actively negligent in the Lawsuit, Allied World has no obligation to indemnify Caltrans under the terms of the Allied Policy.

**2.      Potential Limitations of Indemnity Owed to the Caltrans Under California Civil Code § 2782 for Caltrans' Design Defects and Active Negligence**

Pursuant to the terms of the contract between Caltrans and Flatiron (the "Contract"), Flatiron is obligated to indemnify Caltrans as follows:

McCLOSKEY, WARING, WAISMAN & DRURY LLP

12671 HIGH BLUFF DRIVE, SUITE 350, SAN DIEGO, CA 92130        PHONE: 619.237.3095   FAX: 619.237.3789

Breanne Denning, Esq.
April 25, 2022
Page 5

**7-1.05 Indemnification**
**7-1.05A. General**

You must defend, indemnify, and save harmless the State, including its officers, employees, and agents (excluding agents who are design professionals), from any and all claims, demands, causes of action, damages, costs, expenses, actual attorneys' fees, losses or liabilities, in law or in equity (Section 7-1.05 Claims) arising out of or in connection with your performance of this Contract for:

1.      Bodily injury, including, but not limited to, bodily injury, sickness or disease, emotional injury or death to persons, including, but not limited to, the public, any employees, agents of you, the State, or any other contractor; and

2.      Damage to property of anyone including loss of use thereof, caused or alleged to be caused in whole or in part by any negligent or otherwise legally actionable act or omission of you or anyone directly or indirectly employed by you or anyone whose acts you may be liable.

Except as otherwise provided by law, these requirements apply regardless of the existence or degree of fault of the State.  You are not obligated to indemnify the State for Claims arising from conduct delineated in Civ Code §2782 and for Claims arising from any defective or substandard condition of the highway that existed at or before the start of work unless this condition has been changed by the work or the scope of work requires you to maintain existing highway facilities and the Claim arises from your failure to maintain.

***

Civil Code § 2782 provides as follows:

(a)      Except as provided in Sections 2782.1, 2782.2, 2782.5 and 2782.6, provisions, clauses, covenants, or agreements continue in, collateral to, or affecting any construction contract that purport to indemnify the promisee against liability for damages for death or bodily injury to persons, injury to property, or any other loss, damage or expense arising from the sole negligence or willful misconduct of the promisee or the promisee's agents, servants or independent contractors who are directly responsible to the promisee, or for defects in design furnished by those persona are against public policy and are void and unenforceable, provided however, that this

Breanne Denning, Esq.
April 25, 2022
Page 6

> section shall not affect the validity of any insurance contract, workers' compensation, or agreement issued by an admitted insurer as defined by the Insurance Code.
>
> \*\*\*
>
> (b)(2)  Except as provided in Sections 2782.1, 2782.2 and 2782.5, provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction contract with a public agency entered into after January 1, 2013, that purport to impose on any contractor, subcontractor, or supplier of goods or services, or relieve the public agency from, liability for the active negligence of the public agency are void and unenforceable.
>
> \*\*\*

As you are aware, Flatiron disputes any indemnity obligation to Caltrans based on its position that Caltrans was actively negligent with respect to its design and planning of the Project. Initially, the Contract specifically excludes any indemnity obligation owed by Flatiron to Caltrans that is prohibited by Civ. Code §2782. Additionally, California Insurance Code § 11580.04 excludes this same liability from Allied World's additional insured obligations. Therefore, Caltrans has no right to indemnification from either Flatiron or its insurers for its own active negligence. Based on the discovery to date and plaintiffs' liability theories against Caltrans, Allied World has no obligation to indemnify Caltrans for defects in design of the construction project (location of k-rails, lack of channelizers, improper narrowing of shoulder, etc.) under 2782(a).

This issue of whether Caltrans' alleged negligence was "active" or "passive" is an unresolved and disputed legal issue in this Lawsuit. Plaintiffs have alleged substantial claims against Caltrans that would support a court's finding that Caltrans was actively negligent with respect to the subject traffic accident. In addition, the Contract provisions and the 2010 Standard Specifications (governing the Contract) cannot alter the statutory indemnity limitations outlined in Civil Code § 2782. If a court determines that Caltrans was actively negligent, Flatiron and Allied World have no obligation to indemnify Caltrans in the Lawsuit. Caltrans should consider the very real possibility of this outcome when refusing to meaningfully participate in settlement.

## 3. Active Negligence and Passive Negligence Under California Law

The leading case in California evaluating the distinction between "active" and "passive" negligence is *Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d. 622, 629. In *Rossmoor*, the California Supreme Court explained that "[p]assive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law. Active negligence, on the other hand, is found if an indemnitee has personally participated in an

Breanne Denning, Esq.
April 25, 2022
Page 7

affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence or has failed to perform a precise duty which the indemnitee had agreed to perform." *Rossmoor*, *supra*, 13 Cal.3d at 629. The Supreme Court provided the following examples:

> Passive negligence has been found or assumed from the failure to discover a defective condition created by others (*Markley v. Beagle, supra*, at pp. 955-956, 962), failure to exercise a right to inspect certain work and specify changes (*Muth* v. *Urricelqui* (1967) 251 Cal.App.2d 901, 911 [60 Cal.Rptr. 166]), and failure to exercise a supervisory right to order removal of defective material (*Safeway Stores, Inc. v. Massachusetts Bonding & Ins. Co*. (1962) 202 Cal.App.2d 99, 111-113 [20 Cal.Rptr. 820]). Active negligence has been found in digging a hole which later caused an injury (*Morgan v. Stubblefield, supra*, at pp. 626-627), knowingly supplying a scaffold which did not meet the requirements of a safety order (*id*. at pp. 625-626), creating a perilous condition that resulted in an explosion (*Burlingame Motor Co.* v. *Peninsula Activities, Inc., supra*, at p. 661), and failing to install safety nets in violation of a contract (*MacDonald & Kruse, Inc.* v. *San Jose Steel Co., supra*, at pp. 424-425).

*Id.* at 630.

Ultimately, "[t]he crux of the inquiry is to determine whether there is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform a duty imposed upon him by law." *Id.* at 629. Based on the allegations in the Lawsuit and Caltrans' design, engineering and control of the Project, a reasonable that a trier of fact will likely determine that Caltrans was actively negligent since it participated in the alleged conduct or omission which caused the injury and the subject accident. In fact, on June 23, 2021, Judge Pacheco denied Caltrans' MSJ with respect to the dangerous condition of public property claim and found a triable issue of fact with respect to whether the narrowing of the shoulder was proper. The Court took issue with Caltrans' design and set-up of the Project. There is no evidence in this case which shows that Flatiron deviated from the plans and specification designed/provided by Caltrans.

In *County of Riverside v. Yeager Skanska, Inc.* (Cal. Ct. App., Nov. 27, 2012, No. E052034) 2012 WL 5929943 (unpublished), plaintiff was seriously injured when the front wheel of his motorcycle went off the road and crashed on a near 90–degree curve on Bridge Street, a County roadway. *Id.* at \*1. At the time of the accident, traffic heading east on Gilman Springs Road, another County roadway, was being detoured southbound to Bridge Street while the County made improvements to Gilman Springs Road. *Id.* Lim & Nascimento Engineering Corp. ("LAN") was the County's design engineer on portions of the Gilman Springs Road project, and Yeager Skanska, Inc. ("Yeager") was the County's general contractor. *Id.* Shortly before the near 90–degree curve, a reflective detour sign with an arrow pointing straight ahead partly obscured an

Breanne Denning, Esq.
April 25, 2022
Page 8

existing curve sign. *Id.*   Yeager placed the detour signs on Bridge Street in accordance with a detour plan created by LAN. *Id.*   Around the area of the curve, the lines in the middle of the roadway were faded or washed out, there was no striping or edge lines delineating the pavement from the soft shoulder of the roadway, and the shoulder was even with the pavement. *Id.*   Plaintiff sued the County, Yeager, and LAN. *Id.*   Yeager denied it was obligated to defend or indemnify the County, in part because the claims arose from the County's sole and active negligence. *Id.* at *2. The trial court denied the County's contractual indemnity claims against both Yeager and LAN, holding that County was actively negligent in failing to remediate the dangerous conditions on Bridge Street that caused the accident. *Id.* at *3.

As is relevant here, the Court of Appeal found the trial court reasonably determined that the County was actively negligent. *Id.* at *5.   The County had "reserve[d] the right" to "make any necessary changes, as field conditions warrant," in "traffic control plans," and the County's resident engineer was to determine the "[e]xact location of all ... traffic control devices." *Id.* at *8. Before the accident, the County's resident engineer, Jesus Mendoza, inspected the detour route and approved Yeager's placement of the detour signs in accordance with the detour plan. *Id.*   The County's traffic engineer, Lawrence Tai, also inspected portions of the detour route before the accident and "made no adjustment in the detour signage" or any other changes in the detour route. *Id.*   Then, several days after the accident but before the County was aware of the accident, Mr. Tai's assistant, Arthur Higgs, drove both ways on Bridge Street at night and recommended placing chevron signs on the curve, placing an additional curve sign for motorists who might not be familiar with the roadway, and installing a painted edge line for guidance when opposing headlights made it difficult to see the center line. *Id.* Mr. Tai approved these recommendations, and the chevrons, curve signs, and edge line were installed. *Id.*

Although the lack of an edge line along the curve and other visual cues delineating the pavement from the soft shoulder—not the placement of the detour sign before the curve—was the principal cause of the accident, the Court of Appeal found that "the County had a duty to remedy *all* of the dangerous conditions on the detour route, including those that may have been created by Yeager's placement of the detour sign before the curve." *Id.* at *9.   Indeed, because the County had "reserved the right to determine the final placement of the detour signs, and effectively approved Yeager's placement of the detour sign before the curve" (*Id.* at *8), the Court of Appeal held that "[t]he trial court reasonably determined that the County was actively negligent in failing to 'make the appropriate traffic engineering recommendations concerning striping and signage at the curve' before the accident, and in failing to 'make the remedial recommendations that both plaintiffs' expert, Mr. Royer, and Mr. Tai's own assistant, Mr. Higgs, found obvious and necessary due to the increased volume on Bridge Street' before the accident" (*Id.* at *9).

Similar to the court's determination in the *County of Riverside* case, the facts of the present case logically lead to the conclusion that the trier of fact in the Lawsuit, or in subsequent litigation, would similarly find that Caltrans is "actively" negligent based on the fact that Caltrans designed

Breanne Denning, Esq.
April 25, 2022
Page 9

the traffic control plans and Caltrans' engineers determined the placement of all traffic control devices, including the k-rails, which are alleged to have caused or contributed to the accident.

**4.       Plaintiffs' Allegations Pertaining the Dangerous Conditions on SR-138**

The first cause of action for Dangerous Condition of Public Property in Plaintiffs' FAC is only pled against Caltrans and alleges (in paragraph 23) that Caltrans "allowed said highway to be in a dangerous condition by failing to properly design, construct, engineer, manage, maintain, repair, inspect, failed to provide adequate warnings and signs about the condition of the highway/roadway/street, improperly configured the traffic lanes, failure to place a center median/wall/barrier and/or said highway so that the curvature, grade, land widths, shoulder widths, and lines of sight and/or sight distances at the Subject Accident Site were sufficient for vehicles such as defendants vehicles to stay within their own lane of travel and to not cross the center line of the highway into opposing lane of travel."

All of the specifically delineated dangerous conditions (in paragraph 23 of the FAC) are alleged against Caltrans. Caltrans engineered and designed the Project and the traffic control plan. Elvira Lenart, the resident engineer for Caltrans, testified that Caltrans had control and final approval as the design and implementation of the plans and specifications for the project, as well as supervision and oversight of all work on the project. Caltrans control extended to the placement of all traffic control devices, including the specific location of the k-rails (which are alleged to have improperly narrowed the shoulder) and all warning signs. Flatiron followed the plans designed and engineered by Caltrans. Any attempt to shift liability to Flatiron for design defects is prohibited by Civil Code § 2782(a).

**5.       Caltrans Indemnity Claims Against Flatiron are Tenuous**

As outlined above, there are numerous limitations on Flatiron and Allied World's potential indemnity obligations to Caltrans: (1) Coverage Limitations under the endorsements of the Zurich Policy and the Allied Policy (which exclude coverage to Caltrans for (a) the independent acts or omissions of Caltrans and (b) for the rendering, or failure to render any professional, engineering or surveying services); (2) Insurance Code § 11580.04 which precludes additional insured coverage under the Allied Policy for Caltrans' active negligence; (3) Civil Code § 2782(a) which negates any indemnity obligation for Caltrans' negligent or defective design of the Project and (4) Civil Code § 2782(b)(2) which negates any indemnity obligation for Caltrans' active negligence relating to the Lawsuit. Based on all of these limitations, Caltrans must acknowledge that it has significant exposure in the Lawsuit for which it bears independent responsibility – exposure that is not subject to an indemnity claim against Flatiron and/or covered under the Allied Policy.

Breanne Denning, Esq.
April 25, 2022
Page 10


Under the terms of the Contract the parties never intended for Flatiron to indemnify Caltrans for Caltrans' *defects in design* of the construction plan or for its own *active negligence*. The Contract specifically carves out any indemnification obligation for these two issues.  In addition. Caltrans relies on various provisions of the 2010 Standard Specifications to try to shift the burden for overall project "safety" to Flatiron.  However, none of these contractual provisions can alter the impact or effectiveness of the statutory prohibitions on indemnification owed by Flatiron or the applicable limits of the additional insured coverage under the Zurich Policy and Allied Policy.  Finally, Caltrans' position deprives Flatiron and Allied World of the statutory protections and limitations that the Legislature put in place to preclude Caltrans from seeking indemnification under these specific circumstances.

If the parties are to engage in meaningful settlement negotiations with plaintiffs, Caltrans must recognize that the claims asserted against it are based on Caltrans' active negligence and must be willing to make a significant contribution towards a global settlement with plaintiffs.

Thank you for your attention to the foregoing.  We look forward to discussing these issues in more detail.  Please do not hesitate to contact me should you have any questions regarding this matter.


Sincerely,

Michael Drury


MD/nt

**EXHIBIT P**

CALIFORNIA STATE TRANSPORTATION AGENCY

GAVIN NEWSOM, GOVERNOR

## California Department of Transportation

LEGAL DIVISION
100 SOUTH MAIN STREET, SUITE 1300
LOS ANGELES, CA  90012-3702
(213) 687-6000
FAX (213) 68708300
TTY 711
**www.dot.ca.gov**

 

May 26, 2022

Mr. Michael Drury
McCloskey, Waring, Waisman & Drury LLP
12671 High Bluff Drive, Suite 350
San Diego, CA 92130
mdrury@mwwdlaw.com

Re:     *Suzy Sim, et al. v. State of California, et al*
         San Bernardino County SCC No. CIVDS1802564
         Zurich Claim No.: 9100086406
         Allied World Claim No.: 2022000231
         Insured: Flatiron Construction Corporation
                       Flatiron West, Inc.
                       Flatiron/Hardy & Harper, a Joint Venture
         Date of Loss: January 15, 2017
         Plaintiffs: Suzy Sim, et al.

Dear Mr. Drury:

I am writing in response to your letter of April 25, 2022, seeking a "significant contribution" from Caltrans based on Allied's contention that Caltrans has potential independent liability in the lawsuit based merely on unsupported allegations made in plaintiffs' complaint.

In fact, no evidence that Caltrans committed acts of independent liability or active negligence have been proffered. All that exists so far are bald allegations. Please provide any evidence of Caltrans actual independent acts of liability.  Caltrans expressly delegates public safety to the contractor. See Standard Specifications, Section 7-1.04 PUBLIC SAFETY, which provides, in part, to the contractor that:

> "You are responsible to provide for public safety.
>
> Do not construct a temporary facility that interferes with the safe passage of traffic.

*"Provide a safe and reliable transportation network that serves all people and respects the environment"*

Mr. Drury
May 26, 2022
Page 2

> …
>
> Whenever your operations create a condition hazardous to the public, furnish, erect and maintain those fences, temporary railing, barricades, lights, signs, and other devices and take any other necessary protective measures to prevent damage or injury to the public…"

You are aware Allied World Assurance Company owes Caltrans a duty of good faith and fair dealing. (*Commercial Union Assur. Cos. v Safeway Stores, Inc*. (1980) 26 C3d 912, 918.)  This includes a duty to settle a claim within your policy limits to avoid any judgment as against Caltrans that exceeds the policy limits. (See, *Northwestern Mut. Ins. Co. v Farmers Ins. Group* (1978) 76 CA3d 1031, 1041.)

Settling this case at a realistic amount - within policy limits - is reasonable and would avoid a detrimental condition should Caltrans be saddled with a large verdict if the case went to trial.   I appreciate your consideration of this letter.


Very truly yours,


JERALD M. MONTOYA
Deputy Chief Counsel

By

Breanne Denning
Deputy Attorney


cc. Megan Hitchcock (hit@darlaw.com)

"Provide a safe and reliable transportation network that serves all people and respects the environment"